LAWRENCE WASDEN
ATTORNEY GENERAL

Joan E. Callahan     [ISB No. 9241]
SPECIAL DEPUTY ATTORNEY GENERAL

Tyler D. Williams     [ISB No. 8512]
NAYLOR & HALES, P.C.
Attorneys at Law
950 W. Bannock Street, Ste. 610
Boise, Idaho 83702
Telephone No. (208) 383-9511
Facsimile No. (208) 383-9516
Email: joan@naylorhales.com; tdw@naylorhales.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MH and TB, individually,<br><br>          Plaintiffs,<br><br>vs.<br><br>DAVE JEPPESEN, in his official capacity as the Director of the Idaho Department of Health and Welfare; DR. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE.<br><br>          Defendants. | Case No. 1:22-cv-00409-REP<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

Defendants submit this Memorandum in Support of Motion to Dismiss. For the reasons stated below, the Fourth Claim for Relief under the Equal Protection Clause of the U.S. Constitution must be dismissed because it fails to state a claim for relief and Defendant Dr. Magni

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 1.**

Hamso must be dismissed in her personal capacity on the basis of qualified immunity and because emotional distress damages are not a form of relief available under the Medicaid Act.

## I.   INTRODUCTION

MH and TB are transgender individuals who have been diagnosed with gender dysphoria as established in the *Diagnostic and Statistical Manual of Mental Disorders*, Fifth Edition, 2013 ("DSM-5"). *Complaint*, ¶¶ 2-3, 38, Dkt. 1, pp. 2, 8. Plaintiffs are eligible for Medicaid in Idaho and have been receiving Medicaid benefits that include payment coverage for treatments related to their gender dysphoria. *Id*., ¶¶ 23-24, 106-107, 123, 160. Plaintiffs' have applied for prior authorization to have the State of Idaho pay for genital reconstruction surgery. MH has received one such surgery, and her request for further surgery has been remanded to the Idaho Department of Health and Welfare for a new decision and to restart the determination and potential hearing process. TB's request has not been approved or denied.

Plaintiffs filed a Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages ("Complaint") alleging six claims under the federal Medicaid Act and the U.S. Constitution against three defendants related to the alleged denial of genital reconstruction surgery. Although three Defendants are named, they are referred to synonymously and without differentiation, except as it relates to Dr. Hamso who is also named in her individual capacity for the purpose of claiming monetary relief in the form of emotional distress damages. *See* Complaint, Request for Relief, ¶ D, Dkt. 7-1, p. 40.

However, the Equal Protection Claim must be dismissed because it fails to allege an unconstitutional discriminatory policy under the U.S. Supreme Court's holding in *Geduldig v. Aiello*, 417 U.S. 484 (1974). Additionally, Dr. Hamso must be dismissed in her personal capacity

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 2.**

because compensatory damages for emotional distress cannot be awarded under the Medicaid Act as Spending Clause legislation and because she is entitled to qualified immunity on the remainder of the claims asserted against her individually.

## II.     STANDARD OF LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted when the allegations in the Complaint fail to state cognizable claim for which relief may be granted. F.R.C.P. 12(b)(6). To survive a motion to dismiss, a complaint does not need to plead enough facts to prove plaintiff's case, but must rather "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1958 (2007). Conclusory allegations of law are insufficient to defeat a motion to dismiss. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Further, the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III.    ARGUMENT

### A.     The Equal Protection Claim must be dismissed because Idaho's Medicaid program provides equal coverage to Plaintiffs as to other recipients.

Plaintiffs' Fourth Claim for relief asserts a cause of action under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution asserting that the Idaho Department of Health and Welfare ("IDHW") and the individual Defendants (collectively, "Idaho") have a policy of denying genital reconstruction surgery for the treatment of gender dysphoria. *Compl.* ¶ 207, Dkt. 1, p. 26. Plaintiffs assert that this amounts to discrimination on the basis of sex. *Id*.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 3.**

However, binding precedent from the U.S. Supreme Court shows that the claim fails on its face because under the circumstances alleged in the Complaint, there is no impermissible differential treatment between the Plaintiffs and other Medicaid participants.

