Howard A. Belodoff, ISB # 2290
Martin C. Hendrickson, ISB # 5876
Idaho Legal Aid Services, Inc.
1447 S. Tyrell Lane
Boise, ID 83706
Tel: (208) 807-2496 Fax: (208) 342-2561
howardbelodoff@idaholegalaid.org
martinhendrickson@idaholegalaid.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MH and TB, individually,<br><br>    Plaintiffs,<br><br>    vs.<br><br>DAVE JEPPESEN, in his official capacity as the Director of the Idaho Department of Health and Welfare; Dr. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>    Defendants. | CASE NO.  1:22-CV-409<br><br>RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) [Dkt.19] |

COME NOW Plaintiffs, by and through their attorneys of record, and hereby submit their

Response to Defendants' Memorandum in Support of Motion to Dismiss ("Memo") Dkt 19-1.

# <u>TABLE OF CONTENTS</u>

Page

I.   THE STANDARD FOR A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) .....................................................................1

II.  DEFENDANTS' DISCRIMINATORY POLICY OF DENYING TRANSGENDER INDIVIDUALS MEDICIALLY NECESSARY GENDER AFFIRMING SURGERY VIOLATES EQUAL PROTECTION ...................................................................................2

   A.   *MH's and TB's factual allegations, taken as true, plausibly allege discrimination on the basis of sex and transgender status in violation of Equal Protection* ...................2

   B.   *Defendants' policy excluding transgender individuals from receiving medically necessary genital reconstruction surgery to treat gender dysphoria discriminates on the basis of sex and violates Equal Protection under the heighten scrutiny analysis* ............................................................................................................5

   C.   *A policy of denying transgender individuals with gender dysphoria medically necessary genital reconstruction surgery constitutes unconstitutional sex discrimination* .............6

III. THE EMOTIONAL DISTRESS CLAIMS FOR DAMAGES UNDER THE MEDICAID ACT CAN BE DISMISSED ........................................................................................11

IV.  DEFENDANT HAMSO IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE MH'S AND TB'S CONSTITUTIONAL RIGHTS WERE CLEARLY ESTABLISHED ..12

V.   DR. HAMSO IS NOT ENTITLED TO QUALIFIED IMMUNITY ON MH'S AND TB's DUE PROCESS CLAIMS ..................................................................................18

   A.   *Violation of MH's due process rights based upon inadequate notice* ...........................19

   B.   *Violation of MH's due process rights by failing to make a final decision*.....................21

   C.   *Violation of TB's due process rights by failing to make a decision within a reasonable time*.............................................................................................................23

VI.  CLAIMS UNDER MEDICAID'S AVAILABILITY AND COMPARABILITY REQUIREMENTS ARE NOT BARRED BY QUALIFIED IMMUNITY ........................24

CONCLUSION.................................................................................................................26

ATTACHMENT 1

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Alexander v. Choate*, 469 U.S. 287 (1985) .......................................................25

*Alvarez v. Betlach*, 572 F. App'x 519 (9th Cir. 2014) .......................................25

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ................................................19, 21

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)...........................................................14

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ......................1

*Barbier v. Connolly*, 113 U.S. 27 (1884)...............................................................5

*Barry v. Barchi*, 443 U.S. 55 (1979)....................................................................21

*Beal v. Doe*, 432 U.S. 438 (1977) ........................................................................25

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701,
    33 L. Ed. 2d 548 (1972) ...............................................................................18

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. ___ , 140 S.Ct. 1731 (2020).......9, 15

*Boyden v. Conlin*, 341 F.Supp.3d 979 (W.D. Wis. 2018)...............................11, 17

*Brandt by and through Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022).......17

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) ............5

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) ................21

*Cruz v. Zucker*, 195 F. Supp. 3d 554 (S.D.N.Y. 2016).....................................12, 25

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S ___, (2022) ...............12

*Dept. of Agric. v. Moreno*, 413 U.S. 528 (1973) ................................................6

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861 (9th Cir. 2004)..1, 11

*Doe By and Through Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447 (9th Cir. 1995)......14

*Dryer v. IDHW*, 558 F.Supp.3d 917 (D. Idaho 2021)....................................12, 25

*Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010) ................................15

*F.V. v. Barron*, 286 F.Supp.3d 1131 (D. Idaho 2018) ......................................16

*Fain v. Crouch*, 2022 WL 3051015 at *6 (S.D. W.Vir. Aug. 2, 2022) ..............8, 9, 10, 12, 24, 25

*FDIC v. Mallen*, 486 U.S. 230 (1988) ...............................................................21

*Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931 (W.D. Wisc. 2018)
    (*Flack I*) .........................................................................................................10

*Flack v. Wis. Dept. of Health Srvcs.*, 395 F.Supp.3d 1001 (W.D. Wis. 2019)
    (*Flack II*) ..............................................................................................12, 16, 26

*Fletcher v. Alaska*, 443 F. Supp. 3d 1024 (D. Alaska 2020) ............................................10, 17

*Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130 (9th Cir. 2003)........................15

*Flores v. Pierce*, 617 F.2d 1386 (9th Cir.1980)................................................................15

*Frontiero v. Richardson*, 411 U.S. 677 (1973). ..................................................................6

*Geduldig v. Aiello*, 417 U.S. 484 (1974)...................................................................7, 9, 12

*Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011) .............................................................17

*Goldberg v. Kelly*, 397 U.S. 254 (1970) .....................................................................20, 21

*Graham v. Richardson*, 403 U.S. 365 (1971) .....................................................................6

*Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914)...........................19

*Griffeth v. Detrich*, 603 F.2d 118 (9th Cir. 1979)..............................................................19

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020) ..................................17

*Hecox v. Little,* 479 F.Supp.3d 930 (D. Idaho 2020). ........................................................16

*High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563 (9th Cir.1990)..15

*Hope v. Pelzer*, 536 U.S. 730 (2002) .................................................................................14

*J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994) .........................................................17

*Kadel v. Folwell*, 2022 WL 1166311 at *4 (M.D. N.C. Oct. 19, 2022) .....................8, 9, 10

*Kadel v. Folwell*, 446 F.Supp.3d 1 (M.D.N.C. 2020)........................................................17

*Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) ......................................................15, 16

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018). ................................................................12

*Kisela v. Hughes*, 584 U.S. ___, 138 S.Ct. 1148 (2018).....................................................14

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005). .................................................................1

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ..............................................18

*Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014)........................................................................6

*Maine v. Thiboutot*, 448 U.S. 1 (1980) ..............................................................................12

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)....................................................................1

*Mathews v. Eldridge*, 424 U.S. 319 (1976).......................................................................21

*Mendia v. Garcia*, 165 F. Supp. 3d 861 (N.D. Cal. 2016)................................................15

*Mullenix v. Luna*, 577 U.S. 7 (2015).............................................................................13, 14

*Norsworthy v. Beard*, 87 F. Supp. 3d 1104 (N.D. Cal. 2015)............................................17

*Nozzi v. Hous. Auth.*, 806 F.3d 1178 (9th Cir. 2015).........................................................19

*Palmore v. Sidoti*, 466 U.S. 429 (1984 ...............................................................................6

*Pelletier v. Fed. Home Loan Bank of San Francisco,* 968 F.2d 865 (9th Cir. 1992) ........12

*Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971) ....................................................9

*Ressler v. Pierce*, 692 F.2d 1212 (9th Cir. 1982) .............................................................19

*Schweiker v. Gray Panthers,* 453 U.S. 34 (1981) ............................................................25

*SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471 (9th Cir. 2014) ...........6

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...................................................................18

*Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116 (9th Cir. 2007) .................1

*Taylor v. Riojas*, ___ U.S. ___, 141 S. Ct. 52 (2020) .......................................................13

*Toomey v. Arizona*, 2019 WL 7172144, at *5-6 (D. Ariz. Dec. 23, 2019).......................15

*U.S. Windsor*, 570 U.S. 744 (2013) ...................................................................................6

*United States v. Ritchie*, 342 F.3d 903 (9th Cir.2003).......................................................1

*United States v. Virginia*, 518 U.S. 515 (1996). ................................................................6

*Ward v. County of San Diego*, 791 F.2d 1329 (9th Cir.1986),
   cert. denied, 483 U.S. 1020 (1987). .............................................................................14

*Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F. 3d 1034 (7th Cir. 2017)...............17

*White v. Pauly*, 580 U.S. 73, 37 S.Ct. 548 (2017) ...........................................................13

*Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990) ..............................................................12

## Statutes

42 C.F.R. §§ 440.230(a)-(c) ...................................................................................24, 25, 26

42 U.S.C. § 1396a(a)(10)(A) .................................................................................24, 25, 26

42 U.S.C. § 18116 .............................................................................................................11

42 U.S.C. § 1983...........................................................................................................12, 25

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

Federal Rule of Evidence 201 ...........................................................................................11

IDAPA 16.05.03.138 .........................................................................................................21

U.S. Const. Amend. XIV ......................................................................................................5

## I.   THE STANDARD FOR A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

A court considering a motion to dismiss under Fed. R. Civ. P. ("Rule")12(b)(6), must accept as true and construed all allegations of material fact in the light most favorable to the nonmoving party.  *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120 (9th Cir. 2007). A motion to dismiss under Rule 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a legal claim. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A court determines whether, "assuming all facts and inferences in favor of the nonmoving party, it appears beyond doubt that [plaintiff] can prove no set of facts to support [her] claims." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (cleaned up). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity. . . ." *Id.*  "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)). A court may also consider documents attached to or referred to in the complaint without transforming the motion to dismiss into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court may take judicial notice of state statutes and "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n1 (9th Cir. 2004). The Court should consider all exhibits attached to the Verified Complaint ("Complaint") in addition to the factual allegations as being true for purposes of this Motion. Dkt 1.

II.   **DEFENDANTS' DISCRIMINATORY POLICY OF DENYING TRANSGENDER INDIVIDUALS MEDICIALLY NECESSARY GENDER AFFIRMING SURGERY VIOLATES EQUAL PROTECTION**

A.  *MH's and TB's factual allegations, taken as true, plausibly allege discrimination on the basis of sex and transgender status in violation of Equal Protection*

MH and TB contend Defendants' policy of refusing to authorize medically necessary gender affirming surgery to treat gender dysphoria impermissibly discriminates on the basis of sex, does not serve any legitimate, rational, or compelling state interests, has caused them injuries, and punishes vulnerable transgender individuals for seeking to live in accordance with their gender identities, all in violation of their rights under federal laws and the Equal Protection Clause of the Fourteenth Amendment. Dkt 1 at ¶¶ 206-211. The factual allegations in the Complaint, which must be taken as true for purposes of a motion to dismiss, plausibly allege a violation of Equal Protection. MH and TB allege that Idaho Medicaid's discriminatory policies excludes coverage of genital reconstruction surgery that is medically necessary to treat transgender individuals' gender dysphoria while cisgender people can receive identical medical care for other diagnoses and conditions.[1] *Id.* at ¶ 1. MH and TB have alleged:

> Idaho Medicaid excludes coverage for health care – specifically, genital reconstructive surgery – that is medically necessary for transgender individuals to address the clinically significant distress caused by gender dysphoria **While cisgender people receive the same or similar health care as a matter of course, Defendants Jeppesen and Hamso refuse to cover the identical care for transgender Medicaid beneficiaries, under a policy of characterizing gender affirming surgery as "cosmetic" and not medically necessary.** Defendants Jeppesen and Hamso also have a policy of indefinitely and unreasonably delaying prior authorization of genital reconstruction surgery and coverage determinations for transgender Idaho Medicaid recipients. This discrimination against transgender Idaho Medicaid recipients is unlawful under the United States Constitution and

---

[1]Defendants recognize Plaintiffs' claim that IDHW has "narrow policy" to deny coverage for "genital reconstructive surgery to treat gender dysphoria for transgender people that amounts to sex discrimination." Memorandum in Support of Defendants' Motion to Dismiss ("Memo") at 4.

RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) – Page 2

federal law.

*Id.* at ¶ 1 (emphasis added).

"For transgender individuals, the incongruence between their gender identity and assigned sex can result in clinically significant distress known as gender dysphoria. Gender dysphoria is a serious medical condition recognized by the American Psychiatric Association. . . ." Dkt 1 at ¶ 38. "[U]ntreated gender dysphoria can cause anxiety, depression, and self-harm, or suicidal ideation." *Id.* at ¶ 39. The World Professional Association for Transgender Health ("WPATH"), has well-established standards of care for the treatment of gender dysphoria. *Id.* at ¶ 41. "The goal of medical treatment for gender dysphoria is to eliminate clinically significant distress by helping a transgender person live in alignment with their gender identity." *Id.* at ¶ 43. The WPATH Standards of Care recognize that transitioning is the only effective treatment for gender dysphoria. *Id.* at ¶ 45. Medical transition includes gender-affirming care and surgical care "that brings the sex-specific characteristics of a transgender individual's body into alignment with their sense of gender." *Id.* at ¶ 49. For transgender individuals assigned male at birth, surgery may include augmentation mammoplasty, penectomy (removal of the penis), orchiectomy (removal of the testes), vaginoplasty, clitoroplasty, and/or vulvoplasty (creation of female genitalia). *Id.* at ¶ 52.[2] "Decades of research and clinical practice has shown that gender-affirming medical care, including surgery, can be lifesaving treatment and has a positive impact on the short- and long-term health outcomes for transgender people." *Id.* at ¶ 56. "[M]ajor

---

[2]These are the same surgeries which MH's and TB's physicians requested to be authorized. *See* Dkt 1 at ¶ 111 & Exh 5 and ¶¶ 168-169. The same CPT Urology and Plastic Codes for the surgical procedures requested by MH's physicians were used by Telligen to review her authorization request and by Dr. Hamso. *Id.*, Exhs 12 & 13. Telligen used the same CPT Urology and Plastic Codes to review TB's authorization request. *Id.* at ¶ 170 & Exh 19.

professional medical associations recognize that gender affirming surgeries are safe and effective treatments for gender dysphoria, and that access to such treatments improves the health and well-being of transgender individuals." *Id.* at ¶ 58.

MH and TB are transgender females who have been diagnosed with gender dysphoria whose health care providers have requested medically necessary genital reconstruction surgery to alleviate their ongoing symptoms. *Id.* at ¶¶ 8, 9, 11, 12, 14, 19. Defendants' "policy of excluding coverage of genital reconstruction surgery for the treatment of gender dysphoria by characterizing the surgery as cosmetic is preventing MH and TB from receiving medically necessary care." *Id.* at ¶ 20. Defendants' discriminatory policy violates federal statutes governing Idaho Medicaid and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at ¶ 21. Defendant Jeppesen, in a July 22, 2022, article, stated that IDHW: "has not approved surgical procedures for diagnoses of gender dysphoria" and "continues to have no policy related to authorizing surgeries or hormone therapies for gender dysphoria and there are no current plans to implement one." *Id.* at ¶ 83.

