RAÚL R. LABRADOR
ATTORNEY GENERAL

Joan E. Callahan    [ISB No. 9241]
SPECIAL DEPUTY ATTORNEY GENERAL

Tyler D. Williams    [ISB No. 8512]
NAYLOR & HALES, P.C.
Attorneys at Law
950 W. Bannock Street, Ste. 610
Boise, Idaho 83702
Telephone No. (208) 383-9511
Facsimile No. (208) 383-9516
Email: joan@naylorhales.com; tdw@naylorhales.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MH and TB, individually,<br><br>        Plaintiffs,<br><br>vs.<br><br>DAVE JEPPESEN, in his official capacity as the Director of the Idaho Department of Health and Welfare; DR. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE.<br><br>        Defendants. | Case No. 1:22-cv-00409-REP<br><br>**REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS [Dkt. 19]** |

Defendants submit this Reply Memorandum in Support of Defendants' Motion to Dismiss.

**A.    Lack of identity among classifications defeats the Equal Protection Claim.**

Primarily, Plaintiffs' arguments attempt to manipulate the groupings that are created by the alleged exclusion for genital reconstruction surgery for the treatment of gender dysphoria under the Idaho Medicaid Program administered the Idaho Department of Health and Welfare (IDHW).

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 1.**

However, no matter from what angle the groupings are viewed, transgender individuals are on both sides of the alleged exclusion. Thus, the Equal Protection claim cannot stand.

Both parties rely on *Geduldig v. Aiello*, 417 U.S. 484 (1974). A key principle from the *Geduldig* analysis of the operation of the Equal Protection Clause in the terms of a social welfare insurance program was the lack of identity between the two groups at issue. The two groups in that program were those who were pregnant and those who were not pregnant. 417 U.S. at 496 n.20. A close reading of the facts shows an even more refined grouping of those with uncomplicated pregnancies who were excluded from coverage and those with complicated pregnancies who were covered. *Id*. at 490. Ultimately, women were in both groups. *Id*. at 496 & n.20. Thus, there was no gender-based discrimination because of the lack of identity between the exclusion group and the coverage group despite that the exclusion group only consisted of women with uncomplicated pregnancy. *Id*. The Court's conclusion was that an Equal Protection claim did not exist when a plaintiff "has received insurance protection equivalent to that provided all other participating [persons]" but "encountered a risk that was outside the program's protection." *Id*. at 497.

Plaintiffs cite to district court cases that attempted to reason around *Geduldig*'s holding. For instance, in *Fain v. Crouch*, the district court held that the exclusion applied to a specific treatment connected to a person's sex and gender-identity, and therefore was discriminatory. 2022 WL 3051015 at *16 (S.D.W. Va. Aug. 2, 2022). But, *Fain* (and the cases on which it relies) disregard *Geduldig* as controlling precedent and do not address its point that the Equal Protection claim failed despite that only women were pregnant and solely comprised the group excluded from coverage. *Id*. Simply, those courts found a distinction without real meaning.

Although some district courts have circumvented *Geduldig*'s controlling holding, other courts faithfully applied the Court's analysis and found a lack of identity is dispositive and

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 2.**

dismissed sex discrimination claims under the Equal Protection Clause when transgender people are part of both groups under a policy. For instance, a district court found no unconstitutional discrimination where an insurance program excluded genital reconstruction surgery from medically necessary care because transgender individuals were in both groups – those seeking the surgery and those who not seeking the surgery. *Lange v. Houston County, Georgia*, 2022 WL 1812306 at *8 (M.D. Georgia June 2, 2022). Thus, there was a lack of identity between the policy exclusion and being transgender. Similarly, the Eleventh Circuit very recently concluded that a bathroom policy did not classify students based on transgender status despite that the policy was based on biological sex because both groups (biological males and biological females) contained transgender students and "the bathroom options are equivalent to those provided to all students of the same biological sex." *Adams by and through Kasper v. School Board of St. Johns County*, 2022 WL 18003879 *11 (11th Cir. December 30, 2022) (cleaned up) (quoting *Geduldig*, 417 U.S. at 496-97 & n.20.) Again, the lack of identity between the groups and the challenged discrimination was fatal to the Equal Protection claim. *Id*. In short, under controlling law, a sex-based Equal Protection claim fails when a policy creates two groups and people sharing the plaintiff's identified status fall into both groups.

