Howard A. Belodoff, ISB # 2290
Idaho Legal Aid Services, Inc.
1447 S. Tyrell Lane
Boise, ID 83706
Tel: (208) 807-2496 Fax: (208) 342-2561
howardbelodoff@idaholegalaid.org

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MH and TB, individually,<br><br>  Plaintiffs,<br><br>vs.<br><br>DAVE JEPPESEN, in his official capacity as the Director of the Idaho Department of Health and Welfare; Dr. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>  Defendants. | CASE NO. 1:22-CV-409-REP<br><br>PLAINTIFFS' NOTICE OF SUPPLEMENTAL INFORMATION |

Plaintiffs file this notice of supplemental information in response to the Notice of Supplemental Information and letter from Idaho Governor Brad Little, dated May 1, 2023, "[b]ecause the matter of state policy was previously addressed in each party's briefing on Defendants' Motion to Dismiss." Dkt 33. The Governor's letter states Idaho's policy on Medicaid coverage for Idahoans who identify as transgender and request gender-confirming surgery and all other medically necessary treatments for gender dysphoria. The policy directs Defendant Jeppesen to "oppose Idaho Medicaid using public funds to pay for irreversible sex reassignment surgeries, puberty blockers, or hormones for the purpose of changing the appearance of any child's or adult's sex." Dkt 33-1.

PLAINTIFFS' NOTICE OF SUPPLEMENTAL INFORMATION – Page 1

Attached, as Exhibit 1, is Executive Order 13988, signed by Joseph R. Biden Jr., 46th President of the United States, on January 20, 2021, stating, in part, "People should be able to access health care . . . without being subject to sex discrimination. All persons should receive equal treatment under law, no matter their gender identity or sexual orientation. These principles are reflected in the Constitution, which promises equal protection of the laws."

Also attached is Exhibit 2, a Memorandum of the United States Department of Justice, dated March 26, 2021, from the Principal Deputy Assistant Attorney General, Pamela S. Karlan, Civil Rights Division, on the Application of *Bostock v. Clayton* to Title IX and the Court decisions previously addressed in Plaintiffs' briefing on Defendants' Motion to Dismiss. Additionally attached is Exhibit 3, which is Title 42 U.S.C. § 18116. Nondiscrimination, effective March 23, 2010.

Plaintiffs request the Court take judicial notice of these Exhibits as public records under Federal Rule of Evidence 201.

DATED: May 2, 2023.

        IDAHO LEGAL AID SERVICES, INC.

        /s/ Howard A. Belodoff
        Howard A. Belodoff

        Attorney for Plaintiffs

4/24/23, 10:40 AM                   Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation | The White ...

Case 1:22-cv-00409-REP   Document 34   Filed 05/02/23   Page 3 of 9

JANUARY 20, 2021

# Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

**Section 1. Policy.** Every person should be treated with respect and dignity and should be able to live without fear, no matter who they are or whom they love. Children should be able to learn without worrying about whether they will be denied access to the restroom, the locker room, or school sports. Adults should be able to earn a living and pursue a vocation knowing that they will not be fired, demoted, or mistreated because of whom they go home to or because how they dress does not conform to sex-based stereotypes. People should be able to access healthcare and secure a roof over their heads without being subjected to sex discrimination. All persons should receive equal treatment under the law, no matter their gender identity or sexual orientation.

These principles are reflected in the Constitution, which promises equal protection of the laws. These principles are also enshrined in our Nation's anti-discrimination laws, among them Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e *et seq.*). In *Bostock v. Clayton County*, 590 U.S. __ (2020), the Supreme Court held that Title VII's prohibition on discrimination "because of . . . sex" covers discrimination on the basis of gender identity and sexual orientation. Under *Bostock*'s reasoning, laws that prohibit sex discrimination — including Title IX of the Education Amendments of 1972, as amended (20 U.S.C. 1681 *et seq.*), the Fair Housing Act, as amended (42 U.S.C. 3601 *et seq.*), and section 412 of the Immigration and Nationality Act, as amended (8 U.S.C. 1522), along with their respective implementing regulations — prohibit discrimination on the basis of gender identity or sexual orientation, so long as the laws do not contain sufficient indications to the contrary.

Discrimination on the basis of gender identity or sexual orientation manifests differently for different individuals, and it often overlaps with other forms of prohibited discrimination, including discrimination on the basis of race or disability. For example, transgender Black



Americans face unconscionably high levels of workplace discrimination, homelessness, and violence, including fatal violence.

It is the policy of my Administration to prevent and combat discrimination on the basis of gender identity or sexual orientation, and to fully enforce Title VII and other laws that prohibit discrimination on the basis of gender identity or sexual orientation. It is also the policy of my Administration to address overlapping forms of discrimination.

