Howard A. Belodoff, ISB # 2290
Idaho Legal Aid Services, Inc.
1447 S. Tyrell Lane
Boise, ID 83706
Tel: (208) 807-2496 Fax: (208) 342-2561
howardbelodoff@idaholegalaid.org

Jane Gordon, ISB # 9243
Jane Gordon Law
1004 West Fort Street
Boise ID 83702
Tel: (208) 391-4747; Fax: (208) 807-2290
Jane@JaneGordonLaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MH and TB, individually,<br><br>    Plaintiffs,<br><br>    vs.<br><br>DAVE JEPPESEN, in his official capacity as the Director of the Idaho Department of Health and Welfare; Dr. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>    Defendants. | CASE NO. 1:22-CV-409-REP<br><br>RESPONSE TO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY PENDING APPEAL [DKT 50] |

**TABLE OF CONTENTS**

Page

I. THE STANDARDS FOR APPLYING THE MANDATORY REQUIREMENTS FOR CERTIFYING AN INTERLOCUTORY APPEAL UNDER 18 U.S.C. § 1292(b) ..................4

    1. The Order does not involve a controlling question of the law or a substantial ground for difference of opinion. ...........................................................................................................5

    2. Certification would not materially advance the ultimate termination of the litigation.........7

II. THE COURT SHOULD DENY DEFENDANTS' MOTION FOR CERTIFYING AN INTERLOCUTORY APPEAL BECAUSE THE CASES CITED ARE NOT CLEARLY CONTROLLING LAW ....................................................................................................................8

    1. *Geduldig v. Aiello* is not a controlling question of law as to which there are substantial grounds for a different of opinion. ...................................................................................8

    2. 2.  *L.W. ex rel. Williams* is not a controlling question of law as to which there are substantial grounds for a different of opinion.....................................................................12

    3. *Bostock* is the Controlling Question of Law for Discrimination Claims Based Upon Transgender Status and Sex under the Plaintiffs' Section 1557 of the ACA. ...................13

    4. The Heightened Scrutiny of Review Is Applied to Equal Protection Claims Based upon Transgender Status..........................................................................................................16

    5. Defendants' Exclusion Policy for Treatment of Gender Dysphoria is a Proxy for Discrimination under the *Geduldig's* Pretext Exception. ................................................19

    6. Transgender Beneficiaries Have the Same Right to Procedural Rights Due Process As Cisgender Beneficiaries Who Are Denied Medicaid for Similar Surgeries. ....................19

    7. Certification of an Interlocutory Appeal Will Not Materially Advance the Ultimate End of the Litigation. ...............................................................................................................20

III. INTERLOCUTORY APPEAL CONCLUSION ....................................................................24

IV. THE COURT SHOULD DENY A STAY OF THIS ACTION PENDING THE APPEAL ...24

## TABLE OF AUTHORITIES

*Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661 (8th Cir. 2022) .................................................. 12

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ......................................... 18, 19

*C.P. v. Blue Cross Blue Shield*, 2022 U.S. Dist. LEXIS 227832 (Dec. 19, 2022 W.D. Wash.)... 15

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) ......................................... 11

*Coopers & Lybrand v. Livesay,* 437 U.S. 463 (1978) ...................................................................... 7

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ........................................................ passim

*Davis v. Guam*, 932 F.3d 822 (9th Cir. 2019) ............................................................................... 18

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) .............................................. 6

*Dobbs v. Jackson's Women's Health Org.*, 142 S. Ct. 2228 (2022) ............................................. 12

*Doe v. Ladapo*, 2023 U.S. Dist. LEXIS 99603 (June 6, 2023 N.D. FL.). ............................... 9, 27

*Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022) ......................................................................... 14, 16

*F.V. v. Barron,* 286 F. Supp. 3d 1131 (D. Idaho 2018) ................................................................ 15

*Geduldig v. Aiello*, 417 U.S. 484 (1974) .............................................................................. 7, 8, 9

*Grabowski v. Ariz Bd. Of Regents*, 69 F.4th 1110 (9th 2023) ..................................................... 14

*Graham v. Richardson*, 403 U.S. 365 (1971). ............................................................................. 10

*Hecox v. Little*, __ F.4th __, 2023 U.S. App. LEXIS 21541 (9th Cir. August 17, 2023). ..... passim

*Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612 (1985) ........................................................ 10

*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1982) ........................................................ 3

*In re Lorillard Tobacco Co.*, 370 F.3d 982 (9th Cir. 2004) ........................................................... 6

*James v. Price Stern Sloan, Inc.*, 283 F.3d 1064 (9th Cir. 2002) ................................................. 4

*Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019) ........................................................... 14, 16, 17

*L.W. ex rel. Williams v. Skrmetti*, 2023 WL 4410576 (July 8, 2023 6th Cir.) ............................. 11

*Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) ..................................................................... 10

*Miesen v. Henderson*, 2022 U.S. Dist. LEXIS 24152 (D. Idaho Feb. 8, 2022) ..................... passim

*Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) ...................................................... 17

*Newport News Shipbuilding & Dry Dock Co. V. Eeoc*, 462 U.S. 669 (1983) .............................. 8

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 (9th Cir. 2013 ........... 19

*Romer v. Evans*, 517 U.S. 620, (1996) .................................................................................. 10

*Schuler v. Battelle Energy All., LLC*, 2019 U.S. Dist. LEXIS 181055 (D. Idaho Oct. 18, 2019) . 3, 4

*TCL Communs. Tech. Holdings, Ltd. v. Telefonaktenbologet LM Ericsson*, 2014 U.S. Dist. LEXIS 197559 (Sept. 30, 2014 C.D. CA) .................................................................. 8

*U.S. Rubber Co. v. Wright*, 359 F.3d 784 (9th Cir. 1996) .................................................. 4

*U.S.v. Windsor*, 570 U.S. 744 (2013) .................................................................................. 10

*United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) ........................................... 10

*United States v. Virginia*, 518 U.S. 515 (1996) .......................................................... 14, 17

*United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959) ................................................. 20

**Statutes**

USC 28 § 1292(b) ......................................................................................................... passim

COME NOW Plaintiffs, MH and TB, by and through their counsel, Howard A. Belodoff, Idaho Legal Aid Services, Inc. and Jane Gordon, Jane Gordon Law, to respond to Defendants' Motion for Certification of an Interlocutory Appeal and Stay Pending Appeal ("Motion"). Dkt. 50-1. The Court should deny Defendants' Motion because the law clearly establishes that heightened scrutiny applies to Defendants' policies which deny medically necessary genital reconstruction surgery to treat gender dysphoria by considering them to be "cosmetic" because they discriminate based upon transgender status. Defendants' Motion fails to meet the requirements to certify an interlocutory appeal under 28 U.S.C. § 1292(b) because (1) there are no identified controlling questions of law; (2) there are no substantial grounds for a difference of opinion; and (3) an immediate appeal from the order will not materially advance the ultimate termination of the litigation.

