UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MH and TB, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> DAVE JEPPESEN, in his official capacity as the director of the Idaho Department of health and Welfare; DR. MAGNI HAMSO, in her official capacity as the medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, <br><br> Defendants, | Case No.: 1:22-cv-00409-REP <br><br> MEMORANDUM DECISION AND ORDER RE: <br><br> DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND STAY PENDING APPEAL <br>(Dkt. 50) <br><br> DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY <br>(Dkt. 59 |

Pending before the Court are (i) Defendants' Motion for Certification of Interlocutory Appeal and Stay Pending Appeal (Dkt. 50), and (ii) Defendants' Motion for Leave to File Supplemental Authority (Dkt. 59). As explained below, the Court denies the former motion and grants the latter.

### I. BACKGROUND

Plaintiffs are transgender women – their natal sex is male but they identify as female. Compl. at ¶¶ 23-24, 96, 158 (Dkt. 1). Both have been diagnosed with gender dysphoria and their medical providers have recommended that they receive genital reconstruction surgery as medically-necessary treatment. *Id*. at ¶¶ 106, 116, 163, 169. They bring this action to challenge Idaho Medicaid's allegedly discriminatory policies that deny transgender individuals essential and sometimes life-saving healthcare. *Id*. at ¶ 1 (Dkt. 1). To wit, they contend that, while Idaho Medicaid excludes coverage for genital reconstruction surgery that is medically necessary for

**MEMORANDUM DECISION AND ORDER - 1**

transgender individuals to treat the clinically-significant distress caused by gender dysphoria, cisgender individuals (those whose gender identity corresponds with their natal sex) receive coverage for the same or similar health care as a matter of course. *Id*. at ¶¶ 1, 7, 85-86, 193, 195-196, 201-202, 207-208.

Plaintiffs originally asserted the following claims against Defendants Idaho Department of Health and Welfare ("IDHW"); Dave Jeppesen, IDHW's director, in his official capacity; and Dr. Magni Hamso, the medical director for IDHW's Division of Medicaid, in her official and individual capacities (for all but the Patient Protection and Affordable Care Act claim): (i) unlawful discrimination on the basis of sex in violation of section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 (First Claim for Relief); (ii) violation of the Medicaid Act's Availability Requirements, 42 U.S.C. § 1396a(a)(10)(A) (Second Claim for Relief); (iii) violation of the Medicaid Act's Comparability Requirements, 42 U.S.C. § 1396a(a)(10)(B) (Third Claim for Relief); (iv) violation of the Equal Protection Clause of the Fourteenth Amendment (Fourth Claim for Relief); (v) violation of the Medicaid Act's Due Process Requirements, 42 U.S.C. § 1396a(a)(3) (Fifth Claim for Relief); and (vi) violation of the Due Process Clause of the Fourteenth Amendment (Sixth Claim for Relief). *Id*. at ¶¶ 189-228.

On November 25, 2022, Defendants moved to dismiss Plaintiffs' Complaint in two respects. First, Defendants challenged the viability of Plaintiffs' Equal Protection claim (Fourth Claim for Relief) by arguing that Idaho's Medicaid program provides "equal coverage to Plaintiffs as to other recipients." Mem. ISO MTD at 3-6 (Dkt. 19-1). Second, Defendants challenged Dr. Hamso's individual liability by arguing that (i) compensatory damages for emotional distress cannot be awarded under the Medicaid Act as a matter of law (Second, Third, and Fifth Claims for Relief), and (ii) she is entitled to qualified immunity in any event (Second, Third, Fourth, Fifth, and Sixth Claims for Relief). *Id*. at 6-13.

**MEMORANDUM DECISION AND ORDER - 2**

On June 20, 2023, the Court granted in part and denied in part Defendants' Motion to Dismiss.  *See generally* 6/20/23 MDO (Dkt. 36).  As to Plaintiffs' Equal Protection claim (Fourth Claim for Relief), the Court determined that Plaintiffs, as transgender individuals, sufficiently alleged that they were treated differently than similarly-situated cisgender individuals when, pursuant to Defendants' policy, they were denied medically-necessary genital reconstruction surgery to treat their gender dysphoria.  *Id*. at 18-23.  Defendants' Motion to Dismiss was therefore denied in this respect.  *Id*. at 33.

