Howard A. Belodoff, ISB # 2290
Idaho Legal Aid Services, Inc.
1447 S. Tyrell Lane
Boise, ID 83706
Tel: (208) 807-2496 Fax: (208) 342-2561
howardbelodoff@idaholegalaid.org

Jane Gordon, ISB # 9243
Jane Gordon Law
1004 West Fort Street
Boise ID 83702
Tel: (208) 371-4747; Fax: (208) 807-2290
Jane@JaneGordonLaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MH, TB, KB, SG, AC, BM, individually, and G Doe, by and through her parents and next friends, JANE Doe and JOHN Doe,<br><br>   Plaintiffs,<br><br>vs.<br><br>ALEX ADAMS, in his official capacity as the Director of the Idaho Department of Health and Welfare; Dr. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>   Defendants. | CASE NO. 1:22-CV-409-REP<br><br>STATEMENT OF MATERIAL FACTS |

1. This action arises out of Idaho Medicaid ("Medicaid")'s unwritten policy of denying gender-affirming care for transgender Medicaid participants ("Medicaid Exclusion Policy") and the subsequent statutory enactment in HB 668 which is scheduled to be effective on July 1, 2024. Idaho Code §18-8901 and Idaho Code § 56-270 ("HB 668").

STATEMENT OF MATERIAL FACTS - 1

2. Transgender individuals are diagnosed by their doctor as suffering from the condition of gender dysphoria. *See Declaration of Marvin-Anthony Carson Alviso, MD* ("*Dr. Alviso Dec.*" and *Expert Declaration of Loren S. Schechter, M.D* ("*Dr. Schechter Dec.*").

3. Gender dysphoria is a serious medical condition that causes significant distress, anxiety, depression, as well as serious incidents of self-harm, including self-mutilation, suicide attempts, and suicide. *See Declaration of Marvin-Anthony Carson Alviso, MD* ("*Dr. Alviso Dec.*"), ¶ 21 and *Dr. Schechter Dec.* at ¶ 22.

4. Gender-affirming care and surgeries are necessary to alleviate the symptoms of gender dysphoria. *See Dr. Alviso Dec.*, ¶¶ 13, 21, 26, 38.

5. "Gender dysphoria is a serious medical condition, defined by the Diagnostic and Statistical Manual of Mental Disorders (DSM-V) published by the American Psychiatric Association as 'a difference between one's experienced/expressed gender and assigned gender, and significant distress or problems functioning.'" *Dr. Schechter Dec.* at ¶ 21. "Without treatment gender dysphoria can lead to debilitating anxiety and depression, as well as serious incidents of self-harm, including self-mutilation, suicide attempts, and suicide." *Id.*

6. The procedures used to treat gender dysphoria are medically necessary treatments for many transgender people; these procedures are properly considered as medically necessary, and are not cosmetic in nature; and these procedures are safe and effective treatments for gender dysphoria." *Id.* at ¶ 23.

7. Gender dysphoria is a condition where transgender individuals suffer psychological and mental distress because their sense of gender (gender identity) does not correspond to their sex assigned at birth. *See Dr. Alviso Dec.* ¶¶ 10 and 12.

STATEMENT OF MATERIAL FACTS - 2

8. Gender-affirming care is medical treatment that addresses feelings of gender dysphoria. The World Professional Association for Transgender Health's ("WPATH") Standards of Care, provide medically necessary gender affirming treatments include mental health care, puberty suppression, hormone therapy, and various surgical procedures to align a person's primary and/or secondary sex characteristics with the person's gender identity." *Dr. Schechter Dec*. ¶ 25 and *Dr. Alviso Dec.* ¶ 9.

9. "The broader medical community, including the American Medical Association, American Academy of Pediatrics, American Psychological Association, American Psychiatric Association, American College of Obstetricians and Gynecologists, American Academy of Family Physicians, and World Health Organization, recognize that gender-confirming surgeries are standard, appropriate, and often necessary treatments for individuals with gender dysphoria." *Dr. Schechter Dec*. at ¶ 28.

