# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MH, TB, KB, SG, AC, BM, individually, and G Doe, by and through her parents and next friends, JANE Doe and JOHN Doe,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ALEX ADAMS, in his official capacity as the Director of the Idaho Department of Health and Welfare; DR. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>    Defendants, | Case No.: 1:22-cv-00409-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(Dkt. 131)** |

Pending before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 131). Having considered the record and participated in oral argument, the Court denies the Motion because Plaintiffs have not demonstrated that they will be irreparably harmed in the absence of injunctive relief.

## I.  BACKGROUND

Plaintiffs are transgender individuals – they have gender identities that differ from their assigned sexes at birth. Each has been diagnosed with gender dysphoria and their medical providers have recommended that they receive gender-affirming care as medically-necessary treatment. Plaintiffs are also Idaho Medicaid beneficiaries. They bring this action to challenge (i) Idaho Medicaid's original policy of denying gender-affirming care for transgender individuals

**MEMORANDUM DECISION AND ORDER - 1**

seeking treatment for gender dysphoria (the "Medicaid Exclusion Policy"), and (ii) more recently

via their Amended Complaint, Idaho Code §§ 18-8901 and 56-270 (collectively "HB 668")

which went into effect on July 1, 2024 and formally prohibits the expenditure of state funds – to

include Medicaid payments – for that same gender-affirming care.

At bottom, Plaintiffs contend that, while the Medicaid Exclusion Policy and HB 668

exclude coverage for gender-affirming care that is medically necessary for transgender

individuals to treat the clinically-significant distress caused by gender dysphoria, cisgender

individuals (those whose gender identities correspond to their natal sex) receive coverage for the

same or similar health care as a matter of course.  They assert that this violates the Patient

Protection and Affordable Care Act's sex discrimination provision; the Medicaid Act's

availability, comparability and due process requirements; as well as the Equal Protection and

Due Process Clauses of the United States Constitution.  *See* Compl. at ¶¶ 189-228 (Dkt.

1).  Plaintiffs originally asserted these claims against Defendants Idaho Department of Health

and Welfare ("IDHW"); Dave Jeppesen, IDHW's then-director, in his official capacity; and Dr.

Magni Hamso, the medical director for IDHW's Division of Medicaid, in her official and

individual capacities.  *See id.* at ¶¶ 25-27.

On March 27, 2024, Governor Little signed HB 668 into law.  HB 668 effectively

memorializes and implements the previously-unwritten Medicaid Exclusion Policy by

prohibiting the use of public funds (including Medicaid payments) for any gender-affirming care

to treat gender dysphoria.  *See, e.g.*, I.C. § 18-8901(2) ("Public funds shall not be used, granted,

paid, or distributed to any entity, organization, or individual for the provision or subsidy of any

surgical operation or medical intervention described in section 18-1506C(3), Idaho Code, for

purposes of altering the appearance of an individual in order to affirm the individual's perception

of the individual's sex in a way that is inconsistent with the individual's biological sex regardless

**MEMORANDUM DECISION AND ORDER - 2**

of whether the surgical operation or medical intervention is administered to a minor or an adult, except for exempted surgical operations or medical interventions."); *id*. at § 18-8901(4) (same as applied to "Idaho [M]edicaid program").  HB 668 was set to go into effect on July 1, 2024.

On June 4, 2024, Plaintiffs sought leave to amend their Complaint to (i) name Director Jeppesen's successor, Alex Adams, as a Defendant; (ii) add five additional Plaintiffs (KB, SG, AC, BM, and G Doe, by and through her parents); and (iii) officially bring HB 668 into the orbit of their existing claims, along with the Medicaid Exclusion Policy.  *See* Mem. ISO Mot. to Am. at 5 (Dkt. 70-2).  Defendants did not oppose Plaintiffs' amendment efforts.  On June 14, 2024, the Court granted Plaintiffs' request.  6/14/24 DEO (Dkt. 82).  Plaintiffs filed their Amended Complaint on June 17, 2024.  Am. Compl. (Dkt. 86).

That same day, Plaintiffs also filed a "Motion for Partial Summary Judgment and for a Permanent Injunction" (the "Motion for Partial Summary Judgment") (Dkt. 87).  Therein, Plaintiffs argued that, as a matter of law, the Medicaid Exclusion Policy and HB 668 (i) violate the Medicaid Act's availability and comparability requirements; (ii) are not in the best interests of Plaintiffs; and (iii) violate 42 U.S.C. § 1396a(a)(19).  Mem. ISO MPSJ at 5, 7 (Dkt. 87-1). They in turn sought a permanent injunction enjoining enforcement of the Medicaid Exclusion Policy and HB 668 statewide.  *Id*. at 24.

On June 24, 2024, Plaintiffs filed a "Motion for Expedited Briefing to Respond to the Motion for Partial Summary Judgment and for a Permanent Injunction and for a Temporary Restraining Order" (the "Motion for Temporary Restraining Order") (Dkt. 92).  They moved both to expedite the briefing on their earlier Motion for Partial Summary Judgment and for a temporary restraining order under Rule 65(b) "to preserve the status quo by enjoining the effective date of the newly-enacted HB 668[ ] while the Court considers the Motion for Partial Summary Judgment."  Mot. for TRO at 2 (Dkt. 92).

