RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense
DAVID J. MYERS, ISP #6528
GREGORY E. WOODARD, ISB #11329
AARON M. GREEN, ISB #12397
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov
aaron.green@ag.idaho.gov
greg.woodard@ag.idaho.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MH, TB, KB, SG, AC, BM, individually, and G Doe, by and through her parents and next friends, JANE Doe and JOHN Doe,<br><br>*Plaintiffs,*<br><br>v.<br><br>ALEX J. ADAMS, in his official capacity as the Director of the Idaho Department of Health and Welfare; Dr. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>*Defendants.* | Case No. 1:22-cv-00409-REP<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER [DKT. 155]** |

**INTRODUCTION**

Defendants' counsel has diligently worked with Plaintiffs' counsel to ensure sufficient time for discovery and to resolve discovery disputes raised by Plaintiffs. Plaintiffs' counsel requested the first discovery cut off deadline extension to January 9, 2025. Then, at the virtual meet and confer on December 10, 2024, the parties agreed that the January 9, 2025, deadline did not make sense for the close of fact discovery: neither side had yet even noticed depositions, despite multiple efforts by Defendants to get deposition dates for Plaintiffs. Towards the end of the conference, Defendants' counsel, Mr. Woodard, directly asked Plaintiffs' counsel, Mr. Belodoff, whether Plaintiffs would hold Defendants to a January 9 fact discovery cutoff. Plaintiffs' counsel responded "No," and shook his head indicating the same. Mr. Belodoff has also indicated that Plaintiffs want to take depositions (but has yet to identify the proposed deponents), and Defendants' counsel took Plaintiffs' counsel at their word as to both issues. Thus, on December 27, 2024, Defendants' counsel sought to memorialize the parties' agreement for extensions in line with Mr. Belodoff's verbal agreement, as well as other discovery deadlines that—while not subject to Mr. Belodoff's agreement —made sense to extend.

So why are we here? To Defendants' surprise, on December 30, 2024, Plaintiffs' counsel, Ms. Gordon, responded to the invitation for discussion of the continued discovery cutoff date with a blanket rejection of all extension requests. To be sure, the parties have been engaged in informal dispute resolution procedures (as to some, but not all, issues raised at Dkt. 162) but no party has brought the disputes to a boil. More to the point, reneging on reasonable extensions when Plaintiffs' counsel has refused to provide deposition dates that necessitated

the discovery cutoff extensions (the first extension at Mr. Belodoff's request) is not the appropriate way to deal with discovery disputes. Under the relevant standard, Defendants have been diligent, good cause exists, and the Court should grant the pending motion to amend under Rule 16(b).

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Initial Discovery Disputes – October-November 2024

The discovery issues begin in October 2024. Plaintiffs sent discovery requests on September 4, 2024, including requests for production. Decl. of Green ¶ 3. With Plaintiffs having failed to produce search terms (*but see* Dkt. 67-1 at 9-10, 68-1 at 10) for use in responding to their discovery requests, Defendants were obligated to use search terms in the review of electronic documents as best they could. Decl. of Green Ex. 1. To ensure that all responsive documents were produced, Defendants used broad search terms. *Id.* By October 3, Defendants had conducted a search of the custodians identified in their initial disclosures. *Id.* Defendants' search resulted in approximately 18,000 emails, which totaled over 30,000 documents when the attachments are included. *Id.*

When the initial discovery deadline neared, Defendants asked for a one-week extension to provide responses, objections, and all responsive documents that had been reviewed to date. *Id.* Mr. Woodard noted that rolling productions would be necessary. *Id.*

Mr. Belodoff's initial response was to permit an additional week but to demand *all* production by October 11. *Id.* Mr. Woodard responded that it was "impossible to review the more than 30,000 documents that our search had produced by the 11th." *Id.* Mr. Woodard also expressly offered "to discuss [search] terms that might narrow the search results." *Id.* Mr.

Belodoff's response was to ask for a schedule of production, which Mr. Woodard noted was not possible under the circumstances. *Id.* Mr. Belodoff responded that (notwithstanding Defendants' rejection of additional conditions) he had "already agreed to one week and am willing to work with you on a further extension." *Id.*

By November, Defendants were gearing up for depositions. On November 8, Mr. Woodard asked Plaintiffs for deposition dates. Decl. of Green Ex. 2. Mr. Belodoff responded with news that he had been in a serious car accident and would "know more [the following] week as to when [he would] have the ability to participate in the depositions." *Id.* He also stated that he also wanted to take depositions, wanted to schedule a meet and confer about outstanding discovery items, and asked Mr. Woodard for deposition dates starting December 2 so he could confer with Plaintiffs. *Id.* Later that same day, Mr. Woodard supplied proposed meet and confer dates and proposed deposition dates but did not hear from Mr. Belodoff for two weeks. *Id.*; *see also* Decl. of Woodard, ¶ 2.

