Exhibit 13

**HOWARD A. BELODOFF**
**LAW OFFICE OF**
**HOWARD A. BELODOFF PLLC**

1004 West Fort St.
Boise, Idaho 83702
Tel (208) 331-3378
hbelodoff@hotmail.com

December 4, 2024

James E. M. Craig
Gregory E. Woodard
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010

        **RE: MH v. Alex Adams, Case No. 1:22-cv-00409**
        **Fed. R. Civ. Proc. 37 and Local Civ. R. 37.1 Meet and Confer Request**
        **Regarding Defendants' Responses to Plaintiffs' First Set of Interrogatories,**
        **Requests for Production and Requests for Admissions**

Dear Counsel:

        On behalf of Plaintiffs, I request a meet and confer in compliance with Fed. R. Civ. Proc. 37((a)(1) and Idaho Loc. Civ. Rule 37.1 prior to filing a motion to compel. Plaintiffs served their First Set of Interrogatories, Requests for Production of Documents, and Request for Admissions on September 4, 2024 ("Plaintiffs' First Set of Discovery"). It contained 11 Interrogatories, 79 Requests for Production, and 50 Requests for Admissions. Plaintiffs subsequently agreed to Defendants' request for an extension of time to respond. Defendants served their Answers and Responses on October 11, 2024 ("Defendants' Responses") and represented they would supplement their document production by October 18, 2024.

        Defendants' Responses are deficient in numerous respects. The deficiencies fall into at least five categories: 1) A General Objection section containing boilerplate objections and assertions of privileges unconnected with specific requests; 2) Asserting boilerplate, non-specific, and form objections; 3) Asserting relevance and not proportional to the needs of the case; 4) Asserting attorney-client privilege and work-product doctrine without any basis, detail, and without providing a privilege log; 3) Claiming other scheduling deadlines relieve Defendants of their obligations to respond; 4) Failing to provide or supplement documents within Defendants' possession, custody and control; and 5) Asserting objections that are directly contrary to the discovery Rules and established caselaw.

        The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. In interpreting Rule 26(b), the United States Supreme Court stated that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper

1

litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor,* 329 U.S. 495, 506 (1947). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving he issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 at 501). Plaintiffs are entitled to discovery regarding all facts and evidence that are relevant whether or not it will be presented at trial as part of their trial strategy. An interrogatory is not irrelevant simply because it tracks the allegations in the pleading. On the contrary the factual allegations are relevant for discovery purposes. "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1).

Rule 26(b)(1) supports disclosure of the information and documents being requested by Plaintiffs. "[W]ide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for truth." *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). Pursuant to Rule 33(a)(1) an "[i]nterrogatory may relate to any matter that may be inquired under Rule 26." Each interrogatory must be answered separately and fully and "the grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause excuses the failure." Rules 33(b)(3) & (4).

"Generally, the party opposing discovery carries a 'heavy burden' of showing why discovery should be denied." *Asarco LLC v. Union Pac. R.R. Co.*, 2016 U.S. Dist. LEXIS 58262 *13 (D. Idaho 2016) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship*, 519 F.2d at 429). Defendants have failed to make a good faith effort to engage in pretrial discovery that is consistent with the spirit and purposes of the discovery rules.

## 1. General Objections Are Improper

Defendants' Responses start with a "General Objections" section asserting "[e]ach of Defendants' responses, in addition to any specifically stated objections, is subject to and incorporates the following General Objections" in addition to the specific objections asserted in the responses. Responses at 1. There is no provision in the Rules for such objections. "General Objections" only complicate the discovery process and create barriers to the appropriate and fair sharing of relevant and discoverable information and documents. The objections are not asserted in response to any particular interrogatory or document request, and do not identify any particular failures with any of Plaintiffs' requests. Thus, it is impossible for Plaintiffs to cogently

respond to or deal with general objections. If Defendants have a specific objection to a specific request, it must be stated and explained in the response to that request.

Defendants' blanket General Objections are made "on the grounds that they do not identify either what party is making the request or what party is required to respond." *Id.* Defendants cannot seriously contend they are unaware that each Plaintiff is the only party who can seek discovery from the Defendants. Plaintiffs' Definitions clearly state who is required to answer and respond to the discovery. *See* Plaintiffs' First Set of Discovery at 4. ("11. 'You' and 'your' shall mean the Defendant to whom these Interrogatories and Requests are addressed and its affiliates, predecessors, successors, agents, employees, counsel, consultants, experts, investigators, or other persons acting on your behalf.").

