UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MH, TB, KB, SG, AC, BM, individually, and G Doe, by and through her parents and next friends, JANE Doe and JOHN Doe,<br><br>Plaintiffs,<br><br>vs.<br><br>ALEX ADAMS, in his official capacity as the Director of the Idaho Department of Health and Welfare; DR. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>Defendants, | Case No.: 1:22-cv-00409-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO AMEND SCHEDULING ORDER**<br><br>**(Dkt. 155)** |

Pending before the Court is Defendants' Motion to Amend Scheduling Order (Dkt. 155). Having carefully considered the parties' respective positions, the Court grants the Motion as discussed below.

## BACKGROUND

Defendants move to extend three deadlines: (i) the January 9, 2025 fact discovery deadline (to March 6, 2025);[1] (ii) the February 7, 2025 expert discovery deadline (to April 8,

---

[1] The original December 9, 2024 fact discovery deadline was extended to January 9, 2025 by stipulation on November 26, 2024. *See* 11/26/24 DEO (Dkt. 145) (adopting the parties' November 25, 2024 Stipulation (Dkt. 144)). In shortening the briefing schedule for the at-issue Motion, the Court ordered that the intervening January 9, 2025 fact discovery deadline "is extended until 14 days after the Court resolves Defendants' Motion to Amend, unless otherwise ordered." 1/8/25 Order (Dkt. 161).

**MEMORANDUM DECISION AND ORDER - 1**

2025);[2] and (iii) the April 8, 2025 dispositive motion deadline (to July 14, 2025). They argue that extending these deadlines is appropriate for three reasons. First, Defendants are actively seeking to enforce a subpoena on the World Professional Association for Transgender Health ("WPATH"). That subpoena, however, is the subject of ongoing litigation in the United States District Court, Northern District of Illinois, *M.H., et al. v. Adams, et al. v. World Professional Assoc. of Transgender Health*, No. 1:24-cv-12051 (N.D. Ill.), with oral argument scheduled for February 6, 2025. Given Plaintiffs' reliance on the WPATH standards, Defendants argue that the subpoenaed documents are essential to their case. Second, the United States Supreme Court heard oral argument in *United States v. Skrmetti* in December 2024 and will render a decision later this year. According to Defendants, *Skrmetti* may decide many of the questions relevant to this case. Third, Defendants simply contend that more time is needed to conduct discovery, highlighting how neither side has noticed any depositions. When an anticipated stipulation to extend these deadlines fell through, Defendants filed the instant Motion.

Plaintiffs oppose Defendants' extension requests. They counter that Defendants' WPATH subpoena is irrelevant because Defendants already have Plaintiffs' medical records detailing their medical histories, assessments, diagnoses, and treatment of gender dysphoria. Plaintiffs also disagree that the Supreme Court in *Skrmetti* will yield useful insight for this Court's consideration, owing to the fundamental differences between the two cases. Finally, Plaintiffs argue, generally, that Defendants' delay in conducting discovery should not be rewarded by extending deadlines in a case that has languished, especially when doing so causes more delay and, thus, more harm to Plaintiffs themselves.

---

[2] After the Motion was fully briefed, the parties stipulated to extend the expert discovery deadline to March 10, 2025. *See* Stip. (Dkt. 164). That Stipulation is hereby adopted and the expert discovery deadline is extended to March 10, 2025. This Memorandum Decision and Order therefore addresses only the fact discovery and dispositive motion deadlines.

**MEMORANDUM DECISION AND ORDER - 2**

## LEGAL STANDARD

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Rule 16(b)(4)'s "good cause" standard "primarily considers the diligence of the party seeking the extension." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). A court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Comm.'s Notes (1983 Am.). Where that party has not been diligent, the inquiry ends and the motion is denied. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2022). A district court has "broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion." *Id*. (quoting *Johnson*, 975 F.2d at 607).

