# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MH, KB, SG, AC, BM, individually, and G Doe, by and through her parents and next friends, JANE Doe and JOHN Doe,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ALEX ADAMS, in his official capacity as the Director of the Idaho Department of Health and Welfare; DR. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>    Defendants, | Case No.: 1:22-cv-00409-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Dkt. 142)**<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION (Dkt. 167)**<br><br>**PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL EXHIBIT IN SUPPORT OF MOTION FOR CLASS CERTIFICATION (Dkt. 175)** |

Pending before the Court are three motions: (i) Plaintiffs' Motion for Class Certification (Dkt. 142), (ii) Plaintiffs' Motion for Reconsideration (Dkt. 167), and (iii) Plaintiffs' Motion for Leave to File Supplemental Exhibits in Support of Motion for Class Certification (Dkt. 175). For the reasons more fully discussed below, each motion is denied.

## I. BACKGROUND

Plaintiffs are transgender individuals – they have gender identities that differ from their assigned sexes at birth. Each has been diagnosed with gender dysphoria and their medical providers have recommended that they receive gender-affirming care as medically-necessary treatment. Plaintiffs are also Idaho Medicaid beneficiaries. They bring this action to challenge (i) Idaho Medicaid's original policy of denying gender-affirming care for transgender individuals

**MEMORANDUM DECISION AND ORDER - 1**

seeking treatment for gender dysphoria (the "Medicaid Exclusion Policy"), and (ii) more recently via their Amended Complaint, Idaho Code §§ 18-8901 and 56-270 (collectively "HB 668"), which went into effect on July 1, 2024 and formally prohibits the expenditure of state funds – to include Medicaid payments – for that same gender-affirming care.

Plaintiffs contend that, while the Medicaid Exclusion Policy and HB 668 exclude coverage for gender-affirming care that is medically necessary for transgender individuals to treat the clinically-significant distress caused by gender dysphoria, cisgender individuals (those whose gender identities correspond to their natal sex) receive coverage for the same or similar health care as a matter of course. They assert that this violates the Patient Protection and Affordable Care Act's sex discrimination provision; the Medicaid Act's availability, comparability and due process requirements; as well as the Equal Protection and Due Process Clauses of the United States Constitution.

Since the action's inception in September 2022, a number of procedural twists and turns have taken place. Relevant here, on June 17, 2024, Plaintiffs moved for summary judgment and also sought a temporary restraining order/preliminary injunction enjoining enforcement of the Medicaid Exclusion Policy and HB 668 statewide. Ultimately, the Court (i) denied Plaintiffs' Motion for Summary Judgment as premature; and (ii) though initially granting a temporary restraining order putting HB 668 on hold until July 18, 2024, later denied Plaintiffs' pursuit of a preliminary injunction for lack of irreparable harm.

Plaintiffs more recently moved for class certification, and moved to file supplemental exhibits in support of that effort. They also moved the Court to reconsider its denial of a preliminary injunction, challenging the Court's analysis of the pertinent status quo based upon newly-discovered evidence. These are the motions considered herein and, for the reasons that follow, each motion is denied.

**MEMORANDUM DECISION AND ORDER - 2**

## II. <u>DISCUSSION</u>

**A.    Plaintiffs' Motion for Class Certification (Dkt. 142)**

1.    <u>Legal Standard</u>

Rule 23 operates as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  To maintain a class action, a plaintiff must "affirmatively demonstrate" compliance with Rule 23.  *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  A plaintiff seeking class certification must satisfy the four requirements of Rule 23(a) by demonstrating: (i) the class is so numerous that joinder of all members is impracticable; (ii) questions of law or fact common to the class exist; (iii) the representative's claims are typical of the claims of the class; and (iv) the representative will "fairly and adequately" protect the interests of the class.  Fed. R. Civ. P. 23(a).

A plaintiff must also present evidence to establish that the case falls within one of three permissible categories of class action.  *Behrend*, 569 U.S. at 34 (citing Fed. R. Civ. P. 23(b)).  Here, Plaintiffs seek class certification under 23(b)(2), which permits certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate" with regard to the class "as a whole."  Fed. R. Civ. P. 23(b)(2).