The Equal Protection Clause "essentially [] direct[s] that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, (1985) (quoting U.S. Const., amend. XIV, § 1). An Equal Protection claim requires the Plaintiffs to show that the difference in treatment amounts to impermissible discrimination. *Id*. However, the Equal Protection Clause does not create a cause of action any time that the government makes determinations "for one purpose or another, with resulting in disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

This case involves a classification driven by payment coverage through Idaho's Medicaid program for a particular treatment, genital reconstruction surgery, which is asserted as a treatment for gender dysphoria (as defined and identified in the DSM-5). Significantly, the Complaint does not allege that IDHW categorically denies eligibility or payment for medical assistance for transgender individuals. It also does not allege that Idaho denies payment for treatment of gender dysphoria. Rather, it shows the opposite. *Compl.* ¶¶ 106-108, 110, 123, 167, Dkt 1 pp. 20, 22, 29. Plaintiffs claim that IDHW has a narrow policy to deny payment coverage for genital reconstruction surgery to treat gender dysphoria for transgender people that amounts to sex discrimination.

Even if IDHW excludes genital reconstruction surgery for gender dysphoria, such a policy does not run afoul of the Equal Protection Clause because Plaintiffs do not identify any coverage that they were denied that is available to other participants for reasons under which they too would

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 4.**

have coverage. This is fatal to their claim. As an initial matter, there is no need to go through a broad legal analysis as to whether transgender status is a suspect class because there is direct authority on the narrower question about payment coverage in a social welfare program.

Directly applicable to this case, the U.S. Supreme Court found no equal protection violation where women, and only women, were denied disability payments because the State of California's disability insurance program excluded coverage for disability related to pregnancy. *Geduldig v. Aiello*, 417 U.S. 484 (1974).[1] In *Geduldig*, the Plaintiff brought a claim under the Equal Protection Clause of the Fourteenth Amendment based on sex discrimination because she had been denied payments under the State of California's disability insurance program for disability resulting from a pregnancy. *Id*. at 490-491. As the Court described it, the challenged classification was an "asserted underinclusiveness of the set of risks that the State has selected to insure", which did not include pregnancy. *Id*. at 494. Notably, the Court found that the Equal Protection Clause does not require state insurance programs to be comprehensive. *Id*. at 495-496. The Court emphasized this was particularly true regarding social welfare programs. *Id*.

Accordingly, an Equal Protection claim cannot be supported for a plaintiff who, despite being a member of a suspect class, "has suffered discrimination because she encountered a risk that was outside the program's protection" when that plaintiff has "received insurance protection equivalent to that provided all other [participants]." *Id*. at 497. Despite that the risk at issue in that

---

[1] *Geduldig* was legislatively overruled by Congress through enacting the Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, such that an employer with an otherwise comprehensive health plan cannot deny insurance coverage for pregnancy. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 US 669, 678-679 (1983). However, it remains good law as it applies in this context to a constitutional claim under the Equal Protection Clause.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 5.**

case (pregnancy) occurred in only women, the Court noted there was "no risk from which men are protected and women are not" and "no risk from which women are protected and men are not." *Id*. at 496-497. Thus, there was no unconstitutional discrimination under the Equal Protection Clause.

The instant case is parallel to *Geduldig*. In both cases, the Equal Protection claim is based on an asserted denial of payment coverage from a state's social welfare program related to a particular medical condition or, in this case, medical treatment. As understood in *Geduldig*, only women experienced pregnancy and men did not. Here, inferring from the Complaint, transgender individuals experience gender dysphoria and cisgender individuals do not. However, this is not sufficient to support a claim. Because, just as in *Geduldig*, in this case there is no allegation that there is a treatment for which cisgender individuals are covered and transgender individuals are not, or for which transgender individuals are covered that cisgender individuals are not.

Thus, even if Idaho has a policy that excludes coverage for a genital reconstruction surgery for gender dysphoria, it does not violate the Equal Protection Clause when there is no allegation that Plaintiffs do not receive equal coverage as to other Medicaid participants in all other respects. Therefore, the Complaint fails to state a claim for relief under the Equal Protection Clause, and the Fourth Claim for Relief must be dismissed.