Defendants' unwritten policy that medical care and surgeries for the treatment of gender dysphoria is cosmetic and not medically necessary "conflicts with the medical consensus that gender affirming surgery is medically necessary, reconstructive surgery." *Id.* at ¶ 84. MH was denied authorization for genital reconstruction surgery after Defendant Hamso determined "The World Professional Association for Transgender Health's recommendation is a 12-month continuation of hormones before proceeding with surgery" but she could resubmit her request. *Id.* at ¶ 120. MH appealed the denial and the Hearing Officer determined the medical records established she had completed the required 12-months of hormone treatment. *Id.* at ¶¶ 125-129, & 132-140. MH was denied genital reconstruction surgery to treat her gender dysphoria after a

nurse reviewer testified that Idaho Medicaid policy was not to authorize genital reconstruction surgery because it was considered "cosmetic" and not medically necessary. *Id.* at ¶ 15. *See also*, *Id.* at ¶¶ 130-131 and Exh 3. On July 2, 2021, the Hearing Officer remanded MH's appeal for a new determination. *Id.* at ¶ 141. Defendants have refused to authorize the surgery or allow her to file an appeal and MH has only been informed the request is still pending. *Id.* at ¶¶ 142-154. TB submitted a request for gender affirming surgery in May 2022. *Id*. at ¶¶ 168-169. Since that time her parent and physicians have contacted Defendants seeking a decision but have only been told it is under review. TB has not received a written denial decision. *Id.* at ¶¶ 170-188.

MH's and TB's allegations taken as true establish that Defendants "denies eligibility or payment for medical assistance to transgender individuals" and "for treatment of gender dysphoria." Memo at 4. MH and TB further allege, on information and belief, that Idaho Medicaid does not cover genital reconstruction "when it is medically necessary to treat health conditions other than gender dysphoria;" other transgender Medicaid recipients have been denied or deterred from seeking surgeries to treat gender dysphoria because Medicaid considers it "cosmetic" and medically unnecessary; and doctors have denied authorization for surgeries to treat gender dysphoria. *Id.* at ¶¶ 86-88. MH and TB have stated a claim of sex discrimination.

## B. *Defendants' policy excluding transgender individuals from receiving medically necessary genital reconstruction surgery to treat gender dysphoria discriminates on the basis of sex and violates Equal Protection under the heighten scrutiny analysis*

The Equal Protection Clause provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Courts have long recognized that "[c]lass legislation, discriminating against some and favoring others, is prohibited." *Barbier v. Connolly*, 113 U.S. 27, 32 (1884). The Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living*

*Center, Inc*., 473 U.S. 432, 439 (1985). "The Constitution's guarantee of equality 'must at the very least mean that a bare . . .  desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *U.S. Windsor*, 570 U.S. 744, 740 (2013) (quoting *Dept. of Agric. v. Moreno,* 413 U.S. 528, 534-535 (1973)). "It is the identification of such a class by the law for a separate and lesser public status that 'make[s] them unequal.'" *SmithKline Beecham Corp. v. Abbott Laboratories*, 740 F.3d 471, 482 (9th Cir. 2014) (quoting *Windsor*, 570 U.S. at 772). "'The Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.'" *Latta v. Otter,* 771 F.3d 456, 471 (9th Cir. 2014) (quoting *Palmore v. Sidoti,* 466 U.S. 429, 433 (1984)). "[P]rivate disapproval is a categorically inadequate justification for public injustice." *Id*. Heightened judicial scrutiny applies when the individual is a member of a "discrete and insular minority," *Graham v. Richardson*, 403 U.S. 365, 372 (1971), or has an "immutable characteristic determined solely by the accident of birth" that bears no relationship to his or her ability to contribute to society, *Frontiero v. Richardson*, 411 U.S. 677, 686–87 (1973). Governmental classifications based on gender require an "exceedingly persuasive" justification. *United States v. Virginia*, 518 U.S. 515, 531 (1996). Defendants' policy of denying genital reconstruction surgery deprives transgender individuals of medically necessary surgeries to treat gender dysphoria while cisgender individuals can receive the same medically necessary surgical procedures to treat other conditions. "The principal purpose is to impose inequality, not for other reasons like governmental efficiency." *Windsor*, 570 U.S. at 772.

### C. *A policy of denying transgender individuals with gender dysphoria medically necessary genital reconstruction surgery constitutes unconstitutional sex discrimination*

Defendants contend the Court should not consider whether their policy of denying transgender individuals with gender dysphoria medically necessary genital reconstruction

surgery constitutes unconstitutional sex discrimination because the "narrower question" is only about "payment coverage in a social welfare program." Memo at 5. Defendants' argument relies upon the equal protection analysis in *Geduldig v. Aiello*, 417 U.S. 484 (1974). In *Geduldig* the Supreme Court applied rational basis review to hold the exclusion of pregnancy coverage under California's health insurance plan did not treat individuals differently based upon sex which is subject to heighten scrutiny review. *Id.* at 494, 496 n.20. The Court held that under rational basis review the essential issue was "whether the Equal Protection Clause requires such policies to be sacrificed or compromised in order to finance the payment of benefits to those whose disability is attributable to normal pregnancy and delivery." *Id.* at 494.

The Court reasoned that no one was excluded because of gender because the state merely removed pregnancy coverage under the plan. "California does not discriminate with respect to the persons or groups which are eligible for disability insurance protection under the program." *Id.* at 495. The Court found "[t]here is no evidence in the record that the selection of the risks insured by the program worked to discriminate against any definable group or class in terms of the aggregate risk protection derived by that group or class from the program." *Id.* at 496. The Court noted that while "only women can become pregnant," **the group of members of both sexes who are not pregnant "includes members of both sexes**." and "[t]he **lack of identity between the excluded disability and gender** as such under this insurance program becomes clear upon the most cursory analysis. **The program divides potential recipients into two groups—pregnant women and nonpregnant persons**. While the first group is exclusively female, the second includes members of both sexes." *Id.* at 494 n20 (emphasis added).

Defendants argue there is no discrimination in denying transgender individuals with gender dysphoria medically necessary genital reconstruction because the denial of coverage is

related to a particular medical treatment and because there is no allegation "there is a treatment

for which cisgender individuals are covered and transgender individuals are not." Memo at 6.

Defendants are incorrect as to both arguments. MH and TB have alleged they have been denied

coverage equal to other Medicaid recipients because transgender individuals are denied the same

surgeries which cisgender individuals can receive for medical conditions other than gender

dysphoria. Dkt 1 at ¶¶ 1, 86, 201, & 202. The absurdity of Defendants' position that transgender

individuals are not discriminated based upon sex or status is apparent in the Complaint's factual

allegations regarding gender identity and dysphoria. Gender identity, male or female, is a basic

part of every person's core identity and "is innate, immutable, and has biological underpinnings."

*Id.* at ¶ 33. "Gender identity is the most important determinant of a person's sex." *Id.* at ¶ 34.

Transgender individuals "have a gender identity that is different from their assigned sex" at birth

based upon their external genitalia. *Id.* at ¶¶ 35-36. Defendants' exclusion of genital

reconstruction surgeries for the treatment of gender dysphoria is directly related to gender and

sex and cannot be explained without reference to sex, gender, or transgender status. "Gender

dysphoria cannot be understood without referencing sex or a synonym." *Kadel v. Folwell,* 2022

WL 11166311 at *4 (M.D. N.C. Oct. 19, 2022) (Corrected Version) (cleaned up) (quoting *Fain

v. Crouch*, 2022 WL 3051015 at *6 (S.D. W.Vir. Aug. 2, 2022) ("[A] person cannot suffer from

gender dysphoria without identifying as transgender.").[3]

District courts have held exclusions of genital reconstruction surgery to treat gender

dysphoria are discriminatory on the basis of sex and transgender status. The fact that Defendants

cover some treatment for gender dysphoria but not surgery is irrelevant. *See Fain*, 2022 WL

---

[3] *Fain* was a challenge to the West Virginia Medicaid program's exclusion of coverage of genital
reconstruction surgical care for the treatment of gender dysphoria. *Id.* at * 2.

3051015 at *7 ("the narrow question addressed by this Court is the exclusion of surgical care. Simply because the West Virginia Medicaid Program does not discriminate in all aspects does not permit it to discriminate narrowly against transgender surgical care.").[4] These courts have specifically rejected that *Geduldig's* equal protection rational basis review is applicable to genital reconstruction surgeries to treat transgender individuals suffering gender dysphoria. In *Kadel v. Folwell* the court rejected the application of *Geduldig* finding "the Plan's coverage was a sex classification because its implementation cannot be stated or effectuated without referencing sex." The court held: "[h]ere, the Plan does not merely exclude a physical condition from coverage—it excludes treatments that are directly connected to sex—sex changes and modifications cannot be explained without reference to sex, gender, or transgender status.") *Kadel*, 2022 WL 3226731 at *3 (M.D. N.C. Aug. 10, 2022). Similarly, *Fain v. Crouch* held: "[h]ere, the nonsuspect class–-those not seeking surgical treatment for gender dysphoria—are treated more favorably, as their materially same surgeries are treated more favorably, as the materially same surgeries are covered. This is unlike *Geduldig*, where men were **not** treated more favorably under the challenged policy." *Fain*, 2022 WL 3051015 at *8 (emphasis added).

Courts have held that discrimination against individuals with gender dysphoria is clearly based upon their sex and transgender identity. The surgical treatments for gender dysphoria are necessary because a transgender individual's gender identity does not align with their natal sex before the surgery. A transgender individual's gender identity aligns with their sex after the

---

[4]"[T]he Supreme Court has also made clear that it 'does [not] matter if an employer discriminates against only a subset of men or women.' *Bostock v. Clayton Cnty., Georgia, __ U.S. __*, 140 S. Ct. 1731, 1775 (2020); *see also Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971) (finding that, even though only some women will become pregnant or have children, the refusal to hire women with preschool-aged children was facial sex discrimination)."

RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6) – Page 9

surgery. Transgender females, such as MH and TB, are women and transgender males are men. Districts courts have recognized that surgical exclusionary policies for treatment of gender dysphoria are discriminatory. "[I]inherent in a gender dysphoria diagnosis is a person's identity as transgender. In other words, a person cannot suffer from gender dysphoria without identifying as transgender." *Fain v. Crouch*, 2022 WL 3051015 at *6. "[T]he exclusion is aimed specifically at a gender change procedure. Thus, the exclusion targets transgender people because they are transgender." *Id.* "Discrimination against individuals suffering from gender dysphoria is also discrimination based on sex and transgender status. As with the Plan's exclusions, one cannot explain gender dysphoria without referencing sex or a synonym." *Kadel v. Folwell*, 2022 WL 11166311 at *20.[5] "[T]he Challenged Exclusion expressly singles out and bars a medically necessary treatment solely for transgender people suffering from gender dysphoria. In fact, by excluding 'transsexual surgery' from coverage, the Challenged Exclusion directly singles out a Medicaid claimant's transgender status as the basis for denying medical treatment." *Flack v. Wis. Dep't of Health Servs*., 328 F. Supp. 3d 931, 950 (W.D. Wisc. 2018) (*Flack I*). "[D]efendant's policy of excluding coverage for medically necessary surgery such as vaginoplasty and mammoplasty for employees, such a[s] plaintiff, whose natal sex is male while providing coverage for such medically necessary surgery for employees whose natal sex is female is discriminatory on its face and is direct evidence of sex discrimination." *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030 (D. Alaska 2020).

Defendants consider genital reconstruction surgical procedures for a transgender

---

[5]In *Kadel* transgender individuals or the parents of transgender individuals challenged North Carolina's Health Plan for state employees which excluded coverage for treatments in connection with sex changes or modifications. *Id.* at *1.

individual with gender dysphoria as "cosmetic" but when a cisgender gender individual requests the same procedure for a different medical condition it is authorized. Idaho Medicaid publishes a Provider Manual to assist in reimbursing providers for their services. *See* Idaho Medicaid Numerical Fee Schedule July 2022.[6] The Schedule uses Current Procedural Terminology ("CPT") codes which were developed and maintained by the American Medical Association for both the procedures and charges. *See Boyden v. Conlin*, 341 F.Supp. 979, 989-990 (W.D. Wisconsin 2018). "The same code or codes apply to a particular procedure regardless of whether the procedure is performed on a transgender person as part of a medical transition or on a cisgender person for some other medical reason." *Id.* The CPT Urology and Plastic Codes include the surgical procedures requested by MH's and TB's physicians which were reviewed by Telligen, Dkt 1 at Exhs 12 & 19, and were referred to by Dr. Hamso, *Id.* at Exh 13. MH and TB have plausibly alleged that Defendants' exclusion of surgeries to treat a transgender individual's gender dysphoria discriminates on the basis of sex and violates Equal Protection.

## III. THE EMOTIONAL DISTRESS CLAIMS FOR DAMAGES UNDER THE MEDICAID ACT CAN BE DISMISSED

The damage claims for emotional distress against Defendant Hamso in the Second, Third, and Fifth claims was a clerical oversight. Dkt 1 at ¶¶ 119, 205 and 221.[7] Plaintiffs agree to strike

---

[6] Plaintiffs request the Court take Judicial Notice of Idaho Medicaid's Numerical Fee Schedule under Federal Rule of Evidence 201 because it is a public document not subject to reasonable dispute and the CPT codes are referenced in the documents submitted with the Verified Complaint. *Disabled Rights Action Comm*, 375 F.3d at 866 n1. https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=22931&dbid=0&repo=PUBLIC-DOCUMENTS  *See* attached.

[7] Plaintiffs removed the paragraph seeking compensatory damages in the First Claim for Relief under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 and thought it had been removed from Second, Third, and Fifth Claims for Relief. ¶¶ 189-193.

these paragraphs under the Spending Clause in *Cummings v. Premier Rehab Keller*, P.L.L.C.,

596 U.S ___, (2022).[8]

## IV.   DEFENDANT HAMSO IS NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE MH'S AND TB'S CONSTITUTIONAL RIGHTS WERE CLEARLY ESTABLISHED

The Verified Complaint plausibly alleges that Defendant Hamso, as Medicaid's Medical

Director, violated MH's and TB's constitutional rights.  "Determining claims of qualified

immunity at the motion-to-dismiss stage raises special problems for legal decision making."

*Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). "If the operative complaint 'contains even

one allegation of a harmful act that would constitute a violation of a clearly established

constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Id.* at 1235

(quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir.