Here, Idaho's Medicaid program allegedly excludes genital reconstruction surgery to treat gender dysphoria for transgender individuals. However, transgender individuals receive the same surgeries for the same conditions as cisgender individuals. Conversely, there is no allegation that cisgender people are covered for conditions and surgeries for which transgender people are excluded. Thus, transgender participants receive the same coverage for the same conditions as all other Medicaid participants; Plaintiffs receive equivalent insurance protection to all others.

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 3.**

Notably, not all transgender people require or request genital reconstruction surgery to transition and treat gender dysphoria. Rather, there is a continuum and variety of components to transitioning; transition is particular to each individual. (Dkt. 1 at 10-11, ¶¶ 45-46, 49, 52-53.) Thus, transgender people and people with gender dysphoria fall into both groups, those requesting prior authorization for genital reconstruction surgery and those who are not. As noted by Defendants and not disputed by Plaintiffs, gender dysphoria is not excluded from all coverage under Idaho's Medicaid program. Thus, regardless of whether people are grouped by gender identity or by condition, both the covered group and alleged excluded group contain people who are transgender and people with gender dysphoria. Again, there is a lack of identity between the policy and the alleged status.

Further, Plaintiffs do not allege that cisgender individuals receive surgical intervention for medical conditions that are similarly classified to gender dysphoria. Currently, as alleged by Plaintiffs, gender dysphoria is clinically classified as a mental disorder in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Plaintiffs do not identify another similar condition that is covered by Idaho's Medicaid Program. Thus, at the most finite grouping under the current circumstances, the Complaint does not allege that there is discrimination in coverage between what is alleged to be excluded and what is covered.

Just as there were female pregnant people and female non-pregnant people in the groups in the *Geduldig* case, in this case there are transgender people who have transitioned without surgery and transgender people who have not transitioned without surgery. (*See* Dkt 1 at 10, ¶¶ 45-46, 49.) Ultimately, transgender individuals, individuals with gender dysphoria, and those with gender dysphoria that have not been adequately addressed with other treatment or components of transitioning fall into both groups of those allegedly excluded and those covered. Also, transgender

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 4.**

individuals have medical conditions that fall into both groups of treatments, treatments that are covered and those that are not. In short, no matter how the groupings are viewed there is a lack of discriminatory identity between the groups that are covered and allegedly excluded.

Ultimately, the fact that the alleged exclusion group is comprised of a subset of transgender people does not constitute sex discrimination simply because the Plaintiffs encountered a circumstance that was outside the program's coverage. *Geduldig*, 417 U.S. at 497. Thus, even taking the Complaint's allegations as true, Idaho's Medicaid program "does not exclude anyone from benefit eligibility because of gender but merely removes one [treatment for one medical] condition – [genital confirmation surgery for uneliminated gender dysphoria] – from the list of compensable [treatments]." *Id.* at 496 n.20. Hence, the allegations in the Complaint do not support a sex discrimination claim under the Equal Protection Clause. The claim must be dismissed.

**B.     Dr. Hamso is Entitled to Qualified Immunity**

As previously argued, Dr. Hamso is entitled to qualified immunity because the law surrounding the constitutional rights of transgender individuals under the Fourteenth Amendment was not (and still is not) clearly established. It would thus be error to subject Dr. Hamso to personal liability under the circumstances of this case, especially where the applicable law concerning transgender rights is indisputably in a state of flux and hotly disputed nationwide. Plaintiffs' arguments to the contrary are meritless. The present case is precisely the type of situation where qualified immunity applies. Dr. Hamso must therefore be dismissed.