**Sec. 2. Enforcing Prohibitions on Sex Discrimination on the Basis of Gender Identity or Sexual Orientation.** (a) The head of each agency shall, as soon as practicable and in consultation with the Attorney General, as appropriate, review all existing orders, regulations, guidance documents, policies, programs, or other agency actions ("agency actions") that:

(i) were promulgated or are administered by the agency under Title VII or any other statute or regulation that prohibits sex discrimination, including any that relate to the agency's own compliance with such statutes or regulations; and

(ii) are or may be inconsistent with the policy set forth in section 1 of this order.

(b) The head of each agency shall, as soon as practicable and as appropriate and consistent with applicable law, including the Administrative Procedure Act (5 U.S.C. 551 *et seq.*), consider whether to revise, suspend, or rescind such agency actions, or promulgate new agency actions, as necessary to fully implement statutes that prohibit sex discrimination and the policy set forth in section 1 of this order.

(c) The head of each agency shall, as soon as practicable, also consider whether there are additional actions that the agency should take to ensure that it is fully implementing the policy set forth in section 1 of this order. If an agency takes an action described in this subsection or subsection (b) of this section, it shall seek to ensure that it is accounting for, and taking appropriate steps to combat, overlapping forms of discrimination, such as discrimination on the basis of race or disability.

(d) Within 100 days of the date of this order, the head of each agency shall develop, in consultation with the Attorney General, as appropriate, a plan to carry out actions that the agency has identified pursuant to subsections (b) and (c) of this section, as appropriate and consistent with applicable law.

**Sec. 3. Definition.** "Agency" means any authority of the United States that is an "agency" under 44 U.S.C. 3502(1), other than those considered to be independent regulatory agencies, as defined in 44 U.S.C. 3502(5).

4/24/23, 10:40 AM  Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation | The White ...

Case 1:22-cv-00409-REP  Document 34  Filed 05/02/23  Page 5 of 9

**Sec. 4. General Provisions.** (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

JOSEPH R. BIDEN JR.

THE WHITE HOUSE,
January 20, 2021.

**U.S. Department of Justice**

Civil Rights Division

*Principal Deputy Assistant Attorney General*
*950 Pennsylvania Ave, NW - RFK*
*Washington, DC 20530*

**MEMORANDUM**                                              March 26, 2021

**TO:**         Federal Agency Civil Rights Directors and General Counsels

**FROM:**    Principal Deputy Assistant Attorney General Pamela S. Karlan
             Civil Rights Division

**SUBJECT:**  Application of *Bostock v. Clayton County* to Title IX of the Education
             Amendments of 1972

---

Several federal agencies have recently contacted the Civil Rights Division with questions regarding the application of the Supreme Court's reasoning in *Bostock v. Clayton County*, 140 S. Ct. 1731, 590 U.S. ___ (2020), to Title IX of the Education Amendments of 1972, as amended (20 U.S.C. § 1681 *et seq.*) (Title IX), particularly in light of Executive Order 13988, *Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation*, 86 Fed. Reg. 7023 (Jan. 25, 2021). The Department of Justice is charged with coordination of the implementation and enforcement of Title IX by Executive agencies. Exec. Order No. 12250, § 1-2, 45 Fed. Reg. 72,995 (Nov. 4, 1980). Under the Executive Order 12250 authority delegated to the Civil Rights Division, 28 C.F.R. § 0.51(a) (1981) and 28 C.F.R. § 42.412(a) (1981), I write to share the Division's view as to whether *Bostock* applies to Title IX.

Executive Order 13988 sets out the Administration's policy that "[a]ll persons should receive equal treatment under the law, no matter their gender identity or sexual orientation." Citing the Supreme Court's holding in *Bostock* that the prohibition on discrimination "because of . . . sex" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII), covers discrimination on the basis of gender identity and sexual orientation, the Executive Order explains that *Bostock*'s reasoning applies with equal force to other laws that prohibit sex discrimination "so long as the laws do not contain sufficient indications to the contrary." The Executive Order directs agencies to review other laws that prohibit sex discrimination, including Title IX, to determine whether they prohibit discrimination on the basis of gender identity and sexual orientation. We conclude that Title IX does.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Because their statutory prohibitions against sex discrimination are similar, the Supreme Court and other federal courts consistently look to interpretations of Title VII to inform Title IX. *See, e.g., Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007); *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001). Thus, *Bostock's* discussion of the text of Title VII informs the Division's analysis of the text of Title IX.