## I.   THE STANDARDS FOR APPLYING THE MANDATORY REQUIREMENTS FOR CERTIFYING AN INTERLOCUTORY APPEAL UNDER 18 U.S.C. § 1292(b)

"[T]he courts of appeal have jurisdiction over 'appeals from all final decisions of the district courts of the United States.'" *Couch v. Telescope Inc*., 611 F.3d 629, 632 (9th Cir. 2010) (quoting 28 U.S.C. § 1291). "As a general rule, a party may seek review of a district court's rulings only after the entry of final judgment." *Miesen v. Henderson*, 2022 U.S. Dist. LEXIS 24152 at \*22 (D. Idaho Feb. 8, 2022) (citing *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1982). *See also Schuler v. Battelle Energy All., LLC*, 2019 U.S. Dist. LEXIS 181055, \*3-4 (D. Idaho Oct. 18, 2019).  USC 28 § 1292(b) provides a narrow exception to the rule that only final judgments are appealable. Any departure from the final judgment rule should only be applied sparingly and in "exceptional circumstances." *Miesen,* LEXIS 24152 at \*22 (citing *In re Cement Litig.* at 1026); *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (a court should certify an interlocutory appeal only "in rare circumstances"; *U.S. Rubber Co. v. Wright*, 359 F.2d

784, 785 (9th Cir. 1996) (interlocutory appeals are not granted "merely to provide review of difficult rulings in hard cases.").

The District Court may certify an order for immediate appeal when: (1) the order involves a controlling question of law; (2) as to which there is a substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). If any one of these requirements is not met, the question of law cannot be certified for immediate appellate review. *See Couch*, 611 F.3d at 633. "In applying these standards, the court must weigh the asserted need for the proposed interlocutory appeal with the policy in the ordinary case of discouraging 'piecemeal appeals.'" *Miesen,* LEXIS 24152 at *27-28 (cleaned up). The party seeking certification has the burden of meeting all the requirements of § 1292(b). *Schuler*, at LEXIS 181055 *4 (citing *Couch*, 611 F.3d at 633.) The decision to certify is committed to the sound discretion of the district court. Even when the three requirements are met, "district court judges have unfettered discretion to deny certification.'" *Miesen*, LEXIS 24152 at *23 (quoting *Schuler*, LEXIS 181055 at *2 (cleaned up).

### 1. The Order does not involve a controlling question of the law or a substantial ground for difference of opinion.

Defendants' Motion does not meet the requirements for certification under 28 U.S.C. § 1292(b). Defendants merely rehash their legal contentions citing to case law the Court has rejected or distinguished in its Order. Defendants do not cite any cases that are applicable to the present action. Instead, Defendants disagree with the Court's analysis and application of settled precedent and rely upon nonbinding, out-of-circuit decisions decided upon different and irrelevant factual circumstances and legal theories. Motion at 1-2. This does not meet the threshold of a substantial ground for difference of opinion.

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b),

courts must examine to what extent the controlling law is unclear." *Couch,* 611 F.3d at 633. A substantial ground for difference of opinion exists when: the circuit courts are in dispute and the court of appeals has not ruled on the issue previously; complicated foreign law questions arise; first-impression questions that are novel and difficult are at issue. *Id*. "A party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference [of opinion].'" *Id.* A belief "[t]hat settled law might be applied differently does not establish a substantial ground for difference of opinion." *Id.* Defendants rely upon outdated and rejected constitutional principles long abandoned by the United States Supreme Court and contradicted by more recent Ninth Circuit decisions relating to the level of scrutiny, which applies discrimination based upon transgender status and sex. *See Hecox v. Little*, __ F.4th __, 2023 U.S. App. LEXIS 21541 (9th Cir. August 17, 2023).

Defendants lack candor when citing a Ninth Circuit opinion and stating the "controlling law is unclear" because they fail to include the Court's caveat which directly applies to this case. Motion at 9 (quoting *Couch*, 611 F.3d at 633). The Court, immediately following the cited quotation, states: "However, 'just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.'" *Id.* (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010) (footnotes omitted). The Court in *Miesen* found no clear controlling questions of law of which there is a substantial ground for difference of opinion. *Miesen,* LEXIS 24152 at *24 (citing *Couch*, 611 F.3d at 633). As Judge Nye noted "While it is unsurprising that a party seeking an appeal disagrees with the decision at issue, such disagreement is not sufficient to meet the § 1292(b) requirements." *Miesen,* LEXIS 24152 at *25 (citing *Couch,* 611 F.3d at 633).

**2.   Certification would not materially advance the ultimate termination of the litigation.**

Certification would not expedite the termination of litigation or lessen the risk of increased costs because Defendants would still have to defend the claims for equitable relief under Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116 (First Claim), and the Medicaid Act's Availability Requirements, 42 U.S.C. § 1396a(a)(10)(A), Comparability Requirements in 42 U.S.C. § 1396a(a)(10)(B) and the Medicaid Act's Due Process Requirements, 42 U.S.C. § 1396a(a)(3). Dkt. 1 ¶194-¶ 205 (Second and Third Claims) and ¶214-¶ 221 (Fifth Claim).[1] The risk of increased costs by both parties is present in nearly all interlocutory appeals, "but there is a 'strong bias . . . against piecemeal appeals.'" *Miesen,* LEXIS 24152 at *28 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994)). Judge Nye's admonition against interlocutory appeals is the applicable standard, cautioning that "'applying a loose construction' of § 1292 'only encourages unsuccessful assertions of jurisdiction, wasting precious appellate resources, burdening adverse parties, and perhaps diverting effort from expeditious continuation of trial court proceedings.'" *Miesen,* LEXIS 24152 at *28-*29 citing *In re Lorillard Tobacco Co.*, 370 F.3d 982, 988 (9th Cir. 2004) (quoting 16 Charles Alan Wright et al., Federal Practice and Procedure § 3922.1, at 94 (1977)).

Defendants do not present the "exceptional" and "rare" circumstances required to justify certification. Defendants have not met the burden of justifying a piecemeal appeal and "a departure from the basic policy of postponing appellate review until after the entry of final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475 (1978). The Court should find Defendants failed to meet their burden of establishing the statutory prerequisites for granting certification because the

---

[1]The Ninth Circuit cannot review the merits of these statutory claims because Defendants' Motion to Dismiss did not challenge them and the Court did not adjudicate them.

controlling questions of law are clear, there are no substantial grounds for difference of opinion, and an interlocutory appeal would delay and prolong the litigation rather than advance the final resolution of Plaintiffs' claims.