As to Plaintiffs' claims against Dr. Hamso individually, the Court determined that compensatory damages against her in her individual capacity are not available under the Medicaid Act.  *Id*. at 23-24.  Defendants' Motion to Dismiss was therefore granted in this respect and Plaintiffs' Second, Third, and Fifth Claims for Relief against Dr. Hamso individually were dismissed.  *Id*. at 33.  However, the Court determined that Dr. Hamso is not entitled to qualified immunity at this time on Plaintiffs' Equal Protection claim (Fourth Claim for Relief) and Due Process claim (Sixth Claim for Relief).  *Id*. at 24-32.  Defendants' Motion to Dismiss was therefore denied in these respects.  *Id*. at 33.

On July 18, 2023, Dr. Hamso appealed the Court's denial of her Motion to Dismiss under qualified immunity.  Not. of Appeal (Dkt. 40).  Seven days later, Defendants filed the at-issue Motion for Certification of Interlocutory Appeal and Stay Pending Appeal.  Mot. for Interloc. Appeal (Dkt. 50).  Defendants request therein that (i) the Court certify the remainder of its June 20, 2023 Memorandum Decision and Order under 28 U.S.C. § 1292(b); and (ii) stay all proceedings pending appeal.  *See generally* Mem. ISO Mot. for Interloc. Appeal (Dkt. 50-1).

## II.  LEGAL STANDARD

As a general rule, a party may seek review of a district court's rulings only after the entry of final judgment.  *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1027 (9th Cir. 1981).  A district

**MEMORANDUM DECISION AND ORDER - 3**

court may still except an order from this "final judgment rule" and certify it for immediate appeal if: (i) the order "involves a controlling question of law"; (ii) "as to which there is substantial ground for difference of opinion"; and (iii) "an immediate appeal of the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Interlocutory certification is a narrow exception to be applied sparingly and in exceptional circumstances. *In re Cement*, 673 F.2d at 1026; *see also James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002) ("Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly."); *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (interlocutory appeals should be granted "only in extraordinary cases," and not "merely to provide review of difficult rulings in hard cases."). "The standard to certify a question of law is high and a district court generally should not permit such an appeal where it 'would prolong the litigation rather than advance its resolution.'" *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D. Cal. 2008) (quoting *Syufy Enter. v. Am. Multi-Cinema, Inc.*, 694 F. Supp. 725, 729 (N.D. Cal. 1988)). "'In applying these standards, the court must weigh the asserted need for the proposed interlocutory appeal with the policy in the ordinary case of discouraging piecemeal appeals.'" *Id*. (quoting *In re Heddendorf*, 263 F.2d 887, 889 (1st Cir. 1959)). The party pursuing the interlocutory appeal bears the burden of demonstrating that the three certification requirements of § 1292(b) are met. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

"The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court." *U.S. v. Tenet Healthcare Corp.*, 2004 WL 3030121, at *1 (C.D. Cal. 2004) (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)). "'Even when all three statutory criteria are satisfied, district court judges have 'unfettered discretion' to deny certification.'" *Id*. (quoting *Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510, at *3 (D. Or.

**MEMORANDUM DECISION AND ORDER - 4**

2008)). If the district court grants certification, "the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (citing 16 Wright, Miller & Cooper § 3929, at 363).

### III.  DISCUSSION

Defendants contend that the Court should permit them to file an interlocutory appeal under 28 U.S.C. § 1292(b). They submit that the Court's June 20, 2023 Memorandum Decision and Order "presents [four][1] primary controlling questions of law as to which there is substantial ground for difference of opinion." Mem. ISO Mot. for Interloc. Appeal at 4 (Dkt. 50-1). According to Defendants, those questions are: (i) "whether under *Geduldig v. Aiello*, 417 U.S. 484, 496 (1974), coverage policies concerning treatment for gender dysphoria do not constitute discrimination"; (ii) "whether heightened scrutiny applies to persons seeking treatment for gender dysphoria"; (iii) "whether, if heightened scrutiny applies, policy decisions about coverage are subject to rational basis review"; and (iv) "whether a right exists to coverage of surgical treatments for gender dysphoria." *Id*. at 5-15. Upfront resolution of these questions by the Ninth Circuit, Defendants claim, "will materially advance the end of this litigation," thus warranting the requested certification for immediate interlocutory appeal of the Court's otherwise unappealable June 20, 2023 Memorandum Decision and Order. *Id*. at 15-16. The Court disagrees.