10. The contention that gender-confirming surgeries are experimental is unsupported by the professional medical consensus and prevailing standards of care for treating gender dysphoria, and is inconsistent with mainstream medical standards. The prevailing consensus of the medical community recognizes that procedures used to treat gender dysphoria are reconstructive, not experimental, and are medically necessary. *Dr. Schechter Dec*. at ¶ 46.

11. Gender-affirming surgeries are: 1) part of the core curriculum in plastic surgery resident education; and 2) a component of both the written and oral board exams in plastic surgery. Dr. Schechter has given presentations at multiple professional societies—including, the American Society of Plastic Surgeons, American Association of Plastic Surgeons, American Society for Reconstructive Microsurgery, American College of Surgeons—and none of those societies consider gender-affirming surgery experimental. In the disclosures required to give

STATEMENT OF MATERIAL FACTS - 3

presentations of this kind there is no requirement that they be called experimental. It is widely accepted by professional surgical societies that gender-affirming surgeries are not experimental. Indeed, gender-affirming surgery is part of the standard resident education in plastic surgery and, it is included in both the written and oral exams (in order to obtain board certification). *Dr. Schechter Dec.* at ¶ 48.

12. "In 2014, an impartial adjudicative board in the United States Department of Health & Human Services ("HHS") concluded, based on decades of studies, that surgical care to treat gender dysphoria is safe, effective, and medically necessary. As a result, the Centers for Medicare & Medicaid Services (CMS) within HHS started covering surgical care for gender dysphoria and continues to provide that coverage, including for patients in [Dr. Schechter's] practice." *Dr. Schechter Dec.* at ¶ 52.

13. "As a result, the Centers for Medicare & Medicaid Services (CMS) within HHS started covering surgical care for gender dysphoria and continues to provide that coverage, including for patients in [Dr. Schechter's] practice." *Id.*

14. Plaintiff MH is transgender. She was diagnosed with gender dysphoria and has undergone hormone therapy to align her physical characteristics with her gender identity. MH's medical providers referred her for medically necessary surgery to continue her transition. Dkt. 1 *Complaint.*

15. MH relies on Idaho Medicaid to cover her medical expenses. *See id.* at ¶ 10.

16. MH's medical providers referred her for medically necessary surgery to continue her transition. *See id.* at ¶¶ 9 and 14.

17. MH's doctors applied for a prior authorization to Medicaid for her medically necessary surgery to continue her transition. *See id.* at ¶14.

STATEMENT OF MATERIAL FACTS - 4

18. Medicaid denied MH's prior authorization, saying that MH had not had 12 months of hormone therapy. *See id.* at ¶ 14.

19. MH timely appealed the denial. *See id.*

20. At the fair hearing, the hearing officer found that MH had received 12 months of hormone therapy. Then, at the hearing, the nurse reviewer said that MH's request was not medically necessary and considered cosmetic surgery. *See id.* at ¶ 15.

21. IDHW and Medicaid never provided notice that her prior authorization request was considered a cosmetic surgery. *See id.* at ¶¶ 15 and 16.

22. The hearing officer remanded the request for prior authorization to IDHW to provide adequate notice of their new reason for denying her prior authorization. Four months following the remand, MH requested a second hearing to appeal the delay. Defendants denied the second hearing. *See id.* at ¶¶ 16 – 18.

23. Defendants did not make a final decision within 90 days after MH filed her second appeal, as required in the Medicaid Act. *Id.*

24. To this day, Defendants have still not made *any* decision on MH's prior authorization. *Id.*

25. Plaintiff TB is transgender. She was diagnosed with gender dysphoria and has undergone hormone therapy to align her physical characteristics with her gender identity. TB's medical providers referred her for medically necessary surgery to continue her transition. *See id.* at ¶¶ 11, 12, 19.

26. TB relies on Idaho Medicaid to cover her medical expenses. *Id.* at ¶ 13.

27. Similarly to MH, TB's doctors requested prior authorization for gender affirming surgery from Medicaid. *Id.* at ¶ 19.

STATEMENT OF MATERIAL FACTS - 5

28. Defendants have failed to authorize or deny TB's prior authorization. *Id.* at ¶¶ 19 - 22.

29. Defendants previously refused to approve Plaintiffs' surgeries under an unwritten Medicaid Exclusion Policy that gender-affirming surgery would not be approved.