**MEMORANDUM DECISION AND ORDER - 3**

On June 25, 2024, the Court denied Plaintiffs' request for a temporary restraining order. The Court questioned the extent of Plaintiffs' claimed irreparable harm upon HB 668 going into effect on July 1, 2024, given that the Medicaid Exclusion Policy – with similar prohibitions on coverage for gender-affirming care – existed since September 2022:

> Plaintiffs' argument in this respect logically tracks. The problem, however, is when the status quo – what a temporary restraining order is intended to preserve until a court has an opportunity to pass on the action's merits – is more closely examined here. That status quo is the *current* policy in Idaho for processing Medicaid claims relating to gender-affirming care for the treatment of gender dysphoria. Indeed, that is what this action was initially premised upon, wholly independent of HB 668 and thus, untethered to its July 1, 2024 enforcement date. In other words, the status quo is reflected in the existing Medicaid Exclusion Policy which, according to Plaintiffs, *already* harms Plaintiffs by denying medically-necessary gender-affirming care (but to which Plaintiffs never previously sought injunctive relief during the approximately 20-month pendency of this case). That HB 668 memorializes and finally implements the Medicaid Exclusion Policy only supports this point.
>
> What this highlights is that, unless Plaintiffs are now receiving care (notwithstanding the Medicaid Exclusion Policy) that HB 668 will prohibit as of July 1, 2024, there is no imminent irreparable harm that will be avoided by a temporary restraining order. Absent this requisite harm, there is no basis for a temporary restraining order.
>
> These interrelated and overlapping aspects of Plaintiffs' case frame the Court's current perspective of this discrete point and drive its present analysis on that issue. Perhaps there is more to it than the Court can readily discern from either Plaintiffs' briefing or their Amended Complaint – again, that being whether (i) there are specific Medicaid benefits that each Plaintiff is currently receiving despite the Medicaid Exclusion Policy, which (ii) will no longer be available once HB 668 goes into effect. Until this is more clearly demonstrated, a temporary restraining order cannot issue.

6/25/24 MDO at 5-6 (Dkt. 93) (emphasis in original, internal citations omitted).

Shortly thereafter, on June 28, 2024, Plaintiffs filed their "Supplemental Memorandum in Response to Order Re: Motion for Expedited Briefing and for a Temporary Restraining Order to Preserve the Status Quo" (the "Renewed Motion for Temporary Restraining Order") (Dkt. 95). This filing sought to address the Court's June 25, 2024 Order and its fundamental concern about

**MEMORANDUM DECISION AND ORDER - 4**

whether Plaintiffs were receiving Medicaid benefits that would end on July 1, 2024 under HB

668.  Renewed Mot. for TRO at 4-12 (Dkt. 95).  Pointing to allegations made in their Amended

Complaint and additional declarations, Plaintiffs argued that "[t]he status quo for each Plaintiff,

who are Medicaid participants, is to continue to have their gender-affirming care as prescribed

by their doctors to treat gender dysphoria reimbursed and covered by Medicaid the same as

cisgender Medicaid participants with other medical conditions" and, in particular, that "the status

quo is continuing Medicaid coverage and reimbursement for Plaintiffs' hormone treatments,

pharmaceuticals, exams and diagnostics, and treatment plans."  *Id*. at 8.  Owing to time

constraints, Defendants did not respond.

The Court construed this filing as a renewed request for a temporary restraining order

and, satisfied for the time-being that Plaintiffs were indeed receiving gender-affirming care

covered by Medicaid up to that point in time – that is, before HB 668 went into effect – granted

that request on June 29, 2024.  *See* 6/29/24 MDO at 12-13 (Dkt. 96).  To that end, the Court

temporarily suspended HB 668's application only as to Plaintiffs' gender-affirming care until it

had the opportunity to pass on the merits of a preliminary injunction.  *Id*. at 15.  The Court then

interpreted Plaintiffs' Renewed Motion for Temporary Restraining Order as also requesting

preliminary injunctive relief and set up a briefing schedule.  *Id*. at 15-16.

HB 668 went into effect on July 1, 2024.  Consistent with the Court's June 29, 2024

Order, the temporary restraining order went into effect that same day and was scheduled to

expire on July 15, 2024.  *Id*. at 16.[1]

---

[1]  The Court rejected Plaintiffs' request that it issue a temporary restraining order
suspending HB 668's application to Plaintiffs' gender-affirming care until after the Court
resolved Plaintiffs' then-pending Motion for Partial Summary Judgment.  *See* 6/29/24 MDO at
15, n.9 (Dkt. 96) ("That is not the purpose of a temporary restraining order.  Additionally, doing
so could impermissibly extend the temporary restraining order indefinitely, depending on how
long it takes to fully brief and resolve Plaintiffs' Motion for Partial Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 5**

On July 5, 2024, Defendants opposed a preliminary injunction.  *See generally* Resp. to Renewed Mot. for TRO (Dkt. 103).  As part of their opposition, Defendants included the declaration of Juliet Charron, IDHW's Deputy Director of Medicaid and Behavioral Health. Charron Decl. (Dkt. 103-1).  The declaration discussed the gradual cessation of covered gender-affirming care due to HB 668: "The interpretation of HB 668 that [IDHW] is applying to those already on hormones for gender-affirming care is that slowly tapering a patient off of hormone therapy is allowed under HB 668."  *Id.* at ¶ 5.

On July 11, 2024, the Court (i) set a preliminary injunction hearing for July 18, 2024 to decide whether the temporary restraining order should be converted to a preliminary injunction; and (ii) correspondingly extended the temporary restraining order beyond July 15, 2024 to allow time to determine whether to issue a preliminary injunction.  7/11/24 Order at 2 (Dkt. 111).  Also on July 11, 2024, Defendants moved the Court to defer Plaintiffs' Motion for Partial Summary Judgment or for additional time to conduct discovery essential to oppose the motion (the "Motion to Defer") (Dkt. 113).

On July 16, 2024, Plaintiffs opposed Defendants' Motion to Defer.  *See* Resp. to Mot. to Defer (Dkt. 117).  Alongside their objection to any deferral itself, Plaintiffs further stated:

> Plaintiffs request, without prejudice and without waiving their right to seek a preliminary injunction, that the Court **not** convert their Motion for a Temporary Restraining Order into a preliminary injunction at the hearing scheduled for July 18, 2024.
>
> . . . .
>
> Plaintiffs request, at this time and without waiving their right to later seek a preliminary injunction, that the Court **not** convert their Motion for Temporary Restraining Order to Preserve the Status Quo into a preliminary

---

Therefore, unless Defendants consent to extend the temporary restraining order as Plaintiffs request (or something else takes place), the Court intends to conduct a preliminary injunction hearing to consider whether the temporary restraining order should be converted to a more enduring preliminary injunction.") (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 6**

injunction. Defendants have recently indicated that a preliminary injunction is not immediately needed because Juliet Charron, the Deputy Director of Medicaid and Behavioral Health for [IDHW], has interpreted HB 668 for persons "already on hormones for gender affirming care" that Medicaid will be "slowly tapering a patient off of hormone therapy . . ." This removes the immediate need to prevent irreparable harm by the Court issuing a preliminary injunction at the July 18, 2024 hearing. Plaintiffs reserve the right to seek a future preliminary injunction when the situation warrants it. Plaintiffs have come to this decision at the present time because a preliminary injunction will only protect the named Plaintiffs and Defendants would probably file an interlocutory appeal further delaying a decision on summary judgment. Therefore, Plaintiffs would request the Court decide the merits of the Medicaid Act claims [(within Plaintiffs' Motion for Partial Summary Judgment)] and issue a permanent injunction protecting all transgender individuals who need medically necessary gender-affirming care.