## II. Representations at the Preliminary Injunction Hearing and Meet and Confer

On November 22, this Court heard oral arguments on the motion for a preliminary injunction. Prior to the hearing, Mr. Belodoff first raised the need for further fact discovery extensions beyond the then-pending December 9, 2024, fact discovery deadline. Mr. Belodoff was still recovering from his accident, and he agreed that a 30-day extension would be necessary.[1] Decl. of Woodard ¶ 3, Decl. of Green ¶ 4-6. This was subsequently stipulated. Dkt. 144, 145.

---

[1] Mr. Woodard also requested an extension to disclose Defendants' experts and Mr. Belodoff consented.

On December 2, Mr. Woodard reached out again with proposed dates to take Plaintiffs' depositions. Decl. of Green Ex. 3. Mr. Belodoff responded by noting that the parties could figure out a schedule at a pending meet and confer conference *Id.* Two days later, Plaintiffs' counsel sent a discovery dispute letter. Decl. of Green Exhs. 4, 13. The letter makes no mention of any Mr. Woodard's request for Plaintiffs' deposition dates. Decl. of Green Ex. 13. Defendants' counsel responded to Defendants' discovery objections with a response letter on December 10, before the scheduled meet and confer call. Decl. of Green Exhs. 5, 14.

At the December 10 virtual meet and confer, Defendants' counsel made certain that both parties understood the need to push back the fact discovery deadline given that it was now mid-December with no deposition dates provided. *See* Decl. of Woodard ¶ 5; Decl. of Green ¶¶ 9, 21-23; Decl. of Myers ¶ 4-7. Both sides acknowledged that depositions could not be accomplished by the January 9 discovery cutoff, and more pointedly at the end of the call, Mr. Woodard directly asked Mr. Belodoff whether he would seek to enforce the January 9, 2024, discovery deadline, to which Mr. Belodoff responded "No" and shook his head. *Id.*

After the meet and confer, Defendants' counsel has regularly corresponded about the progress of the rolling production, provided a thorough privilege log, and continues through the date of this filing to fulfill the production and make any amendments to the privilege log that are necessary. Decl. of Green ¶¶ 19-20, *id.* Exhs. 6, 8, 11. Additionally, in response to further discussion during the meet and confer, Defendants provided additional support for their objections and again requested that Plaintiffs provide search terms promised during the meet and confer call. Decl. of Green Exhs. 9, 15.

At no point during the meet and confer process was the "need to have Defendants' discovery answers and responses in order to prepare Plaintiffs for their depositions" raised.[2] Dkt. 162 at 5 ¶ 25

### III. Plaintiffs' Counsel Break Their Agreement

On December 27, 2024, relying on Plaintiffs' counsel's agreement that they would agree to further extensions of the discovery cutoff, Mr. Green sent a proposed stipulation including an amended discovery deadline as well as two other related amendments and invited collaboration over the specifics. Decl. of Green Ex. 7. In response, instead of collaborating over deadlines, Plaintiffs' counsel rejected any discovery extension and demanded documents by January 3, 2025, almost a week before the pending fact discovery deadline. Decl. of Green Ex. 10. With the January 9 fact discovery deadline looming, Defendants filed the instant motion on January 2, 2025, and the motion to shorten time on January 6. Dkt. 155, 156. To continue to pursue discovery, Defendants again sought dates for Plaintiffs' depositions to take place before the end of the month but have not received any dates at time of filing. Decl. of Green Ex. 12.

### ARGUMENT

The only issues that matter to this motion are the diligence and good cause requirements under Rule 16(b). Defendants plainly satisfy both—they had an agreement with Plaintiffs, who inexplicably withdrew it when Defendants tried to formalize an extension

---

[2] It is telling that Plaintiffs cite to nothing on this point and no document submitted to the Court suggests that this was the rationale behind any discovery extension or deposition delay. In fact, no pleading, communication, or any other document in Defendants' counsels' possession since Plaintiffs propounded discovery requests on September 4 claims that depositions have been delayed for the purpose of waiting for production from Defendants.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO AMEND SCHEDULING ORDER [DKT. 155] — 5

Plaintiffs' counsel agreed to at the December 10 meet and confer call. Tellingly, Plaintiffs don't acknowledge either their agreement to extend the January 9 discovery cutoff date or the history of delay that they bring with them to this dispute; and also leave out material documents. *Compare* Dkt. 162-2 at 4, 5, 6-7, 91 *with* Decl. of Green Exhs. 1, 2, 3, 9, 11.