### 2. Boilerplate and Non-Specific Objections and Assertions of Privilege without Any Apparent Basis or Detail Are Improper and Are Waived.

Defendants provided a catalogue of boilerplate objections, including claiming an interrogatory or request for documents is vague, ambiguous, overbroad, and seeks irrelevant information, while failing to provide any explanation for their objections. Defendants' numerous boilerplate and non-specific objections, include the assertion that Plaintiffs' Discovery Requests are "unduly broad and burdensome" because the Discovery Requests: (1) relate to the facts in the Complaint and "track" the allegations in the pleadings and require them to identify witnesses; (2) request Defendants to itemize or disclose their evidence and trial strategy; (3) contain "multiple unrelated subparts and are in excess of the 25 interrogatory limit"; (4) do not know every possible person with knowledge; (5) seek relief not before the Court and facts not relevant to Plaintiffs' claims and are not proportional to the needs of the case; (6) seek information protected by attorney client privilege and work product doctrine; (7) request information for future motions, hearing or trials and the disclosure of experts prior to deadlines set forth in the Scheduling Order; (8) seek facts related to TB; (9) do not define the Defendant to whom the discovery is addressed; and (10) are not relevant to the scope of injunctive relief under *Labrador v. Poe*, 144 S.Ct. 921 (2024) (mem.).

Defendants do not provide any explanation for its boilerplate and non-specific objections and privileges.[1] "Rule 26 clarifies that a proper assertion of privilege must be more specific than a generalized, boiler plate objection." *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1147 (9th Cir. 2005). A party cannot simply make unsupported objections, it must justify them. *See* 8 Wright & Miller, §2263, at 737, n. 57. The responding party must clarify, explain, and support its objections. *Anderson v. Hansen*, 2012 WL 4049979* 8 (E.D. Cal. Sept. 13, 2012) (In relating to requests for admissions, "[t]he grounds for objecting to a request must be stated...and as with other forms of discovery, it is well established that boilerplate objections do not suffice.")

---

[1] *See* Instructions for Plaintiffs' Discovery Requests which provides: "6. In answering these interrogatories and responding to these requests for admission and requests for production of documents, unless otherwise indicated, please furnish all non-privileged information in your possession or available to Defendants, including information in your possession or that of your agents or representatives retained by you or your attorney, not merely information known of the personal knowledge of the person supplying the information." Plaintiffs' First Set of Discovery at 5.

When a party responds with a boilerplate or generalized objection, the "objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Associations*, 186 F.R.D. 584, 587 (C.D.Cal. 1999) (citations omitted). *See also Ritacca v. Abbott Laboratories*, 203 F.R.D. 332, 335 n.4 (N.D.Ill. 2001) ("As courts have repeatedly pointed out, blanket objections are patently improper,...[ and] we treat [the] general objections as if they were never made."). *See also Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) (calling boilerplate objections "legally inadequate or meaningless.")

### 3. Conditional Responses to Discovery Are Improper and Waive Any Objections.

Defendants assert content-free boilerplate objections without any explanation and include in their responses, "[n]otwithstanding the forgoing and without waiving any objections, Defendants respond as follows." *See eg.* **Response to Interrogatory No. 1.** Defendants' objections place Plaintiffs into the posture of not knowing whether they can rely on the answer and or if there is additional information that is withheld, hidden, or otherwise not disclosed.[2] The responses are confusing and misleading because when a party responds to an interrogatory that is "subject to" and "without waiving its objections," the propounder of the interrogatory is "left guessing as to whether the responding party has fully or only partially responded to the interrogatory." *Estridge v. Target Corp.*, 2012 WL 527051 at *1-2 (S.D. FL 2012). Conditional responses and/or the purported reservation of rights by a responding party are improper and ultimately have the effect of waiving the objections to the discovery requests. *Sprint Communications Co. v. Comcast Cable Communications, LLC*, 2014 WL 545544 at *2 (D. KS 2014) ("Sprint I"), modified, *2014* WL 569963 (D. KS 2014) ("Sprint II"). Plaintiffs cannot discern if Defendants' Interrogatory Answers are complete or whether there is information being held back pursuant to an objection.