## DISCUSSION

Preliminarily, Plaintiffs state that the Court "previously rejected Defendants' request to amend the Scheduling Order." Resp. to Mot. to Am. at 1 (Dkt. 162). Though technically true, that fact is not particularly pertinent when considering that this earlier request related to Plaintiffs' then-anticipated Amended Complaint.[3] The Court denied the request, in part because the involved deadlines were still several months out. *See* 8/12/24 MDO at 7 (Dkt. 123) ("While Plaintiffs' Amended Complaint may have technically expanded the scope of the action by adding more Plaintiffs and bringing HB 668 into the fold, the substantive legal claims remain largely the

---

[3] Plaintiffs moved to amend their Complaint on June 4, 2024 (Dkt. 70). Defendants did not oppose Plaintiffs' Amended Complaint on June 14, 2024 (Dkt. 77), and moved to extend the pre-trial deadlines that same day. *See* Mot. to Am. at 2 (Dkt. 81) ("With the Amended Complaint, there are now five new plaintiffs, seeking various modifications, all of which will require discovery into the medical necessity thereof, Medicaid eligibility, and the harms alleged by each plaintiff. There is an entirely new legal theory relating to a law passed by the legislature that enjoys a presumption of constitutionality. All these factors weigh in favor of additional time to conduct discovery."). Plaintiffs filed their Amended Complaint on June 17, 2024 (Dkt. 86).

**MEMORANDUM DECISION AND ORDER - 3**

same. Extending deadlines is thus not warranted at the moment. In the event the Scheduling Order ultimately needs to be amended, the parties are encouraged to file a stipulation to that effect; otherwise, the Court will consider a motion to amend at a more appropriate time."). This is to say that the context for denying Defendants' earlier request to amend the Scheduling Order was markedly different than the situation prompting Defendants' latest amendment efforts, and therefore immaterial. One does not help inform the other.

The current context is not the same. Defendants' current Motion followed the parties' stipulation to extend the original December 9, 2024 fact discovery deadline to January 9, 2025. But when Plaintiffs would not agree to an additional extension in late December 2024, Defendants sought relief from the Court via the pending Motion. This evolved setting informs the issue before the Court: Does good cause exist to modify the Scheduling Order and extend the deadlines for fact discovery and dispositive motions? The Court is persuaded that good cause does exist.

The Court begins by looking at the state of discovery. While both sides have propounded written discovery, it appears undisputed that no depositions have been taken by either side. To Plaintiffs' point, Defendants could have done more earlier on, particularly when considering that the case was filed in September 2022. *See* Resp. to Mot. to Am. at 9-10 (Dkt. 162). But that is almost always the case when considering requests to extend discovery deadlines, and fails to keep in mind that (i) Defendants moved to dismiss portions of Plaintiffs' case (parts of which were not resolved by the Ninth Circuit until September 2024 (Dkt. 125));[4] (ii) Defendants sought

---

[4] That said, on March 8, 2024, the Court denied Defendants' Motion for Certification of Interlocutory Appeal and Stay Pending Appeal. *See* 3/8/24 MDO at 17 (Dkt. 63) ("[D]iscovery and motion practice directed to Dr. Hamso as to Plaintiffs' Equal Protection and Due Process claims are stayed, given her pending qualified immunity appeal pertinent to those claims. But Dr. Hamso is also a named-Defendant in relation to other claims that Defendants did not move to dismiss, that the Court did not consider, and that exist independent of her appeal or the

**MEMORANDUM DECISION AND ORDER - 4**

discovery (including Plaintiffs' depositions) well before the applicable discovery deadlines; and (iii) the parties stipulated to extend the discovery deadline as recently as November 26, 2024, recognizing that more discovery was needed. So while it is true that Defendants could have engaged in discovery sooner, this fact alone does not necessarily mean that they were not diligent in meeting the Court's deadlines. *See, e.g.*, *Rossow v. Jeppesen*, 2024 WL 5225897, at *1 (D. Idaho 2024) (that a motion to amend scheduling order could have been filed sooner "is not incompatible with diligence").