"Before it can certify a class, a district court must be 'satisfied, after a rigorous analysis, that the prerequisites' of both Rule 23(a) and 23(b)[(2)] have been satisfied."  *Orlean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (9th Cir. 1982)).  This "rigorous" evaluation, however, is not a mini-trial.  *Sali v. Corona Regional Med. Ctr.*, 909 F.3d 1004 (9th Cir. 2018).  "A district court need only consider material sufficient to form a reasonable judgment on each

[Rule 23] requirement," and "[t]he court's consideration is not limited to only admissible evidence." *Id.* at 1005. Still, the plaintiff must "actually *prove* – not simply plead – that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original). They must carry this burden by a preponderance of the evidence. *Orlean*, 31 F.4th at 664.

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). As such, "'whether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question 'whether common questions exist.'" *Alcantar v. Hobart Service*, 800 F.3d 1047, 1053 (9th Cir. 2015).

A trial court has broad discretion regarding whether to grant a motion for class certification. *Bateman v. Am. Multi-Cinema, inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

2.    <u>Class Certification is Not Appropriate</u>

In support of their argument for class certification, Plaintiffs contend that the proposed class meets each of the four requirements of Rule 23(a), and that Rule 23(b)(2) is satisfied as well because a class-wide injunction is the best way to address the Medicaid Exclusion Policy's and HB 668's discriminatory prohibitions against coverage for gender-affirming care. *See* Mem. ISO Mot. for Class Cert. at 3-13 (Dkt. 142-1). Defendants disagree. *See* Opp. to Mot. for Class Cert. at 5-14 (Dkt. 15). But they also raise a more fundamental issue: whether, consistent with Rule 8, Plaintiffs have properly pled class relief or class definitions in the first instance. *See id.* at 3-4. According to Defendants, Plaintiffs have not overcome this threshold hurdle. *See id.*

Plaintiffs confront that issue for the first time in their reply. Critically, they do not dispute that Rule 8's pleading requirements apply to class actions, arguing instead that their

Amended Complaint sufficiently raises class-related allegations and therefore satisfies Rule 8's standards. *See* Reply ISO Mot. for Class Cert. at 2-3 (Dkt. 160) ("Plaintiffs' Amended Complaint contains numerous allegations that the Medicaid Exclusion Policy and HB 668 discriminate against them individually and against a class of all transgender Medicaid participants …. [Defendants' argument] fails to recognize Plaintiffs' factual allegations that the Medicaid Exclusion Policy and HB 668 violates rights of all transgender individuals under the Medicaid Act and Equal Protection Claims for Relief[.]"). Plaintiffs' argument is unpersuasive.

To begin, caselaw establishes that, part and parcel with Rule 8, "[t]o maintain a class action, the existence of the class must be pleaded and the limits of the class must be defined with some specificity. The grant, sua sponte, of class action relief when it is neither requested nor specified, is an obvious error." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1041 (9th Cir. 2014). This means that, when a party wants to certify a class action under Rule 23, "the party should plead class allegations in its complaint." *Duckett v. Rentokil N.A., Inc.*, 2019 WL 13201977, at *2 (E.D. Wash. 2019) (citing *Vondersaar v. Starbucks Corp.*, 719 Fed. App'x 657, 658 (9th Cir. 2018)); *see also Coppel v. Seaworld Parks & Ent., Inc.*, 347 F.R.D. 338, 350 (S.D. Cal. 2024) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."); *Owino v. CoreCivic, Inc.*, 2020 WL 1550218, at *7 (S.D. Cal. 2020) (same). Legal treatises confirm this requirement. *See* Stevenson & Fitzgerald, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* § 10:535 (The Rutter Group 2024) ("To state a valid claim for class relief, the complaint (or other pleading containing such claim) must contain allegations showing the existence of the *prerequisites and grounds for maintaining a class action* ….") (emphasis in original); 7B Wright, Miller & Kane, Fed. Prac. Proc. Civ. 3d § 1798 ("[I]n a class action, plaintiff is required to set forth more than the three elements of a complaint described in Rule

**MEMORANDUM DECISION AND ORDER - 5**

8(a); a class-action plaintiff also must show that the action falls within the requirements of Rule

23. . . .  Therefore, for an action to go forward under Rule 23, the pleader must set forth

sufficient allegations to show that the four requirements set forth in subdivision (a) are satisfied

and that the action falls within one of the three categories described in subdivision (b).").