**B.   The Medicaid based claims against Dr. Hamso in her individual capacity must be dismissed because emotional distress damages are not available through Spending Clause legislation.**

Plaintiffs' Second, Third, and Fifth claims for relief are based on provisions of the Medicaid Act. Plaintiffs request relief in the form of compensatory damages for emotional distress. *Compl.* ¶ 20, Dkt. 1, p. 5. However, the Medicaid Act was enacted under Congress's

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 6.**

authority under the Spending Clause of the U.S. Constitution. Therefore, Plaintiffs are limited in the type of relief they may claim. Specifically, they cannot recover emotional distress damages under the Medicaid Act.

The U.S. Supreme Court recently emphasized the structure of Spending Clause legislation is analogous to the nature of a contract between the federal government and the state government. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. ____ (2022) (slip op. at 7). Moreover, the contractual lens that applies to Spending Clause legislation acts as a limitation on liability. *Id*. at 13 (quoting *Sossamon v. Texas*, 563 U.S. 277, 290 (2011)). Specifically, the Court ruled that emotional distress damages are not recoverable under antidiscrimination provisions in certain Spending Clause statues. *Id*. at 19. *Cummings* directly applies in the same manner in this case regarding Plaintiffs' claims asserting discriminatory conduct by the Defendants under the Medicaid Act. The analysis is simple and straightforward.

The Medicaid Act is in the same position as the statutes at issue in *Cummings*: Patient Protection and Affordable Care Act (ACA), §1557, 42 U.S.C. §18116; and Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794.[2] Each of those laws was silent as to the available remedies for a breach of the terms that applied to the respective federal funding. *Id*. at 8-9. Consequently, the Court found that relief was limited to the types of relief traditionally available for breach of contract, which does not include emotional damages. *Id*. at 9-10. Medicaid is no different. Medicaid, the ACA, and the Rehabilitation Act were each enacted pursuant to the Spending

---

[2] Although the ACA and Rehabilitation Act were directly at issue in *Cummings*, the decision likely applies to Title IX of the Education Amendments Act of 1972, 20 U.S.C. §1681, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *Cummings*, at 21 (Breyer, J., dissenting).

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 7.**

Clause. Medicaid, like those other statutes, is silent as to specific remedies. Accordingly, the type of relief that can be recovered is limited, and emotional distress damages are not awardable under the Medicaid Act.

Therefore, Plaintiffs' claims that are predicated upon an alleged violation of the Medicaid Act fail to state a claim for relief against Defendant Dr. Hamso in her individual capacity because emotional distress damages are barred and that is the only relief Plaintiffs seek against her.

### C. Dr. Hamso is shielded by Qualified Immunity and must be dismissed.

In this matter, Dr. Hamso is entitled to qualified immunity on the constitutional claims under the Equal Protection and Due Process Clauses of the U.S. Constitution and the claim under 42 U.S.C. § 1396a(a)(10)(A). Qualified immunity is an absolute shield to liability. Accordingly, the constitutional claims against Dr. Hamso must be dismissed.[3]

Qualified immunity bars liability and damages against a government official when that person's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, __ U.S. __, __, 137 S.Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, __ U.S. __, __, 136 S.Ct. 305, 308 (2015)). It "protects all but the plainly incompetent or those who knowingly violate the law." *Id*. The qualified immunity analysis is a two-step process: 1) whether a plaintiff alleges a valid constitutional or statutory right, and 2) whether the right at issue was clearly established at the time of the alleged violation. *Torres v. City of Madera*. 648 F.3d 1119, 1123 (9th Cir. 2011). It is within the district court's discretion as to which one of the two steps should be addressed first within the applicable analysis.

---

[3] As demonstrated above, the Medicaid claims against Dr. Hamso must be dismissed. Thus, she is subject to dismissal from this lawsuit in total in her personal capacity.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 8.**

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If either step is insufficiently established, then summary judgment is appropriate for the defendant.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, __ U.S. at __, 136 S.Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, __, 132 S.Ct. 2088, 2093 (2012)). There does not need to be a case directly on point for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, __ U.S. at __, 137 S.Ct. at 551.