1992)). Dr. Hamso argues she is entitled to qualified immunity because the "denial of coverage

for a particular treatment or condition" does not violate Equal Protection under *Geduldig* and she

did not violate clearly established law "even if IDHW had a policy to deny genital reconstructive

surgery for transgender individuals." Memo at 10. Defendant Hamso is not protected under

*Geduldig*. *Supra* at 6-9. MH and TB contend that Dr. Hamso's execution of the IDHW's policy

---

[8]The 42 U.S.C. § 1983 damage claims under the Equal Protection and Due Process Clauses are not effected by *Cummings* nor does it affect the Medicaid claims' request for declaratory and injunctive relief against Defendant Hamso in her official capacity. *See Maine v. Thiboutot*, 448 U.S. 1, 4-8 (1980) (permitting a Section 1983 action for violations of the Social Security Act); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 524 (1990) (allowing enforcement of a Medicaid Act payment provision under § 1983). "The Medicaid Act can create rights enforceable under § 1983. *Dryer v. IDHW*, 558 F.Supp.3d 917, 925-929 (D. Idaho 2021). The exclusion of gender dysphoria discriminates on the basis of diagnosis and violates the Medicaid Act's Availability and Comparability Provisions. *Flack*, 395 F.Supp.3d at 1018-1019; *Fain*, at *12-*14.  *Cruz v. Zucker*, 195 F. Supp. 3d 554, 571 (S.D.N.Y. 2016), on reconsideration, 218 F. Supp. 3d 246 (S.D.N.Y. 2016), appeal withdrawn (Dec. 30, 2016) (A categorical ban on medically necessary treatments for gender dysphoria violates the Medicaid Act's Comparability Provision).

of delaying and denying genital reconstructive surgery for the treatment of gender dysphoria because they are transgender individuals constitutes sex and gender discrimination under Equal Protection. Dr. Hamso's conduct is especially egregious because, as a medical professional familiar with the WPATH standards of care for the treatment of gender dysphoria, she had actual knowledge of MH's and TB's need for genital reconstructive surgery to treat gender dysphoria.[9] Dkt 1 ¶¶ at 119-120. *Cf. Taylor v. Riojas*, 592 U.S. ___, 141 S. Ct. 52, 53, (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement offended the Constitution.").

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). The Supreme Court has acknowledged general rules of law can provide notice if the unlawfulness of an official's misconduct is apparent from clearly established rights to equal protection not an abstract or imprecise right under the unambiguous facts alleged here that must be taken as true. "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in the light of pre-existing law the unlawfulness must be apparent." *White v. Pauly*, 580 U.S. 73, 79-80 (2017) (cleaned up) "We do not require a case

---

[9]Dkt 1 at ¶ 147 ("All calls pertaining to this [MH's] case can be referred to Dr. Hamso."); ¶ 149 (Dr. Hamso wrote "[MH] was clearly in tears and said I need you to find it and move it from pending to approved."); ¶ 175 ("The Medical Care Unit has received your [TB's] request and it is currently pending review by the Medical Director."); ¶ 177 ("Our surgical team at University of Utah Health, and four independent mental health professionals have thoroughly assessed this patient using the WPATH Standards of Care and have determined vaginoplasty to be a medically necessary procedure for [TB]. In our assessment, delay or denial of this medically necessary procedure would harm the health of this patient and put her well-being at risk."); and ¶ 185 (TB wrote "that discrimination against transgender persons was prohibited, meaning that health care plans cannot exclude transition related care.").

directly on point, but existing precedent must have placed the statutory or constitutional question

beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). Officials "can still be on notice

that their conduct violates established law, even in novel factual circumstances." *Hope v. Pelzer*,

536 U.S. 730, 741 (2002) ("a general constitutional rule already identified in the decisional law

may apply with obvious clarity to the specific conduct in question, even though the very action

in question has [not] previously been held unlawful." (cleaned up)). "Absent binding precedent,

'a court should look at all available decisional law including decisions of state courts, other

circuits, and district courts to determine whether the right was clearly established.'" *Doe By and*

*Through Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995) (cleaned up)

(quoting *Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir.1986), cert. denied, 483

U.S. 1020 (1987)).

Defendants' reliance on Fourth Amendment excessive force cases to apply qualified

immunity is misplaced. Dr. Hamso was not placed in a dangerous and evolving situation in

which she made a split-second judgment about the amount of force necessary.[10] Dr. Hamso's

violations of clearly established constitutional rights, starting in July of 2021, continues and is

not based upon hindsight. Courts may find a violation of a clearly established right when a

defendant's conduct is so obviously unlawful that factually similar or identical precedent is

unneeded. "This is especially true in equal protection cases because the non-discrimination

principle is so clear. 'The constitutional right to be free from such invidious discrimination is so

---

[10]The Supreme Court has stated that "specificity is especially important in the Fourth Amendment [excessive force] context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." *Mullenix*, 577 U.S. at 12 (cleaned up). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . police officers are often forced to make split-second judgments ... about the amount of force that is necessary." *Kisela v. Hughes,* 584 U.S. __ , 138 S.Ct. 1148, 1152 (2018) (cleaned up).

well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it.'" *Elliot-Park v. Manglona,* 592 F.3d 1003, 1008–09 (9th Cir. 2010) (quoting *Flores v. Pierce*, 617 F.2d 1386, 1392 (9th Cir.1980).  *See also Flores v Morgan Hill Unified Sch. Dist.,* 324 F.3d 130, 1137 (9th Cir. 2003) (establishing that "state employees who treat individuals differently on the basis of their sexual orientation violate the constitutional guarantee of equal protection") (citing *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 573–74 (9th Cir.1990)) (establishing that "state employees who treat individuals differently on the basis of their sexual orientation violate the constitutional guarantee of equal protection"). *See also Mendia v. Garcia*, 165 F. Supp. 3d 861, 889 (N.D. Cal. 2016).

A reasonable person, such as Dr. Hamso, would have "fair warning" that the right to be free from discrimination on the basis of sex and transgender status is clearly established. The Supreme Court has established discrimination because a person is transgender is unlawful discrimination because of sex. *Bostock v. Clayton Cnty., Ga.*, 590 U.S. ___, 140 S.Ct. 1731 (2020) ("That's because it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.") *Id.* at 1741; ("By discriminating against transgender persons, the employer unavoidably discriminates against persons with one sex identified at birth and another today.") *Id.* at 1746. *See also Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019) where the Court held when a "Policy on its face treats transgender persons differently than other persons, and consequently something more than rational basis but less than strict scrutiny applies" to discrimination based on transgender status; *Toomey v. Arizona*, 2019 WL 7172144, at *5-6 (D. Ariz. Dec. 23, 2019) ("[T]transgender individuals are the only people who would ever seek gender reassignment surgery. No cisgender

person would seek, or medically require, gender reassignment. Therefore, as a practical matter, the exclusion singles out transgender individuals for different treatment.").

The Federal District Court of Idaho has previously recognized transgender individuals are protected from discrimination under the Equal Protection Clause. In *Hecox v. Little*, Judge Nye, in a challenge to the constitutionality of an Idaho law which excluded transgender women from participating on women's sports teams, recognized "women who are transgender have historically been discriminated against, not favored." *Id.* at 479 F.Supp.3d 930, 977 (D. Idaho 2020). The Court issued a preliminary injunction holding "the Ninth Circuit has explicitly held heightened scrutiny applies if a law or policy treats transgender persons in a less favorable way than all others." *Id.* at 974 n31 (citing *Karnoski*, 926 F.3d at 1201). In *F.V. v. Barron*, 286 F.Supp.3d 1131, 1134 (D. Idaho 2018) Judge Dale held IDHW's policy of categorically and automatically denying applications submitted by transgender individuals to change the sex listed on their birth certificates was unconstitutional under the Equal Protection Clause. The Court held "to conclude discrimination based on gender identity or transsexual status is not discrimination based on sex is to depart from advanced medical understanding in favor of archaic reasoning." *Id.* at 1144. The Court noted other courts "have found that government discrimination based on transgender status is discrimination against a quasi-suspect class and thus is subject to intermediate scrutiny." *Id.* "This is especially true in Idaho where transgender people have no state constitutional protections from discrimination based on their transgender status in relation to employment decisions, housing, and other services." *Id.* at 1145.

Other district courts have clearly established that excluding medically necessary coverage of transition-related care discriminates against transgender individuals in violation of the Equal Protection Clause. *See, Flack v. Wis. Dept. of Health Srvcs.*, 395 F.Supp.3d 1001 (W.D. Wis.

2019) (*Flack II*); *Boyden v. Conlin*, 341 F.Supp.3d 979 (W.D. Wis. 2018); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030 (D. Alaska 2020); and *Kadel v. Folwell*, 446 F.Supp.3d 1 (M.D.N.C. 2020).[11] These decisions among others gave fair warning that it was clearly established that discrimination against transgender individuals is sex and gender discrimination and qualifies as a suspect classification under heighten scrutiny. *See Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119-1120 (N.D. Cal. 2015) (discrimination based on transgender status qualifies as a suspect classification and the need for medically necessary surgery, including vaginoplasty in particular, cannot be treated differently from non-transgender women in need of medically necessary surgery under the Equal Protection Clause); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607–08 (4th Cir. 2020) (equal protection and Title IX protects transgender students from school bathroom policies that rests on sex-based classifications prohibiting them from affirming their gender because transgender people constitute at least a quasi-suspect class); *Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F. 3d 1034, 1051 (7th Cir. 2017) (an unwritten school bathroom policy which barred transgender individuals from using the boys' bathroom was inherently based upon a sex-classification and violated Title IX and the Equal Protection Clause); *Glenn v. Brumby*, 663 F.3d 1312, 1316-1317 (11th Cir. 2011) ("discrimination against a transgender individual because of her gender-nonconformity is sex discrimination, whether it's described as being on the basis of sex or gender" under the Equal Protection Clause).

An equal protection claim may challenge legislation or the conduct of individual state actors. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31 (1994). Dr. Hamso, as

---

[11] In *Brandt by and through Brandt v. Rutledge*, 47 F.4th 661, 669-671 (8th Cir. 2022) the Court recently enjoined an Arkansas statute prohibiting health care professionals from providing or referring any transgender individual, under eighteen years of age, with gender dysphoria for gender transition procedures including prescribing drugs or gender reassignment surgery as a violation of Equal Protection Clause.

Medicaid's Medical Director, was central to the constitutional violations and can be individually

liable "when culpable action, or inaction, is directly attributed" to her. *Starr v. Baca*, 652 F.3d

1202, 1205 (9th Cir. 2011). A "supervisor's participation could include his 'own culpable action

or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the

constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless

or callous indifference to the rights of others.'" *Id.* at 1205-06 (quoting *Larez v. City of Los*

*Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). The alleged facts and permissible inferences in

the Complaint taken as true state a claim that Dr. Hamso had fair warning of the constitutional

violations and directly participated and acquiesced Medicaid discriminatory policy. Discovery

will produce more evidence of the same. Defendant Hamso is not entitled to qualified immunity.

## V.   DR. HAMSO IS NOT ENTITLED TO QUALIFIED IMMUNITY ON MH'S AND TB's DUE PROCESS CLAIMS

Defendants claim that Dr. Hamso is entitled to qualified immunity on Plaintiffs' due

process claims because there is no clearly established entitlement to the subject surgical

procedures. Memo at 10-12. Defendants fundamentally misunderstand Plaintiffs' due process

claims. MH alleges that Dr. Hamso violated her due process rights by failing to provide adequate

notice when denying her claim for benefits and the continuing failure to make a final decision.

Dkt 1 at ¶ 225. Dr. Hamso continues to violate TB's due process rights by failing to make a

decision on her request for genital reconstruction surgery to treat gender dysphoria. *Id.* at ¶ 226.

The due process rights exist independently of whether Medicaid must pay for the procedures.

MH and TB have procedural due process rights as Medicaid recipients.

Thus, the first question in any case in which a violation of procedural due process
is alleged is whether the plaintiffs have a protected property or liberty interest and,
if so, the extent or scope of that interest. *Board of Regents of State Colleges v. Roth*,
408 U.S. 564, 569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). The property
interests that due process protects extend beyond tangible property and include

anything to which a plaintiff has a "legitimate claim of entitlement." *Id*. at 576-77. A legitimate claim of entitlement is created "and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. at 577. Further, as we have previously held, plaintiffs have a protected property right in public benefits when, as here, a statute authorizes those benefits and the "implementing regulations" "greatly restrict the discretion" of the people who administer those benefits. *See Griffeth v. Detrich*, 603 F.2d 118, 121 (9th Cir. 1979).

*Nozzi v. Hous. Auth*., 806 F.3d 1178, 1190-1191 (9th Cir. 2015) (footnote omitted). *See also*

*Ressler v. Pierce*, 692 F.2d 1212, 1216 (9th Cir. 1982) ("Ressler is a primary beneficiary of the

Section 8 program, and her receipt of benefits is closely monitored by HUD under the

implementing regulations and guidelines. Ressler thus has a sufficient 'property' interest in

Section 8 benefits to entitle her to due process safeguards in the processing of her application.").

Medicaid's standards to determine whether a requested procedure is covered contain

objective criteria that greatly restrict the discretion of IDHW to deny the applications. MH and

TB  have a "legitimate claim of entitlement" for genital reconstruction surgery to treat gender

dysphoria sufficient to entitle them to procedural due process.[12]

### A.  Violation of MH's due process rights based upon inadequate notice

The requirement that a notice of denial contain the specific reasons for the decision in

order to have a meaningful opportunity to present evidence and confront adverse witnesses was

confirmed by the Supreme Court more than fifty years ago.

'The fundamental requisite of due process of law is the opportunity to be heard.' *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The hearing must be 'at a meaningful time and in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). **In the present context these principles require that a recipient have timely and**

---

[12]Plaintiffs' due process claims under the Fourteenth Amendment are separate from their claims for violations of their due process rights under the Medicaid Act as defined by its implementing regulations. That claim is stated in Plaintiffs' Fifth Claim for Relief (Dkt 1 at ¶¶ 214-221) and is not addressed by Defendants to the extent it seeks injunctive and declaratory relief.

**adequate notice detailing the reasons for a proposed termination**, **and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.** These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.

*Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970) (emphasis added).

The only basis for denial of MH's request in the notice was the alleged failure to complete 12 months of hormone therapy. Dkt 1 at ¶¶ 119-120, 133, Exh 1, pp. 30-32. When confronted with the fact that MH's medical records established that she had completed more than the required hormone therapy, the IDHW representative stated that MH's request should be denied because the procedures were "cosmetic." "The hormone part was a piece of it. Also, the other piece is the medical necessity that the Department, under our rule, denied because – also denying it because it's a cosmetic surgical request." *Id.* at ¶¶ 130-131, Exh 3, p. 12, ll. 14-19. MH was obviously unable to present evidence on appeal because the notice of denial did not state gender affirming surgery was cosmetic. *Id.*, Exh 3, p. 13, ll. 7-23.