   **1.  Plaintiffs failed to show that the law was clearly established under the equal protection clause**

Plaintiffs are generally correct that qualified immunity does not require a case directly on point and there may be cases where a violation is obvious. However, their arguments gloss over essential principles of qualified immunity jurisprudence. The Supreme Court has repeatedly

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 5.**

instructed lower courts not to define the right at issue "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017). Indeed, "the clearly established law must be <u>particularized to the facts of the case</u>" and the constitutional question must be "<u>beyond debate</u>." *Id.* (emphasis added).

More so, clearly established law should generally be identified by reference to decisions of the Supreme Court. *See Taylor v. Barkes*, 575 U.S. 822, 826 (2015) (granting qualifying immunity because no decision of the Supreme Court established the right at issue). It is unresolved whether appellate decisions can qualify as clearly established law, but for the sake of argument, even to the extent they can it must be based on a "<u>robust consensus</u>" of the circuits. *Id.* (emphasis added); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 217 (2015).

In the present case these principles mean that Plaintiffs must show that there is a Supreme Court decision where an official acting under similar circumstances as Dr. Hamso was held to have violated the Equal Protection Clause. Absent such a case, they must at least show that there is a robust consensus of circuit decisions clearly establishing their asserted rights under similar circumstances. In either case, the constitutional question must be beyond debate. Plaintiffs have failed to make this showing.

Instead, Plaintiffs primarily rely on *Bostock v. Clayton County, Georgia* for the general proposition that sex discrimination includes discrimination based on gender identity. *Bostock*, however, cannot qualify as clearly established law under the present circumstances because it was explicitly limited to Title VII cases. In that case, the Supreme Court held that sex discrimination under Title VII includes gender identity and sexual orientation. In addressing the employers' concerns about the scope of the decision into other areas of law that prohibit sex discrimination, the majority stated directly:

> . . . none of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and <u>we do not prejudge any</u>

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 6.**

> such question today. Under Title VII too, we do not purport to address bathrooms, locker rooms, or anything else of the kind. The only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual "because of such individual's sex. . . . Whether other policies and practices might or might not qualify as unlawful discrimination or find justifications under other provisions of Title VII are questions for future cases, not these.

*Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731, 1753 (2020) (emphasis added); *see also id.* at 1778-1784 (J. Alito dissenting and in so doing reiterating that the majority's decision did not resolve disputes in other areas of law, including Equal Protection and health care). For Plaintiffs to rely on *Bostock* as clearly establishing <u>any</u> transgender rights under the Equal Protection Clause, let alone transgender rights related to complex healthcare and public insurance issues under the particularized facts of the present case, is thus plainly contrary to *Bostock's* explicit limitation that it only applies to Title VII.

Plaintiffs also incorrectly rely on a series of string cites to district and appellate court decisions from Idaho and other jurisdictions that purportedly clearly establish their rights. (*See* Dkt. 27 at 20-23.) Under Supreme Court precedent, however, district court decisions cannot qualify as clearly established law. *Taylor*, 575 U.S. at 826; *Sheehan*, 575 U.S. at 217. For the sake of argument, even if appellate court decisions can so qualify (which is still an open question), there is certainly not a robust consensus among the circuits.

Plaintiffs cite to cases from the Fourth and Seventh Circuits dealing with transgender rights in relation to bathroom policies to support their argument that their rights are clearly established in the present case. (Dkt. 27 at 22) (citing *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607-608 (4th Cir. 2020) and *Whitaker v. Kenosha Unified Sch. Dist. No. 1,* 858 F.3d 1034, 1051 (7th Cir. 2017). A mere two circuits resolving bathroom policy issues hardly represents a robust consensus of the circuits on the unique Medicaid program issues faced by Dr. Hamso.