**EXHIBIT 2**

First, like Title VII, Title IX applies to sex discrimination against individuals. The *Bostock* Court focused on this feature of Title VII in reaching its holding. *Bostock*, 140 S. Ct. at 1740–41 ("[The statute] tells us three times—including immediately after the words "discriminate against"—that our focus should be on individuals"). Similarly, Title IX focuses on individuals when it uses the term "person." *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979) (stating that, in enacting Title IX, Congress "wanted to provide *individual citizens* effective protection against those [discriminatory] practices" (emphasis added)).

Second, Title IX's "on the basis of sex" language is sufficiently similar to "because of" sex under Title VII as to be considered interchangeable. In *Bostock* itself, the Supreme Court described Title VII's language that way: "[I]n Title VII, Congress outlawed discrimination in the workplace *on the basis of* race, color, religion, sex, or national origin." *Bostock*, 140 S. Ct. at 1737 (emphasis added); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) ("[W]hen a supervisor sexually harasses a subordinate *because of* the subordinate's sex, that supervisor 'discriminate[s]' *on the basis of* sex." (emphasis added)). The *Bostock* Court concluded that Title VII's prohibition of discrimination "because of" sex includes discrimination because of sexual orientation and transgender status, finding that when an employer discriminates against employees for being gay or transgender, "the employer must intentionally discriminate against individual men and women in part because of sex." *Bostock*, 140 S. Ct. at 1740–43. The same reasoning supports the interpretation that Title IX's prohibition of discrimination "on the basis of" sex would prohibit recipients from discriminating against an individual based on that person's sexual orientation or transgender status. This interpretation of Title IX is consistent with the Supreme Court's longstanding directive that "if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language." *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982) (citations and internal alterations omitted).

In the months following the *Bostock* decision, two appellate courts have reached the same conclusion, citing *Bostock* to support their holdings that Title IX protects transgender students from discrimination on the basis of gender identity. *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020), *as amended* (Aug. 28, 2020), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *petition for cert. filed*, No. 20-1163 (Feb. 24, 2021); *Adams v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286, 1305 (11th Cir. 2020), *petition for reh'g en banc pending*, No. 18-13592 (Aug. 28, 2020). Other circuits reached this conclusion before *Bostock*. *See Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1049–50 (7th Cir. 2017) (transgender boy was likely to succeed on his claim that school district violated Title IX by excluding him from the boys' restroom); *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221–22 (6th Cir. 2016) (per curiam) (school district that sought to exclude transgender girl from girls' restroom was not likely to succeed on the claim because Title IX prohibits discrimination based on sex stereotyping and gender nonconformity).

After considering the text of Title IX, Supreme Court caselaw, and developing jurisprudence in this area, the Division has determined that the best reading of Title IX's prohibition on discrimination "on the basis of sex" is that it includes discrimination on the basis of gender identity and sexual orientation. Before reaching this conclusion, the Division considered whether Title IX "contain[s] sufficient indications" that would merit a contrary conclusion. The Division carefully considered, among other things, the dissenting opinions in

2

*Gloucester* and *Adams*, and the concerns raised in the dissents in *Bostock*. Like the majority opinions in those cases, however, the Division ultimately found nothing persuasive in the statutory text, legislative history, or caselaw to justify a departure from *Bostock*'s textual analysis and the Supreme Court's longstanding directive to interpret Title IX's text broadly. Whether allegations of sex discrimination, including allegations of sexual orientation or gender identity discrimination, constitute a violation of Title IX in any given case will necessarily turn on the specific facts, and therefore this statement does not prescribe any particular outcome with regard to enforcement.

I hope this memorandum provides a starting point for your agencies to ensure the consistent and robust enforcement of Title IX, in furtherance of the commitment that every person should be treated with respect and dignity. The Civil Rights Division is available to answer any questions your agencies have as you implement Title IX's protections against sexual orientation and gender identity discrimination.

KeyCite Yellow Flag - Negative Treatment
Unconstitutional or Preempted Negative Treatment Reconsidered by Florida ex rel. Atty. Gen. v. U.S. Dept. of Health and Human Services, 11th Cir.(Fla.), Aug. 12, 2011

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 157. Quality Affordable Health Care for All Americans
      Subchapter VI. Miscellaneous Provisions

42 U.S.C.A. § 18116

§ 18116. Nondiscrimination

Effective: March 23, 2010

Currentness

**(a) In general**

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

**(b) Continued application of laws**

Nothing in this title (or an amendment made by this title) shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals aggrieved under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), section 794 of Title 29, or the Age Discrimination Act of 1975, or to supersede State laws that provide additional protections against discrimination on any basis described in subsection (a).

**(c) Regulations**

The Secretary may promulgate regulations to implement this section.

**EXHIBIT 3**