## II.  THE COURT SHOULD DENY DEFENDANTS' MOTION FOR CERTIFYING AN INTERLOCUTORY APPEAL BECAUSE THE CASES CITED ARE NOT CLEARLY CONTROLLING LAW

Defendants assert four controlling questions of law about Plaintiffs' Equal Protection and Due Process claims: (1) whether *Geduldig v. Aiello* is controlling; (2) whether heightened scrutiny applies to transgender Medicaid recipients seeking medically necessary treatment for gender dysphoria; (3) whether, if heightened scrutiny applies, policy decisions about Medicaid coverage are subject to rational basis review; and (4) whether transgender Medicaid recipients have a right to surgical treatments for gender dysphoria. Motion at 5.

### 1.  *Geduldig v. Aiello* is not a controlling question of law as to which there are substantial grounds for a different of opinion.

This Court correctly applied controlling Supreme Court and Ninth Circuit precedents in analyzing and applying the proper the level of scrutiny under Equal Protection that applies to transgender individuals. These cases distinguished *Geduldig*'s Equal Protection analysis and the application of the rational basis level of scrutiny to transgender individuals seeking medically necessary gender reconstructive surgery to treat gender dysphoria. *Geduldig v. Aiello*, 417 U.S. 484 (1974).

"Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point . . . or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633. (cleaned up). The circuits are not in dispute in factually similar cases, the Ninth Circuit addressed the questions of law, and the questions of law are not issues of first

impression. Defendants' disagreement with the Court's analysis is no surprise, but the

disagreement does not constitute a controlling question of law. *Miesen*, LEXIS 24152 at *25.

"[J]ust because counsel contends that one precedent rather than another is controlling does not

mean there is such a substantial difference of opinion as will support an interlocutory appeal."

*Couch*, 611 F.3d 629 at 633. A § 1292(b) question of law means a pure question of law, not a

mixed question of law and fact or an application of law to a particular set of facts. *TCL Communs.

Tech. Holdings, Ltd. v. Telefonaktenbologet LM Ericsson*, 2014 U.S. Dist. LEXIS 197559, *8

(Sept. 30, 2014 C.D. CA). Defendants' four questions of law are not appealable because they

present mixed questions of law and facts and an application of law to particular facts.

    The Court distinguished *Geduldig* because insurance's "pregnancy exclusion met rational

basis review because the state had a legitimate interest in maintaining the program's fiscal

integrity." Order at 19-20 n. 9 citing *Geduldig*, 417 U.S. at 495-97. *Geduldig* also held the "'lack

of identity between the excluded disability and gender...did not effect gender-based

discrimination' absent ''pretexts designed to effect an invidious discrimination . . . .'" *Id.*

    The principal emphasis in *Geduldig* "was on the reasonableness of the State's cost

justifications for the classification in its insurance program" and "the State's fiscal interest in

excluding pregnancy coverage." *Newport News Shipbuilding & Dry Dock Co. V. Eeoc*, 462 U.S.

669, 677 n.12 & n.13 (1983). The Court further distinguished *Geduldig* because while "the

condition of pregnancy can be understood without reference to sex, gender, or transgender status,

the treatment of gender dysphoria with genital reconstruction surgery cannot." Order at 22

(citations omitted). The Court's analysis is correct because *Geduldig* did not hold that every

legislative classification based upon pregnancy is considered discriminatory for equal protection

purposes. Specifically, *Geduldig*'s insurance exclusion for pregnancy had a non-discriminatory

financial effect and was for an "objectively identifiable physical condition with unique characteristics" rather than a specific class of persons even though pregnancy is only associated with women. *Id.* at 496 n.20.[2] *See also Doe v. Ladapo*, 2023 U.S. Dist. LEXIS 99603, at *28-*29 (June 6, 2023 N.D. FL.).[3]

Defendants have not maintained that the discriminatory policies relate to the fiscal integrity of Idaho's Medicaid program nor is there any evidence in the record. Defendants do not cite any case law showing that Medicaid can constitutionally exclude coverage of reconstructive surgery for transgender persons to treat gender dysphoria while Medicaid provides the same or similar coverage and treatment to cisgender persons. Order at 20 ("Yet, exclusively transgender persons – and not cisgender persons – suffer from gender dysphoria."). This distinguishes *Geduldig*, where women and men were treated the same. The Court agreed with other district courts who found that coverage exclusions denying transgender persons genital reconstructive surgery to treat gender dysphoria while providing similar reconstructive surgeries for other medical conditions in cisgender persons are discriminatory. Order at 19-21.[4]

---

[2] Defendants argued the Supreme Court in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) reaffirmed *Geduldig*. Motion at 5. In *Dobbs*, Justice Alito explained the regulation of abortion is not a sex-based classification. *Id.* at 2228. Laws regulating pregnancy and abortion do not create gender and sex based classifications, unlike the excluding transgender individuals with gender dysphoria from receiving the same surgeries that cisgender persons can receive for other medical conditions. Defendants' exclusion directly targets transgender individuals, therefore *Dobbs* citation to *Geduldig* has no bearing on the circumstances in this action.

[3] In *Ladapo* a Florida statute prohibited transgender minors from receiving gender-affirming care. The court distinguished *Geduldig* finding transgender and cisgender minors were treated differently because cisgender minors receive the medications doctors deemed appropriate but doctors could not prescribe the same mediations transgender minors. *Id.* at *28-*29.

[4] This Court found "Defendants' policy operates to classify transgender people (classified group) and deny them medically necessary genital reconstruction surgery to treat gender dysphoria. Meanwhile, cisgender individuals (similarly-situated group) routinely receive coverage for the same or similar procedures, namely medically necessary genital reconstruction surgery to treat ailments other than gender dysphoria." Order at 19.

There is no constitutional basis to deny government benefits based on transgender status. "The Constitution's guarantee of equality must at the very least mean that a bare . . . desire to harm a politically unpopular group cannot justify disparate treatment of that group." *U.S. v. Windsor*, 570 U.S. 744, 740 (2013) (cleaned up). "The Constitution cannot control such prejudices but neither can it tolerate them. Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." *Latta v. Otter*, 771 F.3d 456 (9th Cir. 2014) (cleaned up). Medicaid's coverage exclusion is based upon transgender status and imposes inequality on a "discrete and insular minority." *Graham v. Richardson*, 403 U.S. 365, 372 (1971). Even using rational-basis review, Idaho's transgender coverage exclusion is discriminatory because it is unrelated to any legitimate state interest.[5] "The state may not discriminate against classes of people in an 'arbitrary or irrational' way or with the 'bare . . . desire to harm a politically unpopular group.'" *Hecox*, LEXIS 21541 at *24 (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). This "is a message that Idaho simply may not send through unjustifiable discrimination." *Id.* at *52 (cleaned up).