**A.     Defendants Have Not Met Their Burden to Establish That There Are Controlling Questions of Law as to Which There Are Substantial Grounds For Difference of Opinion**

The first requirement for granting permission for an interlocutory appeal is that the interlocutory order at issue must involve a controlling question of law. *Supra*. Although

---

[1] Defendants' briefing states that there are three such questions before going on to discuss four. Mem. ISO Mot. for Interloc. Appeal at 4-15 (Dkt. 50-1).

**MEMORANDUM DECISION AND ORDER - 5**

"Congress did not specifically define what it meant by 'controlling' as used in Section 1292(b)," a question of law is controlling if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court" and it is not collateral to the major issues of the case. *In re Cement*, 673 F.2d at 1026. Likewise, while the Ninth Circuit has not expressly defined what constitutes a controlling "question of law" for permissive appeal, "a number of other courts have indicated that a 'pure question of law,' rather than a mixed question of law and fact or the application of law to a particular set of facts, is required." *Hilliard v. Twin Falls Cnty. Sheriff's Office*, 2023 WL 156822, at *3 (D. Idaho 2023) (collecting cases); *see also In re Cement*, 673 F.2d at 1026-27 (describing controlling question of law as something "as fundamental as the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied") (quoting *U.S. v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959)). "In other words, the question presented for interlocutory appeal must be one that the court of appeals could decide quickly and cleanly without having to study the record." *Andrews v. Plains All Am. Pipeline, LP*, 2022 WL 1840329 at *3 (C.D. Cal. 2022) (internal quotation marks and citation omitted).

The second requirement for granting permission for an interlocutory appeal is the existence of substantial grounds for difference of opinion regarding the controlling question of law. *Supra*. This prong is satisfied when "novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Traditionally, a substantial ground for difference of opinion exists "where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch*, 611 F.3d at 633 (internal quotations omitted). Importantly, a substantial difference of opinion is not present simply because a court is

**MEMORANDUM DECISION AND ORDER - 6**

the first to rule on the particular question or just because one party argues that one precedent rather than another is controlling. *Id*. Further, mere disagreement with the court's ruling, or the court's application of settled law to the facts, does not create a substantial ground for difference of opinion. *Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1090; *see also Couch*, 611 F.3d at 633.

Here, none of Defendants' proffered bases for certifying the Court's June 20, 2023 Memorandum Decision and Order for interlocutory appeal involve a controlling question of law, let alone one as to which there is substantial ground for difference of opinion.

1. *Geduldig* Does Not Present a Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion

In denying Defendants' Motion to Dismiss as to Plaintiffs' Equal Protection claim (Fourth Claim for Relief), the Court simply recognized that Plaintiffs had sufficiently stated an Equal Protection claim:

> Plaintiffs' Equal Protection claim is anchored by their allegation that Defendants have a "policy of refusing to authorize medically necessary genital reconstruction and gender-affirming surgery for the treatment of gender dysphoria." Plaintiffs claim that Defendants' policy operates to classify transgender people (classified group) and deny them medically necessary genital reconstruction surgery to treat gender dysphoria. Meanwhile, cisgender individuals (similarly-situated group) routinely receive coverage for the same or similar procedures, namely medically necessary genital reconstruction surgery to treat ailments other than gender dysphoria. From this disparate treatment, Plaintiffs assert both facial and as-applied Equal Protection claims.

6/20/23 MDO at 18-19 (Dkt. 36) (citations omitted). To be clear, this was not a finding on the merits, but rather an acknowledgment that Plaintiffs' allegations supported a claim under the Equal Protection Clause. *Geduldig* does not compel a different outcome.