30. In May 1, 2023, Governor Brad Little filed a letter he signed addressed to Dave Jeppesen the former Director of the Idaho Department of Health and Welfare. Dkt. 33-1.

31. The Governor indicated the letter was a response to this action. The Governor stated "I oppose Idaho Medicaid using public funds to pay for irreversible sex reassignment surgeries, puberty blockers, or hormones for the purpose of changing the appearance of any child's or adult's sex" and directing the Department to implement a policy to exclude Medicaid coverage for these medically necessary treatments. Dkt. 33-1.

32. The 2024 Idaho Legislature statutorily enacted HB 668 to codify the Medicaid Exclusion Policy's prohibition on the use of public funds and Medicaid to reimburse and cover the provision of surgical operations and medical interventions for medically necessary gender-affirming-care for transgender Medicaid participants diagnosed with gender dysphoria. Idaho Code § 18-8901 and Idaho Code § 56-270.

33. The Medicaid Exclusion Policy and HB 668 target transgender individuals because they are the only persons who need medically necessary treatment for the medical condition of gender dysphoria.

34. Medicaid will continue to reimburse and provide coverage to treat the same or similar medically necessary care for people not diagnosed with gender dysphoria. *See* Idaho Code §18-8901(1).

35. The Medicaid Exclusion Policy and HB 668 will prevent physicians and other medical providers from prescribing medically necessary treatments and counseling for all transgender patients who are Idaho Medicaid participants.

36. Medical care has been denied to transgender individuals who have been diagnosed with gender dysphoria for medically necessary procedures that are not for gender-affirming care. *See Declaration of Misa Perron- Burdick, MD MAS*.

37. When individuals are diagnosed with gender dysphoria, the prior authorizations to health insurance for their medical treatment are not approved, even though the request is for medically necessary care that is not for treatment of their gender dysphoria or to provide gender affirming care. *See id.*

38. HB 668's Legislative Intent was to prohibit the use of public funds for "surgical operations and medical procedures" . . . "when used for purposes of altering the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex, . . ." Idaho Code § 18-8901(1)(a).

39. HB 668 incorporates the specifically prohibited gender-affirming medical care and surgical procedures identified in Idaho Code § 18-1506C(3) if provided for the purpose of attempting to alter or affirm a transgender individual's perception of their sex if that perception is inconsistent with the transgender individual's biological sex which was assigned at birth.

40. HB 668 allows "surgical operations or medical interventions" to treat injuries caused by the performance of gender transition procedures. Idaho Code § 18-8901(1)(b).

41. HB 668 specifically exempts cisgender individuals from the prohibition. Idaho Code §18-8901(1).

STATEMENT OF MATERIAL FACTS - 7

42. The Medicaid Exclusion Policy and HB 668 limit the amount, duration, or scope of medical assistance and the treatment available for transgender Medicaid participants diagnosed with gender dysphoria while the same or similar medical assistance is fully reimbursed and covered for cisgender Medicaid beneficiaries who have different diagnoses, types of illness, and medical conditions other than gender dysphoria.

43. HB 668 permits cisgender individuals to receive the prohibited procedures in Idaho Code § 18-1506C(3) as long as it is not for "the purpose of altering the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex." Idaho Code § 18-8901(1)(a).

44. HB 668 exempts cisgender individuals from the prohibition against using public funds for medical treatment for diagnoses, types of illness, and medical conditions other than gender dysphoria. Idaho Code §18-8901(1).

45. The Medicaid Exclusion Policy's and HB 668's prohibition against using public funds and Medicaid reimbursement and coverage for medically necessary gender-affirming care violate Medicaid's availability requirement, 42 U.S.C. § 1396a(a)(10)(A) and comparability requirement, 42 U.S.C. § 1396a(a)(10)(B), is not in the best interests of Plaintiffs and violates the Medicaid Act, 42 U.S.C. § 1396a(a)(19).

46. Plaintiffs will be irreparably harmed if Medicaid does not cover or reimburse their medically necessary gender-affirming care.

Dated this 12th day of June, 2024.

/s/ Howard A. Belodoff
Howard A. Belodoff

/s/ Jane Gordon
Jane Gordon
Attorneys for Plaintiffs

STATEMENT OF MATERIAL FACTS - 8