*Id*. at 2, 16-17 (bolds in original, internal citations omitted).

Coincidentally, on July 16, 2024 as well, Ms. Charron wrote a letter to "all Medicaid providers" about "gender transition services," stating:

Effective July 1, 2024, Idaho Medicaid coverage and reimbursement for gender transition services ceased, consistent with Idaho Bill HO668 (2024) and Idaho Code § 18-8901. Idaho Medicaid will cover up to ninety (90) additional days of hormone therapy for gender transition to facilitate tapering as needed. A prior authorization (PA) must be submitted to the Idaho Medicaid Pharmacy Program within thirty (30) days of this notice to qualify for the additional ninety (90) days of hormone therapy.

Ex. A to Gordon Decl. (Dkt. 128-6).[2]

On July 17, 2024 (one day before the scheduled preliminary injunction hearing), the Court (through its staff attorney) informally conferred with the parties about its understanding of the state of the proceedings:

---

[2] It is not immediately clear when Plaintiffs received Ms. Charron's July 16, 2024 letter. That said, Plaintiffs represented that the letter prompted their July 16, 2024 request that the Court not convert the temporary restraining order into a preliminary injunction. *See* Mem. ISO Mot. for TRO and PI at 2-3 (Dkt. 131-1) (after describing Ms. Charron's July 16, 2024 letter, stating: "Thereafter, Plaintiffs notified the Court that a hearing on the preliminary injunction was not necessary at that time and requested the Court alternatively set a deadline ordering Defendants to respond to the Motion for Partial Summary Judgment under the Medicaid Act because the Charron RELEASE removed the immediate need for a preliminary injunction.").

**MEMORANDUM DECISION AND ORDER - 7**

A hearing is currently set in the above matter for tomorrow, July 18, 2024. That hearing was set expressly to consider whether the existing temporary restraining order should be converted into a preliminary injunction. *See* (Dkt. 111) (interpreting Plaintiffs' several filings to that point as also requesting preliminary injunctive relief).

In the meantime, Defendants moved to defer Plaintiffs' Motion for Partial Summary Judgment – essentially, Defendants request more time to respond to Plaintiffs' Motion for Partial Summary Judgment. *See* (Dkt. 113).

As part of their response to Defendants' Motion to Defer, Plaintiffs indicated that they do not want to convert the existing temporary restraining order into a preliminary injunction, that there is no immediate need to prevent irreparable harm by the Court issuing a preliminary injunction at the hearing, and that they reserve the right to seek a future preliminary injunction if necessary. *See* Resp. to Mot. to Defer at 2, 16-17 (Dkt. 117).

Given the purpose of tomorrow's hearing was to consider whether a preliminary injunction should issue, it would appear that the hearing is no longer necessary – regardless of how the Court ultimately resolves Defendants' Motion to Defer.  The Court therefore intends to vacate tomorrow's hearing.  Before doing so, however, the Court wanted to confirm with the parties that its understanding is correct.

Without unnecessary argument or advocacy, please let me know **immediately by email response if there is any objection to vacating tomorrow's hearing.**

Ex. A to Woodard Decl. (Dkt. 133-2) (bold in original).  Defendants did not object; neither did

Plaintiffs, who reiterated:

I agree that, as of today, there is no need for a preliminary injunction hearing at this time, as I indicated in the Response to the Motion to Defer.  However, I have no information from the Defendants how they intend to slowly taper off gender-affirming care treatments including who will make those decisions and if Medicaid participants, providers, and pharmacies will receive notice they can continue providing treatment that is Medicaid reimbursable. Depending on this issue and the outcome of the Motion to Defer, Plaintiffs reserve the right to seek preliminary relief unless the Court issues a decision on Plaintiffs' Motion for Partial Summary Judgment.

*Id*.  The Court then vacated the preliminary injunction hearing and the temporary restraining

order expired on July 18, 2024.  *See* Dkt. Notices (Dkts. 118 & 119).

**MEMORANDUM DECISION AND ORDER - 8**

On August 12, 2024, the Court granted Defendants' Motion to Defer without prejudice. *See generally* 8/12/24 MDO (Dkt. 123) ("Plaintiffs' Motion for Partial Summary Judgment is therefore premature as Defendants have demonstrated how discovery could produce evidence speaking to Plaintiffs' claims generally, and the medical necessity of gender-affirming care in this setting specifically."). In doing so, however, the Court did not place temporal restrictions on the timing of any future dispositive motion, deferring to the Scheduling Order's deadlines and the parties' respective litigation strategies. *Id*. at 7, n.8.

On September 26, 2024, Plaintiffs filed the instant Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion for Preliminary Injunction" or "Motion") (Dkt. 131).[3] On November 22, 2024, the Court heard oral argument on Plaintiffs' Motion for Preliminary Injunction. For the reasons set forth below, the Court denies the Motion.

## II. <u>LEGAL STANDARDS</u>

"The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009)). "The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963)).

---

[3] Plaintiffs did not seek an expedited briefing schedule or an expedited hearing on their Motion for Preliminary Injunction. Nor did they highlight any demarcating point in time warranting a need for a temporary restraining order before a preliminary injunction could issue. Therefore, for the purposes of this Memorandum Decision and Order, the Court interprets Plaintiffs' Motion for Preliminary Injunction as most accurately seeking a preliminary injunction.