**I. Defendants were diligent and good cause exists under Rule 16(b).**

There are three elements for this motion, and Plaintiffs offer no good reason why any are not met. Undisputed here, a movant may be required to show *first* he assisted in creating a workable scheduling order. *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).

*Second*, the movant may be required to show that noncompliance will occur notwithstanding diligent efforts to comply because of events which could not have been foreseen. *Id.* Here, several such events have occurred, but the unforeseen event that is most puzzling is Plaintiffs' refusal to formally stipulate to their agreement to extend the discovery cutoff date. Dkt. 155 at 2, 5. Plaintiffs and Defendants had a verbal agreement that the current discovery cutoff date of January 9, 2025, would not be enforced for either party. Defendants' motion to amend the scheduling order was a response to Plaintiffs' sudden about-face when much of discovery for both sides remains undone. *See Rossow v. Jeppesen*, No. 1:23-cv-00131-BLW (Dec. 26, 2024, Mem. Dec. and Order) Dkt. 78 (the fact that a motion could have been made earlier is "not incompatible with diligence"). Defendants did not contemplate Plaintiffs' counsel reneging on their agreement and refusing to extend the discovery deadline after both parties had affirmed their desire to take depositions and Defendants had repeatedly asked for Plaintiffs' available dates, but no dates had been provided.

Additionally, despite the efforts of Defendants to obtain material from WPATH well

in advance of the scheduling deadline, WPATH has stonewalled. WPATH is a source that other courts in similar gender dysphoria litigation have found is "part and parcel of Plaintiffs' proposed constitutional standard" (*Boe v. Marshall*, No. 2:22-cv-184-LCB, 2023 WL 2646437 at *2 (M.D. Ala. Mar. 27, 2023)) and one that Plaintiffs spend paragraphs pointing to as the gold-standard in the Amended Complaint (Dkt. 89 ¶¶ 168-186). To be sure, WPATH's dispute, unlike Plaintiffs' discovery dispute, *has* been brought to a boil with motions to quash and for contempt due to be heard together on February 6, 2025. Documents that show examples of interference by political actors (including Plaintiffs' expert Dr. Schechter who is WPATH's President-Elect) are certainly necessary to Defendants' defense. If Plaintiffs wanted to rely on some other standard of care for their statutory and constitutional allegations going to medical necessity, they could have done so. WPATH's stringing the State along after it waived all objections was not anticipated but is expected to be addressed before the proposed amended deadline.

Plaintiffs' brief [Dkt. 162 at 11 n.4] makes Defendants' point. Plaintiffs find it "paradoxical" that Defendants' counsel accuse WPATH of being political while representing a politically accountable government department. Plaintiffs' own complaint shows why WPATH's credibility is directly at issue. *See* Dkt. 89 ¶ 168-186. WPATH's standards of care are purported to be "evidence based" rather than dictated or influenced by political actors or other concerns.[3] The purported utility of those standards as evidence-based is, of course, why

---

[3] The falsity of this premise is already (at least in part) a matter of public record. *See e.g.*, Azeen Ghorayshi, *Biden Officials Pushed to Remove Age Limits for Trans Surgery, Documents Show*, The New York Times, June 25, 2024. https://www.nytimes.com/2024/06/25/health/transgender-minors-surgeries.html

they matter at all in this case. *See generally* Fed. R. Evid. 702(a), (d), 703. The meddling of actors outside the scientific process in changing WPATH's standards, or the lack of truth in WPATH's public statements concerning their utility, is obviously relevant.

The same is true for *Skrmetti*. Plaintiffs make hay about having claims other than an Equal Protection argument under the Fourteenth Amendment that was addressed in *Skrmetti*, but this is of no moment. Plaintiffs ignore that to answer the question presented in *Skrmetti*, *see* United States Supreme Court, Dkt. 23-477 (Question Presented)[4] the Supreme Court is necessarily going to have to decide whether Tennessee's prohibition 1) discriminates on the basis of transgender status, and 2) discriminates on the basis of sex. If it doesn't, then both *Skrmetti* and this case fall in the *Geduldig v. Aiello*, 417 U.S. 484, 496 n.20 (1974) bucket for regulations on medical treatment. Were that not enough, Plaintiffs' own arguments on summary judgment indicate the basis of alleged discrimination is relevant to the Medicaid Act claims. *See* Dkt. 74-1 at 17 (on availability requirement).