### 4. Excess Interrogatory Objections

Plaintiffs served eleven Interrogatories. Interrogatory No. 2 asks "For each denial of allegations in your Answer to the Plaintiffs' First Amended Complaint, set forth all facts upon which you base your denial or lack of knowledge." *See* Plaintiff's First Set of Discovery. Part way through answering Interrogatory No. 2, Defendants begin objecting on the grounds that Interrogatory No. 2 contains multiple unrelated and distinct subparts, thus Interrogatories Nos. 2-11 are in excess of 25 interrogatories. *See eg.* Interrogatories Nos. 1-11.

Defendants contend that each separate paragraph in the Amended Complaint is an unrelated and distinct subpart and constitutes an entirely separate interrogatory.[3] Defendants failed to provide any detail or to disclose any explanation for its objections that each paragraph is

---

[2] *See* Instructions in Plaintiff's First Set of Discovery at 6. ("10. If you object to an Interrogatory or Request but nonetheless respond without waiving such objection(s), please explain whether information or documents are actually being withheld based upon a stated objection or if not, indicate the objection is merely cautionary with no actual withholding of potential information or responsive documents.").

[3] Defendants' Answer admitted 12 paragraphs, partially admitted 35 paragraphs, stated at least 100 paragraphs speak for themselves and denied 288 paragraphs. Dkt. 99.

distinct and therefore the Interrogatories exceed the 25-interrogatory limit. Therefore, the boilerplate plate objections are waived.

Plaintiffs' Discovery Plan limited discovery to 25 interrogatories including all discrete subparts. Dkt. 67-1 at 6 ¶IV(a). Rule 33(a)(1) provides: "Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." The Advisory Committee Notes to the 1993 Amendments state:

> As with the number of depositions authorized by Rule 30, leave to serve additional interrogatories is to be allowed when consistent with Rule 26(b)(2). The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery devise. In many cases it will be appropriate for the court to permit a larger number of interrogatories in the scheduling order under Rule 16(b).

If necessary, Plaintiffs will seek leave to serve additional interrogatories. However, Plaintiffs disagree that each paragraph containing a factual allegation constitutes a discrete subpart under Rule 33(a)(1). The Amended Verified Complaint is composed of ten sections including: Introduction (¶¶1-20), HB 668's Ban on Public Funds for Gender Affirming Care (¶¶21-34), Adult and Child Plaintiffs (¶¶35-138), Idaho's Medicaid Exclusion Policy and HB 668 Cause Plaintiffs' Irreparable Harm (¶¶139-20), Jurisdiction and Venue (¶¶155-157), Facts: Gender Identity and Gender Dysphoria (¶¶158-186), Federal Medicaid Requirements (¶¶187-211), Idaho Medicaid Requirements (¶¶212-223), MH's Request for Gender Affirming Treatment and Appeal, (¶¶224-275), TB's Request for Gender Affirming Treatment (¶¶276-297). These sections, while composed of different paragraphs, are subparts that are "'logically or factually subsumed within and necessarily related to the primary question' so as to amount to a single interrogatory." *Asarco LLC v. Union Pac. R.R. Co.*, 2016 U.S. Dist. LEXIS 58262 *30-31 (D. Idaho 2026) (quoting *Safeco of America v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (also quoting *Paananen v. Cellco P'ship*, 2009 WL 3327227, *2 (W.D. Wash. 2009) ("Subparts relating to a 'common theme' should generally be considered a single interrogatory.") (cleaned up)). Therefore, if including each of the ten sections as a separate interrogatory, then Plaintiffs' Interrogatories still only contain 21 individual interrogatories and do not exceed the 25-interrogatory limit.

## 5. Privilege Objections and Privilege Log

## A. Attorney-Client Privilege

Defendants claim attorney-client privilege in response to Plaintiffs' Interrogatories and Requests for Production of Documents. A party claiming attorney-client privilege as grounds for not complying with a discovery request has the burden of proof to demonstrate that the withheld documents are privileged. *See In re Excel Innovations, Inc.*, 502 F.3d 1086 (9th Cir. 2007); *In re Grand Jury Investigations*, 974 F.2d 1068, 1070 (9th Cir. 1992) ("'To prevent abuse and assure the availability of relevant evidence to the prosecutor, the privilege is limited to 'only those disclosures-necessary to obtain informed legal advice-which might not have been made absent the privilege.' (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)"). Attorney-client

privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice as well as an attorney's advice in response to such-disclosures. *See United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996). The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Just because a person is a lawyer does not make all communications with that person privileged. *Id*.