To be sure, Defendants *were* diligent in trying to meet the various fact discovery deadlines – at least with respect to getting depositions scheduled:

- On November 8, 2024, Defendants' counsel reached out to Plaintiffs' counsel, asking for deposition dates. *See* Ex. 2 to Green Decl. (Dkt. 163-3) ("Please let me know dates that Plaintiffs and Plaintiff G Doe's parents are available for deposition before the December 9 discovery cutoff.").

- On November 12, 2024, Plaintiffs' counsel responded that he had been in a serious car accident and would "know more [the following] week as to when [he would] have the ability to participate in the depositions." *Id*. Plaintiffs' counsel also indicated that he "want[ed] to schedule some depositions as well" and requested "dates starting on December 2nd so [he] can consult with [his] clients." *Id*.

- Later on November 12, 2024, Defendants' counsel proposed taking Plaintiffs' depositions "anytime between December 2 and 9 with the exception of the December 5, 11:00 a.m. hearing in this case." *Id*.

- On November 25, 2024, the parties stipulated to extend the December 9, 2024 fact discovery deadline to January 9, 2025. *See* Stip. (Dkt. 144); 11/26/24 DEO (Dkt. 145) (adopting the stipulation and re-setting the fact discovery deadline to January 9, 2025).

- On November 27, 2024, Defendants' counsel reached out again with proposed dates to take Plaintiffs' depositions. *See* Ex. 3 to Green Decl. (Dkt. 163-4) ("We would

---

application of the qualified immunity defense. There is no basis to preclude litigation on these other claims during the pendency of her appeal. Moreover, that Dr. Hamso's appeal may relate in some way to certain claims asserted against Defendants does not support an all-encompassing stay at this time. How that appeal might be resolved given the factors informing a qualified immunity defense, and how that resolution might impact these other related claims, if at all, are too inchoate for the Court to find that a stay of the entire case makes sense.").

**MEMORANDUM DECISION AND ORDER - 5**

- like to schedule the Plaintiffs' depositions during the weeks of December 16 and 23, or December 30 since I will be out of the office from December 31 to January 7. Please let me know what dates work on your end.").

- On December 2, 2024, Plaintiffs' counsel responded by noting that the parties "can figure the schedule out at the meet and confer discovery conference." *Id*.

- On December 4, 2024, Plaintiffs' counsel contacted Defendants' counsel, attaching a meet and confer letter and asking about scheduling a conference to discuss discovery issues. *See* Exs. 4 & 13 to Green Decl. (Dkts. 163-5 & 163-14). Deposition dates were not referenced. *Id*.

- On December 10, 2024, the parties had a meet and confer conference. Defendants' counsel insists that, during this conference, an informal agreement was reached to extend the January 9, 2025 fact discovery deadline because depositions still had not been coordinated. *See* Woodard Decl. at ¶ 5 (Dkt. 163-17) ("Since Mr. Belodoff still had not given me any dates that Plaintiffs were available to that point, during the discussion I specifically asked Mr. Belodoff whether he intended to enforce the January 9, 2025 deadline, to which he responded that he would not."); *see also* Green Decl. at ¶¶ 21-23 (Dkt. 163-1) (same); Myers Decl. at ¶¶ 5-7 (Dkt. 163-18) (same).

Except the parties were never able to stipulate to extend the fact discovery deadline again. *Compare* Ex. 7 to Green Decl. (Dkt. 163-8) (Defendants' counsel stating: "Per the parties' previous discussions that discovery was not going to be complete by the current January 9, 2025, deadline and an extension would be agreed to, we've drafted a proposed stipulation for the extension of discovery deadlines . . . ."), *with* Ex. 10 to Green Decl. (Dkt. 163-11) (Plaintiffs' counsel responding that "our clients have rejected your clients' request for further delays"). Defendants then filed their Motion, asking the Court to extend the fact discovery deadline alongside two other interrelated deadlines. *See supra*.

At bottom, Defendants' tried to get depositions scheduled. Without assigning blame on why that did not happen, it cannot be said that Defendants were not diligent in attempting to coordinate depositions with Plaintiffs before the deadlines. This amounts to good cause.