Plaintiffs do not deny that a class action logically must be proceeded by a complaint

alleging that the lawsuit is indeed a class action.  *Supra*.  However, they criticize Defendants'

attempt "to heighten Rule 8's requirements by requiring Plaintiffs to allege the procedural

elements of Rules 23(a)(1)-(4) and (b)(2), rather than by focusing on the facts supporting Rule 23

class certification."  Reply ISO Mot. for Class Cert. at 4-5 (Dkt. 160) (emphasis added) (citing

*Daniel v. Lennar Corp.*, 2019 WL 8194735, at *6 (C.D. Cal. 2014)).  This argument misses the

point.  It may be true that class relief is generally determined through a motion for class

certification, but this does not mean that class allegations are not required at the pleading stage; it

only means that a class does not get certified based solely upon allegations in a complaint – those

allegations get tested at the certification stage pursuant to Rule 23(c).  *See Halliburton*, 573 U.S.

at 275 (plaintiff must "actually *prove* – not simply plead – that their proposed class satisfies each

requirement of Rule 23 ....") (emphasis in original).  To be clear, class action-related allegations

are required to put Defendants on notice that Plaintiffs seek class-wide relief.  *See supra*.

Plaintiffs' Amended Complaint falls significantly short of that standard.

First, there are no allegations relating to certifying a class within Plaintiffs' Amended

Complaint.  It is not styled as a class action complaint to begin with; nowhere does it seek class

status, plead the existence of a class, or contain class allegations; the word "class" is not used in

a class action context; and neither Rule 23 itself, nor any of Rule 23(a) or (b)'s requirements, are

ever mentioned.  Plaintiffs, of course, do not disagree; their Amended Complaint's omissions in

these respects are indisputable.  But they respond by pointing to instances in their Amended

Complaint where, in addition to Plaintiffs themselves, passing references to other transgender individuals are likewise included. *See* Reply ISO Mot. for Class Cert. at 4 (Dkt. 160) (citing Am. Compl. at ¶¶ 311 & 321 (Dkt. 86) ("Defendants' discriminatory Medicaid Exclusion Policy and HB 668 *seeks to punish vulnerable transgender individuals, including Plaintiffs*, for being transgender ….") and ¶ 324 ("Defendants' Medicaid Exclusion Policy and HB 668's prohibition does not serve any rational, legitimate, important, or compelling state interest and only serves to *prohibit Plaintiffs and other transgender Idaho Medicaid participants* from obtaining medically necessary health care ….") (emphasis added)). Plaintiffs imply that these types of allegations necessarily put Defendants on notice that they are bringing a class action here because its scope extends beyond Plaintiffs. Crucially, however, these generic allegations ignore the wholesale absence of actual class-related allegations within the Amended Complaint's more than 100 allegations pertaining to Plaintiffs specifically. *See* Am. Compl. at ¶¶ 35-148 (Dkt. 86) (defining who Plaintiffs themselves are, but saying nothing about a more encompassing class); *see also* Resp. to Mot. to Defer at 16-17 (Dkt. 117) (Plaintiffs emphasizing the same point in July 2024 when explaining why they were not seeking a preliminary injunction: "Plaintiffs have come to this decision at the present time because a preliminary injunction *will only protect the named Plaintiffs* and Defendants would probably file an interlocutory appeal further delaying a decision on summary judgment") (emphasis added). Any post-hoc argument in favor of class status is undercut by these glaring facts.

Second, when Plaintiffs sought leave to amend their Complaint on June 4, 2024, they did so to (i) name Director Dave Jeppesen's successor, Alex Adams, as a Defendant; (ii) add five additional Plaintiffs (KB, SG, AC, BM, and G Doe, by and through her parents); and (iii) officially bring HB 668 into the fold of their existing claims, along with the Medicaid Exclusion Policy. *See* Mem. ISO Mot. to Am. at 5 (Dkt. 70-2). According to Plaintiffs at that time,