It has long been held that "clearly established law" should not be defined "at a high level of generality." *Id.* at 552. "[T]he clearly established law must be particularized to the facts of the case." *Id.* "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply be alleging violation of extremely abstract rights.'" *Id* (quoting *Anderson v. Creighton*. 483 U.S. 635, 640 (1987).

1. **Dr. Hamso is entitled to qualified immunity on the Equal Protection claim.**

Plaintiffs allege that IDHW, including Defendant Hamso[4], discriminates against them through a policy of refusing to authorize "genital reconstruction and gender-affirming surgery for the treatment of gender dysphoria," as applied to them, on the basis that they are transgender. *Compl.*, ¶¶ 207-211, Dkt. 1, pp. 36-37. They assert this violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

---

[4] Dr. Hamso is the only defendant identified in her personal capacity for the purpose of asserting a claim for monetary damages.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 9.**

However, no Supreme Court or Ninth Circuit binding precedent placed it beyond debate that Dr. Hamso can be held personally liable in these circumstances, even if the allegations in the Complaint are taken as true. In fact, as demonstrated above, current binding Supreme Court precedent determined that denial of coverage for a particular treatment or condition under a state's social welfare program does not violate the Equal Protection Clause when the individual has received insurance protection equivalent to that provided to all other participants. *Geduldig*, 417 U.S. at 497. Hence, Dr. Hamso did not violate clearly established law, even if IDHW had a policy to deny genital reconstruction surgery for transgender individuals. Therefore, she is entitled to qualified immunity on the Equal Protection Claim, if that claim is not dismissed in its entirety.

**2. Dr. Hamso is immune from the Fourteenth Amendment Due Process Claim.**

Plaintiffs assert that they have a "protected interest in the Medicaid benefits guaranteed by [federal law]." *Compl.* ¶ 224, Dkt. 7-1, p. 39.[5] However, the Complaint does not allege that they have been denied eligibility for Medicaid. In fact, it acknowledges that they are eligible and have been receiving Medicaid benefits. *Compl.* ¶¶ 106-108, 110, 123, 167, Dkt 1 pp. 20, 22, 29. The only potential alleged deprivation of a property right is that their requests for coverage of one specific treatment –genital reconstruction surgery –have not been approved. Thus, Dr. Hamso is entitled to qualified immunity on this claim because Idaho's laws, rules, and policies or understandings are not sufficiently definite enough to clearly establish that Plaintiffs' have a constitutional entitlement to genital reconstruction surgery under Idaho's Medicaid policies.

---

[5] Plaintiffs do not identify whether they are asserting a substantive or procedural due process claim. However, given the general nature of the allegations regarding procedural safeguards and the ultimate issue of funding for the requested surgery, it appears it is a procedural due process claim for a deprivation of a property right.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 10.**

As a threshold matter, a Due Process Claim can only be sustained if there is a cognizable constitutionally protected property interest at issue. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). To establish a property interest in a benefit, a person must establish "a legitimate claim of entitlement" to the asserted interest that rises above any individual expectation. *Id*. at 577. Moreover, entitlements are created and defined by the "rules or understandings" that apply to them. *Id*.

Here, the Medicaid Act generally requires financial assistance for "medical assistance" to eligible participants. 42 U.S.C. § 1396a(a)(10)(A). The only other specificity provided in the statute is that "medical assistance" includes certain generalized categories of services or treatment, such as "inpatient hospital services" and "physician services." 42 U.S.C. § 1396d(a)(1),(5). It does not define each individual medical procedure or method of treatment that must be covered. *Beal v. Doe*, 432 U.S. 438, 440 (1977) ("[N]othing in the statute suggests that participating states are required to fund every medical procedure that falls within the delineated categories of medical care.") Hence, the Medicaid statutes and regulations give the states "broad discretion" to determine the scope of medical assistance to be covered. *Id*.; *see also* 42 C.F.R. § 440.230(d) ("The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.").