The Hearing Officer observed the Medical Director's reason for denial was the WPATH recommendation for 12 months of continuous hormone therapy, and that MH could "resubmit once the participant has completed 12 months of hormone therapy." *Id.*, Exh 4, p. 5. He found that the notice "did not reference any other IDAPA rule as a basis of its denial." *Id.* He said: "It was unfair to expect Appellant to prepare an argument for hearing based on a lack of 12 continuous months of hormone therapy when a second reason for denial – perhaps the more significant reason for denial – is because Appellant requested a procedure that Department considers cosmetic and will not be covered by Medicaid (regardless of whether Appellant had 12 continuous months of hormone therapy)." *Id.*, p. 6.  MH's factual allegations, which must be taken as true, state a valid due process claim based upon no notice of the real reason for the

denial of genital reconstruction surgery to treat gender dysphoria. The right to constitutionally adequate notice was clearly established in March of 2021. The Motion to Dismiss on qualified immunity grounds should be denied.

**B.  Violation of MH's due process rights by failing to make a final decision**

The opportunity to be heard must be both "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976), and *Barry v. Barchi*, 443 U.S. 55, 64, (1979), both quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, (1965). Inherent in the guarantee of a fair hearing process is the right to an actual decision following the hearing. *Goldberg* held that "the decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing," that "the decision maker should state the reasons for his determination and indicate the evidence he relied on," and "an impartial decision maker is essential." 397 U.S. at 271. Those elements are meaningless if there is no right to a timely decision on the merits. The Court in *Barry* recognized "[o]nce a [termination] has been imposed, the [employee's] interest in a speedy resolution of the controversy becomes paramount. ... [i]t would seem as much in the State's interest as [the employee's] to have an early and reliable determination [of the issue]." *Id*. The lack of a speedy resolution of the proceedings may result in a denial of due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 547 (1985) ("At some point, a delay in the post-termination hearing would become a constitutional violation."); *FDIC v. Mallen*, 486 U.S. 230, 242 (1988) (there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation).

The Idaho Contested Case Rules require a hearing officer to issue a preliminary order within 30 days after the appeal is submitted for decision but there is no deadline for the agency to make a decision following a remand. IDAPA 16.05.03.138. MH has waited 22 months, since

March of 2021, while she continues to suffer from the worsening symptoms of gender dysphoria, for a decision on her request for genital reconstruction surgery and more than 18 months since the Hearing Officer remanded the matter to IDHW with no end in sight for a decision.

Dr. Hamso's failure to issue a decision after the remand is particularly egregious given MH's efforts to obtain a decision in the weeks and months following the remand. Dkt 1 at ¶¶ 143-150. On July 28, 2021 (after the remand), MH's health care provider sent Telligen a Pre-service Review Request Form with supporting documentation. *Id.* at ¶ 143, Exh 5. On November 2, 2021, an electronic note was entered into MH's Medicaid file stating: "Review is currently pending per the request of IDHW. The Department is currently determining if this is a covered benefit. All calls pertaining to this case can be referred to Dr. Hamso, Medical Director at DHSW." *Id.* at ¶ 147, Exh 8. MH requested another fair hearing (*Id.* at ¶ 148, Exh 9) but was told that she was not entitled to appeal because it was "still under review." *Id.* at ¶ 150, Exh 11.

In February of 2022, Telligen issued a Notice of Decision, stating for each requested procedure: "Outcome Not Rendered" and explaining: "Per direction from IDHW, the case was sent to the department for review." Dkt 1 at ¶¶ 151-52, Exh 12. Dr. Hamso has failed and refused to issue a decision, leaving MH without any way to obtain relief other than this lawsuit. Dr. Hamso's email dated December 22, 2021, shows she was aware of the emotional distress the lack of a decision was causing MH. *Id.* at ¶ 149, Exh 10. Dr. Hamso described her telephone conversation with MH: "I said that it is still pending. That she does have Medicaid, but this PA request is pending." *Id.* "[MH] was clearly in tears and said I need you to find it and move it from pending to approved. I said that it was still pending and that the Department is determining if this is part of Medicaid benefits." *Id*. Dr. Hamso, as the Medicaid Director, violated MH's due process rights by failing to issue a decision within a reasonable time following the remand from

the Hearing Officer. Dr. Hamso is not entitled to qualified immunity because MH's procedural due process right to a decision is clearly established.

### C. Violation of TB's due process rights by failing to make a decision within a reasonable time

Procedural due process requires that a Medicaid recipient be afforded a fair hearing when a claim for medical assistance is denied or not acted upon with reasonable promptness. In the Telligen "Notice of Decision" dated May 25, 2022, the "Determination" for each identified procedure was "Outcome Not Rendered," and the "Rationale" for each procedure was: "This request was forwarded [to] the medical care unit to review. For any further questions pertaining to this request please contact the medical care unit via email at: medicalcareunit@dhw.idaho.gov." *Id.* TB reasonably expected that a decision on her request for surgical authorization to treat her gender dysphoria would be forthcoming. This was reinforced by the subsequent emails exchanged with IDHW. *Id.* at ¶¶ 179-185.

Shortly after receiving the Telligen notice, TB wrote the Medical Care Unit as instructed: "I do not understand what 'outcome not rendered' means. Does it mean that my case is still being reviewed or does it mean that my surgery is not covered?" *Id.*, Exh 20, p. 1. TB emailed the MCU again the next day, after having called IDHW in an attempt to get an answer. An MCU representative replied the next day (June 2, 2022): "The Medical Care Unit has received your request and it is currently pending review by the Medical Director." *Id.*, p. 2. TB sent another email the same day informing them that her doctors could write a medical necessity letter. *Id.* The MCU's reply was the same: "The Medical Care Unit has received your request and it is currently pending review by the Medical Director." *Id.*, p. 3.

On June 21, 2022, TB's parents wrote a long email to the MCU explaining the importance of the procedures to TB and the effect it was having on her mental health, saying: "It

is a matter of life and death with her." *Id.*, p. 4. They also wrote: "If there is anything more we can do on our part please tell us." *Id.* TB wrote on June 22 and explained in detail the history of her gender dysphoria, its severe impact on her mental health, her treatment, and the importance of the requested procedures. *Id.*, p. 5. The MCU replied on June 23 with the same statement: "The Medical Care Unit has received your request and it is currently pending review by the Medical Director." *Id.*, p. 6. TB wrote again on July 6 to check on the status, and MCU's reply was essentially the same: "This is still under review." *Id.* The result is that TB is stuck in a purgatory of uncertainty with no avenue of relief except resort to this Court. Dr. Hamso is not entitled to qualified immunity because TB's due process right to a decision is clearly established.

## VI.   CLAIMS UNDER MEDICAID'S AVAILABILITY AND COMPARABILITY REQUIREMENTS ARE NOT BARRED BY QUALIFIED IMMUNITY[13]

Defendants contend qualified immunity bars MH's and TB's claims under the Availability provisions of the Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A), because "the statutory language does not require payment coverage of any particular medical procedure or method of treatment." Memo at 12. Defendants offer no legal authority supporting their contention that "discretion is left to the states in defining the contours of the medical assistance that will be covered." *Id.* On the contrary, "[ state Medicaid Program 'must ... provide ... for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17), (21), (28), (29), and (30) of section 1905(a).'" *Fain v. Crouch*, 2022 WL 3051015 at *12 (S.D. W.Vir. Aug. 2, 2022) (quoting 42 U.S.C. § 1396a(a)(10)(A)). Also a state's Medicaid "plan must specify the amount, duration, and scope of each service that it provides;" "[e]ach service must be sufficient in amount, duration, and scope to reasonably achieve its purpose;" or be denied because of "diagnosis, type of illness, or condition." 42

---

[13]MB and TB claims under the Availability provision is for equitable relief not damages so qualified immunity does not apply. *Supra* at 12.

C.F.R. §§ 440.230(a)-(c). Defendants do not dispute denying MH  and TB medically necessary

genital reconstructive surgery to treat their gender dysphoria because they are transgender.[14]

 "The Medicaid Act can create rights enforceable under § 1983." *Dryer v. IDHW*, 558

F.Supp.3d 917, 925-929 (D. Idaho 2021). Courts have uniformly held that the Medicaid Act's

Availability Provision, 42 U.S.C. § 1396a(a)(10)(A), requires that states "must cover services when

they (1) fall within a category of mandatory medical services or optional medical services that the

state has elected to provide; and (2) **are 'medically necessary' for a particular individual**." *Fain* at

*12 (emphasis added) (citing *Beal v. Doe*, 432 U.S. 438, 444 (1977)). "'[S]erious statutory questions

might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage, .

. .'" *Fain* at *12 (quoting *Beal*, 432 U.S. at 444). In *Alvarez v. Betlach*, the Court held 42 U.S.C. §

1396a(a)(10) and 42 C.F.R. § 440.230(d) "prohibits states from denying coverage of 'medically

necessary' services that fall under a category covered in their Medicaid plans"). *Id.*, 572 F. App'x

519, 520-21 (9th Cir. 2014) (citing *Beal* at 444). The allegations in the Complaint establish there is

voluminous evidence to establish medical necessity to treat MH's and TB's gender dysphoria.

 Medicaid's policy of categorically denying transgender individuals coverage for the

treatment of gender dysphoria on the basis that genital reconstruction surgery is cosmetic violates the

Availability Provision. In *Cruz v. Zucker*, the court held utilization controls are distinct from medical

necessity and "any limiting criteria other than medical necessity must ultimately serve the broader

aim of 'assuring that individuals will receive necessary medical care.'" *Id.*, 195 F. Supp. 3d 554, 570-

71 (S.D.N.Y. 2016), *reconsideration granted on other grounds*, 218 F. Supp. 3d 246 (S.D.N.Y.

2016). (quoting *Alexander v. Choate*, 469 U.S. 287, 303 (1985). The Court found the Availability

---

[14]By opting to participate in the Medicaid program, Idaho "must comply with requirements imposed both by the [Medicaid] Act itself and by the Secretary of Health and Human Services." *Schweiker v. Gray Panthers*, 453 U.S. 34, 37 (1981).

Provision required states to provide genital reconstruction surgical and medical treatments because they are within the categories of mandatory medical services outlined in the Medicaid Act, as they would be performed by a physician on an inpatient or outpatient basis. *Id.* at 570 (citing 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)). The court granted summary judgment under the Availability Provision holding "a state cannot say 'never' when it comes to medically necessary treatments, because there are no such reasons justifying categorical bans on medically necessary treatment. A categorical ban on medically necessary treatment for a specific diagnosis would not adequately meet the needs of the Medicaid population of the state." *Id.* at 571 (cleaned up). Similarly, in *Flack II* the court granted summary judgment holding Wisconsin's Medicaid exclusion for genital reconstruction surgery to treat gender dysphoria violated the Availability Provision because it "fails to make covered treatments available in sufficient 'amount, duration and scope' and discriminates on the basis of diagnosis." *Id.* at 1019 (quoting 42 C.F.R. § 440.230(b)).

## CONCLUSION

Idaho Medicaid discriminates against transgender individuals based on sex because the exclusion expressly prohibits genital reconstruction surgeries for the purpose of treating gender dysphoria. The exclusion discriminates because it applies only to transgender individuals who require genital reconstruction surgeries. The Court should deny the Motion to Dismiss.

DATED this 10th day of January, 2023.


/s/ Martin C. Hendrickson                                    /s/ Howard A. Belodoff
Attorney for Plaintiffs                                          Attorney for Plaintiffs

# Idaho Medicaid Numerical Fee Schedule (including DME)
# July 2022

Inclusion or exclusion of a procedure code, supply, product or service does not imply Medicaid coverage, reimbursement, or lack thereof. Fee schedules are prepared as tools to assist Medicaid providers and are not intended to grant rights or impose obligations. Every effort is made to assure the accuracy of the information within the fee schedules as of the date they are posted. Medicaid makes no guarantee that this compilation of fee schedule information is error-free and will bear no responsibility or liability for the results or consequences of the use of these schedules.

Providers must verify member coverage on the date of service by calling (866) 686-4272 or using their trading partner account at IDMedicaid.com.

Coverage and criteria information is communicated in the Provider Handbook, MedicAide Newsletters and Information Releases at IDMedicaid.com.

Questions about claims should be directed to GWT at (866) 686-4272.

Questions about pricing should be directed to the Office of Reimbursement, Idaho Division of Medicaid, at (208) 287-1180 or email MedicaidReimTeam@dhw.idaho.gov.

**Note:** Code descriptions with information about special coverage instructions are referring to Medicare coverage. This is not intended as guidance for Idaho Medicaid.

The Current Procedural Terminology (CPT) codes descriptors, and other data are registered trademarks of the American Medical Association. All rights reserved.