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 7.**

More so, Plaintiffs incorrectly rely on case law from the Eleventh Circuit to support their position. (Dkt. 27 at 22) (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316-1317 (11th Cir. 2011)). In fact, the Eleventh Circuit now stands in stark contrast to their position. In *Adams, supra,* the Eleventh Circuit *en banc* panel held that the bathroom policy at issue (like challenged policies in the Fourth and Seventh Circuits) did <u>not</u> violate the Equal Protection Clause (or Title IX). As such, a two-to-one circuit-split exists on the bathroom issue under the Equal Protection Clause. The remaining nine circuits have not resolved this issue. A circuit-split is plainly the exact opposite of a robust consensus. Plaintiffs therefore simply cannot identify clearly established law by reference to the bathroom cases.

In sum, Plaintiffs cannot reasonably assert that this constitutional question is clearly established beyond debate. No Supreme Court decision has yet held in favor of transgender individuals in remotely similar circumstances. Nor is there a robust consensus of the circuits. At best there is a circuit-split on dissimilar bathroom policy issues in public schools. The rights of transgender individuals under state social welfare programs will likely be addressed by the circuits and the Supreme Court at some point.[1] But until then, the law remains uncertain. Accordingly, Dr. Hamso is entitled to qualified immunity.

2. **Plaintiffs failed to show that the law governing property rights was clearly established under the due process clause**

Plaintiffs do not offer any substantive argument or points or authorities to establish that they have a constitutionally protected interest at stake. This is the fundamental and threshold

---

[1] Of note, according to one national survey, as of July 1, 2021, 23 of the 41 responding states provide Medicaid coverage for gender-affirming surgery of some kind. Nine (9) do not. An additional nine do not currently explicitly address the issue. It is unknown what the remaining nine states provide or not. *See* Update on Medicaid Coverage of Gender-Affirming Health Services, at https://www.kff.org/womens-health-policy/issue-brief/update-on-medicaid-coverage-of-gender-affirming-health-services/ (last visited January 30, 2023). There will thus undoubtedly be significant opportunity for the appellate courts and Supreme Court to resolve this issue.

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 8.**

question in any due process claim. *Nozzi v. Hous. Auth. of L.A.,* 806 F.3d 1178, 1190-1191 (9th Cir. 2015). The Fourteenth Amendment of the U.S. Constitution provides in relevant part that the state may not "<u>deprive any person of . . . property</u>, without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added). Thus, Plaintiffs are simply incorrect that "due process rights exist independently of whether Medicaid must pay for the procedures." (Dkt. 27 at 18.) Plaintiffs alleged deprivation is their asserted right to have Medicaid pay for the requested surgery[2] and that it was done without adequate procedural safeguards, namely inadequate notice (*id*. at. 19-21) and failure to provide a fair hearing process because of the pendency of final decisions (*id*. at 21-24). Questions about notice and the decision-making process are moot unless Plaintiffs *first* establish the deprivation of a protected right (the coverage of the procedures), and more specifically for qualified immunity, that the alleged right to coverage was clearly established and beyond debate.

However, they fail to do so. The entirety of Plaintiffs' argument is a cursory and conclusory four-line paragraph merely stating that "MH and TB have a 'legitimate claim of entitlement' for genital reconstruction surgery" and that "Medicaid's standards" "contain objective criteria that greatly restrict the discretion of IDHW." (Dkt. 27 at 19.) Plaintiffs do not cite to any federal law, federal regulation, or implementing state law, state regulation, state policy or practice, or case law from the U.S. Supreme Court or even appellate or district courts. They simply make a wholly unsupported conclusion. Thus, they fail to show the existence of a protect property right to genital reconstruction surgery for gender dysphoria, and most significantly, that any such alleged right was clearly established and placed beyond debate.

---

[2] The Complaint admits that Plaintiffs have been receiving Medicaid benefits for treatment of gender dysphoria. (Dkt. 1 at 20, 22, 29, ¶¶ 106-108, 110, 123, 167.) Also as alleged by Plaintiffs, MH was told that she had Medicaid, but IDHW was determining whether the surgery was part of Medicaid benefits. (Dkt. 27 at 22, citing Dkt. 1, Exh. 10.)