Defendants contend that Medicaid's coverage exclusion for gender reconstructive surgeries does not consider gender status and that transgender persons receive the same coverage as cisgender persons. Motion at 9. This is completely inconsistent with the fact that Medicaid's CPT

---

[5] *See, e.g.*, *Romer v. Evans*, 517 U.S. 620, 632 (1996) (striking down, for lack of a legitimate rational basis, a state law restricting local ordinances protecting gays because of no relation between the classification and the object to be obtained; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447-50 (1985) (striking down, for lack of a legitimate rational basis, a zoning ordinance requiring group-care facilities for the mentally handicapped, but not other facilities with multiple occupants); *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612 (1985) (striking down, for lack of a legitimate rational basis, a tax exemption for Vietnam War veterans limited to those who resided in the state on May 8, 1976); *United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) (striking down, for lack of a legitimate rational basis, a statute denying food stamps to members of a household with unrelated members).

codes exist for the surgeries requested by Plaintiffs. The exclusion only applies when a transgender person requests gender-confirming treatment for gender dysphoria but not to cisgender persons for medical reasons other than gender dysphoria. Additionally, Defendants' contention that the exclusion is not based upon transgender status and that a transgender person receives the same coverage as a cisgender person conflicts with Governor Little's letter. Order at 18 n 7. The Governor singled out transgender persons for different treatment by explicitly prohibiting Medicaid coverage for "sex reassignment surgeries" and ordered Defendant Jeppesen not to use Medicaid "funds to pay for irreversible sex reassignment surgeries, puberty blockers, or hormones for the purpose of changing the appearance of any child's or adult sex." Order at 18-19 & n 7.

### 2. *L.W. ex rel. Williams* is not a controlling question of law as to which there are substantial grounds for a different of opinion.

Defendants rely upon a Sixth Circuit decision to support their argument that the appeal should be certified because this is a "fast developing area of law" and "courts have reached different opinions on state expenditure for such treatments." Motion at 1 (citing *L.W. ex rel. Williams v. Skrmetti*, 2023 WL 4410576 (July 8, 2023 6th Cir.) [6] *L.W. ex rel. Williams* is entirely distinguishable because it considers staying a preliminary injunction against a Tennessee statute prohibiting healthcare providers from performing gender-affirming surgeries and administering hormones and puberty blockers to **transgender minors**. *Id*. This case concerns **transgender adults.** The Sixth Circuit relied upon the substantive due process right of parents to make decisions concerning their child. *Id.* at *7-10. Here, Plaintiffs only pleaded a procedural due process claim so the substantive due process analysis is irrelevant.

---

[6] Defendants' contention that *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) supports an interlocutory appeal. Motion at 2.  However, the Ninth Circuit has rejected the contention that *Dobbs* applies because *Dobbs* was a substantive due process decision and has no relevance to equal protection claims. *Hecox v. Little*, at *30 n. 8.

The Sixth Circuit in *L.W. ex rel. Williams* applied rational basis review of legislation to find there was no transgender-based discrimination because "neither the Supreme Court nor this court has recognized transgender status as a quasi-suspect class." *Id.* at *19. The Equal Protection analysis in *L.W.* is based upon the Tennessee legislature's purported concerns about gender-affirming care for transgender minors and relied on the State's "responsibility, to look after the health and safety of its children." *Id.* at *2-3. The Sixth Circuit held the state interest in preserving the welfare of children gives it broad power to limit parental freedom, finding "state legislatures play a critical role in regulating health and welfare, and their efforts are usually entitled to a 'strong presumption of validity.'" *Id.* (citing *Dobbs v. Jackson's Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022)).[7] "'[U]nsupported legislative conclusions as to whether particular policies will have societal effects of the sort at issue in this case—determinations which often, as here, implicate constitutional rights—have not been afforded deference by the [Supreme] Court.'" *Hecox* LEXIS 21541 at *50-51 (quoting *Latta*, 771 F.3d at 469). Legislative considerations regarding minors are irrelevant since this action challenges an unwritten coverage exclusion policy for transgender adults.

### 3. *Bostock* is the Controlling Question of Law for Discrimination Claims Based Upon Transgender Status and Sex under the Plaintiffs' Section 1557 of the ACA.

The Sixth Circuit found that *Bostock v. Clayton County* was limited to employment discrimination claims under Title VII although it found that "other courts and district courts have

---

[7] *See Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 769-70 (8th Cir. 2022), where the Eighth Circuit found an Arkansas statute characterized the prohibition of gender transition procedures "as creating a distinction on the basis of medical procedure rather than sex is unpersuasive. The Court applied heightened scrutiny because "the biological sex of the minor patient is the basis on which the law distinguishes between those who may receive certain types of medical care and those who may not." The Court affirmed a preliminary injunction against enforcement of Arkansas's statute which prohibited physicians from providing gender affirming care to minors.

taken different approaches to these issues." *L.W. ex rel Williams,* WL 4410576 at *21-22 (citing *Bostock v. Clayton County* 140 S. Ct. 1731 (2020)). The Court recognized its decision was not final and controlling by stating "[t]hese initial views, we must acknowledge, are just that: initial. We may be wrong." *Id.* at *24. Defendants' reliance on the Sixth Circuit's nonbinding and "initial" decision on a stay of a preliminary injunction concerning transgender minors does not support an interlocutory appeal here because it does not constitute a clear controlling question of law of which there is a substantial ground for difference of opinion. The Court must apply the controlling law of the Ninth Circuit, not a Sixth Circuit nonbinding initial decision that may be "wrong."[8]

Both this Court and the Ninth Circuit have rejected the Sixth Circuit's narrow view of transgender classifications. In *Doe v. Snyder*, the Ninth Circuit affirmed the denial of the request for a mandatory preliminary injunction against Arizona's Medicaid exclusion of gender-affirming surgeries for minors. *Doe v. Snyder*, 28 F.4th 103, 107 (9th Cir. 2022). The district court found Doe had not shown irreparable harm or that surgeries were medically necessary, safe, and effective. *Id.* at 114-115. The Ninth Circuit distinguished between the minors in *Doe* and the district court cases finding transgender individuals were subject to discrimination under heightened scrutiny as "factually distinct" because the district court cases involved only adults. *Id.* at 113 n 5. The Court recognized that the controlling law in the Ninth Circuit already held "that the level of scrutiny applicable to discrimination based on transgender status is 'more than rational basis but less than strict scrutiny.'" *Doe* at 113 (quoting *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir.