In *Geduldig*, the Supreme Court found no Equal Protection violation for a state social welfare program that excluded coverage for pregnancy-related costs because, while a pregnancy classification impacts only women, the program did not classify on the basis of sex since "[t]he

**MEMORANDUM DECISION AND ORDER - 7**

fiscal and actuarial benefits of the program . . . accrue[d] to members of both sexes." *Geduldig*, 417 U.S. at 496 n.20. The Court appreciates Defendants' attempt to analogize *Geduldig* to the instant action, but its reach is not as expansive as they insist. *Geduldig's* precedential import is that pregnancy classifications do not automatically trigger a heightened scrutiny analysis, even if those classifications impact only women. *Geduldig* does not – nor can it – instantly apply across-the-board to altogether different policies, premised upon altogether different motivations, that allegedly discriminate against gender nonconformity.

This is especially so where Plaintiffs' Complaint alternatively supports a claim of facial gender discrimination, as the Court also described:

> Instead of excluding coverage for an objectively identifiable physical condition that happens to be associated with one gender (*Geduldig*), Plaintiffs here allege that Defendants' policy excluded what is effectively a sex-change (affirming) procedure. Whereas the *condition* of pregnancy can be understood without reference to sex, gender, or transgender status, the *treatment* of gender dysphoria with genital reconstruction surgery cannot. . . Accordingly, as alleged, Plaintiffs' Complaint supports a cognizable legal theory that Defendants' policy facially discriminates against transgender persons.

6/20/23 MDO at 22-23 (Dkt. 36) (emphasis in original, citations omitted). That is to say, as Plaintiffs allege, Defendants' plan does not merely exclude a gender-neutral physical condition from coverage, it excludes treatments for a condition that cannot be understood without reference to sex, gender, or transgender status. At bottom, the inherent nuance between the different classifications here and in *Geduldig* represents a classic "apples to oranges" comparison that precludes *Geduldig's* application as a matter of law to bar Plaintiffs' case. Defendants' arguments to the contrary are well-taken but reflect only a claim that the Court misapplied *Geduldig* to Plaintiffs' alleged facts. Without more, these arguments do not validate *Geduldig* as presenting a controlling question of law about how equal protection theories apply to claims by persons with gender dysphoria.

**MEMORANDUM DECISION AND ORDER - 8**

Still, it must be said that the Court did not wholly reject *Geduldig* when denying Defendants' Motion to Dismiss. To the contrary, the Court relied on portions of *Geduldig's* rationale to support Plaintiffs' claim that Defendants' policy causes disparate impact between transgender and cisgender persons. 6/20/23 MDO at 20-22 (Dkt. 36). This is because *Geduldig* expressly recognized the possibility of proxy discrimination. *Geduldig*, 417 U.S. at 496 n.20 ("Absent a showing that distinctions involving pregnancy *are mere pretexts* designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.") (emphasis added). So, *Geduldig* acknowledged that proxies could establish a discriminatory law or policy, just that a pregnancy exclusion in that instance did not serve as such a proxy for singling out women because men were not comparatively advantaged. *Id*. Here, Plaintiffs describe Defendants' policy as amounting to proxy discrimination: its discrimination against genital reconstruction surgery to treat gender dysphoria operates to discriminate only against transgender individuals because a person cannot suffer from gender dysphoria without identifying as transgender. 6/20/23 MDO at 20-22 (Dkt. 36); *see also Poe v. Labrador*, 2023 WL 8935065 at *13 (D. Idaho Dec. 26, 2023) (considering *Geduldig's* recognition of proxy discrimination toward granting a preliminary injunction of a law banning the procedures at issue here, but for minors). Accepting Plaintiffs' allegations as true, *Geduldig* aligns with this approach.

Finally, and possibly most critically, the Ninth Circuit recently addressed *Geduldig's* (in)applicability in a different, but still similar, setting. *See Hecox v. Little*, 79 F.4th 1009 (9th Cir. 2023) (pending en banc review).[2] There, the plaintiffs brought a constitutional challenge to

---

[2] *Hecox* was resolved after the Court's June 20, 2023 Memorandum Decision and Order and after Defendants' opening briefing in support of their Motion.