**MEMORANDUM DECISION AND ORDER - 9**

Preliminary injunctions are considered "extraordinary" remedies; they are never awarded as of right, but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A party seeking injunctive relief must establish that (i) it is likely to succeed on the merits; (ii) it is likely to suffer irreparable harm in the absence of injunctive relief; (iii) the balance of equities tips in its favor; and (iv) an injunction is in the public interest (hereinafter the "*Winter* factors"). *Id.* at 20. "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

"The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits' – that is, less than a 'likelihood of success on the merits' – a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (emphasis in original)). So, to grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).[4] But assuming that this threshold has been met, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction" – again, "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

---

[4] For example, failure to satisfy the irreparable harm factor precludes injunctive relief, independent of other factors' strengths that might otherwise favor a preliminary injunction. *See Spengler v. Los Angeles Cnty. Jail Med.*, 2017 WL 10526034, at *1 (C.D. Cal. 2017) ("Where a plaintiff has not made the minimum showing of irreparable injury, it is not necessary for the court to decide whether the plaintiff is likely to succeed on the merits.") (citing *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1378 (9th Cir. 1985)).

**MEMORANDUM DECISION AND ORDER - 10**

Relevant here, a preliminary injunction can take two forms.  The first, a "prohibitory" injunction, logically "prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotation marks and citation omitted); *see also Edmo v. Idaho Dep't of Corr.*, 358 F. Supp. 3d 1103, 1122 (D. Idaho 2018) (a prohibitory injunction "restrain[s] a party from taking action and effectively freezes the positions of the parties until the court can hear the case on the merits.").  In contrast, the second, a "mandatory" injunction, "goes well beyond simply maintaining the status quo [ ] and is particularly disfavored" because it "orders a responsible party to take action."  *Marlyn Nutraceuticals*, 571 F.3d at 879; *see also Kapila v. Garland*, 2024 WL 4171381, at *2 (E.D. Cal. 2024) ("Mandatory injunctions are most likely appropriate when the status quo is exactly what will inflict the irreparable injury upon complainant.").

Because a mandatory injunction alters the status quo, the already stringent standard for granting a preliminary injunction is further heightened.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (noting that the burden is "doubly demanding" for a mandatory injunction).  One should not be issued "unless the facts and law clearly favor the moving party." *Id*.; *see also Marlyn Nutraceuticals*, 571 F.3d at 879 ("In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages."); *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (when "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo," courts should "be extremely cautious").

Given the greater showing required for mandatory injunctions, courts have declined to apply the "serious questions" sliding scale inquiry to that type of requested injunctive relief.  *See Doe v. Snyder*, 28 F.4th 103, 111, n.4 (9th Cir. 2022) ("Based on this standard, we do not think

that our 'sliding scale' standard applies to this appeal.  We read *Marlyn Nutraceuticals* as

directing that on review of the denial of a mandatory preliminary injunction based on a factual

evaluation of harm, weakness in a plaintiff's showing of harm cannot be offset by a stronger

showing on the merits of the underlying legal claim.") (internal citation omitted); *see also P.P. v.

Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) ("Because Plaintiffs

seek a mandatory injunction, the Court declines to interpret the 'serious questions' standard for

purposes of the Motion as inconsistent with the Ninth Circuit's guidance that a mandatory

injunction not issue in 'doubtful cases' and not be granted 'unless the law and facts clearly favor

the moving party.'").

Distilled down, under either a prohibitory or mandatory injunction, a plaintiff must

satisfy the four *Winter* factors.  If a plaintiff is pursuing a prohibitory injunction, a more relaxed

("likely") and flexible ("serious questions" sliding scale) standard applies.  In comparison, if a

plaintiff is pursuing a mandatory injunction, a stricter ("clearly favors") and more rigid (no

"serious questions" sliding scale) standard applies.

### III.  <u>DISCUSSION</u>

In their Motion for a Preliminary Injunction, Plaintiffs argue that a preliminary injunction

should issue, preserving the status quo represented by the continued Medicaid coverage "of their

medically-necessary, potentially life-saving, gender-affirming treatments, as prescribed by their

physicians, for their diagnosed gender dysphoria, because the same treatments continue to be

covered and reimbursed for cisgender Medicaid participants with medical conditions other than

gender dysphoria."  Mem. ISO Mot. for PI at 2 (Dkt. 131-1).  They argue that (i) they are likely

to succeed on the merits because of recent legal developments that favor their claims; (ii) after

HB 668's "90-day implementation period" expires, they will suffer irreparable harm, as

evidenced by the opinions of physicians who have treated Plaintiffs and other transgender

individuals, and Plaintiffs' own declarations; and (iii) the balance of equities and public interest

favors a preliminary injunction because Plaintiffs' constitutional rights are at stake and the

Defendants are violating them. *Id.* at 6-26.

Defendants counter that "[t]wo years into this case, and almost 90 days after the effective

date of HB 668, Plaintiffs ask the Court to abruptly upend the status quo with a mandatory

injunction. They want IDHW to begin approving prohibited expenditures for hormones and

potential surgical treatments, despite having previously requested the Court to allow a TRO to

expire and not issue a preliminary injunction based on IDHW's plan to allow Medicaid to pay for

the taper-off of hormones gradually over 90-days with HB 668 in full effect." Resp. to Mot. for

PI at 1 (Dkt. 133). Defendants argue that Plaintiffs cannot satisfy the heightened standard that

applies to mandatory injunctions. Specifically, they claim that Plaintiffs (i) cannot establish

irreparable harm because they acquiesced to HB 668's prohibitions by withdrawing their prior

motion for a temporary restraining order, and in any event, have not offered sufficient evidence

of irreparable harm; (ii) lack a likelihood of success on the merits because gender dysphoria is

not exclusive to transgender people; and (iii) the equities and public interest at play weigh

against a preliminary injunction because the state legislature is entitled to deference when it

passes a law to protect public health and welfare. *Id.* at 3-20.