In fact, completely contrary to Plaintiffs' representation [Dkt 162 at 17], *Skrmetti* is *directly* applicable to at least one Plaintiff. Plaintiffs say "transgender adults and children in Idaho can continue to access treatments for gender dysphoria from medical providers if they have the financial means or private insurance, including state employees and their children." This is flatly false. It is illegal for a medical provider in Idaho to administer hormones or

---

[4] "Whether Tennessee Senate Bill 1 (SB1), which prohibits all medical treatments intended to allow "a minor to identify with, or live as, a purported identity inconsistent with the minor's sex" or to treat "purported discomfort or distress from a discordance between the minor's sex and asserted identity," Tenn. Code Ann. § 68-33-103(a)(1), violates the Equal Protection Clause of the Fourteenth Amendment.
https://www.supremecourt.gov/docket/docketfiles/html/public/23-477.html.

perform specified procedures for the purpose of "attempting to alter the appearance of or affirm the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." Idaho Code § 18-1506C ("VCPA"). H.B. 668 assures no public funds flow to such procedures.

Plaintiff G Doe is a minor who is subject to the VCPA and H.B. 668, and who Plaintiffs have admitted is not covered under the *Poe v. Labrador* injunction. Dkt 139 at 12 n.16. If the Supreme Court in *Skrmetti* upholds the challenged Tennessee statute (an almost identical prohibition to the VCPA), then such procedures will not merely be unprovided by Idaho Medicaid but will remain *illegal* as to G Doe.

*Third*, a movant must show that they are still attempting to comply with the scheduling order. *Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 638 (D. Nev. 2021) (citing *Sharp v. Covenant Care LLC*, 288 F.R.D. 465, 467 (S.D. Cal. 2012) and *Morgal v. Maricopa Cnty. Bd. of Supers.*, 284 F.R.D. 452, 460 (D. Ariz. 2012)). Defendants moved to amend within two business days (with an intervening holiday) of the rejection of a stipulation to formalize the parties' verbal agreement to extend the discovery cutoff. Nonetheless, Defendants will seek to comply with the Court's temporary discovery extension by taking depositions as quickly as possible. Decl. of Green Ex. 12. Defendants continue to provide regular updates to opposing counsel on their rolling production. Decl. of Green Ex. 11. Defendants will continue to comply with the order to the best of their ability.

## II. Plaintiffs' discovery complaints are mostly irrelevant.

Prejudice is not the focus of the Rule 16(b) good cause inquiry, diligence is. *Robinson v. Twin Falls Hwy. Dist.*, 233 F.R.D. 670, 672 (D. Idaho 2006) (citations omitted). That said, it's

worth noting that Plaintiffs' "time is of the essence" argument has already been implicitly rejected by the Court in its denial of the motion for preliminary injunction. *Compare* Dkt. 162 at 16 with Dkt. 154 at 24. And even if the merits of simmering discovery disputes were relevant, Plaintiffs' complaints lack merit. To summarize, if anyone has delayed the completion of discovery, it is Plaintiffs. They were the ones who raised the need for the initial extension of the discovery cutoff. They were the ones who failed to offer search terms for over three months that would have streamlined Defendants' document review—and still have failed to provide any narrowing terms today. They were the ones who have declined multiple times to give dates for depositions, and as of filing have still not provided dates. They reneged on their word after both parties had worked out a compromise for additional discovery extensions.

At no point have Plaintiffs suggested that Defendants' responses are necessary to prepare their own clients for their depositions. *But see* Dkt. 162 at 5, 19. Indeed, Plaintiffs have come close to offering deposition dates without a *hint* of concern that Defendants' undisclosed documents are a necessary predicate. Decl. of Green Exhs. 2, 3. Plaintiffs complain about delays, but it was Defendants who have cooperated throughout discovery and tried to work out reasonable extensions and satisfy Defendants' concerns. It is exceedingly regrettable that such efforts have not been reciprocated, especially on short notice.

## CONCLUSION

The Court should grant the proposed amendments to the scheduling order.

DATED: January 15, 2025.

                        STATE OF IDAHO
                        OFFICE OF THE ATTORNEY GENERAL

By: /s/ *Aaron M. Green*
     AARON M. GREEN
     Deputy Attorney General

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 15, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Howard A. Belodoff
hbelodoff@hotmail.com

Jane Catherine Gordon
Jane@JaneGordonLaw.com

*Attorneys for Plaintiffs*

                                          /s/ *Aaron M. Green*
                                          AARON M. GREEN