There are eight essential elements in evaluating whether attorney client privilege attaches to a communication: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977) (quoting Wigmore Evidence § 2292). Notably, only "legal advice" from a "legal adviser in his capacity as such" is protected—the privilege will not serve "to permit an attorney to conduct his client's business affairs in secret*." Id. See also* 24 Fed. Prac. & Proc. Evid. § 5478 (business matters, although conducted by attorney, "do not qualify as 'professional legal services.'"). Simply speaking to an attorney about the facts of a case does not qualify those facts as protected by attorney-client privilege. "The claimant of the privilege, of course, must bear the burden of proving that he is entitled to this protection. *United States v. Gurtner*, 474 F.2d 297 (9th Cir. 1973).

## B. Work Product Doctrine

The work product doctrine, codified in Rule 26(b)(3), protects documents prepared by a party or his representative in anticipation of litigation. *United States v. Richey*, 632 F.3d 559, 567-68 (9th Cir. 2011) (citing *In re Grand Jury Subpoena Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 906-07 (9th Cir. 2004). Only documents prepared *for trial* enjoy this status. "There is no protection for documents prepared in the ordinary course of business, even if they may be useful in litigation." *Clavo v. Zarrabian,* 2003 WL 24272641, at *2 (C.D. Cal. Sep. 24, 2003); *see also Prater v. Consol. Rail Corp.*, 272 F. Supp. 2d 706, 713 (N.D. Ohio 2003) (no protection exists where "the lawyers were doing business work, not legal work, albeit in response to lawsuits and the risk of lawsuits."). Defendants have not provided any information as to how their assertions of privilege qualifies as work product and the Responses are silent as to the reasons the information and documents were work product in this litigation. "[T]he burden" of establishing work product protection "rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Inv. Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

## C. Defendants' Privilege Objections Do Not Meet the Requirements of Rule 26.

Defendants have asserted claims of attorney client privilege and the attorney work product doctrine without providing a privilege log identifying the document or basis for the privilege. Rule 26(b)(5)(A)(i)-(ii) requires Defendants provide Plaintiffs with a privilege log that lists each document withheld from production, including the nature of the documents or communication not produced in a manner that "will enable other parties to assess the claim." *See Burlington Northern & Santa Fe Ry. v. United States Dist. Cour*t, 408 F.3d 1142, 1147 (9th Cir.

2005). Defendants' Answers and Responses simply recite context-free objections based on work product, attorney client, or other unidentified privilege objections without providing any apparent basis or detail. *See, e.g., Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) (objections not "specifically in conformity with the Rules will be regarded as a waiver of those objections."). *Accord Sabol v. Brooks*, 469 F.Supp. 2d 324, 328 (D. Md. 2006).

In addition to Rule 26's requirements, Plaintiffs' Instructions required Defendants to provide a privilege log with specific information supporting the assertion of a privilege.[4] Plaintiffs consider Defendants' objections and claims of privileges waived and will seek an order from the Court to compel compliance with discovery rules and for Defendants to fully and timely supplement their answer the Interrogatories produce the requested documents.

### 6. Discovery Plan Objections

Defendants object to producing emails from the Division of Medicaid and "in excess of the 8 custodian default limit that both parties agreed to in Section V(k)-(j) of the discovery plans and is therefore not proportionate to the needs of the case." Plaintiffs filed their Proposed Discovery Plan. *See* Dkt. 67-1. Defendants filed their Proposed Discovery Plan. *See* Dkt. 68-1. There was no agreement between the parties. The Court issued a Scheduling Order but did not approve a Discovery Plan. *See* Dkt. 69. The Court encouraged the parties to work together and if a dispute arose during the course of discovery that could not be resolved informally the parties could move the Court for relief. *Id.* at 2 n. 3.