Plaintiffs' briefing injects a wrinkle in this analysis, however. They argue that, at the preliminary injunction hearing on November 22, 2024, they communicated to Defendants their

**MEMORANDUM DECISION AND ORDER - 6**

need to have Defendants' discovery responses to prepare Plaintiffs for their depositions ahead of time. *See* Resp. to Mot. to Am. at 5, 10, & 19 (Dkt. 162). Plaintiffs fold into this argument an extensive discussion about how Defendants' discovery responses are lacking – what presumably prompted the parties' December 10, 2024 meet and confer conference. They in turn imply that any problems with scheduling depositions are therefore a function of Defendants' incomplete and piecemeal discovery production to date. *See id*. at 8 ("Defendants should not benefit from their refusal to provide answers and responses to Plaintiffs' discovery by granting an extension of the deadline under the existing Scheduling Order.").

The problem with Plaintiffs' retort is that the record does not substantiate their claim that it was understood between the parties that *Plaintiffs'* depositions are dependent upon *Defendants'* discovery responses. To be sure, on November 12, 2024, Plaintiffs' counsel even suggested a timeframe for Plaintiffs' depositions without mentioning any need for Defendants' discovery responses to prepare Plaintiffs for those depositions. *See* Ex. 2 to Green Decl. (Dkt. 163-3). Plaintiffs' December 4, 2024 meet and confer letter likewise did not mention a correlation between Defendants' discovery responses and Plaintiffs' depositions. *See* Exs. 4 & 13 to Green Decl. (Dkts. 163-5 & 163-14). And Plaintiffs' December 30, 2024 rejection of Defendants' request for a stipulated extension of the January 9, 2025 fact discovery deadline also did not mention the need for Defendants' discovery responses ahead of Plaintiffs' depositions. *See* Ex. 10 to Green Decl. (Dkt. 163-11). Defendants' counsel goes so far as to say: "I do not recall Plaintiffs ever raising the need to prepare their own clients with Defendants' documents or discovery responses as a reason to delay depositions." Green Decl. at ¶ 11 (Dkt. 163-1).

This is not to say that Plaintiffs' problems with Defendants' discovery responses are not real or important. They appear to be legitimate and indeed are important. It is just that those issues cannot serve to undercut Defendants' diligence in trying to secure Plaintiffs' depositions

**MEMORANDUM DECISION AND ORDER - 7**

before the fact discovery deadlines. That standard is met here, especially when recognizing that *neither side has deposed anybody thus far*. To permit what indisputably must still take place, the fact discovery deadline must be extended.

Defendants' WPATH subpoena also seems important – if not directly on the issue of extending the fact discovery deadline (from an inter-party discovery perspective), then at least on the issue of extending the expert discovery (since resolved by stipulation (*see supra*)) and dispositive motion deadlines. By Plaintiffs' own admission, their Verified Complaint "notified Defendants of the use of the WPATH standards of care to determine if medical treatment was medically necessary." Resp. to Mot. to Am. at 11 (Dkt. 162) (citing Compl. at ¶¶ 158-186 (Dkt. 1)); *see also* Am. Comp. at ¶¶ 168-86 (Dkt. 86) (discussing applicability of WPATH's standards of care). Because the medical necessity of particular treatments prescribed for treating gender dysphoria are crucial issues in this case, it is understandable that Plaintiffs look to the WPATH standards of care – and cases that rely on them – to support their claims. *See* Resp. to Mot. to Am. at 11-14 (Dkt. 162) ("'[T]he weight of the evidence shows not only that gender-affirming medical care delivered in accordance with WPATH and Endocrine Society guidelines is helpful and necessary for some adolescents, but also that withholding such care is harmful.'") (quoting *Poe v. Labrador*, 709 F. Supp. 3d 1169, 1193 (D. Idaho 2023)).