**MEMORANDUM DECISION AND ORDER - 7**

Defendants would not be prejudiced by the proposed amendments "since the [additional] claims all arise from a similar set of facts plead in the initial Complaint …." Mem. ISO Mot. to Am. at 6-7 (Dkt. 70-2). Like their Amended Complaint, Plaintiffs' Motion to Amend and supporting memorandum never hinted that Plaintiffs were pursuing a class action. To be sure, when opposing Defendants' subsequent request for an extension of time to respond to Plaintiffs' Amended Complaint, Plaintiffs objected, in part, due to the fact that the underlying claims had not changed as between the Complaint and Amended Complaint, despite the above-referenced amendments. *See* Opp. to Mot. for Ext. at 2-6 (Dkt. 94); *see also infra* (discussing nature of Plaintiffs' original Complaint and lack of class-action allegations). They also arguably disclaimed the prospect of class-wide relief when they explained their diligence in seeking an amendment, stating: "Given the time constraints, Plaintiffs *only joined a limited number of transgender individuals as Plaintiffs*." *See id*. at 8 (emphasis added). At bottom, as with the Amended Complaint's allegations, nothing about Plaintiffs' efforts to amend their Complaint suggested the existence of a prospective class action.

Third, given the acknowledged overlap between Plaintiffs' Complaint and Amended Complaint, Plaintiffs' alleged class-related allegations within their Amended Complaint unsurprisingly track those in their original Complaint – sometimes verbatim. *Compare* Am. Compl. at ¶ 306 (Dkt. 86), *with* Compl. at ¶ 195 (Dkt. 1); Am. Compl. at ¶ 311 (Dkt. 86), *with* Compl. at ¶ 197 (Dkt. 1); Am. Compl. at ¶ 313 (Dkt. 86), *with* Compl. at ¶ 201; Am. Compl. at ¶ 321 & 326 (Dkt. 86), *with* Compl. at ¶ 197 (Dkt. 1); Am. Compl. at ¶ 324 (Dkt. 86), *with* Compl. at ¶ 209 (Dkt. 1). This is particularly important because Plaintiffs' Complaint did not reflect an attempt at a class action. *See generally* Compl. (Dkt. 1). Its accompanying Civil Cover Sheet confirmed as much by expressly indicating that Plaintiffs were not seeking a class action. *See* Civ. Cover Sheet (Dkt. 1-1) (not checking the box reading: "CHECK IF THIS IS A

**MEMORANDUM DECISION AND ORDER - 8**

**CLASS ACTION** UNDER RULE 23, F.R.Cv.P.") (emphases in original).[1]  In other words, it strains reason for the Amended Complaint's allegations to amount to class allegations *now* when those same allegations did not *before*.

Given this backdrop, it is apparent that any attempt to pursue a class action was made known, for the first time, in Plaintiffs' at-issue Motion for Class Certification.  The Motion was filed over two years after Plaintiffs first initiated this action; five months after Plaintiffs moved to amend their Complaint;[2] and three months after the amendment deadline.  In the meantime, Defendants' preparation toward dispositive motions, and potentially trial, was focused on the individually-named Plaintiffs and their respective claims to medically necessary treatment for their gender dysphoria.  An intervening class action, without the predicate notice, would cause a shift in defense strategy by expanding the scope of Plaintiffs' claims to a substantially larger number of litigants.[3]  With the passage of time and, now, the completion of discovery ahead of dispositive motions, this would restructure the procedural posture and prejudice Defendants. Plaintiffs' Motion for Class Certification (Dkt. 142) is therefore denied.[4]

---

[1]  Unlike their Complaint, Plaintiffs' Amended Complaint did not include a Civil Cover Sheet.  *See* Am. Compl. (Dkt. 86).

[2]  Rule 23 states that class certifications are to take place "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1).  Even assuming their Amended Complaint includes class allegations, Plaintiffs offer no reason why it took them five months to seek certification from the Court.

[3]  Though rhetorically raised during oral argument, the Court takes no position here on whether any final injunction might nonetheless apply beyond the individually-named Plaintiffs. If so, the practical impact of proceeding without certifying a class – especially without preliminary injunctive relief (*see infra* (denying reconsideration)) – is reduced.

[4]  Because Plaintiffs' Amended Complaint does not plead the prerequisites to a class action or request relief on behalf of a class, the Court need not examine Rule 23(a) and (b)'s requirements.  And since Plaintiffs' Motion for Leave to File Supplemental Exhibits in Support of Motion for Class Certification (Dkt. 175) speaks to Rule 23(a)(1)'s numerosity requirement, it is denied as moot.