In this case, the Complaint admits that "Idaho's medical assistance statute does not explicitly address, let alone exclude, coverage for gender affirming surgery." *Compl.* ¶ 81, Dkt. 1, p.16. Further, the Complaint acknowledges that Idaho does not yet have a policy or standards

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 11.**

related to authorizing surgery for gender dysphoria.[6] *Id.* at ¶ 84, p. 17. Ultimately, Idaho does not have a definitively established law or policy setting forth criteria, parameters, and information necessary for prior authorization of the requested genital reconstruction surgery(ies). Thus, the "rules and understandings" that apply to prior authorization in Idaho for the treatments at issue do not have sufficiently definite contours to create a clearly established entitlement to the surgery. Therefore, Dr. Hamso is entitled to qualified immunity on the Due Process Claim.

    3.    **Qualified Immunity also bars the claim under 42 U.S.C. § 1396a(a)(10)(A).**

Plaintiffs' Second Claim for Relief alleges that a refusal to authorize funding for their requested genital reconstruction surgery violates 42 U.S.C. § 1396a(a)(10)(A) and is actionable under 42 U.S.C. § 1983 ("Section 1983").[7] However, Defendant Hamso is entitled to qualified immunity, if such a claim exists, for the same reasons as stated above.

The law at issue, 42 U.S.C. § 1396a(a)(10)(A), broadly requires states that participate in Medicaid to provide coverage for "medical assistance" to eligible individuals. Medical assistance is described in terms of generalized categories of treatment, but the statutory language does not require payment coverage for any particular medical procedure or method of treatment. 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396d(a)(1)-(5), (17), (21), (28), (29), and (30). Rather, as explained above, discretion is left to the states in defining the contours of the medical assistance that will be covered. Those contours are not clear or unambiguous in this context as demonstrated in Paragraph III.C.2. Therefore, the law does not clearly establish a right to genital reconstruction

---

[6] Defendants dispute the accuracy and context of the quote, but for purposes of acknowledging the standards applicable to a Motion to Dismiss, it alleges the absence of an established policy or criteria.

[7] Defendants do not concede that 42 U.S.C. § 1396a(a)(10)(A) creates a private right of action in this action and preserves it for later argument.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 12.**

surgery for Plaintiffs. Accordingly, Dr. Hamso is entitled to qualified immunity, if she is not otherwise dismissed from that claim.

## IV.   RESERVATION OF ARGUMENT

Plaintiffs' claims for relief under the ACA and Medicaid Act will be subject to dismissal because the Spending Clause does not give rise to privately enforceable rights under Section 1983 depending on the pending decision by the Supreme Court of the United States. *Health and Hospital Corporation of Marion County v. Talevski*, 6 F.4th 713 (7th Cir. 2021), *cert granted*, 142 S. Ct. 2673 (May 2, 2022) (No. 21-806). Therefore, Defendants reserve the argument that Plaintiffs' Complaint must be dismissed in its entirety for the reasons stated above and upon a ruling that the Spending Clause, which allows for contractual relationships between the federal government and state governments, cannot create a private right of action for individuals.

## V.   CONCLUSION

Defendants respectfully request the Court grant its motion to dismiss the Fourth Claim for Relief under the Equal Protection Clause in its entirety and dismiss Defendant Hamso in her personal capacity because emotional distress damages, the only alleged compensatory damages, cannot be sought under the Medicaid Act and she is entitled to qualified immunity on the Second, Fourth, and Sixth Claims for Relief because Plaintiffs do not have a clearly established right that was violated.

DATED this 25th day of November, 2022.

NAYLOR & HALES, P.C.

By: */s/ Joan E. Callahan*
   JOAN E. CALLAHAN, Of the Firm
   Attorneys for Defendants

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 13.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of November, 2022, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

| | |
|---|---|
| Howard A. Belodoff<br>Martin C. Hendrickson<br>*Attorneys for Plaintiffs* | ■ E-File/E-Serve<br>howardbelodoff@idaholegalaid.org<br>martinhendreickson@idaholegalaid.org |

*/s/ Joan E. Callahan*
JOAN E. CALLAHAN

12150_01 Memo re Motion to Dismiss FINAL

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 14.**