ATTACHMENT 1

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13153 | 13153 | Repair, complex, eyelids, nose, ears and/or lips; each additional 5 cm or less (List separately in addition to code for primary procedure) | | 7/1/2022 | $154.20 | Yes | Bundled | Bundled | No | N/A | N/A | 2 | 2 |
| 13160 | 13160 | Secondary closure of surgical wound or dehiscence, extensive or complicated | | 7/1/2022 | $659.65 | No | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14000 | 14000 | Adjacent tissue transfer or rearrangement, trunk; defect 10 sq cm or less | | 7/1/2022 | $522.82 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14001 | 14001 | Adjacent tissue transfer or rearrangement, trunk; defect 10.1 sq cm to 30.0 sq cm | | 7/1/2022 | $665.83 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14020 | 14020 | Adjacent tissue transfer or rearrangement, scalp, arms and/or legs; defect 10 sq cm or less | | 7/1/2022 | $579.11 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14021 | 14021 | Adjacent tissue transfer or rearrangement, scalp, arms and/or legs; defect 10.1 sq cm to 30.0 sq cm | | 7/1/2022 | $715.36 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14040 | 14040 | Adjacent tissue transfer or rearrangement, forehead, cheeks, chin, mouth, neck, axillae, genitalia, hands and/or feet; defect 10 sq cm or less | | 7/1/2022 | $627.94 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14041 | 14041 | Adjacent tissue transfer or rearrangement, forehead, cheeks, chin, mouth, neck, axillae, genitalia, hands and/or feet; defect 10.1 sq cm to 30.0 sq cm | | 7/1/2022 | $762.80 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 3 | 3 |
| 14060 | 14060 | Adjacent tissue transfer or rearrangement, eyelids, nose, ears and/or lips; defect 10 sq cm or less | | 7/1/2022 | $636.47 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14061 | 14061 | Adjacent tissue transfer or rearrangement, eyelids, nose, ears and/or lips; defect 10.1 sq cm to 30.0 sq cm | | 7/1/2022 | $821.51 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 14301 | 14301 | Adjacent tissue transfer or rearrangement, any area; defect 30.1 sq cm to 60.0 sq cm | | 7/1/2022 | $897.41 | Yes | 7/1/2022 | $1,574.39 | No | N/A | N/A | 2 | 2 |
| 14302 | 14302 | Adjacent tissue transfer or rearrangement, any area; each additional 30.0 sq cm, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $178.13 | No | Bundled | Bundled | No | N/A | N/A | 8 | 8 |
| 14350 | 14350 | Filleted finger or toe flap, including preparation of recipient site | | 7/1/2022 | $572.25 | No | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 15002 | 15002 | Surgical preparation or creation of recipient site by excision of open wounds, burn eschar, or scar (including subcutaneous tissues), or incisional release of scar contracture, trunk, arms, legs; first 100 sq cm or 1% of body area of infants and children | | 7/1/2022 | $288.72 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15003 | 15003 | Surgical preparation or creation of recipient site by excision of open wounds, burn eschar, or scar (including subcutaneous tissues), or incisional release of scar contracture, trunk, arms, legs; each additional 100 sq cm, or part thereof, or each additio | | 7/1/2022 | $57.56 | No | Bundled | Bundled | No | N/A | N/A | 9 | 60 |
| 15004 | 15004 | Surgical preparation or creation of recipient site by excision of open wounds, burn eschar, or scar (including subcutaneous tissues), or incisional release of scar contracture, face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet and/or | | 7/1/2022 | $330.80 | Yes | 7/1/2022 | $234.17 | No | N/A | N/A | 1 | 1 |
| 15005 | 15005 | Surgical preparation or creation of recipient site by excision of open wounds, burn eschar, or scar (including subcutaneous tissues), or incisional release of scar contracture, face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet and/or | | 7/1/2022 | $96.99 | Yes | Bundled | Bundled | No | N/A | N/A | 2 | 19 |
| 15040 | 15040 | Harvest of skin for tissue cultured skin autograft, 100 sq cm or less | | 7/1/2022 | $218.66 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15152 | 15152 | Tissue cultured skin autograft, trunk, arms, legs; each additional 100 sq cm, or each additional 1% of body area of infants and children, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $121.64 | Yes | Bundled | Bundled | No | N/A | N/A | 2 | 5 |
| 15155 | 15155 | Tissue cultured skin autograft, face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits; first 25 sq cm or less | | 7/1/2022 | $658.14 | Yes | 7/1/2022 | $1,574.39 | No | N/A | N/A | 1 | 1 |
| 15156 | 15156 | Tissue cultured skin autograft, face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits; additional 1 sq cm to 75 sq cm (List separately in addition to code for primary procedure) | | 7/1/2022 | $130.50 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 15157 | 15157 | Tissue cultured skin autograft, face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits; each additional 100 sq cm, or each additional 1% of body area of infants and children, or part thereof (List separately in add | | 7/1/2022 | $144.80 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 15200 | 15200 | Full thickness graft, free, including direct closure of donor site, trunk; 20 sq cm or less | | 7/1/2022 | $690.97 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15201 | 15201 | Full thickness graft, free, including direct closure of donor site, trunk; each additional 20 sq cm, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $116.46 | Yes | Bundled | Bundled | No | N/A | N/A | 7 | 7 |
| 15220 | 15220 | Full thickness graft, free, including direct closure of donor site, scalp, arms, and/or legs; 20 sq cm or less | | 7/1/2022 | $635.37 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15221 | 15221 | Full thickness graft, free, including direct closure of donor site, scalp, arms, and/or legs; each additional 20 sq cm, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $108.77 | Yes | Bundled | Bundled | No | N/A | N/A | 9 | 9 |
| 15240 | **15240** | Full thickness graft, free, including direct closure of donor site, forehead, cheeks, chin, mouth, neck, axillae, genitalia, hands, and/or feet; 20 sq cm or less | | 7/1/2022 | $768.21 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15241 | **15241** | Full thickness graft, free, including direct closure of donor site, forehead, cheeks, chin, mouth, neck, axillae, genitalia, hands, and/or feet; each additional 20 sq cm, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $144.32 | Yes | Bundled | Bundled | No | N/A | N/A | 9 | 9 |
| 15260 | 15260 | Full thickness graft, free, including direct closure of donor site, nose, ears, eyelids, and/or lips; 20 sq cm or less | | 7/1/2022 | $827.06 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15261 | 15261 | Full thickness graft, free, including direct closure of donor site, nose, ears, eyelids, and/or lips; each additional 20 sq cm, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $171.53 | Yes | Bundled | Bundled | No | N/A | N/A | 6 | 6 |
| 15271 | 15271 | Application of skin substitute graft to trunk, arms, legs, total wound surface area up to 100 sq cm; first 25 sq cm or less wound surface area | | 7/1/2022 | $128.78 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15272 | 15272 | Application of skin substitute graft to trunk, arms, legs, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $20.75 | Yes | Bundled | Bundled | No | N/A | N/A | 3 | 3 |
| 15273 | 15273 | Application of skin substitute graft to trunk, arms, legs, total wound surface area greater than or equal to 100 sq cm; first 100 sq cm wound surface area, or 1% of body area of infants and children | | 7/1/2022 | $262.75 | Yes | 7/1/2022 | $1,574.39 | No | N/A | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15738 | 15738 | Muscle, myocutaneous, or fasciocutaneous flap; lower extremity | | 7/1/2022 | $1,050.60 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 3 | 3 |
| 15740 | 15740 | Flap; island pedicle requiring identification and dissection of an anatomically named axial vessel | | 7/1/2022 | $833.12 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 15750 | 15750 | Flap; neurovascular pedicle | | 7/1/2022 | $766.19 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 2 | 2 |
| 15756 | 15756 | Free muscle or myocutaneous flap with microvascular anastomosis | | 7/1/2022 | $1,901.04 | No | N/A | N/A | No | N/A | N/A | 0 | 2 |
| 15757 | 15757 | Free skin flap with microvascular anastomosis | | 7/1/2022 | $1,893.63 | No | N/A | N/A | No | N/A | N/A | 0 | 2 |
| 15758 | 15758 | Free fascial flap with microvascular anastomosis | | 7/1/2022 | $1,892.08 | No | N/A | N/A | No | N/A | N/A | 0 | 2 |
| 15760 | 15760 | Graft; composite (eg, full thickness of external ear or nasal ala), including primary closure, donor area | | 7/1/2022 | $700.18 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 15769 | 15769 | Grafting of autologous soft tissue, other, harvested by direct excision (eg, fat, dermis, fascia) | | 7/1/2022 | $394.29 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 1 | 1 |
| 15770 | 15770 | Graft; derma-fat-fascia | | 7/1/2022 | $555.35 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 2 | 2 |
| 15771 | 15771 | Grafting of autologous fat harvested by liposuction technique to trunk, breasts, scalp, arms, and/or legs; 50 cc or less injectate | | 7/1/2022 | $486.03 | Yes | 7/1/2022 | $1,574.39 | Yes | Telligen | N/A | 1 | 1 |
| 15772 | 15772 | Grafting of autologous fat harvested by liposuction technique to trunk, breasts, scalp, arms, and/or legs; each additional 50 cc injectate, or part thereof (List separately in addition to code for primary procedure) | | 7/1/2022 | $156.22 | No | N/A | N/A | Yes | Telligen | N/A | 9 | 9 |
| 15777 | 15777 | Implantation of biologic implant (eg, acellular dermal matrix) for soft tissue reinforcement (ie, breast, trunk) (List separately in addition to code for primary procedure) | | 7/1/2022 | $176.82 | No | Bundled | Bundled | Yes | Telligen | N/A | 1 | 1 |
| 15820 | 15820 | Blepharoplasty, lower eyelid; | | 7/1/2022 | $481.35 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15821 | 15821 | Blepharoplasty, lower eyelid; with extensive herniated fat pad | | 7/1/2022 | $515.75 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15822 | 15822 | Blepharoplasty, upper eyelid; | | 7/1/2022 | $383.34 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15823 | 15823 | Blepharoplasty, upper eyelid; with excessive skin weighting down lid | | 7/1/2022 | $516.51 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 15829 | 15829 | Rhytidectomy; superficial musculoaponeurotic system (SMAS) flap | | 7/1/2008 | $536.88 | No | 7/1/2022 | $1,574.39 | Yes | Telligen | N/A | 1 | 1 |
| 15830 | 15830 | Excision, excessive skin and subcutaneous tissue (includes lipectomy); abdomen, infraumbilical panniculectomy | | 7/1/2022 | $963.75 | No | 7/1/2022 | $1,993.03 | Yes | Telligen | N/A | 1 | 1 |
| 15833 | 15833 | Excision, excessive skin and subcutaneous tissue (includes lipectomy); leg | | 7/1/2022 | $721.88 | No | 7/1/2022 | $880.51 | Yes | Telligen | N/A | 2 | 2 |
| 15836 | 15836 | Excision, excessive skin and subcutaneous tissue (includes lipectomy); arm | | 7/1/2022 | $655.78 | No | 7/1/2022 | $880.51 | Yes | Telligen | N/A | 2 | 2 |
| 15839 | 15839 | Excision, excessive skin and subcutaneous tissue (includes lipectomy); other area | | 7/1/2022 | $735.80 | Yes | 7/1/2022 | $880.51 | Yes | Telligen | N/A | 2 | 2 |
| 15840 | 15840 | Graft for facial nerve paralysis; free fascia graft (including obtaining fascia) | | 7/1/2022 | $843.96 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 1 | 1 |
| 15841 | 15841 | Graft for facial nerve paralysis; free muscle graft (including obtaining graft) | | 7/1/2022 | $1,467.15 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 2 | 2 |
| 15842 | 15842 | Graft for facial nerve paralysis; free muscle flap by microsurgical technique | | 7/1/2022 | $2,225.85 | No | 7/1/2022 | $765.81 | No | N/A | N/A | 2 | 2 |
| 15845 | 15845 | Graft for facial nerve paralysis; regional muscle transfer | | 7/1/2022 | $873.28 | No | 7/1/2022 | $1,574.39 | No | N/A | N/A | 2 | 2 |

| | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 19285 | 19285 | Placement of breast localization device(s) (eg, clip, metallic pellet, wire/needle, radioactive seeds), percutaneous; first lesion, including ultrasound guidance | | 7/1/2022 | $317.37 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 19286 | 19286 | Placement of breast localization device(s) (eg, clip, metallic pellet, wire/needle, radioactive seeds), percutaneous; each additional lesion, including ultrasound guidance (List separately in addition to code for primary procedure) | | 7/1/2022 | $260.63 | Yes | Bundled | Bundled | No | N/A | N/A | 2 | 2 |
| 19287 | 19287 | Placement of breast localization device(s) (eg clip, metallic pellet, wire/needle, radioactive seeds), percutaneous; first lesion, including magnetic resonance guidance | | 7/1/2022 | $548.95 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 19288 | 19288 | Placement of breast localization device(s) (eg clip, metallic pellet, wire/needle, radioactive seeds), percutaneous; each additional lesion, including magnetic resonance guidance (List separately in addition to code for primary procedure) | | 7/1/2022 | $424.79 | Yes | Bundled | Bundled | No | N/A | N/A | 2 | 2 |
| 19296 | 19296 | Placement of radiotherapy afterloading expandable catheter (single or multichannel) into the breast for interstitial radioelement application following partial mastectomy, includes imaging guidance; on date separate from partial mastectomy | | 7/1/2022 | $3,203.78 | Yes | 7/1/2022 | $3,791.39 | No | N/A | N/A | 1 | 1 |
| 19297 | 19297 | Placement of radiotherapy afterloading expandable catheter (single or multichannel) into the breast for interstitial radioelement application following partial mastectomy, includes imaging guidance; concurrent with partial mastectomy (List separately in a | | 7/1/2022 | $76.77 | No | Bundled | Bundled | No | N/A | N/A | 2 | 2 |
| 19298 | 19298 | Placement of radiotherapy afterloading brachytherapy catheters (multiple tube and button type) into the breast for interstitial radioelement application following (at the time of or subsequent to) partial mastectomy, includes imaging guidance | | 7/1/2022 | $739.29 | Yes | 7/1/2022 | $1,993.03 | No | N/A | N/A | 1 | 1 |
| 19300 | 19300 | Mastectomy for gynecomastia | | 7/1/2022 | $482.45 | Yes | 7/1/2022 | $1,040.86 | Yes | Telligen | N/A | 1 | 1 |
| 19301 | 19301 | Mastectomy, partial (eg, lumpectomy, tylectomy, quadrantectomy, segmentectomy); | | 7/1/2022 | $542.11 | No | 7/1/2022 | $1,040.86 | No | N/A | N/A | 1 | 1 |
| 19302 | 19302 | Mastectomy, partial (eg, lumpectomy, tylectomy, quadrantectomy, segmentectomy); with axillary lymphadenectomy | | 7/1/2022 | $744.13 | No | 7/1/2022 | $1,993.03 | No | N/A | N/A | 1 | 1 |
| 19303 | 19303 | Mastectomy, simple, complete | | 7/1/2022 | $785.39 | No | 7/1/2022 | $1,993.03 | No | N/A | N/A | 1 | 1 |
| 19305 | 19305 | Mastectomy, radical, including pectoral muscles, axillary lymph nodes | | 7/1/2022 | $941.61 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 19306 | 19306 | Mastectomy, radical, including pectoral muscles, axillary and internal mammary lymph nodes (Urban type operation) | | 7/1/2022 | $1,002.58 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 19307 | 19307 | Mastectomy, modified radical, including axillary lymph nodes, with or without pectoralis minor muscle, but excluding pectoralis major muscle | | 7/1/2022 | $968.67 | No | 4/1/2021 | $1,953.62 | No | N/A | N/A | 1 | 1 |
| 19316 | 19316 | Mastopexy | | 7/1/2022 | $651.17 | No | 7/1/2022 | $1,993.03 | Yes | Telligen | N/A | 1 | 1 |
| 19318 | 19318 | Reduction mammaplasty | | 7/1/2022 | $901.57 | No | 7/1/2022 | $1,993.03 | Yes | Telligen | N/A | 1 | 1 |
| 19325 | 19325 | Mammaplasty, augmentation; with prosthetic implant | | 7/1/2022 | $506.30 | No | 7/1/2022 | $2,464.52 | Yes | Telligen | N/A | 1 | 1 |
| 19328 | 19328 | Removal of intact mammary implant | | 7/1/2022 | $456.36 | No | 7/1/2022 | $1,040.86 | Yes | Telligen | N/A | 1 | 1 |
| 19330 | 19330 | Removal of mammary implant material | | 7/1/2022 | $532.89 | No | 7/1/2022 | $1,040.86 | Yes | Telligen | N/A | 1 | 1 |

| | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 53010 | Urethrotomy or urethrostomy, external (separate procedure); perineal urethra, external | | 7/1/2022 | $246.93 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53020 | Meatotomy, cutting of meatus (separate procedure); except infant | | 7/1/2022 | $80.52 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| | 53025 | Meatotomy, cutting of meatus (separate procedure); infant | | 7/1/2022 | $56.41 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| | 53040 | Drainage of deep periurethral abscess | | 7/1/2022 | $327.88 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53060 | Drainage of Skene's gland abscess or cyst | | 7/1/2022 | $156.92 | Yes | 7/1/2022 | $74.46 | No | N/A | N/A | 1 | 1 |
| | 53080 | Drainage of perineal urinary extravasation; uncomplicated (separate procedure) | | 7/1/2022 | $351.51 | No | 7/1/2022 | $257.23 | No | N/A | N/A | 1 | 1 |
| | 53085 | Drainage of perineal urinary extravasation; complicated | | 7/1/2022 | $543.26 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| | 53200 | Biopsy of urethra | | 7/1/2022 | $131.92 | Yes | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| | 53210 | Urethrectomy, total, including cystostomy; female | | 7/1/2022 | $649.31 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53215 | Urethrectomy, total, including cystostomy; male | | 7/1/2022 | $776.18 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53220 | Excision or fulguration of carcinoma of urethra | | 7/1/2022 | $377.69 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53230 | Excision of urethral diverticulum (separate procedure); female | | 7/1/2022 | $509.96 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53235 | Excision of urethral diverticulum (separate procedure); male | | 7/1/2022 | $530.67 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53240 | Marsupialization of urethral diverticulum, male or female | | 7/1/2022 | $355.39 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53250 | Excision of bulbourethral gland (Cowper's gland) | | 7/1/2022 | $331.05 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53260 | Excision or fulguration; urethral polyp(s), distal urethra | | 7/1/2022 | $172.76 | Yes | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53265 | Excision or fulguration; urethral caruncle | | 7/1/2022 | $191.03 | Yes | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| | 53270 | Excision or fulguration; Skene's glands | | 7/1/2022 | $176.89 | Yes | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53275 | Excision or fulguration; urethral prolapse | | 7/1/2022 | $220.03 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| | 53400 | Urethroplasty; first stage, for fistula, diverticulum, or stricture (eg, Johannsen type) | | 7/1/2022 | $668.89 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53405 | Urethroplasty; second stage (formation of urethra), including urinary diversion | | 7/1/2022 | $730.50 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53410 | Urethroplasty, 1-stage reconstruction of male anterior urethra | | 7/1/2022 | $819.85 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53415 | Urethroplasty, transpubic or perineal, 1-stage, for reconstruction or repair of prostatic or membranous urethra | | 7/1/2022 | $945.35 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| | 53420 | Urethroplasty, 2-stage reconstruction or repair of prostatic or membranous urethra; first stage | | 7/1/2022 | $704.07 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53425 | Urethroplasty, 2-stage reconstruction or repair of prostatic or membranous urethra; second stage | | 7/1/2022 | $783.85 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53430 | Urethroplasty, reconstruction of female urethra | | 7/1/2022 | $812.03 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53431 | Urethroplasty with tubularization of posterior urethra and/or lower bladder for incontinence (eg, Tenago, Leadbetter procedure) | | 7/1/2022 | $963.96 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| | 53440 | Sling operation for correction of male urinary incontinence (eg, fascia or synthetic) | | 7/1/2022 | $630.09 | No | 7/1/2022 | $8,189.66 | No | N/A | N/A | 1 | 1 |

| Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 53855 | Insertion of a temporary prostatic urethral stent, including urethral measurement | | 7/1/2022 | $558.17 | Yes | 7/1/2022 | $552.31 | No | N/A | N/A | 1 | 1 |
| 53860 | Transurethral radiofrequency micro-remodeling of the female bladder neck and proximal urethra for stress urinary incontinence | | 7/1/2022 | $2,035.49 | Yes | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 53899 | Unlisted procedure, urinary system | | 1/1/1979 | $0.00 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 54000 | Slitting of prepuce, dorsal or lateral (separate procedure); newborn | | 7/1/2022 | $135.69 | Yes | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54001 | Slitting of prepuce, dorsal or lateral (separate procedure); except newborn | | 7/1/2022 | $165.33 | Yes | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54015 | Incision and drainage of penis, deep | | 7/1/2022 | $254.99 | No | 7/1/2022 | $525.42 | No | N/A | N/A | 1 | 1 |
| 54050 | Destruction of lesion(s), penis (eg, condyloma, papilloma, molluscum contagiosum, herpetic vesicle), simple; chemical | | 7/1/2022 | $117.67 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 54055 | Destruction of lesion(s), penis (eg, condyloma, papilloma, molluscum contagiosum, herpetic vesicle), simple; electrodesiccation | | 7/1/2022 | $112.60 | Yes | 7/1/2022 | $78.94 | No | N/A | N/A | 1 | 1 |
| 54056 | Destruction of lesion(s), penis (eg, condyloma, papilloma, molluscum contagiosum, herpetic vesicle), simple; cryosurgery | | 7/1/2022 | $118.22 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 54057 | Destruction of lesion(s), penis (eg, condyloma, papilloma, molluscum contagiosum, herpetic vesicle), simple; laser surgery | | 7/1/2022 | $117.11 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 54060 | Destruction of lesion(s), penis (eg, condyloma, papilloma, molluscum contagiosum, herpetic vesicle), simple; surgical excision | | 7/1/2022 | $162.84 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 54065 | Destruction of lesion(s), penis (eg, condyloma, papilloma, molluscum contagiosum, herpetic vesicle), extensive (eg, laser surgery, electrosurgery, cryosurgery, chemosurgery) | | 7/1/2022 | $184.79 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 54100 | Biopsy of penis; (separate procedure) | | 7/1/2022 | $168.84 | Yes | 7/1/2022 | $525.42 | No | N/A | N/A | 2 | 2 |
| 54105 | Biopsy of penis; deep structures | | 7/1/2022 | $230.56 | Yes | 7/1/2022 | $880.51 | No | N/A | N/A | 2 | 2 |
| 54110 | Excision of penile plaque (Peyronie disease); | | 7/1/2022 | $524.93 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54111 | Excision of penile plaque (Peyronie disease); with graft to 5 cm in length | | 7/1/2022 | $668.91 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| 54112 | Excision of penile plaque (Peyronie disease); with graft greater than 5 cm in length | | 7/1/2022 | $784.34 | No | 7/1/2022 | $3,588.43 | No | N/A | N/A | 1 | 1 |
| 54115 | Removal foreign body from deep penile tissue (eg, plastic implant) | | 7/1/2022 | $381.67 | Yes | 7/1/2022 | $880.51 | No | N/A | N/A | 1 | 1 |
| 54120 | Amputation of penis; partial | | 7/1/2022 | $529.23 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54125 | Amputation of penis; complete | | 7/1/2022 | $685.87 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 54130 | Amputation of penis, radical; with bilateral inguinofemoral lymphadenectomy | | 7/1/2022 | $998.24 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 54135 | Amputation of penis, radical; in continuity with bilateral pelvic lymphadenectomy, including external iliac, hypogastric and obturator nodes | | 7/1/2022 | $1,263.43 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 54150 | Circumcision, using clamp or other device with regional dorsal penile or ring block | | 7/1/2022 | $124.42 | Yes | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54160 | Circumcision, surgical excision other than clamp, device, or dorsal slit; neonate (28 days of age or less) | | 7/1/2022 | $183.90 | Yes | 7/1/2022 | $257.23 | No | N/A | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 54346 | 54348 | Repair of hypospadias complications (ie, fistula, stricture, diverticula); requiring extensive dissection and urethroplasty with flap, patch or tubed graft (includes urinary diversion) | | 7/1/2022 | $845.49 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| 54352 | 54352 | Repair of hypospadias cripple requiring extensive dissection and excision of previously constructed structures including re-release of chordee and reconstruction of urethra and penis by use of local skin as grafts and island flaps and skin brought in as f | | 7/1/2022 | $1,183.13 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| 54360 | 54360 | Plastic operation on penis to correct angulation | | 7/1/2022 | $603.75 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54380 | 54380 | Plastic operation on penis for epispadias distal to external sphincter; | | 7/1/2022 | $669.09 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54385 | 54385 | Plastic operation on penis for epispadias distal to external sphincter; with incontinence | | 7/1/2022 | $779.06 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54390 | 54390 | Plastic operation on penis for epispadias distal to external sphincter; with exstrophy of bladder | | 7/1/2022 | $1,039.02 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 54420 | 54420 | Corpora cavernosa-saphenous vein shunt (priapism operation), unilateral or bilateral | | 7/1/2022 | $588.49 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54430 | 54430 | Corpora cavernosa-corpus spongiosum shunt (priapism operation), unilateral or bilateral | | 7/1/2022 | $534.74 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 54435 | 54435 | Corpora cavernosa-glans penis fistulization (eg, biopsy needle, Winter procedure, rongeur, or punch) for priapism | | 7/1/2022 | $346.08 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54437 | 54437 | Repair of traumatic corporeal tear(s) | | 7/1/2022 | $566.58 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54438 | 54438 | Replantation, penis, complete amputation including urethral repair | | 7/1/2022 | $1,118.30 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 54440 | 54440 | Plastic operation of penis for injury | | 1/1/1979 | $0.00 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54450 | 54450 | Foreskin manipulation including lysis of preputial adhesions and stretching | | 7/1/2022 | $56.93 | Yes | 7/1/2022 | $118.98 | No | N/A | N/A | 1 | 1 |
| 54500 | 54500 | Biopsy of testis, needle (separate procedure) | | 7/1/2022 | $61.85 | No | 7/1/2022 | $880.51 | No | N/A | N/A | 1 | 1 |
| 54505 | 54505 | Biopsy of testis, incisional (separate procedure) | | 7/1/2022 | $174.96 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54512 | 54512 | Excision of extraparenchymal lesion of testis | | 7/1/2022 | $449.60 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54520 | 54520 | Orchiectomy, simple (including subcapsular), with or without testicular prosthesis, scrotal or inguinal approach | | 7/1/2022 | $273.56 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54522 | 54522 | Orchiectomy, partial | | 7/1/2022 | $492.26 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54530 | 54530 | Orchiectomy, radical, for tumor; inguinal approach | | 7/1/2022 | $424.74 | No | 7/1/2022 | $1,243.79 | No | N/A | N/A | 1 | 1 |
| 54535 | 54535 | Orchiectomy, radical, for tumor; with abdominal exploration | | 7/1/2022 | $622.92 | No | 4/1/2021 | $1,210.95 | No | N/A | N/A | 1 | 1 |
| 54550 | 54550 | Exploration for undescended testis (inguinal or scrotal area) | | 7/1/2022 | $411.46 | No | 7/1/2022 | $1,243.79 | No | N/A | N/A | 1 | 1 |
| 54560 | 54560 | Exploration for undescended testis with abdominal exploration | | 7/1/2022 | $575.54 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54600 | 54600 | Reduction of torsion of testis, surgical, with or without fixation of contralateral testis | | 7/1/2022 | $378.81 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54620 | 54620 | Fixation of contralateral testis (separate procedure) | | 7/1/2022 | $249.66 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54640 | 54640 | Orchiopexy, inguinal or scrotal approach | | 7/1/2022 | $361.60 | No | 7/1/2022 | $1,243.79 | No | N/A | N/A | 1 | 1 |
| 54650 | 54650 | Orchiopexy, abdominal approach, for intra-abdominal testis (eg, Fowler-Stephens) | | 7/1/2022 | $595.87 | No | 7/1/2022 | $1,243.79 | No | N/A | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 54670 | 54670 | Suture or repair of testicular injury | | 7/1/2022 | $342.05 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54680 | 54680 | Transplantation of testis(es) to thigh (because of scrotal destruction) | | 7/1/2022 | $659.54 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54690 | 54690 | Laparoscopy, surgical; orchiectomy | | 7/1/2022 | $549.16 | No | 7/1/2022 | $2,040.17 | No | N/A | N/A | 1 | 1 |
| 54692 | 54692 | Laparoscopy, surgical; orchiopexy for intra-abdominal testis | | 7/1/2022 | $633.29 | No | 7/1/2022 | $2,040.17 | No | N/A | N/A | 1 | 1 |
| 54699 | 54699 | Unlisted laparoscopy procedure, testis | | 1/1/2000 | $0.00 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 54700 | 54700 | Incision and drainage of epididymis, testis and/or scrotal space (eg, abscess or hematoma) | | 7/1/2022 | $177.55 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54800 | 54800 | Biopsy of epididymis, needle | | 7/1/2022 | $104.47 | No | 7/1/2022 | $525.42 | No | N/A | N/A | 1 | 1 |
| 54830 | 54830 | Excision of local lesion of epididymis | | 7/1/2022 | $311.36 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54840 | 54840 | Excision of spermatocele, with or without epididymectomy | | 7/1/2022 | $269.69 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 54860 | 54860 | Epididymectomy; unilateral | | 7/1/2022 | $350.53 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54861 | 54861 | Epididymectomy; bilateral | | 7/1/2022 | $475.84 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 54865 | 54865 | Exploration of epididymis, with or without biopsy | | 7/1/2022 | $300.51 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55000 | 55000 | Puncture aspiration of hydrocele, tunica vaginalis, with or without injection of medication | | 7/1/2022 | $100.54 | Yes | 7/1/2022 | $58.61 | No | N/A | N/A | 1 | 1 |
| 55040 | 55040 | Excision of hydrocele; unilateral | | 7/1/2022 | $282.90 | No | 7/1/2022 | $1,243.79 | No | N/A | N/A | 1 | 1 |
| 55041 | 55041 | Excision of hydrocele; bilateral | | 7/1/2022 | $428.32 | No | 7/1/2022 | $1,243.79 | No | N/A | N/A | 1 | 1 |
| 55060 | 55060 | Repair of tunica vaginalis hydrocele (Bottle type) | | 7/1/2022 | $317.48 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55100 | 55100 | Drainage of scrotal wall abscess | | 7/1/2022 | $192.02 | Yes | 7/1/2022 | $525.42 | No | N/A | N/A | 2 | 2 |
| 55110 | 55110 | Scrotal exploration | | 7/1/2022 | $324.54 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55120 | 55120 | Removal of foreign body in scrotum | | 7/1/2022 | $296.64 | No | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 55150 | 55150 | Resection of scrotum | | 7/1/2022 | $413.26 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55175 | 55175 | Scrotoplasty; simple | | 7/1/2022 | $304.82 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55180 | 55180 | Scrotoplasty; complicated | | 7/1/2022 | $577.78 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| 55200 | 55200 | Vasotomy, cannulization with or without incision of vas, unilateral or bilateral (separate procedure) | | 7/1/2022 | $322.56 | Yes | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55250 | 55250 | Vasectomy, unilateral or bilateral (separate procedure), including postoperative semen examination(s) | | 7/1/2022 | $280.58 | Yes | 7/1/2022 | $705.10 | No | N/A | N/A | 1 | 1 |
| 55300 | 55300 | Vasotomy for vasograms, seminal vesiculograms, or epididymograms, unilateral or bilateral | | 7/1/2022 | $155.30 | No | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 55500 | 55500 | Excision of hydrocele of spermatic cord, unilateral (separate procedure) | | 7/1/2022 | $327.32 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55520 | 55520 | Excision of lesion of spermatic cord (separate procedure) | | 7/1/2022 | $376.61 | No | 7/1/2022 | $1,234.46 | No | N/A | N/A | 1 | 1 |
| 55530 | 55530 | Excision of varicocele or ligation of spermatic veins for varicocele; (separate procedure) | | 7/1/2022 | $295.07 | No | 7/1/2022 | $1,234.46 | Yes | Telligen | N/A | 1 | 1 |
| 55535 | 55535 | Excision of varicocele or ligation of spermatic veins for varicocele; abdominal approach | | 7/1/2022 | $360.31 | No | 7/1/2022 | $1,243.79 | Yes | Telligen | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 55805 | 55866 | Laparoscopy, surgical prostatectomy, retropubic radical, including nerve sparing, includes robotic assistance, when performed | | 7/1/2022 | $1,204.74 | No | 4/1/2021 | $3,293.10 | No | N/A | N/A | 1 | 1 |
| 55873 | 55873 | Cryosurgical ablation of the prostate (includes ultrasonic guidance and monitoring) | | 7/1/2022 | $4,890.58 | Yes | 7/1/2022 | $5,567.22 | No | N/A | N/A | 1 | 1 |
| 55875 | 55875 | Transperineal placement of needles or catheters into prostate for interstitial radioelement application, with or without cystoscopy | | 7/1/2022 | $651.23 | No | 7/1/2022 | $1,824.78 | No | N/A | N/A | 1 | 1 |
| 55876 | 55876 | Placement of interstitial device(s) for radiation therapy guidance (eg, fiducial markers, dosimeter), prostate (via needle, any approach), single or multiple | | 7/1/2022 | $126.27 | Yes | 7/1/2022 | $76.55 | No | N/A | N/A | 1 | 1 |
| 55899 | 55899 | Unlisted procedure, male genital system | | 1/1/1979 | $0.00 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 55920 | 55920 | Placement of needles or catheters into pelvic organs and/or genitalia (except prostate) for subsequent interstitial radioelement application | | 7/1/2022 | $387.97 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 55970 | 55970 | Intersex surgery; male to female | | 1/1/1979 | $0.00 | No | 7/1/2022 | $0.00 | Yes | Telligen | N/A | 1 | 1 |
| 55980 | 55980 | Intersex surgery; female to male | | 1/1/1979 | $0.00 | No | 7/1/2022 | $0.00 | Yes | Telligen | N/A | 1 | 1 |
| 56405 | 56405 | Incision and drainage of vulva or perineal abscess | | 7/1/2022 | $124.22 | Yes | 7/1/2022 | $81.63 | No | N/A | N/A | 2 | 2 |
| 56420 | 56420 | Incision and drainage of Bartholin's gland abscess | | 7/1/2022 | $155.98 | Yes | 7/1/2022 | $76.17 | No | N/A | N/A | 1 | 1 |
| 56440 | 56440 | Marsupialization of Bartholin's gland cyst | | 7/1/2022 | $150.74 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56441 | 56441 | Lysis of labial adhesions | | 7/1/2022 | $154.61 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56442 | 56442 | Hymenotomy, simple incision | | 7/1/2022 | $38.72 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56501 | 56501 | Destruction of lesion(s), vulva; simple (eg, laser surgery, electrosurgery, cryosurgery, chemosurgery) | | 7/1/2022 | $161.85 | Yes | 7/1/2022 | $119.91 | No | N/A | N/A | 1 | 1 |
| 56515 | 56515 | Destruction of lesion(s), vulva; extensive (eg, laser surgery, electrosurgery, cryosurgery, chemosurgery) | | 7/1/2022 | $233.24 | Yes | 7/1/2022 | $765.81 | No | N/A | N/A | 1 | 1 |
| 56605 | 56605 | Biopsy of vulva or perineum (separate procedure); 1 lesion | | 7/1/2022 | $80.84 | Yes | 7/1/2022 | $48.44 | No | N/A | N/A | 1 | 1 |
| 56606 | 56606 | Biopsy of vulva or perineum (separate procedure); each separate additional lesion (List separately in addition to code for primary procedure) | | 7/1/2022 | $31.95 | Yes | Bundled | Bundled | No | N/A | N/A | 6 | 6 |
| 56620 | 56620 | Vulvectomy simple; partial | | 7/1/2022 | $489.32 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56625 | 56625 | Vulvectomy simple; complete | | 7/1/2022 | $558.22 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56630 | 56630 | Vulvectomy, radical, partial; | | 7/1/2022 | $803.16 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 56631 | 56631 | Vulvectomy, radical, partial; with unilateral inguinofemoral lymphadenectomy | | 7/1/2022 | $989.42 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 56632 | 56632 | Vulvectomy, radical, partial; with bilateral inguinofemoral lymphadenectomy | | 7/1/2022 | $1,197.73 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 56633 | 56633 | Vulvectomy, radical, complete; | | 7/1/2022 | $1,027.28 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 56634 | 56634 | Vulvectomy, radical, complete; with unilateral inguinofemoral lymphadenectomy | | 7/1/2022 | $1,079.63 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 56637 | 56637 | Vulvectomy, radical, complete; with bilateral inguinofemoral lymphadenectomy | | 7/1/2022 | $1,265.14 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 56640 | 56640 | Vulvectomy, radical, complete, with inguinofemoral, iliac, and pelvic lymphadenectomy | | 7/1/2022 | $1,274.27 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 56700 | 56700 | Partial hymenectomy or revision of hymenal ring | | 7/1/2022 | $170.22 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56740 | 56740 | Excision of Bartholin's gland or cyst | | 7/1/2022 | $264.48 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56800 | 56800 | Plastic repair of introitus | | 7/1/2022 | $211.83 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56805 | 56805 | Clitoroplasty for intersex state | | 7/1/2022 | $979.08 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56810 | 56810 | Perineoplasty, repair of perineum, nonobstetrical (separate procedure) | | 7/1/2022 | $227.92 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 56820 | 56820 | Colposcopy of the vulva; | | 7/1/2022 | $104.31 | Yes | 7/1/2022 | $59.51 | No | N/A | N/A | 1 | 1 |
| 56821 | 56821 | Colposcopy of the vulva; with biopsy(s) | | 7/1/2022 | $139.82 | Yes | 7/1/2022 | $78.35 | No | N/A | N/A | 1 | 1 |
| 57000 | 57000 | Colpotomy; with exploration | | 7/1/2022 | $169.37 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57010 | 57010 | Colpotomy; with drainage of pelvic abscess | | 7/1/2022 | $383.66 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57020 | 57020 | Colpocentesis (separate procedure) | | 7/1/2022 | $106.50 | Yes | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57022 | 57022 | Incision and drainage of vaginal hematoma; obstetrical/postpartum | | 7/1/2022 | $152.33 | No | 7/1/2022 | $880.51 | No | N/A | N/A | 1 | 1 |
| 57023 | 57023 | Incision and drainage of vaginal hematoma; non-obstetrical (eg, post-trauma, spontaneous bleeding) | | 7/1/2022 | $268.35 | No | 7/1/2022 | $880.51 | No | N/A | N/A | 1 | 1 |
| 57061 | 57061 | Destruction of vaginal lesion(s); simple (eg, laser surgery, electrosurgery, cryosurgery, chemosurgery) | | 7/1/2022 | $140.72 | Yes | 7/1/2022 | $106.75 | No | N/A | N/A | 1 | 1 |
| 57065 | 57065 | Destruction of vaginal lesion(s); extensive (eg, laser surgery, electrosurgery, cryosurgery, chemosurgery) | | 7/1/2022 | $207.93 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57100 | 57100 | Biopsy of vaginal mucosa; simple (separate procedure) | | 7/1/2022 | $86.40 | Yes | 7/1/2022 | $50.83 | No | N/A | N/A | 2 | 2 |
| 57105 | 57105 | Biopsy of vaginal mucosa; extensive, requiring suture (including cysts) | | 7/1/2022 | $148.65 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 2 | 2 |
| 57106 | 57106 | Vaginectomy, partial removal of vaginal wall; | | 7/1/2022 | $450.45 | No | 4/1/2021 | $1,126.77 | No | N/A | N/A | 1 | 1 |
| 57107 | 57107 | Vaginectomy, partial removal of vaginal wall; with removal of paravaginal tissue (radical vaginectomy) | | 7/1/2022 | $1,220.55 | No | 4/1/2021 | $1,126.77 | No | N/A | N/A | 1 | 1 |
| 57109 | 57109 | Vaginectomy, partial removal of vaginal wall; with removal of paravaginal tissue (radical vaginectomy) with bilateral total pelvic lymphadenectomy and para-aortic lymph node sampling (biopsy) | | 7/1/2022 | $1,443.83 | No | 4/1/2021 | $1,126.77 | No | N/A | N/A | 1 | 1 |
| 57110 | 57110 | Vaginectomy, complete removal of vaginal wall; | | 7/1/2022 | $759.42 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57111 | 57111 | Vaginectomy, complete removal of vaginal wall; with removal of paravaginal tissue (radical vaginectomy) | | 7/1/2022 | $1,443.83 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57120 | 57120 | Colpocleisis (Le Fort type) | | 7/1/2022 | $445.86 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57130 | 57130 | Excision of vaginal septum | | 7/1/2022 | $194.34 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57135 | 57135 | Excision of vaginal cyst or tumor | | 7/1/2022 | $208.08 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 2 | 2 |
| 57150 | 57150 | Irrigation of vagina and/or application of medicament for treatment of bacterial, parasitic, or fungoid disease | | 7/1/2022 | $49.52 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 57155 | 57155 | Insertion of uterine tandem and/or vaginal ovoids for clinical brachytherapy | | 7/1/2022 | $331.09 | Yes | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57156 | 57156 | Insertion of a vaginal radiation afterloading apparatus for clinical brachytherapy | | 7/1/2022 | $191.26 | Yes | 7/1/2022 | $126.10 | No | N/A | N/A | 1 | 1 |
| 57160 | 57160 | Fitting and insertion of pessary or other intravaginal support device | | 7/1/2022 | $62.33 | Yes | 7/1/2022 | $36.10 | No | N/A | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 57308 | 57308 | Closure of rectovaginal fistula; transperineal approach, with perineal body reconstruction, with or without levator plication | | 7/1/2022 | $557.20 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57310 | 57310 | Closure of urethrovaginal fistula; | | 7/1/2022 | $414.91 | No | 7/1/2022 | $2,459.20 | No | N/A | N/A | 1 | 1 |
| 57311 | 57311 | Closure of urethrovaginal fistula; with bulbocavernosus transplant | | 7/1/2022 | $467.84 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57320 | 57320 | Closure of vesicovaginal fistula; vaginal approach | | 7/1/2022 | $474.14 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57330 | 57330 | Closure of vesicovaginal fistula; transvesical and vaginal approach | | 7/1/2022 | $646.19 | No | 4/1/2021 | $2,418.89 | No | N/A | N/A | 1 | 1 |
| 57335 | 57335 | Vaginoplasty for intersex state | | 7/1/2022 | $988.61 | No | 4/1/2021 | $1,617.58 | No | N/A | N/A | 1 | 1 |
| 57400 | 57400 | Dilation of vagina under anesthesia (other than local) | | 7/1/2022 | $109.11 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57410 | 57410 | Pelvic examination under anesthesia (other than local) | | 7/1/2022 | $87.78 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57415 | 57415 | Removal of impacted vaginal foreign body (separate procedure) under anesthesia (other than local) | | 7/1/2022 | $147.07 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57420 | 57420 | Colposcopy of the entire vagina, with cervix if present; | | 7/1/2022 | $110.16 | Yes | 7/1/2022 | $62.50 | No | N/A | N/A | 1 | 1 |
| 57421 | 57421 | Colposcopy of the entire vagina, with cervix if present; with biopsy(s) of vagina/cervix | | 7/1/2022 | $148.17 | Yes | 7/1/2022 | $82.23 | No | N/A | N/A | 1 | 1 |
| 57423 | 57423 | Paravaginal defect repair (including repair of cystocele, if performed), laparoscopic approach | | 7/1/2022 | $780.14 | No | 4/1/2021 | $3,293.10 | No | N/A | N/A | 1 | 1 |
| 57425 | 57425 | Laparoscopy, surgical, colpopexy (suspension of vaginal apex) | | 7/1/2022 | $817.85 | No | 7/1/2022 | $3,359.16 | No | N/A | N/A | 1 | 1 |
| 57426 | 57426 | Revision (including removal) of prosthetic vaginal graft, laparoscopic approach | | 7/1/2022 | $732.58 | No | 7/1/2022 | $2,459.20 | No | N/A | N/A | 1 | 1 |
| 57452 | 57452 | Colposcopy of the cervix including upper/adjacent vagina; | | 7/1/2022 | $105.82 | Yes | 7/1/2022 | $61.30 | No | N/A | N/A | 1 | 1 |
| 57454 | 57454 | Colposcopy of the cervix including upper/adjacent vagina; with biopsy(s) of the cervix and endocervical curettage | | 7/1/2022 | $141.81 | Yes | 7/1/2022 | $70.27 | No | N/A | N/A | 1 | 1 |
| 57455 | 57455 | Colposcopy of the cervix including upper/adjacent vagina; with biopsy(s) of the cervix | | 7/1/2022 | $135.23 | Yes | 7/1/2022 | $75.65 | No | N/A | N/A | 1 | 1 |
| 57456 | 57456 | Colposcopy of the cervix including upper/adjacent vagina; with endocervical curettage | | 7/1/2022 | $126.94 | Yes | 7/1/2022 | $71.77 | No | N/A | N/A | 1 | 1 |
| 57460 | 57460 | Colposcopy of the cervix including upper/adjacent vagina; with loop electrode biopsy(s) of the cervix | | 7/1/2022 | $265.92 | Yes | 7/1/2022 | $188.39 | No | N/A | N/A | 1 | 1 |
| 57461 | 57461 | Colposcopy of the cervix including upper/adjacent vagina; with loop electrode conization of the cervix | | 7/1/2022 | $296.82 | Yes | 7/1/2022 | $200.05 | No | N/A | N/A | 1 | 1 |
| 57500 | 57500 | Biopsy of cervix, single or multiple, or local excision of lesion, with or without fulguration (separate procedure) | | 7/1/2022 | $130.10 | Yes | 7/1/2022 | $98.68 | No | N/A | N/A | 1 | 1 |
| 57505 | 57505 | Endocervical curettage (not done as part of a dilation and curettage) | | 7/1/2022 | $130.34 | Yes | 7/1/2022 | $99.28 | No | N/A | N/A | 1 | 1 |
| 57510 | 57510 | Cautery of cervix; electro or thermal | | 7/1/2022 | $141.31 | Yes | 7/1/2022 | $85.52 | No | N/A | N/A | 1 | 1 |
| 57511 | 57511 | Cautery of cervix; cryocautery, initial or repeat | | 7/1/2022 | $168.40 | Yes | 7/1/2022 | $113.34 | No | N/A | N/A | 1 | 1 |
| 57513 | 57513 | Cautery of cervix; laser ablation | | 7/1/2022 | $173.86 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57520 | 57520 | Conization of cervix, with or without fulguration, with or without dilation and curettage, with or without repair; cold knife or laser | | 7/1/2022 | $296.07 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57522 | 57522 | Conization of cervix, with or without fulguration, with or without dilation and curettage, with or without repair; loop electrode excision | | 7/1/2022 | $254.56 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |

| INTERNAL KEY | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 57530 | 57530 | Trachelectomy (cervicectomy), amputation of cervix (separate procedure) | | 7/1/2022 | $312.95 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57531 | 57531 | Radical trachelectomy, with bilateral total pelvic lymphadenectomy and para-aortic lymph node sampling biopsy, with or without removal of tube(s), with or without removal of ovary(s) | | 7/1/2022 | $1,474.30 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57540 | 57540 | Excision of cervical stump, abdominal approach; | | 7/1/2022 | $664.66 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57545 | 57545 | Excision of cervical stump, abdominal approach; with pelvic floor repair | | 7/1/2022 | $700.16 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 57550 | 57550 | Excision of cervical stump, vaginal approach; | | 7/1/2022 | $361.99 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57555 | 57555 | Excision of cervical stump, vaginal approach; with anterior and/or posterior repair | | 7/1/2022 | $519.72 | No | 4/1/2021 | $1,617.58 | No | N/A | N/A | 1 | 1 |
| 57556 | 57556 | Excision of cervical stump, vaginal approach; with repair of enterocele | | 7/1/2022 | $493.53 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 57558 | 57558 | Dilation and curettage of cervical stump | | 7/1/2022 | $132.73 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57700 | 57700 | Cerclage of uterine cervix, nonobstetrical | | 7/1/2022 | $298.86 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57720 | 57720 | Trachelorrhaphy, plastic repair of uterine cervix, vaginal approach | | 7/1/2022 | $280.71 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 57800 | 57800 | Dilation of cervical canal, instrumental (separate procedure) | | 7/1/2022 | $64.87 | Yes | 7/1/2022 | $43.06 | No | N/A | N/A | 1 | 1 |
| 58100 | 58100 | Endometrial sampling (biopsy) with or without endocervical sampling (biopsy), with or without cervical dilation, any method (separate procedure) | | 7/1/2022 | $85.62 | Yes | 7/1/2022 | $49.64 | No | N/A | N/A | 1 | 1 |
| 58110 | 58110 | Endometrial sampling (biopsy) performed in conjunction with colposcopy (List separately in addition to code for primary procedure) | | 7/1/2022 | $41.65 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 58120 | 58120 | Dilation and curettage, diagnostic and/or therapeutic (nonobstetrical) | | 7/1/2022 | $249.88 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 58140 | 58140 | Myomectomy, excision of fibroid tumor(s) of uterus, 1 to 4 intramural myoma(s) with total weight of 250 g or less and/or removal of surface myomas; abdominal approach | | 7/1/2022 | $781.61 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 58145 | 58145 | Myomectomy, excision of fibroid tumor(s) of uterus, 1 to 4 intramural myoma(s) with total weight of 250 g or less and/or removal of surface myomas; vaginal approach | | 7/1/2022 | $477.26 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 58146 | 58146 | Myomectomy, excision of fibroid tumor(s) of uterus, 5 or more intramural myomas and/or intramural myomas with total weight greater than 250 g, abdominal approach | | 7/1/2022 | $969.59 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 58150 | 58150 | Total abdominal hysterectomy (corpus and cervix), with or without removal of tube(s), with or without removal of ovary(s); | | 7/1/2022 | $846.47 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58152 | 58152 | Total abdominal hysterectomy (corpus and cervix), with or without removal of tube(s), with or without removal of ovary(s); with colpo-urethrocystopexy (eg, Marshall-Marchetti-Krantz, Burch) | | 7/1/2022 | $1,038.34 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58180 | 58180 | Supracervical abdominal hysterectomy (subtotal hysterectomy), with or without removal of tube(s), with or without removal of ovary(s) | | 7/1/2022 | $803.28 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58200 | 58200 | Total abdominal hysterectomy, including partial vaginectomy, with para-aortic and pelvic lymph node sampling, with or without removal of tube(s), with or without removal of ovary(s) | | 7/1/2022 | $1,124.62 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |

| Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 58210 | Radical abdominal hysterectomy, with bilateral total pelvic lymphadenectomy and para-aortic lymph node sampling (biopsy), with or without removal of tube(s), with or without removal of ovary(s) | | 7/1/2022 | $1,520.45 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58240 | Pelvic exenteration for gynecologic malignancy, with total abdominal hysterectomy or cervicectomy, with or without removal of tube(s), with or without removal of ovary(s), with removal of bladder and ureteral transplantations, and/or abdominoperineal rese | | 7/1/2022 | $2,453.93 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 58260 | Vaginal hysterectomy, for uterus 250 g or less; | | 7/1/2022 | $704.20 | No | 7/1/2022 | $1,649.32 | Yes | Telligen | N/A | 1 | 1 |
| 58262 | Vaginal hysterectomy, for uterus 250 g or less; with removal of tube(s), and/or ovary(s) | | 7/1/2022 | $778.32 | No | 7/1/2022 | $1,649.32 | Yes | Telligen | N/A | 1 | 1 |
| 58263 | Vaginal hysterectomy, for uterus 250 g or less; with removal of tube(s), and/or ovary(s), with repair of enterocele | | 7/1/2022 | $834.34 | No | 4/1/2021 | $1,617.58 | Yes | Telligen | N/A | 1 | 1 |
| 58267 | Vaginal hysterectomy, for uterus 250 g or less; with colpo-urethrocystopexy (Marshall-Marchetti-Krantz type, Pereyra type) with or without endoscopic control | | 7/1/2022 | $898.33 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58270 | Vaginal hysterectomy, for uterus 250 g or less; with repair of enterocele | | 7/1/2022 | $751.89 | No | 4/1/2021 | $1,617.58 | Yes | Telligen | N/A | 1 | 1 |
| 58275 | Vaginal hysterectomy, with total or partial vaginectomy; | | 7/1/2022 | $831.30 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58280 | Vaginal hysterectomy, with total or partial vaginectomy; with repair of enterocele | | 7/1/2022 | $889.74 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58285 | Vaginal hysterectomy, radical (Schauta type operation) | | 7/1/2022 | $1,186.31 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 58290 | Vaginal hysterectomy, for uterus greater than 250 g; | | 7/1/2022 | $966.33 | No | 4/1/2021 | $2,418.89 | Yes | Telligen | N/A | 1 | 1 |
| 58291 | Vaginal hysterectomy, for uterus greater than 250 g; with removal of tube(s) and/or ovary(s) | | 7/1/2022 | $1,044.41 | No | 4/1/2021 | $1,617.58 | Yes | Telligen | N/A | 1 | 1 |
| 58292 | Vaginal hysterectomy, for uterus greater than 250 g; with removal of tube(s) and/or ovary(s), with repair of enterocele | | 7/1/2022 | $1,100.69 | No | 4/1/2021 | $2,418.89 | Yes | Telligen | N/A | 1 | 1 |
| 58294 | Vaginal hysterectomy, for uterus greater than 250 g; with repair of enterocele | | 7/1/2022 | $1,022.30 | No | 4/1/2021 | $1,617.58 | Yes | Telligen | N/A | 1 | 1 |
| 58300 | Insertion of intrauterine device (IUD) | | 7/1/2008 | $59.40 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 58301 | Removal of intrauterine device (IUD) | | 7/1/2022 | $92.68 | Yes | 7/1/2022 | $55.32 | No | N/A | N/A | 1 | 1 |
| 58340 | Catheterization and introduction of saline or contrast material for saline infusion sonohysterography (SIS) or hysterosalpingography | | 7/1/2022 | $208.42 | Yes | Bundled | Bundled | No | N/A | N/A | 1 | 1 |
| 58346 | Insertion of Heyman capsules for clinical brachytherapy | | 7/1/2022 | $418.63 | No | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 58353 | Endometrial ablation, thermal, without hysteroscopic guidance | | 7/1/2022 | $798.40 | Yes | 7/1/2022 | $1,649.32 | No | N/A | N/A | 1 | 1 |
| 58356 | Endometrial cryoablation with ultrasonic guidance, including endometrial curettage, when performed | | 7/1/2022 | $1,434.36 | Yes | 7/1/2022 | $1,336.96 | No | N/A | N/A | 1 | 1 |
| 58400 | Uterine suspension, with or without shortening of round ligaments, with or without shortening of sacrouterine ligaments; (separate procedure) | | 7/1/2022 | $390.46 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 58410 | Uterine suspension, with or without shortening of round ligaments, with or without shortening of sacrouterine ligaments; with presacral sympathectomy | | 7/1/2022 | $685.13 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 58520 | Hysterorrhaphy, repair of ruptured uterus (nonobstetrical) | | 7/1/2022 | $671.24 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |

| | Procedure Code | Procedure Code Description | Required Modifier | Price Eff Date | Allowed Amount | Site of Service Reduction | ASC Price Eff Date | ASC Allowed Amount | PA Always Required | PA Reviewer | DME MUE | OPH MUE | PRA MUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 59400 | 59400 | Routine obstetric care including antepartum care, vaginal delivery (with or without episiotomy, and/or forceps) and postpartum care | | 7/1/2022 | $1,945.10 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59409 | 59409 | Vaginal delivery only (with or without episiotomy and/or forceps); | | 7/1/2022 | $649.67 | No | 4/1/2021 | $1,126.77 | No | N/A | N/A | 2 | 2 |
| 59410 | 59410 | Vaginal delivery only (with or without episiotomy and/or forceps); including postpartum care | | 7/1/2022 | $859.19 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59412 | 59412 | External cephalic version, with or without tocolysis | | 7/1/2022 | $82.13 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 2 | 2 |
| 59414 | 59414 | Delivery of placenta (separate procedure) | | 7/1/2022 | $72.50 | No | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 59425 | 59425 | Antepartum care only; 4-6 visits | | 7/1/2022 | $455.00 | Yes | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59426 | 59426 | Antepartum care only; 7 or more visits | | 7/1/2022 | $831.93 | Yes | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59430 | 59430 | Postpartum care only (separate procedure) | | 7/1/2022 | $216.19 | Yes | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59510 | 59510 | Routine obstetric care including antepartum care, cesarean delivery, and postpartum care | | 7/1/2022 | $2,133.95 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59514 | 59514 | Cesarean delivery only; | | 7/1/2022 | $729.89 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 59515 | 59515 | Cesarean delivery only; including postpartum care | | 7/1/2022 | $1,050.02 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59525 | 59525 | Subtotal or total hysterectomy after cesarean delivery (List separately in addition to code for primary procedure) | | 7/1/2022 | $385.77 | No | N/A | N/A | Yes | Telligen | N/A | 0 | 1 |
| 59610 | 59610 | Routine obstetric care including antepartum care, vaginal delivery (with or without episiotomy, and/or forceps) and postpartum care, after previous cesarean delivery | | 7/1/2022 | $2,019.32 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59612 | 59612 | Vaginal delivery only, after previous cesarean delivery (with or without episiotomy and/or forceps); | | 7/1/2022 | $727.07 | No | 4/1/2021 | $1,126.77 | No | N/A | N/A | 2 | 2 |
| 59614 | 59614 | Vaginal delivery only, after previous cesarean delivery (with or without episiotomy and/or forceps); including postpartum care | | 7/1/2022 | $919.41 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59618 | 59618 | Routine obstetric care including antepartum care, cesarean delivery, and postpartum care, following attempted vaginal delivery after previous cesarean delivery | | 7/1/2022 | $2,154.89 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59620 | 59620 | Cesarean delivery only, following attempted vaginal delivery after previous cesarean delivery; | | 7/1/2022 | $752.90 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 59622 | 59622 | Cesarean delivery only, following attempted vaginal delivery after previous cesarean delivery; including postpartum care | | 7/1/2022 | $1,088.80 | No | N/A | N/A | No | N/A | N/A | 1 | 1 |
| 59812 | 59812 | Treatment of incomplete abortion, any trimester, completed surgically | | 7/1/2022 | $296.78 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 59820 | 59820 | Treatment of missed abortion, completed surgically; first trimester | | 7/1/2022 | $359.01 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 59821 | 59821 | Treatment of missed abortion, completed surgically; second trimester | | 7/1/2022 | $353.48 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 59830 | 59830 | Treatment of septic abortion, completed surgically | | 7/1/2022 | $376.82 | Yes | N/A | N/A | No | N/A | N/A | 0 | 1 |
| 59840 | 59840 | Induced abortion, by dilation and curettage | | 7/1/2022 | $204.16 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 59841 | 59841 | Induced abortion, by dilation and evacuation | | 7/1/2022 | $348.14 | Yes | 7/1/2022 | $1,148.72 | No | N/A | N/A | 1 | 1 |
| 59850 | 59850 | Induced abortion, by 1 or more intra-amniotic injections (amniocentesis-injections), including hospital admission and visits, delivery of fetus and secundines; | | 7/1/2022 | $316.56 | No | N/A | N/A | No | N/A | N/A | 0 | 1 |