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 9.**

Rather, the laws and policies at issue are less than clear. As the Ninth Circuit has held "[a] person's belief of entitlement to a government benefit, no matter how sincerely or reasonably held, does not create a property right if that belief is not mutually held by the government." *Gerhart v. Lake County*, 637 F.3d 1013, 1020 (9th Cir. 2011). Thus, Plaintiffs' beliefs, their parents' beliefs, or their doctor's opinion do not create a constitutionally protected right.

Further, a property right cannot be established unless the implementing regulations "greatly restrict the discretion" of the administrator. *Nozzi v. Hous. Auth. of L.A.,* 806 F.3d 1178, 1191 (9th Cir. 2015). Here, specific to the Medicaid Act, the U.S. Supreme Court has found that states have "broad discretion" in determining the extent of medically necessary services that are covered. *Beal v. Doe*, 432 U.S. 438, 444 (1977). It further noted the only parameters are that the states' standards are "reasonable" and "consistent with the objectives of the Act." *Id*. Thus, it cannot be said that Idaho's discretion has been greatly restricted in determining whether genital reconstruction surgery for gender dysphoria is covered under Idaho's Medicaid program, or moreover, that any such legal question has been foreclosed and beyond debate.

In fact, as noted there is no uniformity among the states[3] on this and related questions; legal cases are currently in progress and on appeal (*e.g. Fain*, 2022 WL 3051015, appeal filed September 6, 2022)). Thus, Plaintiffs have not shown under existing precedent that every reasonable official would have understood genital reconstruction surgery for gender dysphoria, which is currently clinically classified as a mental disorder in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), is required to be covered by Medicaid as implemented under Idaho's standards.

---

[3] *See* Footnote 1.

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 10.**

Ultimately, this is precisely why qualified immunity exists and shields Dr. Hamso from civil liability on the procedural due process claim. *See Boyden v. Conlin*, 341 F. Supp. 3d 979, 1005 (W.D. Wis. 2018) (granting qualified immunity on a Fourteenth Amendment claim for the exclusion of treatment for gender dysphoria from private insurance coverage for public employees finding "given the rapid development of the law in this area, the court declines to find that the "the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates the right.") In sum, the Plaintiffs failed to substantively argue and demonstrate the existence of a clearly established constitutionally protected right for the coverage of genital reconstruction surgery for gender dysphoria under Idaho's Medicaid program. Therefore, Dr. Hamso is entitled to qualified immunity on the Due Process Claim (Fourth Claim for Relief).

    **3.**    **Qualified Immunity under the Medicaid Act is moot.**

Finally, Dr. Hamso is entitled to a qualified immunity defense on the "availability" provision of the Medicaid Act (42 U.S.C. § 1396a(a)(10(A)). However, Plaintiffs have conceded that civil damages are not available under the Medicaid Aid. (Dkt. 27 at 11-12.) Accordingly, Defendant Hamso agrees that the argument is now moot. (*Id.*, p. 24 FN 13.)

## CONCLUSION

For the reasons set forth in the opening brief and herein, the Defendants respectfully request that the Court grant their partial motion to dismiss.

DATED this 3rd day of February, 2023.

                                    NAYLOR & HALES, P.C.

                                    By: */s/ Joan E. Callahan*
                                          JOAN E. CALLAHAN, Of the Firm
                                          Attorneys for Defendants

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 11.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of February, 2023, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following person(s):

| | |
|---|---|
| Howard A. Belodoff<br>Martin C. Hendrickson<br>*Attorneys for Plaintiffs* | ■ E-File/E-Serve<br>howardbelodoff@idaholegalaid.org<br>martinhendreickson@idaholegalaid.org |

*/s/ Joan E. Callahan*
JOAN E. CALLAHAN

12150_03 Reply Memo re Motion to Dismiss FINAL

**REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 19] - 12.**