---

[8] The Ninth Circuit has cautioned against accepting similar dicta from an out of circuit case, which conflicts with other circuits and district courts who applied heightened scrutiny to state statutes that discriminate against transgender minors. *See Hecox,* 2023 U.S. App. LEXIS 21541 at *36-*37. ("This dicta is unpersuasive, as the Eleventh Circuit declined to decide the issue or further opine on its 'doubts.' In any event, as a three-judge panel we cannot overrule the binding precedent of our circuit.") (citing *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003).

2019)). The Ninth Circuit has held "as gender classifications 'generally provide[] no sensible ground for differential treatment,' id., "'all gender-based classifications today' warrant 'heightened scrutiny.'" *Hecox,* LEXIS 21541 at *24 (quoting *United States v. Virginia*, 518 U.S. 515, 555, (1996) ("*VMI*").

The Ninth Circuit in *Doe v. Snyder* held *Bostock* applies to Section 1557 of the ACA and the district court's reasoning that *Bostock* only applied to employers discriminating against transgender employees "was too narrow." *Doe,* at 1113-14. *Bostock* applies to Section 1557 because the ACA is construed consistent with Title VII. *Id.* at 1114.[9] The Supreme Court has ruled "we do not think *Bostock* can be limited in the manner the district court suggested. *Id.* at 1114 (quoting *Bostock*, 140 S. Ct. at 1778-82 (Alito, J., dissenting) ("anticipating that *Bostock* 'is virtually certain to have far-reaching consequences' because "[o]ver 100 federal statutes prohibit discrimination because of sex," and listing in particular Title IX and the ACA).'" *Id.* Plaintiffs allege Medicaid's exclusion of gender-affirming surgeries discriminates under Section 1557 of the ACA. Dkt. 1 at 33-34 (First Claim ¶189-¶193). An immediate appeal from the Order, which did not address the Section 1557 claim, will not materially advance the ultimate termination of the litigation. The Ninth Circuit determined *Bostock* is the controlling question of law for discrimination claims based upon transgender status and sex under the ACA. There are no substantial grounds for difference of opinion. *See C.P. v. Blue Cross Blue Shield*, 2022 U.S. Dist. LEXIS 227832 (Dec. 19, 2022 W.D. Wash.) (where the private insurance exclusion of gender-affirming treatment of gender dysphoria including reconstructive surgery discriminates against

---

[9] *See also Grabowski v. Ariz Bd. Of Regents*, 69 F.4th 1110, 1116 (9th 2023) ("Because we construe Title VII and Title IX protections consistently, *Snyder*, 28 F.4d at 114, we look again to Title VII caselaw to guide our analysis.").

transgender persons on the basis of sex.)

### 4. The Heightened Scrutiny of Review Is Applied to Equal Protection Claims Based upon Transgender Status.

This Court held that under Ninth Circuit's precedent, heightened scrutiny is the proper

standard applicable to the Equal Protection rights of transgender individuals. Order at 14-15 & 28

(citing *Karnoski* 926 F.3d at 1200-01).[10] Defendants contend there is substantial questions of

whether *Karnoski's* heightened scrutiny applies to Plaintiffs' Equal Protection claims because

"Idaho does not discriminate based on purported transgender status—it does not deny a benefit to

persons with gender dysphoria that it gives to others." Motion at 8-9. Defendants' argument seeks

to contest the factual allegations in the Complaint, which is taken as true on a motion to dismiss.

Questions of fact and the application of law to facts are not pure questions of law and thus are not

immediately appealable. Order at 1-9. Defendants cannot contest and assert disputed facts that

were not considered in a motion to dismiss as a basis for an interlocutory appeal. Defendants'

factual contentions conflict with the Court's finding that Governor Little's letter "did not

contradict Plaintiffs' description of Defendants' alleged policy. If anything it went further . . . and

it supports Plaintiffs' allegations regarding an allegedly discriminatory policy in violation of the

Equal Protection Clause." Order at 18 n. 7. The Governor's letter targeting transgender Idahoans, a

discrete and political group, unquestionably warrants the application of heighten scrutiny.

Defendants ask the Court to consider the out-of-circuit decision in *L.W. ex rel. Williams*

---

[10] This Court also cited two Idaho Federal District Court decisions. *See F.V. v. Barron,* 286 F. Supp. 3d 1131, 1143-44 (D. Idaho 2018) ("'[T]o conclude discrimination based on gender identity or transsexual status is not discrimination based on sex is to depart from advanced medical understanding in favor of archaic reasoning.'"); *Hecox v. Little*, 479 F. Supp. 3d 930, 974-75 (D. Idaho 2020) ("adopting both parties' positions on the appropriate level of scrutiny in determining that heightened scrutiny applied because the Act in question discriminated on the basis of both sex and transgender status"). Order at 15 & 28.

because it is "more factually on point than *Karnoski*." Motion at 9-11. The Sixth Circuit's decision is not only factual distinguishable, as set forth above, but directly conflicts with binding Ninth Circuit precedent on transgender status. Supra at 9-12. The fact Defendants agree with the Sixth Circuit's level of scrutiny for classifications based upon transgender status and disagree with the Ninth Circuit's heighten scrutiny level of review does not justify an interlocutory appeal. In *Doe v. Snyder*, the Ninth Circuit, in a case involving minors seeking gender-affirming care similar to minor in *L.W. ex rel. Williams*, the Court held the district court should apply heightened scrutiny on remand. *Doe* at 113. (citing *Karnoski*, 926 F.3d at 1201). Defendants rely on a nonbinding Sixth Circuit decision and Supreme Court cases from a different era to contend only sex and legitimacy warrant heightened review of Equal Protection rights while saying transgender persons have no constitutional protections from state sponsored discrimination lacks candor and is reminiscent of the long discarded "separate but equal" doctrine. Motion at 10-13.

The Ninth Circuit in *Hecox v. Little* reviewed under Equal Protection the grant of a preliminary injunction enjoining Idaho's statutory categorical ban on the participation of transgender youth and adults who were subjected to discrimination in women's student athletics. The Court rejected the Idaho Legislature's statutory findings, which supported the ban. *Hecox,* LEXIS 21541 at *17-20. The Court rejected Idaho's argument that because the statute used "'biological sex' in place of the word 'transgender' it was not targeted at excluding transgender girls and women." *Id.* at *30 (citing *Latta*, 771 F.3d 456.)[11] The Court held, "[w]e conclude that while the Act certainly classifies on the basis of sex, it also classifies based on transgender status, triggering heightened scrutiny on both grounds." *Id.* at *25.  Defendants are asserting the same

---

[11] In *Latta* the State asserted "heightened scrutiny is not appropriate because differential treatment by sexual orientation is an incidental effect of, but not the reason for, those laws." *Id*. at 467-68.

failed argument in this Motion.