**MEMORANDUM DECISION AND ORDER - 9**

Idaho's Fairness in Women's Sport's Act which prohibited transgender athletes from participating in women's sports. *Id*. at 1017. Though faced with a different procedural posture (an appeal of the district court's decision to grant the plaintiffs' motion for preliminary injunction) and a more developed record, the Ninth Circuit commented on the defendants' reliance on *Geduldig* in support of their appeal:

> Appellants likewise misrely on a footnote in *Geduldig v. Aiello* for the proposition that a legislative classification based on biological sex is not a classification based on transgender status. In *Geduldig*, the Supreme Court stated that a classification based on pregnancy is not per se a classification based on sex, even though "it is true that only women can become pregnant." *However, the Court held that "distinctions involving pregnancy" that are "mere pretexts designed to effect an invidious discrimination" are subject to heightened scrutiny. Here, it appears that the definition of "biological sex" was designed precisely as a pretext to exclude transgender women from women's athletics – a classification that Geduldig prohibits*.

*Id*. at 1025 (emphasis added, internal citations omitted). In short, the Ninth Circuit read *Geduldig* consistent with the way the Court did when denying Defendants' Motion to Dismiss here. That is, the Ninth Circuit similarly interpreted *Geduldig* as accepting that proxy discrimination can support an Equal Protection claim, while at the same time finding that the statute at issue there similarly was intended to single out transgender individuals based solely on their transgender status. *Compare with Poe*, 2023 WL 8935065 at *13 ("[T]here is every indication that HB71 was intended to single out transgender children based solely upon their transgender status."). Therefore, even if *Geduldig* presented a controlling question of law, the Ninth Circuit's recent comment on these points necessarily undercuts any claim that there are substantial grounds for difference of opinion. *See Couch*, 611 F.3d at 633 ("Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question *and the court of appeals of the circuit has not spoken on the point* . . . .") (emphasis added, internal quotations omitted).

**MEMORANDUM DECISION AND ORDER - 10**

Certification for interlocutory appeal is not warranted on this issue.[3]

2. The Applicable Scrutiny Level is Not a Controlling Question of Law as to Which There is Substantial Ground for Difference of Opinion

As discussed in the Court's June 20, 2023 Memorandum Decision and Order, laws alleged to violate the Equal Protection Clause are generally subject to one of three levels of scrutiny by courts: strict scrutiny, intermediate scrutiny, or rational basis review. 6/20/23 MDO at 14-15 (Dkt. 36) (noting too that courts routinely equate intermediate scrutiny with heightened scrutiny). To that end, the Court indicated that "[c]ourts in this district have recognized transgender persons as their own gender-based, quasi-suspect class," to which heightened, or intermediate scrutiny applies. *Id*. at 20; *see also id*. at 28 (in qualified immunity context: "[D]iscrimination against transgender individuals is a form of gender-based discrimination subject to intermediate scrutiny. As well, transgender status is considered a quasi-suspect classification that is independently subject to heightened scrutiny.") (citations omitted).

Assuming that *Geduldig* does not apply, Defendants dispute that heightened scrutiny attaches to Plaintiffs' Equal Protection claim.[4] They make two interrelated counterarguments to this point that frame alternate bases for certifying the Court's June 20, 2023 Memorandum Decision and Order for interlocutory appeal: (i) that there are substantial grounds to dispute

---

[3] Defendants ask that the Court consider supplemental authority on this issue (and others related to their interlocutory appeal efforts). Mot. for Leave to File Supp. Authority (Dkt. 59) (citing *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460 (6th Cir. 2023)). The Court grants the Motion and recognizes this recent authority as adding to the evolving state of law on related matters. However, it does not alter the Court's findings here, owing to the Ninth Circuit's consideration of those same related matters – at least to an extent similar enough for the Court to resolve Defendants' Motion for Certification of Interlocutory Appeal and Stay Pending Appeal.