## A.    Because Plaintiffs Seek Medicaid Coverage For Gender-Affirming Care that HB 668 No Longer Permits, Plaintiffs Are Seeking a Mandatory Injunction With a Heightened Burden

The threshold dispute between the parties involves the type of preliminary injunction

sought by Plaintiffs: mandatory or prohibitory. Resolution of this dispute hinges on how the

status quo ante litem is defined, and whether Plaintiffs request to maintain or alter it.

Defendants submit that the combination of HB 668 taking effect on July 1, 2024,

IDHW's 90-day tapering protocol, and Plaintiffs' voluntary withdrawal of their Renewed Motion

**MEMORANDUM DECISION AND ORDER - 13**

for Temporary Restraining Order on July 17, 2024, established a new Medicaid coverage status for Plaintiffs' gender-affirming care – partial coverage for tapered dosages of hormones trending to no coverage at all after 90 days.  *See* Resp. to Mot. for PI at 3-5 (Dkt. 133).  Defendants argue that *this* is the status quo ante litem against which Plaintiffs' Motion must be measured.  *Id*. at 3. And because Plaintiffs' Motion seeks a preliminary injunction requiring Defendant to provide Medicaid coverage for *all* gender-affirming care, it requests that Defendant take action to alter the status quo ante litem, and hence, is mandatory in nature.

Plaintiffs attempt to confront this issue for the first time in their Reply.  They counter that (i) through Ms. Charron's communications, Defendants delayed the effective date of HB 668 by 90 days; (ii) Plaintiffs' instant Motion seeks only to preserve the status quo ante litem because it was filed within that 90-day timeframe and before HB 668 had become effective, and therefore, requests a prohibitory injunction; and (iii) Plaintiffs expressly reserved their right to seek a preliminary injunction back when they withdrew their Renewed Motion for Temporary Restraining Order and Defendants waived any objection to the reservation by remaining silent. *See* Reply ISO Mot. for PI at 2-3 (Dkt. 139).  Plaintiffs' arguments are not persuasive.

First, Plaintiffs misconstrue Ms. Charron's communications.  Plaintiffs repeatedly claim that Ms. Charron's July 5, 2024 declaration (Dkt. 103-1) and July 16, 2024 letter (Ex. A to Dkt. 128-6) somehow operated to postpone HB 668's effective date by 90 days.  *See* Reply ISO Mot. for PI at 2 (Dkt. 139) ("On July 5, 2024, Defendants notified the Court that HB 668 was not going into effect.") (citing Charron Decl. at ¶ 5 (Dkt. 103-1)); *id*. at 4 ("Here, Plaintiffs sought a preliminary injunction before the expiration of Defendants' ninety-day extension of HB 668's effective date."); *see also* Mem. ISO Mot. for PI at 5 (Dkt. 131-1) ("The status quo for Plaintiffs is to preserve their Medicaid coverage and reimbursement . . . after HB 668's ninety (90) day implementation period expires and Defendants begin enforcing the public and Medicaid funding

**MEMORANDUM DECISION AND ORDER - 14**

prohibitions . . . .") (internal quotation marks omitted).  Neither Ms. Charron's July 5th declaration, nor her July 16th letter, went so far.  Instead, plainly read, they established a 90-day tapering protocol for patients already receiving hormone therapy, but still imparted that HB 668's general prohibition on Medicaid coverage for gender-affirming care took effect on July 1, 2024.

In her July 5th declaration, Ms. Charron wrote that IDHW interprets HB 668 to allow for coverage for "slowly tapering a patient [already on hormones] off of hormone therapy . . . ." Charron Decl. at ¶ 5 (Dkt. 103-1).  Nowhere does her declaration state or imply that HB 668's effective date was postponed beyond July 1, 2024.

Any doubt in this regard is removed by Ms. Charron's July 16th letter.  In it, she unequivocally wrote: "Effective July 1, 2024, Idaho Medicaid coverage and reimbursement for gender transition services *ceased*, consistent with Idaho House Bill HO668 and Idaho Code § 18-8901."  Ex. A to Gordon Decl. (Dkt. 128-6) (emphasis added).  Her words leave no room for interpretation: as of July 1, 2024, Idaho Medicaid did not cover and reimburse gender transition services.  And like her July 5th declaration, Ms. Charron also referenced IDHW's 90-day tapering protocol in her July 16th letter.  She wrote: "Medicaid will cover up to ninety (90) additional days of hormone therapy for gender transition to facilitate tapering as needed."  *Id.*  But even coverage for tapering was not automatic; it required pre-authorization from the Idaho Medicaid Pharmacy Program.  *Id.* ("A prior authorization (PA) must be submitted to the Idaho Medicaid Pharmacy Program within thirty (30) days of this notice to qualify for the additional ninety (90) days of hormone therapy.").  This pre-authorization requirement underscores that discontinuation of coverage for hormone treatment (as of July 1, 2024) was the default status.

Critically, Ms. Charron's references to "tapering" have a plain meaning.  Namely, to "taper" means "to become progressively smaller toward one end" and "to diminish gradually."

**MEMORANDUM DECISION AND ORDER - 15**

*See* https://www.merriam-webster.com/dictionary/taper.  Read in context here, tapering cannot reasonably be confused with coverage for full hormone treatment and delayed implementation of HB 668's prohibitions.  Instead, it must mean that coverage was for something less than full hormone treatment, and that treatment would progressively decline toward an end point, zero.[5] Thus, there is no support to be found in Ms. Charron's written words for Plaintiffs' argument that Defendants postponed the effective date of HB 668 beyond July 1, 2024.