Both Plaintiffs' and Defendants' Discovery Plans agreed to the paragraph entitled "**E-mail Custodian Exchange:** On or before the date of the Initial Disclosures [June 20, 2024], the parties agree to exchange lists identifying (1) likely e-mail custodians, and (2) a specific identification of the *[15]* most significate listed email custodians in view of the pleaded claims and defenses.**" Dkt. 67-1 at 8-9 V. *ESI* ¶g and 68-1 at 8 ¶h. Defendants did not disclose any custodians or identify the 15 most significant custodians in Defendants' Initial Disclosures.

Defendants' Discovery Plan "**Search Methodology – Transparency**: required "[t]he parties agree that they will share their search methodology for responding to request for production of ESI to the following extent: fully share." Dkt. 68-1 at 7 ¶f. Defendants have not shared their search methodology and search terms or consulted with Plaintiffs to identify the proper custodians, search terms, and time frames. Defendants did not consult with Plaintiffs on the custodians or the search terms it used prior to the search of electronic records. Defendants have not disclosed the custodians who emails were searched in answering and responding to Plaintiffs' discovery.

---

[4] Plaintiffs' Discovery Request Instruction 12 provides: "If any form of privilege or other protection from disclosure is claimed as a ground for withholding responsive information whether contained in a document or any other source of knowledge, please provide a privilege log with the nature of the objection, date, title, identity of the author, subject matter (without revealing the information for which the privilege is claimed), and all facts and legal basis on which you claim the privilege. The claim of privilege or confidentiality should be supported with such specifics so as to permit the Court to make a full determination of its validity."

Defendants first served a list of search terms it used with the Responses. The search terms were not adequate and mostly duplicative of each other. Plaintiffs' Discovery Plan indicated they are entitled to seek emails from "a total of **20 keyword search terms per custodian per party**." Dkt. 67-1 at 9 ¶k (emphasis added). Plaintiffs' agreement to Section V(k)-(j) limiting the number of custodians to eight cannot be read in isolation and was contingent upon and must be read in the context of the other Sections regarding ESI discovery which Defendants agreed to.

Plaintiffs provided Defendants with a list of Custodians or Job Titles and the Systems, Servers or Databases to be used in discovery in their Discovery Plan. Dkt. 67-1 at 2-3. Defendants provided Plaintiffs with a list of Custodians or Job Titles and the Systems, Servers or Databases it intended to use to respond to Plaintiffs' discovery in their Discovery Plan. Dkt. 68-1 at 2-3. Defendants have not disclosed the custodians and the systems, servers and databases that were searched in responding to the Plaintiffs' discovery. Defendants have not disclosed or produced documents from the custodians and on the subjects listed in the Plaintiffs' Discovery Plan.

Defendants' counsel indicated the search resulted in approximately 18,000 emails and 30,000 documents with attachments. *See* Greg Woodward October 4, 2024 email to Howard Belodoff. Defendants only disclosed 47 emails including many that were duplicative of each other. The 47 emails served with the Response to the Request for Production included 35 emails that were from Plaintiff TB or her mother LB regarding TB's request for medically necessary treatment which included her medical records which Plaintiffs already had and were provided to Defendants. Defendants produced these emails despite their objections to discovery regarding TB on the grounds that "TB is not relevant to any parties claim or defense." Defendants' Responses additionally included one email related to MH, one related to BM, and two emails related to GM's requests for medically necessary treatment. The produced emails establish the email custodians and search terms were never intended to produce relevant discovery. No produced documents address the scope of discovery listed in Plaintiffs' Discovery Plan.

Plaintiffs request Defendants produce the relevant discovery in response to the Request for Production of Documents. Plaintiffs request that the parties discuss the Discovery Plan violations during the meet and confer conference and that Defendants supplement their responses. Plaintiffs request to conduct a Rule 30(b)(6) deposition of the person who can testify about the method and process used to conduct and respond to discovery including the selection of the custodians and search terms.

## 7. Expert Discovery Objections

Defendants object to responding to discovery on their experts. ***See* Response to Interrogatory No. 8.** Rule 26(a)(2) does not limit discovery of expert or the duty to respond to a discovery request by the disclosure deadlines established in the Scheduling Order. Rule 26(a)(2) states: "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the **identity** of the any witness it **may use at trial** to present evidence under Federal Rule of Evidence 702, 703, or 705." (emphasis added). Defendants have previously identified and filed declarations and reports from three experts in this action. These experts are therefore

subject to discovery. *See* Rule 33(a)(2) ("**Scope**. An interrogatory may relate to any matter that may be inquired into under Rule 26(b).").