This importance to Plaintiffs has a counterpart in Defendants' need for information about the WPATH standards of care. *See* Mot. to Am. at 3 (Dkt. 155) ("As Plaintiffs have made the reliability of the WPATH standards a keystone of their proposed constitutional standard, these documents are essential to Defendants' case."); Reply ISO Mot. to Am. at 7 (Dkt. 163) ("WPATH is a source that other courts in similar gender dysphoria litigation have found is 'part and parcel of Plaintiffs' proposed constitutional standard' and one that Plaintiffs spend paragraphs pointing to as the gold-standard in the Amended Complaint.") (quoting *Boe v.*

**MEMORANDUM DECISION AND ORDER - 8**

*Marshall*, 2023 WL 2646437 at *2 (M.D. Ala. 2023)). As a result, and without more insight into the issue, the Court cannot agree at this time with Plaintiffs' claim that the "WPATH documents will not assist Defendants' defense regarding Plaintiffs' medical necessity for gender-affirming treatments of their diagnosed gender dysphoria." Resp. to Mot. to Am. at 15 (Dkt. 162).[5]

Defendants' WPATH subpoena was served on September 6, 2024, with a return date of October 7, 2024 – well in advance of the original December 9, 2024 fact discovery deadline. That a motion to quash eventually followed is no real surprise, but Defendants claim that it has nonetheless interrupted their preparation in this case. The issues presented within that motion to quash are incapable of resolution here (and this Memorandum Decision and Order should not be interpreted as speaking to matters raised therein), but appear to be poised for consideration following oral argument in the Northern District of Illinois on February 6, 2025. In the meanwhile, these circulating circumstances additionally justify the extension of the impacted deadlines.[6]

Finally, in light of the discussion above, Defendants' Motion does not turn on *Skrmetti*. Regardless, the Court does not find its pending status before the United States Supreme Court all that compelling to Defendants' request anyway. Assuming things stay the course and the Supreme Court weighs in as some expect in Summer 2025,[7] it is very possible – indeed likely –

---

[5] Plaintiffs go on to say that "[t]here is no indication amending the existing litigation deadlines would give rise to the existence of genuine issues of material fact rather than only confirming the existing difference of opinions with Defendants' experts." Resp. to Mot. to Am. at 15 (Dkt. 162). But it is possible for clashing expert opinions to create issues of fact.

[6] The Court is skeptical of blindly lock-step hitching this action to the unfolding motion to quash in the Northern District of Illinois. Any additional timing issues resulting therefrom will be taken up a later time, if necessary.

[7] The recent change in administration may result in the federal government changing its position following the December 4, 2024 oral argument. *See* Adam Liptak, *What Happens to the Case if the Trump Administration Switches Sides? Since the federal government brought the*

**MEMORANDUM DECISION AND ORDER - 9**

that its decision will be a narrow one, drawn upon the unique facts presented in that case, that do not neatly apply here. Of course, maybe not, with *Skrmetti* supplying authoritative precedent after all. *See M.H., et al. v. Jeppesen*, 2024 WL 4100235, at *2 n.2 (9th Cir. 2024) (*this* case, considering appeal of denied motion to dismiss on qualified immunity grounds: "The Supreme Court is expected to address similar Equal Protection issues in the case of [*Skrmetti*]."). The Court sees no reason to elevate this substantive and procedural state of flux over the progression of the case.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Defendants' Motion to Amend Scheduling Order (Dkt. 155) is GRANTED. Unless otherwise ordered, the following deadlines now apply: (i) the deadline to complete fact discovery is extended to March 6, 2025; and (ii) the dispositive motion deadline is extended to July 14, 2025.

IT IS ADDITIONALLY HEREBY ORDERED that the parties' Stipulation for Extension of Expert Discovery Deadline (Dkt. 164) is ADOPTED. Unless otherwise ordered, the deadline to complete expert discovery is extended to March 10, 2025.



DATED: January 24, 2025

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

---

*challenge, the change in administration could affect its future before the Supreme Court*, N.Y. TIMES (12/4/24), nytimes.com/2024/12/04/us/trump-supreme-court-transgender-rights.html

**MEMORANDUM DECISION AND ORDER - 10**