**B.      Plaintiffs' Motion for Reconsideration (Dkt. 167)**

1.      <u>Legal Standard</u>

Motions for reconsideration are appropriate only in rare circumstances.  *See Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (calling reconsideration an "extraordinary remedy" that should be "used sparingly").  "The major grounds that justify reconsideration involve an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting *United States v. Desert Gold Mining Co.*, 433 F.2d 713, 715 (9th Cir. 1970)).

A motion for reconsideration is not an opportunity to rehash issues already addressed or advance arguments that could have been raised earlier.  *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997); *see also Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 670 (D. Nev. 2013) ("Motions for reconsideration ... are not intended to give an unhappy litigant one additional chance to sway the judge."); *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1069-1070 (E.D. Cal. 2009) (a party seeking reconsideration must show "more than a disagreement with the [c]ourt's decision").  In other words, a motion for reconsideration should do more than simply restate the position that was unsuccessfully advanced by the party relating to the initial motion.

"Whether or not to grant reconsideration is committed to the sound discretion of the court."  *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enter.*, 229 F.3d at 883).

2.      <u>Reconsideration is Not Appropriate</u>

On December 31, 2024, the Court denied Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for PI").  *See M.H. v. Adams*, 2024 WL 5263765 (D.

**MEMORANDUM DECISION AND ORDER - 10**

Idaho 2024). In a nutshell, the basis for the Court's decision was that (i) Plaintiffs' Motion for PI

sought Medicaid coverage for gender-affirming care that HB 668 no longer permitted, and thus

were seeking a mandatory injunction with a heightened burden; and (ii) Plaintiffs did not

demonstrate the requisite irreparable harm to enjoin enforcement of HB 668 because, in July

2024, Plaintiffs voluntarily chose to forgo any preliminary injunction and let the then-existing

temporary restraining order expire, suggesting that a tapering protocol implemented after HB

668 went into effect on July 1, 2024 would not cause harm. *Id.* at \*8-13.

       On these points, the Court analyzed two statements from Juliet Charron, Defendant Idaho

Department of Health and Welfare's ("IDHW") Deputy Director of Medicaid and Behavioral

Health. The first statement, presented in Ms. Charron's July 5, 2024 declaration, discussed the

gradual cessation of covered gender-affirming care due to HB 668: "The interpretation of HB

668 that [IDHW] is applying to those already on hormones for gender-affirming care is that

slowly tapering a patient off of hormone therapy is allowed under HB 668." Charron Decl. at ¶ 5

(Dkt. 103-1). The second statement, contained in a July 16, 2024 letter to "all Medicaid

providers" about "gender transition services," stated:

> Effective July 1, 2024, Idaho Medicaid coverage and reimbursement for
> gender transition services ceased, consistent with [HB 668]. Idaho Medicaid
> will cover up to ninety (90) additional days of hormone therapy for gender
> transition to facilitate tapering as needed. A prior authorization (PA) must be
> submitted to the Idaho Medicaid Pharmacy Program within thirty (30) days
> of this notice to qualify for the additional ninety (90) days of hormone
> therapy.

Ex. A to Gordon Decl. (Dkt. 128-6) (the "Medicaid Information Release MA24-19"). Plaintiffs

argued that these communications operated to delay the effective date of HB 668 by 90 days,

such that the then-existing temporary restraining order was no longer necessary and their

eventual Motion for PI was simply to preserve the status quo, which included the preceding 90

days where full coverage still existed. The Court disagreed.

**MEMORANDUM DECISION AND ORDER - 11**

After studying their context, the Court concluded that Ms. Charron's statements about tapering "cannot reasonably be confused with coverage for full hormone treatment and delayed implementation of HB 668's prohibitions," but must instead "mean that coverage was for something less than full hormone treatment, and that treatment would progressively decline toward an end point, zero." *Adams*, 2024 WL 5263765, at *9 (also highlighting how the pre-authorization requirement underscored that discontinuation of coverage for hormone treatment (as of July 1, 2024) was the default status. At oral argument, Plaintiffs' counsel claimed that no tapering actually took place, but (i) there was no evidence in the record to that effect, (ii) Defendants flatly disputed that any coverage for hormone treatment (beyond tapering) ever took place after HB 668 became effective, and (iii) Plaintiffs testified that HB 668 ended Medicaid coverage for their hormone treatment. *Id*. at *9-10 ("[F]rom July 1, 2024, full coverage for gender-affirming care no longer existed under HB 668; it was replaced by a partial-to-zero hormone therapy option that operated on an 'as needed' basis for a limited period and only upon pre-authorization.").