The Ninth Circuit in *Hecox* confirmed that heightened scrutiny applies to laws that discriminate on the basis of transgender status and sex. *Id.* at \*24-38\* (citing *VMI*, 518 U.S. 515 at 555 and *Karnoski*, 926 F.3d at 1200-01)). The panel noted the Ninth Circuit "previously held that heightened scrutiny applies to laws that discriminate on the basis of transgender status, reasoning that gender identity is at least a 'quasi-suspect class.'" *Id.*, at \*35. Under heightened scrutiny, a party must establish an "exceedingly persuasive justification" for the classification. *Id.*, at \*24-25 (citing *VMI*, 518 U.S. at 524). Heightened scrutiny requires a showing that the classification serves important governmental objectives and is substantially and directly related to the government's objective. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982). Defendants failed to offer any legitimate or objective justification much less an "exceedingly persuasive justification" or an "important governmental objective" for excluding reconstructive surgeries to treat transgender individuals with gender dysphoria when cisgender individuals receive the same or similar surgeries to treat other medical conditions. *Karnoski* and *Hecox* are binding and controlling precedents for applying heightened scrutiny review to discrimination claims based upon transgender status and sex under Equal Protection.

Defendants have not met the burden of showing a controlling question of law or that there are substantial grounds for difference of opinion because of binding Ninth Circuit precedent directly on point. An appeal on this basis will only prolong and delay rather than materially advance the ultimate termination of the litigation and increase Plaintiffs' costs including attorney fees.[12]

_____

[12] Defendants' citation to cases in the context of racial discrimination are inapposite because the courts only examined the parameters of the preferences given to an aboriginal class and those who are not in the class; the selection of minority groups most in need for a minority-owned

5. **Defendants' Exclusion Policy for Treatment of Gender Dysphoria is a Proxy for Discrimination under the *Geduldig's* Pretext Exception.**

This Court held Defendants' coverage exclusion "would fall squarely within *Geduldig's* pretext exception" because Plaintiffs alleged that Defendants "no-surgery-for-gender-dysphoria policy is a proxy for discrimination against transgender persons." Order at 21 (quoting as an example of proxy discrimination *Davis v. Guam*, 932 F.3d 822, 837-38 (9th Cir. 2019) and *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993). Order at 21-22. Defendants assert without any supporting authority "there are reasons to think the Ninth Circuit would not apply" the proxy discrimination precedent cited by the Court. Motion at 8. There are far more reasons to think the Ninth Circuit would agree with this Court's application of *Geduldig*'s pretext exception for proxy discrimination. In *Hecox* the Ninth Circuit distinguished *Geduldig* because "the Act's use of 'biological sex' functions as a form of '[p]roxy discrimination." *Id.* at *31 (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). The Ninth Circuit found the Act used "'seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group.'" *Id.* at 31-32 (quoting *Pac. Shores*) (also citing *Bray*, 506 U.S. at 270). The Ninth Circuit endorsed and approved the application of proxy discrimination for discrimination claims based upon transgender status and sex. These cases are the controlling questions of law and there are no substantial grounds for difference of opinion.

6. **Transgender Beneficiaries Have the Same Right to Procedural Rights Due Process As Cisgender Beneficiaries Who Are Denied Medicaid for Similar Surgeries.**

The Court determined that Plaintiffs pleaded a plausible claim for violation of procedural

---

business program; and the application of the standard of review for an equal protection class of one. Motion at 13.

due process for purposes of a motion to dismiss. Order at 29-32. The Court found Plaintiffs have a legitimate claim to Idaho Medicaid benefits and it is well settled they have a property interest in continuing to receive benefits that cannot be withheld without due process. *Id.* at 31-32. Defendants contend, again based upon *Geduldig*, there are substantial grounds regarding the Court's ruling to doubt whether Medicaid's coverages for "a specific procedure *for one indication* creates a due process to that procedure *for another indication*." Motion 14-15. Defendants offer no controlling cases supporting their legal theory or create any doubts about the Court's analysis of the procedural due process claim, which was supported by longstanding Supreme Court precedent. Defendants' mere disagreement with the Court's ruling fails to meet their burden to show the "exceptional" and "rare" circumstances that are required to justify the certification of an interlocutory appeal. Supra at 2-5. Transgender Medicaid beneficiaries are entitled to the same due process procedural rights as cisgender Medicaid benefices who have been denied similar surgeries.

### 7. Certification of an Interlocutory Appeal Will Not Materially Advance the Ultimate End of the Litigation.

Defendants assert Dr. Hamso's qualified immunity appeal for purposes of the Due Process and Equal Protection claims will decide controlling questions of law on all claims against Defendants and "may also provide elpful clarity regarding these legal theories that will inform how this case will proceed in discovery and to the summary judgment stage." Motion at 16. Defendants' contentions do not show that certification would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "§ 1292(b) is used 'only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation…'" *Miesen*, LEXIS 24152 at *27 citing (quoting *U.S. Rubber Co*, 359 F.2d at 785). *Miesen* provides the examples of controlling questions of law that meet the requirement of materially advancing the end of the litigation. *Id*. These questions included "'those related to jurisdiction or a statute of

limitations which the district court has decided in a manner which keeps the litigation alive but

which, if answered differently on appeal, would terminate the case.'" *Miesen,* LEXIS 24152 at*27

(quoting *United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959).

Even if Defendants certify a successful appeal on qualified immunity against Dr. Hamos,

they do not show how it would ultimately terminate the Equal Protection and Due Process claims

for equitable relief.[13]  A qualified immunity determination does not and would not clarify or

control the Court's decision on Plaintiffs' Section 1557 ACA and Medicaid Act statutory claims

for equitable relief. The purpose of an interlocutory appeal is not to seek an advisory opinion on

discovery issues or the legal theories on summary judgment. Defendants' stated purposes of what

it wants to achieve regarding discovery and summary judgment concedes that, even if successful,

the appeal would not terminate the litigation. Summary judgment takes place after the parties have

conducted discovery to determine whether there are genuine issues of material fact and decides

whether a party is entitled to summary judgment as a matter of law. Fed.R.Civ.Proc 56(a). The

Ninth Circuit on appeal will only consider the facts and reasonable inferences alleged in the

Complaint and will not have the benefit of facts disclosed in discovery for purposes of summary

judgment. The Court will not conduct a *sue sponte* review of the merits of all the claims or

consider any facts not alleged in the Complaint.