[4] Of note, Defendants' briefing on their Motion to Dismiss avoided any discussion about the level of scrutiny applicable to Plaintiffs' claims. Mem. ISO MTD at 5 ("As an initial matter, there is no need to go through a broad legal analysis as to whether transgender status is a suspect class because there is direct authority on the narrower question about payment coverage in a social welfare program.").

**MEMORANDUM DECISION AND ORDER - 11**

whether heightened scrutiny applies to gender dysphoria; and (ii) that there are substantial grounds to apply rational basis even if gender dysphoria is subject to heightened scrutiny. Mem. ISO Mot. for Interloc. Appeal at 8-14 (Dkt. 50-1). These arguments are not persuasive – at least insofar as they do not warrant an interlocutory appeal.

To begin, Defendants misunderstand the Court's June 20, 2023 Memorandum Decision and Order. It did not turn on a particular level of scrutiny applicable to Plaintiffs' Equal Protection claim. Rather, taking Plaintiffs' allegations as true, the Court simply recognized that Plaintiffs had stated such a claim, regardless of the scrutiny level to be applied when ultimately assessing that claim's merits. *See* 6/20/23 MDO at 23 (Dkt. 36) ("Whether framed as proxy discrimination based upon disparate impact or facial discrimination based upon the wording of the policy, Plaintiffs' allegations, and the inferences drawn therefrom, state a plausible Equal Protection claim. . . . The merits of Plaintiffs' claims are not resolved here. *They depend on whether Defendants' exclusion of genital reconstruction surgery under these circumstances satisfies . . . the appropriate level of scrutiny.*") (emphasis added, internal citations omitted); *see also id*. at 28 ("There is no question that there is some nuance to plaintiffs' Equal Protection claim and Defendants' defenses thereto. For example[,] . . . . assuming differential treatment, *does Defendants' policy satisfy the applicable level of scrutiny?*") (emphasis added).

Put another way, the Court did not conclusively determine the level of scrutiny to be applied to Plaintiffs' Equal Protection claim. And even if the rational basis standard applied, Defendants' Motion to Dismiss still would have been denied because the record is too underdeveloped to support the satisfaction of even that level of scrutiny. The Court's June 20, 2023 Memorandum Decision and Order therefore does not implicate a controlling question of law in this regard. As such, Defendants are not foreclosed from making these arguments when Plaintiffs' allegations are actually tested at summary judgment.

**MEMORANDUM DECISION AND ORDER - 12**

But Defendants must contend with recent Ninth Circuit authority on the matter. Again, in *Hecox*, the Ninth Circuit confronted a different, but still comparable, situation involving Idaho's Fairness in Women's Sport's Act. *Supra*. There, the Ninth Circuit recently upheld the district court's grant of a preliminary injunction after concluding that heightened scrutiny applied because that law "discriminates against transgender women by categorically excluding them from female sports," as well as on the basis of sex. *Hecox*, 79 F.4th at 1021; *see also id*. at 1026 ("We have previously held that heightened scrutiny applies to laws that discriminate on the basis of transgender status, reasoning that gender identity is at least a 'quasi-suspect class.'") (quoting *Karnoski v. Trump*, 926 F.3d 1180, 1200-01 (9th Cir. 2019)). Plaintiffs' allegations here draw a similar through-line premised upon transgender status and sex. *See, e.g.*, *Poe*, 2023 WL 8935065 at *12-15 (granting preliminary injunction after applying heightened scrutiny to a law banning the procedures at issue here for minors because that law discriminates on the basis of both transgender status and on the basis of sex) (citing *Hecox*, 79 F.4th at 1009, 1026). All this is to say that, even if Defendants' scrutiny level-related arguments vis à vis Plaintiffs' Equal Protection claim represent controlling questions of law, the Ninth Circuit has spoken on the topic, such that there is not the requisite grounds for substantial difference of opinion to justify an interlocutory appeal. *See Couch*, 611 F.3d at 633.

Certification for interlocutory appeal is not warranted on these issues.