Plaintiffs' counsel attempted to address this point in response to questions from the Court during oral argument.  He claimed that, notwithstanding Ms. Charron's communications, there was no tapering of dosage, implying that Medicaid covered Plaintiffs' full hormone treatment during the 90-day period.  If true, this fact would complicate the Court's analysis.  But tellingly, there is no evidence in the record to that effect, which Plaintiffs' counsel conceded.  Further, Defendants flatly dispute that any coverage for hormone treatment (beyond tapering) ever took place after HB 668 became effective.  *See* Resp. to Mot. for PI at 7, n.7 (Dkt. 133) ("Contrary to Plaintiffs' representations, HB 668 has been in effect since July 1 (TRO excepted) and *no* payment for hormones for the purpose of sex reassignment (rather than tapering) has been permitted.") (emphasis in original).  And finally, Plaintiffs have testified that HB 668 ended Medicaid coverage for their hormone treatment.  *See, e.g.*, Ex. E to Woodard Decl. at Interrogs. 4 & 9 (Dkt. 133-6) (Plaintiff KB discussing "out of pocket payments for hormone treatment that is no longer covered since the passage of HB 668"); Ex. F at Interrogs. 4 & 9 (Dkt. 133-7) (Plaintiff AC stating "[s]he cannot get her hormone treatments refilled by her provider because of HB 668"); Ex. G at Interrogs. 4 & 9 (Dkt. 133-8) (Plaintiff BM discussing having to pay "out of pocket" her monthly hormone treatment prescriptions" or rely on donations); Ex. H at

---

[5] Plaintiffs seem to acknowledge this plain meaning of "tapering" as well.  *See* Mem. ISO Mot. for PI at 2 (Dkt. 131-1) (recognizing that tapering involved "serially reduced dosages").

**MEMORANDUM DECISION AND ORDER - 16**

Interrogs. 4 & 9 (Dkt. 133-9) (Plaintiff GM's parents "will be forced to pay for treatment out of pocket"); Ex. I at Interrogs. 4 & 9 (Dkt. 133-10) (Plaintiff SG is "seeking reimbursement for her hormone treatments that are not covered because of HB 668").  Taken together, there is no record support that coverage for full hormone treatment occurred in contravention of HB 668's prohibitions.

So, to be clear, HB 668 went into effect on July 1, 2024.  The 90-day tapering period does not change this fact.  If anything, it underscores that, from July 1, 2024, full coverage for gender-affirming care no longer existed under HB 668; it was replaced by a partial-to-zero hormone therapy option that operated on an "as needed" basis for a limited period and only upon pre-authorization.

Accordingly, as of July 1, 2024, the status quo ante litem was well-defined.  Plaintiffs had renewed their June 24, 2024 Motion for a Temporary Restraining Order on June 28, 2024 – prior to the implementation of HB 668 – and the Court had granted it on June 29, 2024.  *See* 6/29/24 MDO at 15-16 (Dkt. 96).  That temporary restraining order suspended HB 668 as to Plaintiffs' gender-affirming care, including full hormone treatment, until the Court could consider whether to issue a preliminary injunction.  *Id*.  Thus, Plaintiffs had preserved their right to seek a *prohibitory* preliminary injunction at the hearing scheduled for July 18, 2024.

But in the interim, Plaintiffs made the strategic decision to effectively withdraw their Renewed Motion for Temporary Restraining Order and not to pursue a preliminary injunction. In their July 16, 2024 Response to Defendants' Motion to Defer, Plaintiffs requested "that the Court **not** convert their Motion for a Temporary Restraining Order into a preliminary injunction at the hearing scheduled for July 18, 2024."  Resp. to Mot. to Defer at 2 (Dkt. 117) (bold in original).  Plaintiffs explained that they had "come to this decision at the present time because a preliminary injunction will only protect the named Plaintiffs and Defendants would probably file

**MEMORANDUM DECISION AND ORDER - 17**

an interlocutory appeal further delaying a decision on summary judgment." *Id.*  By their own explanation, then, Plaintiffs perceived some litigation advantage from not pursuing a preliminary injunction and allowing the temporary restraining order to expire.

      To confirm the Court's understanding of Plaintiffs' position, the Court (through its staff attorney) corresponded with counsel the next day.  *See* Ex. A to Woodard Decl. (Dkt. 133-2). The Court cited Plaintiffs' response to Defendants' Motion to Defer, specifically that "Plaintiffs indicated that they do not want to convert the existing temporary restraining order into a preliminary injunction, [and] that there is no immediate need to prevent irreparable harm by the Court issuing a preliminary injunction at the hearing . . . ." *Id.*  It then suggested: "Given the purpose of tomorrow's hearing was to consider whether a preliminary injunction should issue, it would appear that the hearing is no longer necessary." *Id.*  Finally, it asked: "Without unnecessary argument or advocacy, please let me know **immediately by email response if there is any objection to vacating tomorrow's hearing.**" *Id.* (bold in original).  In no uncertain terms, counsel for Plaintiffs responded: "[T]here is no need for a preliminary injunction hearing at this time as I indicated in the Response to the Motion to Defer." *Id.*  Thus, there was no mistaking Plaintiffs' intentions.

      Plaintiffs' strategic decision in this regard reset the status quo ante litem.  Whether or not based upon a misapprehension of the import of Ms. Charron's statements, as of July 16, 2024, Plaintiffs *no longer contested* the implementation of HB 668 as to them and the change in Medicaid coverage status that came with it: namely, that Plaintiffs would *not* be covered for gender transition services writ-large, but *only* for tapered hormone therapy – as needed and upon prior authorization – for no more than 90 days.  Stated another way, coverage only for tapered hormone therapy on these terms became "the last uncontested status which preceded the pending controversy." *GoTo.com, Inc.*, 202 F.3d at 1210.

**MEMORANDUM DECISION AND ORDER - 18**

Thus, when Plaintiffs, in the instant Motion, request a preliminary injunction "ordering Idaho Medicaid to cover and reimburse the continuation of their medically-necessary, potentially life-saving, gender-affirming treatments, as prescribed by their physicians, for their diagnosed gender dysphoria," they are requesting a *mandatory* preliminary injunction because coverage for these treatments was no longer the status quo ante litem.  Mem. ISO Mot. for PI at 2 (Dkt. 131-1).  Indeed, they are asking Defendants to alter the status quo ante litem by providing coverage for gender transition services that are currently prohibited by HB 668.  Properly construed as a request for a mandatory injunction, Plaintiffs must satisfy the heightened burden that accompanies it.  *See Garcia*, 786 F.3d at 740; *Marlyn Nutraceuticals*, 571 F.3d at 879; *Martin*, 740 F.2d at 675.