Plaintiffs served Requests for Admissions within the scope of Rule 26(b)(1) under Rule 34(a)(1). The nature and purpose of requests for admissions "is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. Southern Pacific Transport Co.*, 699 F.2d 1242, 1245 (9th Cir. 981). *See also* Note to 1970 Amendments to Rule 36. "If a matter is not admitted, the answer to a request for admission shall specifically deny it or state in detail the reasons why the answering party cannot truthfully admit or deny it." Rule 34(a)(4). Defendants did not admit Requests for Admission Nos. 14 to 50 which reference Dr. Laidlaw, Dr. Cantor, and Dr. Hunter. Defendants asserted boilerplate objections to these Requests contending they are "overbroad and burdensome," "an attempt to elicit trial testimony," "improper generally" in a request for admission, and premature because the expert disclosure deadline has not passed. Defendants also object because "serious medical condition" and "sex-reassignment surgery" are not defined terms. Rule 34 does not limit the use of requests for admission referencing experts based upon the scheduling order. The Plaintiffs' Discovery "Definitions" instruction specifically state: "Any word or term not defined herein should be interpreted and defined pursuant to its common usage, interpretation, or meaning." Defendants' boilerplate objections are improper and waived and Plaintiffs consider these Requests for Admissions deemed admitted under Rule 36(a)(3).

### 8. Objections under *Labrador v. Poe*

Defendants objected to Interrogatory No. 11 and Requests for Production Nos. 5, 7, 10, 11, 16, 21, 22, and 36 because they "are not relevant or proportional to any claim and defense" and because it concerns "parties who cannot receive injunctive relief under *Labrador v. Poe*, 144 S.Ct. 921 (2024)." The requested information is relevant for purposes of discovery beyond the requested relief. Plaintiffs have filed a motion for class certification on behalf of similarly situated persons which renders the objection moot.

### 9. CPT Codes

Plaintiffs requested documents related to CPT codes for transgender individuals. *See* Request for Production Nos. 44 to 79. Current Procedural Terminology (CPT) codes are standardized numerical codes that identify medical procedures and services performed by healthcare professionals. The American Medical Association (AMA) is responsible for developing, maintaining, and updating CPT codes. CPT codes are used for billing, reporting, and administrative purposes. They help to streamline reporting, increase accuracy, and improve efficiency. Idaho Medicaid uses CPT codes for all medical services and procedures covered and reimbursed by Medicaid. Idaho physicians use CPT codes in seeking approval of and payment for services they provide to all Medicaid beneficiaries. The CPT codes in the Requests for Production are copied directly from the Idaho Medicaid list of official codes which are based upon nationally adopted codes. These same CPT codes were used in MH's, BM's, GM's and TB's providers requests for authorization of surgeries and by Telligen who was assigned to review their requests. If necessary, I will have other physicians submit declarations that they

have used these codes. MH's physician submitted these codes for her surgery that was covered and reimbursed by Medicaid.

Defendants objected because the "Requests requires Defendants to create documents which is not a permissible use of a request for production." The Request does not require Defendants to create a document. The definition for "document" includes "computer runs and printouts, summaries and analysis of computer runs and printouts, any documents necessary to the comprehension or understanding of any computer run, such as codes for computer runs, and any printed or recorded material of any kind." Defendants are required to produce these documents because they can be generated by their computer systems.

**10. Defendants have not identified which produced document responds to which Request for Production**

Defendants produced documents without identifying in the Responses which produced document is responsive to which Request for Production. Plaintiffs cannot determine whether Defendants have responded to each Request for Production. Plaintiffs' General Instructions state:

> 7.    In responding to the Requests for Production of Documents, please produce documents in such a way that are identifiable to the specific Request or Requests to which each document responds. Please DO NOT produce documents in bulk or in any other manner which requires Plaintiffs and their counsel to speculate or guess which documents may or may not respond to a particular Request or Requests.

Plaintiffs request Defendants identify which produced document correlates with each Request for Production.

DATED: December 4, 2024.

/s/ Howard A. Belodoff
Howard A. Belodoff

/s/ Jane Gordon
Jane Gordon

Attorneys for Plaintiffs