The Court then reasoned that, by letting the then-existing temporary restraining order expire and not continuing to pursue a preliminary injunction, Plaintiffs reset the status quo ante litem. *Id*. at *10 ("Stated another way, coverage only for tapered hormone therapy on these terms became the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). As a result, Plaintiffs' request for a preliminary injunction that ordered Idaho Medicaid to cover and reimburse the continuation of gender-affirming treatments importantly asked Defendants to alter the status quo ante litem by providing coverage for gender transition services that was prohibited by HB 668 since July 2024. *Id*. at *11. This amounted to a mandatory injunction and required Plaintiffs to satisfy the heightened burden that accompanies one. *Id*.

**MEMORANDUM DECISION AND ORDER - 12**

But the Court determined that Plaintiffs could not satisfy that standard because they voluntarily chose to let the temporary restraining order expire and, in doing so, explicitly acknowledged that the 90-day tapering protocol would not cause irreparable harm. *Id*. at \*12-13 ("This is compelling evidence that, as of July 16, 2024 (after HB 668 went into effect), Plaintiffs acknowledged that IDHW's 90-day tapering protocol would not cause harm. They literally said as much. As Defendants assert: 'If tapering removed the need for a preliminary injunction, its completion cannot be cause to abruptly reverse course.'"). Because Plaintiffs did not clearly make the threshold showing of extreme or very serious irreparable harm, the Court denied their Motion for PI. *Id*. at \*13.

Plaintiffs' Motion for Reconsideration challenges these conclusions by relying upon what they claim is "new evidence not previously disclosed [that] establishes the status quo ante litem did not change after Ms. Charron's declaration and communications." Mem. ISO Mot. for Recon. at 6 (Dkt. 167-1). They point to two emails from Jane Gennrich, a Pharmacy Services Specialist with IDHW's Division of Medicaid, to other IDHW personnel (including Defendant Magni Hamso) relating to "Gender Transition Services" following Ms. Charron's July 16, 2024 statement to Medicaid providers about the 90-day tapering protocol. The first email, dated July 17, 2024, instructs:

> Any prior auth requests for gender affirming care should be assigned to rph.
>
> Per the information release: prior authorization requests for hormone therapy for gender transition submitted between 7/16/24 – 8/15/24 will be approved for 90 day supply. Per my conversation with Magni – Chris and I won't critique the dose or tapering schedule – we will just approve what is requested for 90 days. Suggested wording on approval: Approved for 90 days per Medicaid Information Release MA24-19. Requests submitted 8/16/24 and later will be denied.

**MEMORANDUM DECISION AND ORDER - 13**

Ex. 1 to Belodoff Decl. (Dkt. 167-2).[5]  The second email, dated July 18, 2024, states:

> Suggested wording update: Approved for 90 day supply (three monthly fills) per Medicaid Information Release MA24-19.  Put in approval today for topical testosterone from 7/18-24 – 9/30/24.  Realized that if I approved the medication for 90 days – they could end up getting four 30 day fills (e.g. fill 7/18/24, 8/17/24, 9/17/24, 10/17/24).

*Id*.  According to Plaintiffs, these emails amount to evidence of "full hormone treatment" – not what the Court described as "a partial-to-zero hormone therapy option" – and "establishes there was no reason to contest Defendants' 90-day tapering protocol because Plaintiffs would continue to receive at least 90 days for full hormone treatment," such that "[t]he 90 days of full hormone treatment made proceeding with the Court's hearing on a preliminary injunction unnecessary because the 'last uncontested status' would be at the end of the '90 day full hormone treatment' protocol."  Mem. ISO Mot. for Recon. at 6-7 (Dkt. 167-1).