The certification of an interlocutory appeal will only delay and prolong the time when the

parties can conduct discovery and file for summary judgment. It is certainly possible that discovery

---

[13] The decision in *Cates v. Stroud*, is not applicable because the district court granted summary judgment on all claims against all defendants. *Cates v. Stroud,* 976 F.3d 972, 978 (9th Cir. 2020). The Court concluded that Cates' rights were violated under the Fourth Amendment but the defendant was protected by qualified immunity holding that prior to a strip search a prisoner must be given an opportunity to leave. *Id.* at 985. The Court ruled her other claims lack merits and were not supported by case law separate and apart from qualified immunity. *Id.* This appeal is from a motion to dismiss where the Court found Plaintiffs had alleged viable claims on the merit.

and summary judgment can be completed by the Court before any appeal can be fully briefed and

decided by the Ninth Circuit. The Ninth Circuit has already raised the question of appellate

jurisdiction by ordering the parties to "address the basis for this court's jurisdiction over this

appeal. *See Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 871 (9th Cir. 1992) ("'[A]n

official defendant claiming qualified immunity [on a motion to dismiss] is entitled to immediate

appellate consideration of a limited issue only. That issue is the narrow and 'purely legal' one of

'whether the facts alleged . . . support a claim of violation of clearly established law.'" DkEntry 8

(August 7, 2023). *Cf.*

> Crucially, if the complaint 'contains even one allegation of a harmful act what
> would constitute a violation of a clearly established constitutional right,' qualified
> immunity will not apply (at least not at that moment) and plaintiff is entitled to go
> forward with their claim. *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968
> F.2d 865, 872 (9th Cir. 1992). Here, the Court cannot determine, based on the
> allegations presented in Plaintiffs' Complaint, that Dr. Hamso is entitled to
> qualified immunity on Plaintiffs' constitutional claims.").

Supra at 16-17.

Defendants contend that Dr. Hamso is entitled to qualified immunity because there is no

constitutional violation under *Geduldig* and she did not violate clearly established law. Order at 27.

The Court found "Plaintiffs have alleged that Defendants' plan facially and by proxy discriminates

against them on the basis of sex and transgender status in violation of the Equal Protection

Clause." *Id.* Proxy discrimination is a recognized exception to *Geduldig* so, assuming the

application of Equal Protection is correct; the decision would not terminate the litigation. Supra at

15-17. The Court's Order raised several important questions and outstanding issues regarding the

Equal Protection claim and Defendants' defenses, which could not be answered "*at this stage*,

especially when contrasted against the Plaintiffs' allegations." *Id.* at 28. There is reason to believe

the Ninth Circuit will agree with this Court that the difficulty of deciding qualified immunity at the

motion to dismiss stage requires a court to decide "'far-reaching constitutional questions on a nonexistent factual record'" and "'the exercise of that authority is not a wise choice in every case.'" *Id*. (quoting *Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004). Defendants' Motion does not address the Court's analysis holding a final determination of Dr. Hamso's qualified immunity defense was "premature and thus far underdeveloped" but could ultimately be decided when facts providing context are presented at the summary judgment stage *Id.* at 29.

Defendants do not specifically address or reference any controlling cases questioning the Court's finding that Dr. Hamso is not entitled to qualified immunity on Plaintiffs' Due Process Claim. Supra at 17-18. Defendants vaguely reference *Geduldig,* which does not address a procedural due process claim as alleged in this action. Defendants do not contest the Court determination that Plaintiffs have a property interest in Medicaid benefits under federal law and that Defendants failed to provide due process when denying or delaying claims to these benefits but instead contend there is no clearly establish right to coverage for genital reconstructive surgery. Order at 30. The Court noted Defendants appear to concede that Plaintiffs' Due Process claim alleges a violation of a property interest without the constitutional right to due process. *Id.* at 30 n. 12. Defendants do not challenge Plaintiffs are eligible and enrolled in Medicaid and that fifty (50) years ago *Goldberg v. Kelly*, 397 U.S. 254, 261-63 (1970) recognize "that a person can have a property interest in continuing to receive government benefits." *Id.* at 31.

Defendants do not challenge at this stage that genital reconstructive surgeries "have routinely been covered when requested by cisgender individuals for medically necessary reasons applying to them" and the same CPT codes apply to surgical procedures whether performed on a transgender person or on a cisgender person for some other medical reason "independent of the particular surgical procedures themselves or the Medicaid's Act's flexibility in providing

coverage." *Id.*at 32. The Court did not determine Dr. Hamso would never be entitled to qualified immunity only that "the procedural posture of the case and the disputed facts make this a question best resolved through a summary judgment motion." *Id.*at 32-33. Defendants do not address the Court's reasoning for delaying a decision or cite to any controlling question of law that conflicts with the decision.

## III.   INTERLOCUTORY APPEAL CONCLUSION

The Court must weigh the asserted need for an interlocutory appeal with the strong policy of discouraging 'piecemeal appeals.'" *Miesen* at *27-28. Defendants have not meet the burden for allowing piecemeal appeals under § 1292(b). Defendants have not established any exceptional circumstances or controlling clear questions of law as to which there is a substantial ground for difference of opinion in the Ninth Circuit. Defendants' arguments are merely a rehashing of the legal contentions and nonbinding case law the Court rejected or distinguished in it Order. The certification of the Order on the motion to dismiss because Defendants disagree with the Court's well-reasoned analysis is not sufficient to meet the § 1292(b) requirements. An interlocutory appeal will burden and increase the costs for the Plaintiffs, further delay the medically necessary reconstructive surgeries the Plaintiffs have waited years to receive while continuing to suffer from the symptoms of gender dysphoria, waste appellate resources, and will not result in the ultimate termination of this action.  Therefore, the Motion should be denied.

## IV.   THE COURT SHOULD DENY A STAY OF THIS ACTION PENDING THE APPEAL

Section 1292(b) provides "That the application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall order." The statutory language places the burden on Defendants to establish if the competing interests of the parties justifies the Court, in the exercise of its discretion, to grant a stay.

Defendants seek a stay if the Court certifies an interlocutory appeal "until the Ninth Circuit rules on the dispositive questions" or, if the Court declines to grant certification, for purposes of "judicial efficiency." Motion at 16. Defendants' conclusory justifications do not weigh in favor granting a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) ("'Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.'") (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). The Ninth Circuit in *Lockyer* identified the interests district courts should weigh: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer [if the case is allowed] to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX*, 300 F.2d at 268) (cleaned up).