3. <u>Possible Due Process Protections Related to Treating Gender Dysphoria Do Not Present a Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion</u>

Defendants' Motion to Dismiss did not substantively address Plaintiffs' Due Process claim (Sixth Claim for Relief). Even so, the Court discussed that claim when resolving whether Dr. Hamso was entitled to qualified immunity. Specifically, the Court addressed whether Plaintiffs had alleged a legitimate claim of entitlement to coverage for genital reconstruction

**MEMORANDUM DECISION AND ORDER - 13**

surgery, not just a unilateral expectation of it.  For the limited purpose of Defendants' Motion to Dismiss, the Court held that they had, that it was clearly established, and that it could not be withheld without due process.  6/20/23 MDO at 29-32 (Dkt. 36).  In turn, the Court found that, until the record could be more developed, Dr. Hamso was not entitled to qualified immunity:

> As with Plaintiffs' Equal Protection claim and Dr. Hamso's qualified immunity defense to it, there are similar moving parts to Plaintiffs' Due Process claim that will undoubtedly develop over time to better inform the Court's consideration of Dr. Hamso's claim to qualified immunity there.  At this point, however, Plaintiffs' fact-dependent allegations do not compel qualified immunity as a matter of law or a corresponding dismissal.  Again, this ruling should not be understood to mean that Dr. Hamso will never be entitled to qualified immunity; rather, the procedural posture of the case and the disputed facts make this a question best resolved through a summary judgment motion.  Until then, Plaintiffs' Due Process claim (Sixth Claim for Relief) is permitted to move forward against Dr. Hamso individually.

*Id*. at 32-33.

Defendants have already appealed this aspect of the Court's June 20, 2023 Memorandum Decision and Order.  *Supra*.  From this, they argue that there are substantial questions regarding this ruling in light of *Geduldig* and that, since "[t]he Ninth Circuit will consider how *Geduldig's* rationale applies to this due process theory against Dr. Hamso, . . . it is therefore in the interest of efficiency for it to consider the validity of the theory as to the other Defendants as well."  Mem. ISO Mot. for Interloc. Appeal at 15 (Dkt. 50-1).  Defendants' argument logically tracks, but does not supply a basis for an interlocutory appeal.

It is possible that Dr. Hamso's existing appeal will shed light on Plaintiffs' Due Process claim (Sixth Claim for Relief), independent of her qualified immunity defense.  But it may not, given the contours of the defense and the procedural posture of the case.  This potential overlap on a discrete aspect of Plaintiffs' claims against Defendants does not compel certification for interlocutory appeal.  Nor does it supplant the requirement that an interlocutory appeal involve a controlling question of law as to which there is substantial ground for difference of opinion –

**MEMORANDUM DECISION AND ORDER - 14**

especially where those arguments on appeal are grounded in *Geduldig*, which the Court has already determined are insufficient for that purpose. *Supra*.

Certification for interlocutory appeal is not warranted on this issue.

**B.     Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Litigation**

Because the Court has determined that Defendants' arguments do not present controlling questions of law as to which there are substantial grounds for difference of opinion, it need not decide whether certification would materially advance the ultimate termination of the litigation. But even if that were the case, the Court still would not grant Defendants' Motion.

A district court may permit a party to appeal when it believes that an "*immediate* appeal from an order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (emphasis added). This is accomplished if an immediate appeal, decided in the appellant's favor, would "avoid protracted and expensive litigation." *U.S. Rubber Co.*, 359 F.2d at 785 (9th Cir. 1966). Examples of such appeals involve questions "relating to jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case." *Woodbury*, 263 F.2d at 787. This does not mean that an interlocutory appeal must technically end the litigation. *Id*. Rather, an "interlocutory appeal must be likely to materially speed the termination of the litigation." *Hansen v. Schubert*, 459 F. Supp. 2d 973, 1000 (E.D. Cal. 2006). "This factor is linked to whether an issue of law is 'controlling' in that the court should consider the effect of a reversal by the court of appeals on the management of the case." *Id*.