The case cited by the Defendants – *Hennessy-Waller v. Snyder*, 529 F. Supp. 3d 1031 (D. Ariz. 2021) (aff'd *sub nom. Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022)) – provides some support for this conclusion.  There, the minor plaintiffs were enrolled in Arizona's Medicaid program.  *Id.* at 1035.  They had been diagnosed with gender dysphoria, transitioned to live as males, and were taking testosterone as part of their treatment (covered by Arizona Medicaid).  *Id.*  Their doctors eventually recommended that they undergo gender reassignment surgery, but Arizona Medicaid policy expressly excluded such care from coverage.  *Id.*  Plaintiffs in turn brought an action in federal court, alleging that the policy violated various federal laws.  Plaintiffs sought a preliminary injunction (i) prohibiting the enforcement of the gender reassignment surgery exclusion, and (ii) directing the defendant to provide coverage for the prescribed surgery.  *Id.* at 1035-36.  The district court denied injunctive relief; it found that plaintiffs had requested a mandatory injunction because the requested relief would have forced the provision of a benefit otherwise not allowed.  *Id.* at 1037-38.  While the district court did not have before it a change in the status quo ante litem, as here, the case nonetheless stands for the proposition that requesting a

preliminary injunction for gender transition services beyond that which a state insurance program provides coverage at the time is mandatory in nature.

The cases cited most prominently by the Plaintiffs – *N.D. ex rel. Parents v. Haw. Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010); *Chalk v. U.S. Dist. Court*, 840 F.2d 701 (9th Cir. 1988); *Diamond House of SE Idaho, LLC v. City of Ammon*, 381 F. Supp. 3d 1262 (D. Idaho 2019) – likewise do not address a change in the status quo ante litem. Collectively, they stand for little more than the recitation of the familiar "last uncontested status" standard and its application to particular facts where the status quo had not changed (*N.D.*), was changed by the defendant's – not plaintiff's – actions (*Diamond House*), or a purported change in status quo was not addressed at all by the court (*Chalk*). Unsurprisingly, then, the courts in these cases determined that the preliminary injunctions requested by plaintiffs were prohibitory, not mandatory. Accordingly, these cases offer Plaintiffs little support.

Finally, Plaintiffs' argument that they explicitly reserved their right to seek a further preliminary injunction when they declined to pursue a preliminary injunction in July – and Defendants waived objection by remaining silent – is of no moment. Simply put, there is no legal requirement to "reserve the right" to file a preliminary injunction and no legal effect from having done so. Even if there was, reserving the right to file a preliminary injunction does not freeze the status quo at the time of the reservation and indefinitely. Otherwise, a party can move for a preliminary injunction at any time without consequence so long as an upfront reservation of rights to do so occurred. This would be patently unfair. Critically, Plaintiffs offer no legal support for their position, and the Court has found none. Regardless, Plaintiffs are not precluded from seeking injunctive relief again – their Motion is proof of that. They must, however, contend with the action's current setting, not the one that existed three months before when their since-withdrawn Renewed Motion for Temporary Restraining Order sought substantially similar

**MEMORANDUM DECISION AND ORDER - 20**

relief.  Accordingly, the Court rejects Plaintiffs' argument and Plaintiffs are left to satisfy the

heightened standard for a mandatory injunction based on the new status quo ante litem.[6]

**B.      Plaintiffs Have Not Demonstrated the Requisite Irreparable Harm**

In this case, the Court previously entered a temporary restraining order on June 29, 2024,

before HB 668 went into effect on July 1, 2024.  *See* 6/29/24 MDO (Dkt. 96).  It did so after

concluding that Plaintiffs sufficiently demonstrated that HB 668 would likely result in

irreparable harm.  *Id*. at 13 ("That HB 668 will bring an end to coverage for this care – again,

care that Plaintiffs and their medical providers claim to be medically necessary – effectively puts

an end to that care and likely causes Plaintiffs immediate, irreparable harm.") (citations omitted).

It stands to reason, then, that Plaintiffs make many of the same arguments as before in support of

their instant Motion for Preliminary Injunction, to wit: "HB 668's prohibitions against Medicaid

covering and reimbursing gender-affirming treatment will result in the discontinuance of their

prescribed medications and the denial of surgeries determined by their physicians to be

medically necessary after a full assessment of their medical and mental health condition.  They

---

[6] In a recent "Supplemental Memorandum," Plaintiffs argue that Defendants failed to respond to a request for production of "all communications and documents regarding the interpretation of HB 668 to permit Medicaid participants to taper off medication prescribed to treat the diagnosed conditions of gender dysphoria."  RFP No. 43 (Dkt. 151-1).  As a result, Plaintiffs argue that Defendants should be precluded from arguing that the status quo changed. Supp. Mem. at 2 (Dkt. 151).  This argument is without merit.  First, it is untimely; it should have been incorporated into Plaintiffs' reply, given that the deadline for Defendants' discovery responses (October 11, 2024) preceded the deadline for Plaintiffs' reply (November 8, 2024) by nearly a month.  Second, Plaintiffs sought the requested information on September 4, 2024, nearly two months after Plaintiffs first learned that only a 90-day tapering period would be covered following HB 668's enaction.  Clearly, Plaintiffs were aware of the fact of the tapering protocol on July 5, 2024, and Defendants' input on HB 668's interpretation vis à vis any tapering protocol does not change this fact.  Third, despite Plaintiffs' implication during oral argument that the status quo did not change because they did not know *exactly how* the tapering would be implemented during the 90-day tapering period, Supp. Mem. at 2 & 4 (Dkt. 151), the referenced discovery does not get to this point.  It only asks for discovery as to how Defendants interpreted HB 668 in a way that permitted tapering.

**MEMORANDUM DECISION AND ORDER - 21**

cannot pay for the cost of their treatments without Medicaid coverages and reimbursements." Mem. ISO Mot. for PI at 21 (Dkt. 131-1). Given the Court's rationale for entering a temporary restraining order before, Plaintiffs' arguments are sensible.