Defendants counter that Plaintiffs' Motion for Reconsideration (i) is untimely given Rule 59(e)'s 28-day deadline; (ii) should have been pursued before the Court issued its decision on December 31, 2024, given that the emails in question were produced to Plaintiffs on December 13, 2024; and (iii) is misplaced because the emails do not contradict or complicate the Court's decision in any event.  Opp. to Mot. for Recon. at 1-5 (Dkt. 169).  Though less persuaded by their upfront procedural arguments, the Court ultimately agrees with Defendants that, either individually or in combination, Ms. Gennrich's emails themselves do not demonstrate ongoing, "full" coverage for the 90-day period following HB 668's effective date.[6]  As a result, these emails do not conflict with Ms. Charron's statements about HB 668 and Idaho Medicaid's

---

[5]  Ms. Gennrich's July 17, 2024 email began by including Ms. Charron's July 16, 2024 letter to all Medicaid Providers about Medicaid Information Release MA24-19.  *See supra* (describing end to gender transition services after HB 668 and 90-day tapering "as needed").

[6]  Since the claimed new evidence does not affect the Court's analysis (*see infra*), the Court will not address whether Plaintiffs' reconsideration arguments are procedurally improper.

**MEMORANDUM DECISION AND ORDER - 14**

implemented tapering protocol, and therefore do not apply to disturb the Court's conclusions

regarding the appropriate status quo for assessing Plaintiffs' claim to injunctive relief and,

likewise, Plaintiffs' pursuit of what constitutes a mandatory injunction.

First, when read in context, Ms. Gennrich's emails simply address how any coverage for

tapered gender transition care was to be processed for 90 days in light of Medicaid Information

Release MA24-19 – the exact schedule of tapering over those 90 days was left to the doctor and

patient, and required prior authorization.  Nothing about these emails confirms what Plaintiffs'

arguments imply: that "full" coverage would continue, notwithstanding Medicaid Information

Release MA24-19's contrary directive.  In fact, based upon the record before the Court,

including this alleged new evidence, full coverage did not continue.  The last uncontested status

preceding the pending controversy remained coverage only for tapered hormone therapy.

Second, Plaintiffs' latest argument that "there was no tapering of dosage" runs counter to

what they already have stated to the Court.  Mem. ISO Mot. for Recon. at 6 (Dkt. 167-1).  In

support of their Motion for PI, Plaintiffs repeatedly referenced their inability to secure hormone

treatment prescriptions for their gender dysphoria due to HB 668.  *See Adams*, 2024 WL

5263765, at *9 (citing Ex. E to Woodard Decl. at Interrogs. 4 & 9 (Dkt. 133-6) (Plaintiff KB

discussing "out of pocket payments for hormone treatment that is no longer covered since the

passage of HB 668"); Ex. F at Interrogs. 4 & 9 (Dkt. 133-7) (Plaintiff AC stating "[s]he cannot

get her hormone treatments refilled by her provider because of HB 668"); Ex. G at Interrogs. 4 &

9 (Dkt. 133-8) (Plaintiff BM discussing having to pay "out of pocket" her monthly hormone

treatment prescriptions" or rely on donations); Ex. H at Interrogs. 4 & 9 (Dkt. 133-9) (Plaintiff

GM's parents "will be forced to pay for treatment out of pocket" and "Idaho Medicaid provided

coverage for GM's medical treatment until July 1, 2024"); Ex. I at Interrogs. 4 & 9 (Dkt. 133-10)

(Plaintiff SG is "seeking reimbursement for her hormone treatments that are not covered because

**MEMORANDUM DECISION AND ORDER - 15**

of HB 668")). The point is – and always has been – that Plaintiffs were receiving something less than full Medicaid coverage for their gender dysphoria in July 2024, owing to HB 668. This was the premise of the Court's December 31, 2024 Memorandum Decision and Order, and is left undisturbed by Plaintiffs' references to new evidence in the form of Ms. Gennrich's emails.

Because the referenced new evidence does not change the Court's consideration of Plaintiffs' Motion for PI, Plaintiffs' Motion for Reconsideration is denied.

### III. <u>ORDER</u>

Based upon the foregoing, IT IS HEREBY ORDERED that:

1.    Plaintiffs' Motion for Class Certification (Dkt. 142) is DENIED;

2.    Plaintiffs' Motion for Reconsideration (Dkt. 167) is DENIED; and

3.    Plaintiffs' Motion for Leave to File Supplemental Exhibits in Support of Motion for Class Certification (Dkt. 175) is DENIED as moot.



DATED:  August 12, 2025

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 16**