In *Lockyer* the Ninth Circuit noted the Supreme Court has found "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. . . ." *Id.* at 1109-1110 (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). This principle is applicable to the present case because staying the action against Defendant Jeppensen would have a similar affect. The Ninth Circuit recognized in applying *CMAX's* "hardship or inequality" framework there is a difference in delaying cases only seeking damages where there was no continuing harm and cases where injunctive or declaratory relief is sought. *Lockyer,* 398 F.3d at 1110. This action is an example where delays due to a stay would result in egregious and irreparable harm to Plaintiffs. Plaintiffs only sought damages against Dr. Hamso. Defendant Jeppensen is not a party to the qualified

immunity appeal. The appeal concerns whether Dr. Hamso is entitled to qualified immunity under the Equal Protection and Due Process claims. Plaintiffs have requested injunctive and declaratory relief on the constitutional claims and the statutory claims under Section 1557 of the ACA and the Medicaid Act. Plaintiffs are requesting the Court to enjoin and declare the policy exclusion which discriminates against transgender persons violates Equal Protection, Section 1557, the Medicaid Act, and denies them Due Process. Order at 8.

Plaintiff MH has been waiting for Defendants to approve medically necessary surgery since March 10, 2021 when her doctor sought prior authorization. Dkt. 1 at ¶ 119. Dr. Hamso denied her request on March 26, 2021 because MH allegedly had not completed 12 months of hormone therapy as recommended by the WPATH standards. *Id.* at ¶ 120 & ¶ 128. At a fair hearing MH presented documentation of completing 12 months of hormone therapy which the Hearing Officer found met the WPATH standard. *Id.* at ¶ 132 & ¶ 136. The nurse reviewer then testified MH was not eligible because reconstructive surgeries for transgender individuals was considered "cosmetic." *Id.* at ¶ 130 & ¶ 131. MH continued to seek authorization and filed another appeal but only was told it was being reviewed. Order at 5. In May 2022, TB sought authorization for gender-affirming surgery which she and her mother continued to request. TB is still waiting for a decision. Order at 6-7.

Plaintiffs filed their Complaint on June 20, 2023. Defendants have succeeded in delaying the ultimate outcome of this action by filing a Motion to Dismiss. After the Motion was denied, Defendants appealed the denial of qualified immunity and failed to submit Scheduling and Litigation Plans further delaying a final Judgment. Defendants in this Motion have reframed the denial of coverage from the WPATH standards and because reconstructive surgery for transgender persons is considered "cosmetic." Defendants' third rationale is that the exclusion does not

consider transgender status but is simply a coverage issue which excludes "genital reconstruction surgery to treat the condition of gender dysphoria." Order at 19. Defendants do not address the fact that only transgender persons would seek reconstructive surgery to treat gender dysphoria and the same surgeries "have routinely been covered *when requested by cisgender individuals* for medically necessary reasons applying to them." Order at 32 (emphasis in original).

Defendants' contention that the "hardship or inequity" and the "orderly course of justice" heavily favor granting a stay to preserve the status quo because "Plaintiffs will suffer no added hardship" is disingenuous and callous. Motion at 17. Plaintiffs' requests for reconstructive surgery is medically necessary to alleviate the symptoms of gender dysphoria as recommended by their healthcare providers as documented in the sealed exhibits submitted with the Complaint. Dkt. 1 at ¶ 106-¶ 118, ¶ 160-¶169, ¶ 177-¶180. As a consequence of the discriminatory exclusion Plaintiffs "have suffered, and are continuing to suffer severe emotional, mental, and psychological distress." *Id.* at ¶ 20. *See i.e.* Order at 7 (quoting ¶ 177 & citing ¶178).

> Our surgical team . . . and four independent mental health professionals have thoroughly assessed this patient using the WPATH Standards of Care and have determined vaginoplasty to be a medically necessary procedure for [TB]. In our assessment, delay or denial of this medically necessary procedure would harm the health of this patient and put her well-being at risk."). This letter was supported by additional letters from TB's psychiatrist in Idaho, her child psychiatrist from Colorado, her licensed clinical social worker in Idaho, and her psychologist in Idaho. "In addition to clinically significant distress, untreated gender dysphoria can cause anxiety, depression, and self-harm, or suicidal ideation." Dkt. 1 at ¶ 39.

"Untreated gender dysphoria often intensifies with time. The longer an individual goes without or is denied adequate treatment for gender dysphoria, the greater the risk of severe harm to the individual's health." *Id.* at ¶ 40. Decades of research and clinical practice has shown that gender-affirming medical care, including surgery, can be lifesaving treatment and has a positive

impact on the short- and long-term health outcomes for transgender people. *Id.* at ¶ 56.[14]

Each day of delay causes needless and cruel physical and psychological harm. Prolonging and delaying this action would result in substantial harm to the Plaintiffs. The mother of TB filed a Declaration in support of allowing TB to proceed anonymously using a pseudonym. Dkt. 6-3. TB's mother expressed the fear that delaying TB's medically necessary reconstructive surgery had and would continue to cause TB substantial harm. *Id.* at ¶ 11 ("The long delay in receiving Medicaid approval for her gender affirming surgery has made TB very mentally fragile and I am afraid she will once again lose hope and attempt to take her life.") She also stated how TB's transgender status affected her ability to practice her religion without fear and how TB could not attend a local college because of the fear TB would suffer severe psychological distress that would be devastating to her mental health. *Id.* at ¶ 13 & ¶ 20.

Defendants fail to explain how a stay would "clarify outstanding legal questions or obviate the need for further proceeding" and is a hardship or is inequitable. These considerations are not "rare" and arise in all appeals without the issuance of a stay. Defendants do not explain how the constitutional clams and the separate ACA and Medicaid Act statutory claims are "intertwined" with the qualified immunity appeal or how they would be rendered moot by a successful appeal. Motion at 18. The "competing interests" of "hardship or inequity" and the "orderly course of justice" weigh heavily against granting a stay. A stay will needlessly prolong medically necessary

---

[14] The American Medical Association, the Endocrine Society, the American Psychiatric Association, the American Psychological Association, the American College of Obstetrics and Gynecology, the American Academy of Family Physicians, and other major professional medical organizations recognize that gender affirming surgeries are safe and effective treatments for gender dysphoria, and that access to such treatments improves the health and well-being of transgender individuals. Each of these groups has issued statements in support of the WPATH Standards of Care. And, each of these groups has publicly opposed prohibitions on insurance coverage for transition-related health care. *Id.* at ¶ 58. *See also Doe v. Ladapo*, 2023 U.S. Lexus 99603 at *13-*14.

treatment of their gender dysphoria and the continuing violation of basic constitutional rights solely because of their transgender status which constitute a discrete and politically powerless minority. The Court has not foreclosed Dr. Hamso the opportunity to renew her defense of qualified immunity on summary judgment. If Defendants succeed on the qualified immunity appeal or the Court should subsequently determine Dr. Hamso is immune, Plaintiffs will not be compensated for the needless delay. The Court should deny the stay.

      DATED: August 29, 2023.

                                      IDAHO LEGAL AID SERVICES, INC.

                                      /s/ Howard A. Belodoff
                                      Howard A. Belodoff
                                      Attorneys for Plaintiffs