An appeal right now, following the denial of Defendants' Motion to Dismiss, does not satisfy this standard. First, since the Court's June 20, 2023 Memorandum Decision and Order, the Ninth Circuit has weighed in on matters that not only support the case moving forward, but

**MEMORANDUM DECISION AND ORDER - 15**

provide no foothold for otherwise dismissing Plaintiffs' pending claims against Defendants. *Supra* (citing *Hecox*, 79 F.4th 1009).  Second, notwithstanding Dr. Hamso's appeal, several claims against the Defendants, including Dr. Hamso, remain.  *Supra*.  While an immediate appeal of the issues raised in Defendants' Motion may provide some clarity, these other claims will necessarily stall in the interim and, with them, the overall progress of the action.  Third, if the Court granted an interlocutory appeal, not only would the case incur the delay of that appeal, a second appeal on other issues is likely regardless of the outcome of the first appeal.  Plaintiffs would then be prejudiced in having to incur substantial delay from two appeals before receiving the relief they seek (assuming they prevail).

In light of these factors, the Court will not sanction an interlocutory appeal as a means of asking the Ninth Circuit to conduct what effectively amounts to a reconsideration of the Court's earlier rulings.  It cannot be said that this action is so extraordinary that such an appeal will avoid protracted and expensive litigation to the point of materially advancing the action's ultimate termination.  Judicial economy and efficiency are better served by instead proceeding with discovery and formally testing the merits of Plaintiffs' claims at summary judgment.

Certification for interlocutory appeal is not warranted on this issue.

C.   **A Stay of the Entire Case Is Not Warranted**

Defendants argue that, even if the Court declines to grant certification under § 1292(b), judicial efficiency still warrants a stay of *all* proceedings pending Dr. Hamso's appeal, since proceedings as to her are automatically stayed.  Mem. ISO Mot. for Interloc. Appeal at 16-18 (Dkt. 50-1) ("[G]iven that automatic stay as to Dr. Hamso, it makes sense to stay the balance of the case, since it depends on the same conduct that is the subject of the interlocutory appeal by Dr. Hamso.") (internal quotation marks omitted).  While Dr. Hamso's filing of a notice of appeal divests this Court of jurisdiction "over those aspects of the case involved in the appeal," *Griggs*

**MEMORANDUM DECISION AND ORDER - 16**

*v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), it does not *ipso facto* require that the entire action be stayed.

"Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998). With this in mind, discovery and motion practice directed to Dr. Hamso as to Plaintiffs' Equal Protection and Due Process claims are stayed, given her pending qualified immunity appeal pertinent to those claims. But Dr. Hamso is also a named-Defendant in relation to other claims that Defendants did not move to dismiss, that the Court did not consider, and that exist independent of her appeal or the application of the qualified immunity defense. There is no basis to preclude litigation on these other claims during the pendency of her appeal. Moreover, that Dr. Hamso's appeal may relate in some way to certain claims asserted against Defendants does not support an all-encompassing stay at this time. How that appeal might be resolved given the factors informing a qualified immunity defense, and how that resolution might impact these other related claims, if at all, are too inchoate for the Court to find that a stay of the entire case makes sense. Just the opposite is true: given Dr. Hamso's inevitable involvement in the case – either as a Defendant or witness – and the other claims against Defendants, it is not in the interests of judicial economy to stay the action and prolong the case any longer than is necessary. The fact that the action speaks to critically-important matters taking place in 2021 relating to Plaintiffs' health and well-being, and remains in more-or-less the same procedural stage as when the action was first filed in 2022, only reinforce this point.

As the case moves forward, the Court will entertain a renewed request to stay the action in the event Dr. Hamso's appeal is not decided before the dispositive motion deadline; until then, a stay of the entire case is not warranted.

**MEMORANDUM DECISION AND ORDER - 17**

## IV.  **ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.  Defendants' Motion for Certification of Interlocutory Appeal and Stay Pending Appeal (Dkt. 50) is DENIED; and

2.  Defendants' Motion for Leave to File Supplemental Authority (Dkt. 59) is GRANTED.

By separate notice, the Court will request litigation and discovery plans from the parties in anticipation of a scheduling conference to discuss deadlines moving forward.

DATED:  March 8, 2024

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**