But as Defendants point out, Plaintiffs' prior arguments for irreparable harm no longer apply. Defendants claim that, since then, "Plaintiffs' acquiescence to the known 90-day timeline for tapering completely vitiates their claims of irreparable harm." Resp. to Mot. for PI at 7 (Dkt. 133). The Court agrees.

Many of the facts and reasons that support a finding of the change in status quo ante litem, *supra,* apply with equal force to the Court's analysis of irreparable harm. Most notable is Plaintiffs' reaction to Mr. Charron's correspondence. Again, consistent with her July 5th declaration, Ms. Charron's July 16th letter unequivocally stated that "[e]ffective July 1, 2024, Idaho Medicaid coverage and reimbursement for gender transition services ceased" consistent with HB 668, but that "Idaho Medicaid will cover up to ninety (90) additional days of hormone therapy for gender transition to facilitate tapering as needed." Ex. A to Gordon Decl. (Dkt. 128-6). Significantly, at this time, the temporary restraining order was already in place suspending HB 668 (which necessarily included IDHW's after-the-fact 90-day tapering protocol) as to Plaintiffs' gender-affirming care until the Court could consider whether to issue a preliminary injunction. *See* 6/29/24 MDO at 15-16 (Dkt. 96).

Yet, Plaintiffs – by their own explanation, to gain the litigation advantage of avoiding interlocutory appeal and drawing additional plaintiffs into the lawsuit – voluntarily chose to let the temporary restraining order expire. In doing so, they explicitly acknowledged that the 90-day tapering protocol would prevent irreparable harm:

> Plaintiffs request, at this time and without waiving their right to later seek a preliminary injunction, that the Court **not** convert their Motion for Temporary Restraining Order to Preserve the Status Quo into a preliminary

**MEMORANDUM DECISION AND ORDER - 22**

> injunction.  Defendants have recently indicated that a preliminary injunction is not immediately needed because Juliet Charron, the Deputy Director of Medicaid and Behavioral Health for [IDHW], has interpreted HB 668 for persons "already on hormones for gender affirming care" that Medicaid will be "slowly tapering a patient off of hormone therapy . . ."  This *removes the immediate need to prevent irreparable harm* by the Court issuing a preliminary injunction at the July 18, 2024 hearing.

Resp. to Mot. to Defer at 16 (Dkt. 117) (bold in original, emphasis added).  Plaintiffs reiterated their position the next day in response to correspondence from the Court seeking clarification.  *See* Ex. A to Woodard Decl. (Dkt. 133-2) (in response to the prompt that Plaintiffs indicated "that there is no immediate need to prevent irreparable harm by the Court issuing a preliminary injunction at the hearing . . . ," Plaintiffs replied: "[T]here is no need for a preliminary injunction hearing at this time as I indicated in the Response to the Motion to Defer.").  Given Plaintiffs' representations, the Court vacated the preliminary injunction hearing and the temporary restraining order expired.  *See* Dkt. Notices (Dkts. 118 & 119).[7]

This is compelling evidence that, as of July 16, 2024 (after HB 668 went into effect), Plaintiffs acknowledged that IDHW's 90-day tapering protocol would not cause harm.  They literally said as much.  *See supra*.  As Defendants assert: "If tapering removed the need for a preliminary injunction, its completion cannot be cause to abruptly reverse course."  Resp. to Mot. for PI at 4 (Dkt. 133); *see also id*. at 8 ("Plaintiffs' concession that cessation of hormone therapy, if done gradually, was not irreparable [sic] harm in July is fatal to their renewed request for relief

---

[7] On August 12, 2024, the Court granted Defendants' Motion to Defer and also denied, without prejudice, Plaintiffs' Motion for Partial Summary Judgment.  *See* 8/12/24 MDO (Dkt. 123).  This is potentially important if one reads Plaintiffs' correspondence in July 2024 as anticipating an imminent decision on their Motion for Partial Summary Judgment.  Plaintiffs knew in early August 2024 that the Court would not be considering their Motion for Partial Summary Judgment, but waited until the end of September 2024 to file their Motion for Partial Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 23**

months later.  If it was not irreparable harm to taper Plaintiffs to zero hormones, it cannot be irreparable harm to keep Plaintiffs at zero.").

The Court will not attempt to reconcile Plaintiffs' strategic decisions and resolve whether they were based on a misunderstanding.  Rather, it will rely – as it must – on what Plaintiffs actually said and did: namely, declining a preliminary injunction hearing because there was "no immediate need to prevent irreparable harm."  Had Plaintiffs proceeded with the preliminary injunction hearing in July, the legal landscape no doubt would be different.  But they did not.  Instead, they chose to wait until the end of September 2024 to pursue the same injunctive relief they declined three months earlier.  *See Oakland Tribune, Inc.*, 762 F.2d at 1377 ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Giving Back Fund Inc. v. Miami Mktg. Grp. LLC*, 2011 WL 13217774, at *4 (C.D. Cal. 2011) (stating that the plaintiffs' two-month delay in filing their motion "certainly implies a lack of urgency and accordingly counsels against finding a likelihood of irreparable harm").

This delay, Plaintiffs' initial decision to withdraw their Renewed Motion for Temporary Restraining Order, and the actual fact of tapered coverage for gender-affirming care over the intervening 90 days, combine to cast doubt that Plaintiffs will suffer "extreme or very serious damage" absent injunctive relief.  *See supra* (discussing heightened standard for mandatory injunctions) (citing *Marlyn Nutraceuticals*, 571 F.3d at 879).[8]  Because Plaintiffs have not clearly made the threshold showing of extreme or very serious irreparable injury, their Motion for Preliminary Injunction is denied.[9]

---

[8]  Given the constellation of these factors, it is questionable whether the comparably lower standard for a prohibitory injunction would even be satisfied.

[9]  Accordingly, the Court does not address the other *Winter* factors, including, importantly, whether Plaintiffs are likely to succeed on the merits.  *See Spengler*, 2017 WL 10526034, at *1.

**MEMORANDUM DECISION AND ORDER - 24**

## IV. <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' Motion for

Temporary Restraining Order and Preliminary Injunction (Dkt. 131) is DENIED.



DATED:  December 31, 2024

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge