## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MH, KB, SG, AC, BM, individually, and G Doe, by and through her parents and next friends, JANE Doe and JOHN Doe, | Case No.: 1:22-cv-00409-REP |
| **Plaintiffs,** | **ORDER RE:** |
| vs. | **PLAINTIFFS' MOTION TO COMPEL DISCOVERY ANSWERS** |
| ALEX ADAMS, in his official capacity as the Director of the Idaho Department of Health and Welfare; DR. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, | **(Dkt. 178)** |
| **Defendants.** | |

Pending before the Court is Plaintiffs' Motion to Compel Discovery Answers (Dkt. 178). For the reasons that follow, the Motion is granted in part and denied in part.

## I.  INTRODUCTION

Much of Plaintiffs' Motion to Compel presents an initial structural problem that affects how the Court evaluates the relief requested.  It is presented through two separate components: a supporting memorandum that raises broad challenges to Defendants' discovery conduct, and Exhibit 3, which Plaintiffs represent identifies the specific discovery disputes for purposes of Local Civil Rule 37.2.  The memorandum addresses these issues largely at a general level, while Exhibit 3 attempts to organize Defendants' objections and responses into discrete categories tied to particular discovery requests.  The lack of consistent and clarifying overlap between the two, however, is sometimes confusing.  It is therefore difficult to discern Plaintiffs' exact arguments and, thus, the specific relief they seek as to particular discovery requests.

ORDER – 1

Defendants emphasize this disconnect in their response.  They argue that the Court should limit its review to the issues identified in Exhibit 3 and decline to address generalized complaints not linked to specific discovery disputes.  Defendants further contend that, regardless of the merits, the motion is untimely and should be denied on that threshold basis.  To make Plaintiffs' Motion to Compel manageable, the Court addresses Defendants' timeliness objection first, and then turns to the issues as framed in Exhibit 3, in addition to the arguments contained within Plaintiffs' supporting memorandum.

## II.  <u>LEGAL STANDARDS</u>

Federal Rule of Civil Procedure 26 governs the scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The purpose of discovery is "to prevent surprise, prejudice and perjury during trial." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008).  Thus, liberal discovery is allowed, and relevance, for purposes of discovery, is to be construed broadly "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.").  On the other hand, liberal discovery does not mean unlimited discovery. *See Oppenheimer*, 437 U.S. at 351-52.

ORDER - 2

Pursuant to Rule 37, a party seeking discovery may move for an order compelling production by a party who has failed to answer an interrogatory or produce requested documents. *See* Fed. R. Civ. P. 37(a)(3).  While the moving party must make a threshold showing of relevance, the party resisting discovery carries the "heavy burden" of showing specifically why the discovery request is irrelevant, unduly burdensome, disproportional to the needs of the case, or otherwise improper.  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  District courts have broad discretion to determine relevancy.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

If the motion to compel is granted, the Court must, after opportunity for hearing, order the party whose conduct resulted in the motion, or attorney advising the conduct, or both, to pay the reasonable attorneys' fees of the movant.  *See* Fed. R. Civ. P. 37(a)(5)(A).  However, the Court must not make such order for fees if the moving party filed the motion before making a good faith effort to obtain disclosure without court intervention, the nondisclosure was substantially justified, or other circumstances would make the award of fees unjust.  *See* Fed. R. Civ. P. 37(a)(5)(A)(i)-(ii).  Conversely, if the motion is denied, the court may issue a protective order, and must, after providing an opportunity for hearing, order the moving party, or attorney, or both, to pay the opposing party reasonable expenses in opposing the motion.  *See* Fed. R. Civ. P. 37(a)(5)(B).  The court must likewise not order such payment if the motion to compel was substantially justified, or other circumstances make the award of fees unjust.  *See id*.

### III.  <u>ANALYSIS</u>

**A.    Plaintiffs' Motion to Compel is Not Fatally Late**

Defendants argue that Plaintiffs' Motion to Compel should be denied as untimely because it was filed after the close of discovery and long after Plaintiffs became aware of the alleged deficiencies in Defendants' discovery responses.  *See* Defs.' Resp. to MTC at 4-5 (Dkt. 184).

ORDER - 3

Defendants emphasize that Plaintiffs raised many of the same concerns in late 2024 and early 2025 in various filings with the Court, but nonetheless waited several months to seek judicial intervention. *See id*. at 5. According to Defendants, allowing the motion to proceed would undermine the discovery deadlines, prejudice Defendants, and disrupt the orderly progression of the case. *See id*. at 5-7.

The Court agrees that Plaintiffs were aware of the asserted shortcomings in Defendants' discovery responses well before the present motion and that the motion was filed after the formal discovery deadline. Those facts weigh against Plaintiffs. However, they are not dispositive under the circumstances presented here. Discovery did not stop entirely at the close of the discovery period. Defendants continued to produce documents after the deadline, at times on a rolling basis, and depositions were still being conducted. *See* Pls.' Reply ISO MTC at 3-5 (Dkt. 194-1). Plaintiffs' motion, while delayed, was filed against the backdrop of an ongoing discovery process rather than a completed record.

And critically, the dispositive motion deadline has been vacated and, to date, has not been re-set. *See* 7/8/25 Order (Dkt. 196); 9/29/25 Order (Dkt. 205). As a result, the timing concerns that typically justify denial of a motion to compel filed after discovery – such as interference with imminent summary judgment briefing or disruption of a fixed case schedule – are less obvious here. In addition, Defendants' claimed prejudice assumes that Plaintiffs will obtain all relief sought in their motion. As explained elsewhere in this Order, that assumption is incorrect. The Court's rulings do not compel wholesale supplementation or production, and any additional obligations imposed on Defendants are limited and tailored.

Under these circumstances, the Court declines to deny Plaintiffs' Motion to Compel solely on timeliness grounds. The motion will be addressed on the merits, with the scope of review guided by the issues identified in Exhibit 3 and Plaintiffs' supporting memorandum.

**ORDER - 4**

**B.    Plaintiffs' Complaints About Defendants' Objections**

As noted above, Plaintiffs' Motion to Compel is not framed as a request-by-request challenge to specific discovery responses from Defendants.  Instead, Plaintiffs' supporting memorandum advances overarching criticisms of Defendants' discovery conduct – most notably, the use of boilerplate objections, conditional responses, and assertions of privilege – while relying on Exhibit 3 to identify the specific disputes for purposes of Local Civil Rule 37.2.  *See* Pls.' Mem. ISO MTC at 8-17 (Dkt. 178-1).  But the memorandum and Exhibit 3 do not consistently track one another.  Plaintiffs' arguments are often stated at a high level of generality, whereas Exhibit 3 attempts to group Defendants' objections and responses into discrete issue categories tied to particular discovery requests (though sometimes without any real argument). This mismatch makes it difficult to discern which arguments Plaintiffs intend to apply to which specific discovery disputes.

To bring order to the dispute, the Court will focus on Exhibit 3 because Plaintiffs represent that it satisfies Local Civil Rule 37.2.  The Court will also consider Plaintiffs' supporting memorandum where it meaningfully raises other issues or supplements those listed in Exhibit 3.

1.    <u>Defendants' "General" and Alleged "Boilerplate" Objections Are Not Improper</u>

Plaintiffs first argue that Defendants' "general and boilerplate objections are improper" and warrant waiver of Defendants' objections across the board.  *See id.* at 8-10.  As framed, however, the argument is difficult to follow because it conflates two distinct concepts: (i) Defendants' single set of general objections and (ii) Defendants' subsequent, sometimes repeated objections to particular discovery requests that Plaintiffs characterize as boilerplate.

Defendants' general objections raise an upfront issue concerning the identity of the requesting parties and the responding parties in a case involving multiple plaintiffs and multiple

defendants.  *See* Defs.' Resp. to MTC at 7-8 (Dkt. 184).  That objection, standing alone, is not improper.  Plus, Defendants represent that they are not withholding any documents based on those general objections, and that any withholding is based only on relevance or privilege.  *Id*. at 8 (citing Green Decl. at ¶ 17 (Dkt. 184-1)).  Thus, the challenged objection is of limited practical consequence and does not obviously impede Plaintiffs' ability to understand what has been produced or withheld.  The general objections even present an opportunity to resolve other disputes addressed herein, insofar as it bears on the parties' impasse over the number of Plaintiffs' discovery requests.  *See infra*.

Plaintiffs' broader assertion that Defendants' objections are impermissibly boilerplate likewise overstates the problem.  Although Plaintiffs dispute the merits of several objections, the record does not support a finding that Defendants employed boilerplate objections in the sense of a single, generic objection reflexively applied to all discovery requests.  Rather, Defendants articulated specific objections, often repeating them across multiple requests where similar issues arose, such as overbreadth, undue burden, trial strategy, or numerical limits.  The fact that an objection appears multiple times does not render it boilerplate where, as here, it is raised in response to allegedly similar defects across different requests.

Accordingly, while the Court may disagree with Defendants' position as to particular objections addressed later in this Order, Plaintiffs have not shown a systemic use of improper boilerplate objections warranting waiver.  Plaintiffs' motion is therefore denied on this ground.

> 2.    Defendants' Overbroad/Unduly Burdensome Objections Are Not Improper for the Most Part (Ex. 3, Issue No. 1)

The first issue identified in Exhibit 3 concerns Defendants' objections to certain interrogatories on the ground that they are overbroad and unduly burdensome because they seek a "comprehensive review of facts," systematically track the allegations of the Complaint, or

otherwise require Defendants to identify every fact and witness supporting their denials.  *See* Ex. 3 to Gordon Decl. (Dkt. 178-3).  Plaintiffs complain that these objections improperly restrict discovery by refusing to provide factual information relevant to Defendants' defenses and mischaracterizing permissible contention interrogatories as demands for trial strategy.  *See* Pls.' Reply ISO MTC at 8-11 (Dkt. 194-1).  Defendants respond that the objections are properly framed as overbreadth and undue burden objections because the challenged interrogatories would require narrative accounts of Defendants' entire case, itemization of evidence across numerous allegations, and disclosure of litigation strategy beyond what Rule 33 requires. Defs.' Resp. to MTC at 9-11 (Dkt. 184).  This dispute underlies several interrogatories grouped in Exhibit 3.  The Court generally agrees with Defendants as to the form of these interrogatories, but will permit Plaintiffs to seek factual information on discrete, tailored issues.

Preliminarily, Defendants represent that Interrogatory Nos. 1-3 have been resolved.  *See id*. at 10 n.7 (noting that Defendants responded to Interrogatory No. 1, partially responded to Interrogatory No. 2 within the limits imposed by Rule 33, and supplemented their responses to Interrogatory No. 3).  Plaintiffs do not respond to this representation, except to say that Defendants' privilege log identifies even more people.  *See* Pls.' Reply ISO MTC at 11-12 (Dkt. 194-1).  Where Plaintiffs continue to challenge Defendants' overbreadth and undue burden objections as to these particular interrogatories, the record is thus unsettled.

Moreover, to a significant extent, much of the information that Plaintiffs seek via the impacted interrogatories – such as the identities of witnesses and categories of evidence Defendants may rely upon – is addressed by Rule 26(a) and the parties' initial disclosures.  Rule 26(a) already requires the disclosure of (i) the identities "of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses"; and (ii) "all documents, electronically stored

information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).  To the extent Plaintiffs seek more – such as, to understand how Defendants contend the various pieces of evidence support their case (and they arguably do) – the interrogatories blur the line between permissible contention discovery and protected trial strategy by requiring exhaustive narrative explanations rather than targeted factual disclosures.  *See Burch-Lucich v. Lucich*, 2015 WL 65551, at *5 (D. Idaho 2015) (while a litigant is entitled to know the evidence supporting the opposing side's case, contention interrogatories "should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and contents of supporting documents").

To be clear, an interrogatory is not objectionable merely because it asks for an opinion or contention about a piece of evidence.  *See Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (requiring a defendant to identify the documents that supports its affirmative defenses).  But such interrogatories can become overly broad and unduly burdensome on their face when, in asking for the details of a responding party's denials in their pleadings or discovery responses, they require that party to marshal its entire evidentiary case at the discovery stage.  *See Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404-05 (D. Kan. 1998).  The Court will not require Defendants to "write … a portrait of their trial" for Plaintiffs in response to an interrogatory.  *See Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989).

For these reasons, the Court largely rejects Plaintiffs' challenge to Defendants' overbreadth and undue burden objections as framed.[1]  That ruling, however, does not foreclose

---

[1]  The Court does not consider Plaintiffs' request for medical qualifications/training at Interrogatory No. 4 as impermissibly requiring the disclosure of trial strategy.

**ORDER - 8**

Plaintiffs from seeking the underlying factual information through narrower, properly-framed discovery requests and/or depositions.  To strike a balance between the burden and the benefit, Rule 26(b)(2)(C) directs the Court to consider if there is a "less burdensome" alternative to obtain the same information.  Fed. R. Civ. P. 26(b)(2)(C)(i).  Here, there appears to be.  Plaintiffs could group or streamline categories of Defendants' denials for Defendants to address – a work-around previously discussed by the parties.  *See* Green Decl. at ¶ 18 (Dkt. 184-1).  Consistent with that approach, the Court will order the parties to meet and confer to arrive upon reformulated and targeted contention interrogatories that focus on discrete issues without demanding comprehensive narrative responses.  Plaintiffs' motion is therefore denied as to the overbreadth and undue burden objections, without prejudice to Plaintiffs pursuing narrower discovery through further meet and confer efforts.

> 3. <u>Defendants' Objections Relating to Witness Identification Are Subsumed by Their Initial Disclosure Obligations (Ex. 3, Issue No. 2)</u>

The second issue identified in Exhibit 3 concerns Defendants' objection to interrogatories seeking identification of all witnesses with knowledge supporting Defendants' positions.  *See* Ex. 3 to Gordon Decl. (Dkt. 178-3).  Plaintiffs characterize this objection as an improper refusal to identify witnesses, but Plaintiffs' supporting memorandum does not address this issue or explain why Defendants' objection is legally deficient.  Defendants respond that the interrogatories demand identification of "every witness" supporting each contention and that such requests are overbroad and impractical at the discovery stage.  *See* Defs.' Resp. to MTC at 11 (Dkt. 184).

As discussed above, the identification of individuals likely to have discoverable information is governed in the first instance by Rule 26(a) and the parties' initial disclosures. *See supra* (citing Fed. R. Civ. P. 26(a)(1)(A)(i)).  If Plaintiffs seek disclosure of all persons with knowledge through contention-style interrogatories, that request is duplicative of Rule 26(a)

**ORDER - 9**

obligations and may also intrude into trial-preparation matters when framed as an exhaustive witness list tied to every factual contention.  Defendants' objection on this ground is therefore not improper on its face.

Plaintiffs' reply, however, raises a separate and more concrete concern.  They point out that Defendants' privilege log identifies additional individuals who appear to have participated in communications or decision-making relevant to issues in the case, but who have not been identified in Defendants' initial disclosures as individuals likely to have discoverable information.  *See* Reply ISO MTC at 11-12 (Dkt. 194-1).  If correct, Defendants are reminded of their independent obligation to supplement their initial disclosures to ensure that they accurately identify individuals with discoverable information, along with the subjects of that information. *See* Fed. R. Civ. P. 26(e).

So, while the Court denies Plaintiffs' Motion to Compel to the extent it seeks to invalidate Defendants' witness-identification objection, the Court directs Defendants to review their initial disclosures, discovery responses to date, and the privilege log and to supplement their disclosures as necessary to address any material inconsistencies.

3.    Defendants' Numerosity Objections Are Overruled (Ex. 3, Issue No. 3)

The third issue identified in Exhibit 3 (as well as Plaintiffs' supporting memorandum) concerns Defendants' objection that Plaintiffs' interrogatories exceed the 25-interrogatory limit. *See* Ex. 3 to Gordon Decl. (Dkt. 178-3); *see also* Pls.' Mem. ISO MTC at 19-20 (Dkt. 178-1). Defendants argue that, although Plaintiffs propounded only eleven interrogatories, those interrogatories contain numerous subparts that, taken together, far exceed the numerical limit and impose an undue burden.  *See* Defs.' Resp. to MTC at 11 (Dkt. 184) (equating Plaintiffs' discovery to "more than 300 interrogatories").  Plaintiffs dispute that characterization and contend that the interrogatories are properly framed and logically related.

ORDER - 10

As discussed during the parties' informal discovery dispute resolution process with the Court, the Court is inclined to permit additional interrogatories in this case. This action involves multiple Plaintiffs and multiple Defendants, raises complex legal and factual issues, and challenges a statewide policy affecting numerous individuals. In that context, strict adherence to the 25-interrogatory limit would unduly constrain meaningful discovery. Indeed, Defendants' own general objection concerning uncertainty over which Plaintiffs were requesting discovery and which Defendants were required to respond underscores the practical reality that additional interrogatories may be necessary to clarify the factual record in a multi-party case of this scope.

Separately, Rule 33's limitations are not as rigid as Defendants urge. While the Court appreciates Defendants' concern regarding interrogatories with subparts, it does not find that Plaintiffs' interrogatories represent hundreds of distinct questions. The individual interrogatories' subparts largely share a common theme and are logically related, such that they may be treated as single interrogatories for the purposes of Rule 33. *See Asarco LLC v. Union Pac. R.R. Co.*, 2016 WL 1755241, at *10 (D. Idaho 2016) (subparts that are "logically or factually subsumed within and necessarily related to the primary question" amount to a single interrogatory). The Court thus declines to adopt Defendants' expansive counting methodology.

Much of Defendants' concern again relates to the nature of Plaintiffs' contention interrogatories alongside Defendants' denials. *See* Defs.' Resp. to MTC at 11 (Dkt. 184) ("Interrogatory No. 2, which seeks all facts based on every denial in the answer alone comprises 332 interrogatories."). But as addressed above, the Court has already limited the scope of permissible contention discovery and directed the parties to streamline those disputes through narrower, properly-framed requests. *See supra*. With that guidance in place, responding to the remaining interrogatories – within the contours of this Order's resolution of all issues raised in the Motion to Compel – does not impose an undue burden on Defendants.

**ORDER - 11**

In sum, Plaintiffs' Motion to Compel is granted to the extent Defendants objected to responding to interrogatories solely on the ground that they exceed the 25-interrogatory limit. Defendants shall provide responses consistent with this Order and following further meet-and-confer efforts where appropriate.

4.      Defendants' "Trial Strategy" Objections Are Mostly Proper (Ex. 3, Issue No. 4)

The fourth issue identified in Exhibit 3 concerns Defendants' objections to interrogatories and requests for production on the ground that they require disclosure of Defendants' trial strategy. *See* Ex. 3 to Gordon Decl. (Dkt. 178-3). There is considerable overlap between this issue and the overbreadth/unduly burdensome concerns addressed above, as several of the challenged interrogatories seek broad factual narratives that, as drafted, move beyond permissible discovery and into trial preparation. *See supra*.

In particular, Interrogatory Nos. 1, 2, and 5 are problematic for the same reasons discussed in connection with Exhibit 3, Issue No. 1: as framed, they are not sufficiently targeted and would require Defendants to organize and present their factual case in a manner that effectively reveals trial strategy. *See supra*. Those interrogatories are therefore subject to the same streamlining and narrowing discussed above, rather than wholesale compelled responses.

Interrogatory No. 4 stands on different footing. That interrogatory seeks information regarding the qualifications of individuals who reviewed Plaintiffs' prior authorization requests. It does not implicate trial strategy and instead seeks factual information relevant to the decision-making process at issue in this case. As discussed elsewhere in this Order, Interrogatory No. 4 should be answered.

By contrast, Interrogatory Nos. 6, 8, and 9 go further and seek information that is premature and properly characterized as trial strategy at this point in time. Interrogatory No. 6 asks Defendants to identify exhibits they intend to offer at any hearing or trial. At this stage of

the litigation, the identification of exhibits remains a work-in-progress and is governed by later disclosure requirements. Compelling such information now would speed up the timeline and intrude on trial preparation. Interrogatory No. 8 seeks information concerning Defendants' experts, a subject addressed by Rule 26(a)(2) and not properly compelled through early interrogatories. Interrogatory No. 9 asks Defendants to identify individuals who will submit declarations in support of summary judgment or testify at trial, even though no summary judgment motions have been filed yet and trial has not yet been set. Requests of that nature seek to lock in litigation strategy prematurely.

The same defects apply to the related requests for production. Request for Production No. 3 seeks documents Defendants intend to use as exhibits at summary judgment or trial, and Request for Production No. 4 effectively seeks expert disclosures. Both requests improperly demand trial strategy and expert information before the governing disclosure deadlines.

Therefore, Plaintiffs' Motion to compel is denied on this point, except that Interrogatory No. 4 is compelled. The remaining interrogatories and requests for production identified under this issue may be pursued only through later disclosures or through narrower, properly-framed discovery consistent with the guidance outlined above.

5.    Defendants' "Impossibility" Objections Are Not Improper (Ex. 3, Issue No. 5)

The fifth issue identified in Exhibit 3 concerns Defendants' objection that Interrogatory Nos. 1 and 2 improperly seek information that is "impossible to know," specifically the identity of all individuals with knowledge of the facts alleged in the Complaint. *See* Ex. 3 to Gordon Decl. (Dkt. 178-3). Plaintiffs argue that Defendants cannot avoid identifying knowledgeable individuals by claiming uncertainty, while Defendants respond that the interrogatories, as drafted, demand an exhaustive and impractical accounting of every person who may possess relevant knowledge.

**ORDER – 13**

This dispute substantially overlaps with the issues addressed under Exhibit 3, Issue No. 2 concerning witness identification and Rule 26(a) initial disclosures. *See supra*. As explained, Defendants are required to identify individuals likely to have discoverable information through their initial disclosures and to supplement those disclosures as discovery progresses. Interrogatories that seek identification of "all persons with knowledge" add little beyond that obligation and risk imposing an unbounded and speculative duty to identify every conceivable witness.

In any event, Interrogatory Nos. 1 and 2 are also subject to the streamlining already discussed herein. As drafted, they function as broad contention interrogatories tethered to Defendants' denials. The Court declines to compel responses in that form. Plaintiffs may pursue the underlying factual information through narrower, targeted discovery consistent with the guidance provided above and through Defendants' continuing obligation to supplement their Rule 26 disclosures. Until then, Plaintiffs' Motion to Compel is denied in this respect.

6.    Defendants' "Vague and Ambiguous" Objection Relating to the Definition of "You" Is Not Improper by Itself (Ex. 3, Issue No. 6)

The sixth issue identified in Exhibit 3 concerns Defendants' objection to the use of the term "you" in Interrogatory No. 10. *See* Ex. 3 to Gordon Decl. (Dkt. 178-3). Defendants objected on the ground that, in a case involving multiple Plaintiffs and multiple Defendants, it was unclear which entities or individuals were required to respond. This objection resembles Defendants' general objection discussed earlier, and reflects a legitimate concern about the scope of the at-issue interrogatory.

Given that ambiguity, the objection itself is not improper. Discovery requests must be sufficiently clear to permit a responding party to understand who is obligated to answer, particularly where different Defendants may possess different information. Defendants,

**ORDER - 14**

however, subsequently clarified how they interpreted the term "you" for purposes of responding
to the interrogatory. Plaintiffs do not appear to dispute that clarification.

Despite that clarification, Defendants did not provide a substantive response – apparently
relying instead on their objection that Plaintiffs' interrogatories exceeded the 25-interrogatory
limit. As discussed above, the Court has overruled Defendants' numerosity objection in the case.
*See supra*. In light of that ruling, and Defendants' own clarification of the term "you," there is
no remaining basis to withhold a response. Defendants shall answer Interrogatory No. 10
consistent with their clarified interpretation of "you." In this respect, Plaintiffs' Motion to
Compel is granted in part and denied in part.

### 7.    Defendants' Proportionality Objections Are Not Improper (Ex. 3, Issue No. 7)

The seventh issue identified in Exhibit 3 concerns Defendants' objections that certain
discovery requests are not proportional to the needs of the case. *See* Ex. 3 to Gordon Decl. (Dkt.
178-3). At the outset, the Court notes that not all of the discovery requests referenced by
Plaintiffs under this category – including Interrogatory No. 50 (there is none) and Requests for
Production Nos. 8, 12, and 24 – actually contain a proportionality objection. To that extent,
Plaintiffs' characterization of Defendants' responses overstates the scope of the issue.

As to the referenced requests that do include a proportionality objection, the objection is
not improper. Defendants articulated specific reasons why they contend the requests exceed the
proportional needs of the case in violation of Rule 26(b)(2), including that the requests seek
information concerning individuals who are not parties to the action, individuals who have been
dismissed from the action, or information exceeding the contours of the parties' discovery plans
(relating to 8-custodian default limits). *See infra* (discussing Defendants' specific custodian
limit objections). These explanations reflect case-specific proportionality concerns rather than
conclusory boilerplate assertions.

**ORDER - 15**

Moreover, again, Defendants have represented that they are not withholding documents based solely on proportionality objections, and that the documents withheld have been withheld only on relevance or privilege grounds.  *See* Defs.' Resp. to MTC at 7-8 (Dkt. 184) (citing Green Decl. at ¶ 17 (Dkt. 184-1)).  Owing to that representation, and given the absence of a showing that proportionality objections have resulted in the improper withholding of discoverable material, Plaintiffs have not demonstrated a basis for further relief at this time.  Plaintiffs' Motion to Compel is denied on this point.

8.     Defendants' Custodian-Related Objections Are Not Improper (Ex. 3, Issue No. 8)

The eighth issue identified in Exhibit 3 concerns Defendants' objections that certain of Plaintiffs' discovery requests seek documents in excess of the 8-custodian limit.  *See* Ex. 3 to Gordon Decl. (Dkt. 178-3)  Plaintiffs argue that the objection is improper because the parties never agreed to such a custodian limit.  That argument is not persuasive.  The Court's Scheduling Order (Dkt. 69) expressly adopted the parties' areas of agreement set forth in their respective discovery plans, and both parties agreed to an 8-custodian limit.  *See, e.g.*, Pls.' Disc. Plan at 9 (Dkt. 67-1).  Absent a showing that the agreed-upon limit was different (or should be modified), Defendants' objection on this ground, without more, is not improper.

Plaintiffs' supporting memorandum further suggests that Defendants failed to engage in the requisite discussion regarding the identities of custodians or search terms used in Defendants' document searches.  *See* Pls.' Mem. ISO MTC at 11, 17-18 (Dkt. 178-1).  But the record confirms that Plaintiffs were provided with a list of search terms in October 2024 and were invited at that time, and again later, to suggest additional terms.  *See* Ex. A to Green Decl. (Dkt. 184-2) ("If you think the search is too broad, we are happy to discuss terms that might narrow the search results.").  Defendants then identified their custodians in December 2024.  *See* Ex. 7a to Gordon Decl. (Dkt. 178-3).  Plaintiffs thereafter provided their own proposed search terms in

January 2025.  *See* Ex. F to Green Decl. (Dkt. 184-7).  With this back-and-forth history in mind, the Court cannot conclude that Defendants failed to do what it was supposed to do regarding custodians and search terms, or for that matter, have not produced what it should have produced based upon those factors.[2]  In short, the issue is not as obviously troubling as Plaintiffs make it out to be – particularly given Defendants' eventual document production.

That said, it is unclear from the record to what extent Defendants' document production incorporated Plaintiffs' January 2025 input regarding search terms.  *But see* Defs.' Resp. to MTC at 19 (Dkt. 184).  As part of the meet-and-confer process ordered earlier, the parties shall address that issue and confirm whether Plaintiffs' proposed search terms were reasonably incorporated into Defendants' searches.  If they were not, the parties shall discuss whether any targeted supplementation is appropriate; otherwise, the purpose of soliciting Plaintiffs' input on search terms would be undermined.

Accordingly, Plaintiffs' Motion to Compel is denied in this respect, subject to the meet-and-confer directive set forth above.

9.    <u>Defendants' Deadline-Related Objections Are Not Improper (Ex. 3, Issue No. 9)</u>

The ninth issue identified in Exhibit 3 concerns Defendants' objections to producing certain materials on the ground that Plaintiffs' requests sought expert-related and other evidentiary disclosures before the deadlines established by the Court.  *See* Ex. 3 to Gordon Decl. (Dkt. 178-3).  Plaintiffs argue that the requested information is discoverable under Rule 26 and

---

[2]  Plaintiffs also argue that Defendants failed to disclose the "systems, servers, and databases" that were searched.  *See* Pls.' Mem. ISO MTC at 18 (Dkt. 178-1).  But that information was neither expressly requested in Plaintiffs' discovery requests nor required by the parties' agreed-upon discovery plans as adopted by the Scheduling Order.  Absent a specific request, agreement, or procedural requirement, Defendants are not required to make these disclosures. Plaintiffs therefore have not shown that Defendants were obligated to make these disclosures

ORDER - 17

should have been produced, while Defendants respond that the discovery process does not accelerate or override the disclosure schedule set by the Court.

The Court mostly agrees with Defendants' position. Although the information Plaintiffs seek may be discoverable in a general sense, the Federal Rules of Civil Procedure and this Court's Scheduling Order contemplate a structured sequence for disclosures, including expert disclosures and the identification of evidentiary materials. Discovery may not be used to compel premature disclosure of expert identification, expert opinions, or evidentiary materials before the governing deadlines (assuming, of course, the requested information actually corresponds to the specific disclosure timetable protocols). *See, e.g.*, *Par Pharm., Inc. v. Twi Pharm., Inc.*, 2012 WL 12548935, at *1 (D. Md. 2012) ("Accordingly it is not unusual for courts to order, as I do now, that answers to contention interrogatories may be deferred until the completion of expert discovery to minimize the burden on the responding party."); *see also* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the times and in the sequence that the court orders."); Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that the interrogatory need not be answered until designated discovery is complete …."). The fact that Defendants previously submitted declarations does not change the analysis, particularly where the dispositive motions prompting those submissions were denied without prejudice due to the underdeveloped state of discovery at the time. *See* 8/12/24 Order (Dkt. 123) (granting Defendants' Motion to Defer Plaintiffs' Motion for Partial Summary Judgment). In this context, Defendants were entitled to rely on the disclosure schedule in objecting to requests that effectively sought early expert designations or evidentiary disclosures.

Plaintiffs contend, however, that Defendants' eventual expert disclosures did not fully address the requests for admission to which Defendants originally objected on timing grounds. If this is correct, Defendants' earlier objections may no longer apply (to the extent Plaintiffs'

requests for admission even called for expert opinions in the first place). The Court does not resolve that issue on the present record. Instead, as part of the meet-and-confer process already ordered, the parties shall address whether Defendants' later disclosures have rendered any of the disputed requests for admission incomplete and, if so, whether supplementation is required.

Plaintiffs' Motion to Compel is therefore denied in this respect, subject to the parties' obligation to meet and confer regarding any remaining deficiencies in light of Defendants' later-in-time disclosures.

10.    Defendants' Conditional Responses Are Not Improper (Ex. 3, Issue No. 10)

The tenth issue identified in Exhibit 3, and addressed in Plaintiffs' supporting memorandum, concerns Defendants' use of conditional objections – specifically, responses stating that, "[n]otwithstanding the foregoing and without waiving any objections, Defendants respond as follows …." *See* Ex. 3 to Gordon Decl. (Dkt. 178-3). Plaintiffs argue that this form of response is improper because it creates uncertainty as to what information is being withheld and warrants wavier of Defendants' objections.

The Court does not agree. Conditional objections are not per se improper and do not, standing alone, require withdrawal or waiver of the stated objections. That is particularly true here, where the Court has already found several of Defendants' objections proper as stated and grounded in legitimate concerns regarding overbreadth, undue burden, trial strategy, timing, and proportionality. *See supra*; *see also R. Fallen, Inc. v. Rehabcare Group, Inc.*, 2016 WL 1224064, at *2 (E.D. Cal. 2016) ("Responses that are subject to and without waiving objections are not prohibited …. Even if the practice is criticized by some courts, such criticism does not provide a basis for requiring a responding party to withdraw its objections, especially when those objections are valid."). The inclusion of conditional language does not negate the validity of those objections.

**ORDER - 19**

Moreover, as discussed throughout this Order, Defendants have consistently represented that documents were withheld only on relevance or privilege grounds. *See* Defs.' Resp. to MTC at 7-8, 17 (Dkt. 184) (citing Green Decl. at ¶ 17 (Dkt. 184-1)). In light of that representation, the Court does not find that Defendants' use of conditional language creates meaningful uncertainty regarding the scope of Defendants' responses or production. *See Gomez v. McDonald*, 2015 WL 402729, at *4 (E.D. Cal. 2015) (finding that production of non-confidential documents notwithstanding objections complies with discovery obligations). Put differently, other than documents withheld on the basis of relevance or privilege, Defendants have not withheld materials based on the asserted objections, conditional or otherwise. If that representation is not accurate, Defendants must notify Plaintiffs immediately about any discrepancies, consistent with rule 34(b)(2)(C). Plaintiffs' Motion to Compel is therefore denied on this point.

## C.    Plaintiffs' Complaints About Defendants' Privilege Log

Plaintiffs also argue that Defendants' privilege log is deficient and that Defendants have therefore failed to carry their burden of establishing the asserted privileges. *See* Pls.' Mem. ISO MTC at 12-17 (Dkt. 178-1) (citing Exs. 8, 9a & 9b to Gordon Decl. (Dkt. 178-3)). Plaintiffs contend that the log does not provide sufficient information to evaluate Defendants' claims of attorney-client privilege, work-product protection, common-interest protection, and deliberative-process privilege. *See id*. In particular, Plaintiffs argue that many entries rely on elemental or categorical descriptions and conclusory privilege labels, often without identifying the purpose of the communication or explaining how the asserted privilege applies. *See id*. Defendants respond that their privilege log satisfies Rule 26(b)(5)(A) by identifying the date, author, recipients, subject matter, and privilege asserted for each withheld document, and that Plaintiffs' demand for greater detail would improperly intrude on the substance of the privileged communications. *See* Defs.' Resp. to MTC at 20-23 (Dkt. 184). The Court agrees with Plaintiffs that Defendants'

privilege log, as currently structured, does not provide sufficient information to permit an

informed assessment of the asserted privileges.  Still, the Court concludes that waiver is not

warranted and that the appropriate remedy is to require Defendants to supplement their privilege

log with more detail, consistent with the purpose of Rule 26(b)(5)(A).

The customary way of asserting a privilege claim is through the preparation of a privilege

log.  *See, e.g.*, *Apple Inc. v. Samsung Elec. Co., Ltd.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015)

("The party asserting the privilege bears the burden of establishing all necessary elements ….

The most common way to do this is with a privilege log.").  A party asserting privilege or work

product protections must "describe the nature of the documents … in a manner that, without

revealing information itself privileged or protected, will enable other parties to assess the claim."

Fed. R. Civ. P. 26(b)(5)(A); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for*

*Dist. Of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005).  The Ninth Circuit has held that a party

meets its burden by providing a privilege log that identifies "(i) the attorney and client involved,

(ii) the nature of the document, (iii) all persons or entities shown on the document to have

received or sent the document, (iv) all persons or entities known to have been furnished the

document or informed of its substance, and (v) the date the document was generated, prepared,

or dated."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir. 1992) (citing *Dole v.*

*Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989)).

Here, Defendants overstate the sufficiency of their privilege log by relying on a possibly

technical compliance with Rule 26(b)(5)(A) rather than the purpose of the Rule.  *See* Defs.'

Resp. to MTC at 21 (Dkt. 184) ("A privilege log in the Ninth Circuit is generally sufficient

where it identifies the author, the date, the recipients, the subject, and the privilege of the

documents.").  But in the Court's view, Rule 26(b)(5)(A) – if it is to mean anything – requires

more than the mechanical recitation of dates, participants, and privilege labels; it requires enough

**ORDER - 21**

context to enable the opposing party and, if necessary, the Court "to *assess* the claim" of

privilege.  Fed. R. Civ. P. 26(b)(5)(A) (emphasis added); *see also, e.g.*, *Lively v. Skyline Agency*

*LLC*, 2025 WL 2532796, at *3 (S.D.N.Y. 2025) ("The purpose of a Rule 26(b)(5)(A)(ii)

privilege log is to flag for an opposing party 'otherwise discoverable' materials that have been

withheld due to an assertion of privilege."); *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*,

2010 WL 11538525, at *2 (E.D. La. 2010) ("The purpose of the privilege log is to provide the

parties and the court adequate information to determine whether a document is privileged ….

Typically, a privilege log must identify each document and provide basic information, including

the author, recipient, date and general nature of the document."); *Jones v. Hamilton Cnty.*

*Sheriff's Dep't.*, 2003 WL 21383332, at *4 (S.D. Ind. 2003) (a privilege "should not only

identify the date, the author, and all recipients of each document listed therein, but should also

describe the document's subject matter, purpose of its production, and specific explanation of

why the document is privileged or immune from discovery").  Many entries in Defendants' log

rely on broad categorical descriptions or conclusory assertions of privilege or some other

protection that do not explain the role of legal advice, the nature of work performed, or the

decision-making context at issue.[3]  As a result, these entries make it difficult to assess whether

the asserted privileges and protections apply.  This is a problem, especially when almost 500

documents appear on Defendants' privilege log.  *See, e.g.*, *Trauscht v. Villa Lafayette Associates*

*Inc.*, 2025 WL 2695621, at *1 (D. Ariz. 2025) ("The Privilege Log is far too conclusory to either

satisfy Rule 26(b)(5)(A)(ii) or otherwise allow this Court to properly analyze the present Motion.

---

[3] For example, Plaintiffs note that, as referenced on Defendants' privilege log, Docs: 000059872-000059874 do not reference any attorneys and contain only non-descript email subject lines, yet Defendants claim they are protected by the attorney-client privilege.  *See* Pls.' Mem. ISO  MTC at 14 n.4 (Dkt. 178-1).  Without more, these documents could just as well be non-privileged documents, underscoring the shortcomings of this sort of description vis à vis Rule 26((b)(5)(A)'s mandate.

ORDER - 22

In particular, the Privilege Log 'fails to provide any concrete facts about the nature or subject matter of the withheld documents, which would allow an individual reviewing the log to assess the appropriateness of the privilege claim.'") (quoting *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 234 (S.D.W.Va. 2015)).

At the same time, Plaintiffs overreach by urging waiver of all asserted privileges. Waiver is a harsh remedy. Under Ninth Circuit law, failure to produce a privilege log – or supplying an insufficient privilege log – as required by Rule 26(b)(5)(A) does not lead to a "mechanistic determination" of waiver; rather, courts apply a "holistic reasonableness analysis" that looks at all the circumstances. *See Burlington N.*, 408 F.3d at 1149. Specifically, in deciding whether a privilege has been sufficiently asserted, courts consider (i) the degree to which the objection enables evaluation of the claimed privilege; (ii) the timeliness of the objection; (iii) the magnitude of the document production; and (iv) any other particular circumstances of the litigation. *See id.* Here, Defendants produced a privilege log that accompanied its voluminous production, and has consistently maintained that documents were being withheld only on privilege and relevance grounds. Although the log may be deficient in substance, it does not reflect the type of conduct that warrants the drastic sanction of waiver.

For these reasons, supplementation – not waiver – is the appropriate remedy. Requiring Defendants to supplement the privilege log strikes the proper balance between protecting legitimate privilege claims and enforcing the disclosure obligations imposed by rule 26(b)(5)(A). Supplementation will allow Plaintiffs to assess the asserted privileges and narrow any remaining disputes, while preserving Defendants' ability to maintain privilege where it properly applies.

Accordingly, Defendants shall supplement their privilege log to provide a more fulsome description of the "nature of the document(s)" to which Defendants claim a privilege or other protection attaches. *See In re Grand Jury Investigation*, 974 F.2d at 1074; Fed. R. Civ. P.

26(b)(5)(A)(ii).  If, after supplementation, Plaintiffs continue to dispute specific privilege

assertions, the parties shall meet and confer in good faith to narrow any remaining issues before

seeking further relief from the court.  The Court retains discretion to order in camera review of

particular documents if disputes persist, including to utilize a special master to resolve any future

disputes in this regard.

**D.  Plaintiffs' Complaints About "Process Manager Files"**

Plaintiffs also raise an issue concerning "process manager files" referenced during Dr.

Hamso's deposition.  In their supporting brief, Plaintiffs argue that Defendants failed to produce

these materials and that the absence of such production reflects an additional discovery

deficiency.  *See* Pls.' Mem. ISO MTC at 11 (Dkt. 178-1).  Plaintiffs expand on this argument in

their reply.  *See* Pls.' Reply ISO MTC at 16-18 (Dkt. 194-1).  Defendants respond that the issue

was never raised during the parties' prior meet-and-confer efforts – a point Plaintiffs do not

dispute – and argue that Plaintiffs' characterization of "process manager files" reflects a

misunderstanding of what those materials are.  *See* Defs.' Resp. to MTC at 18 (Dkt. 184).

According to Defendants, "Process Manager" is a software program or workflow system

used to link documents associated with prior authorization requests, not a discrete "file" or

repository of documents.  *See id*.  Defendants further represent that the underlying documents

linked through the Process Manager system have already been produced to Plaintiffs in

discovery.  *See id*. Plaintiffs, in contrast, attempt to rely on Dr. Hamso's deposition testimony to

make their point that there is more unaccounted discoverable information.  *See* Pls.' Reply ISO

MTC at 17-18 (Dkt. 194-1).

On the present record, it is not clear whether the parties are disagreeing about the

existence of additional discoverable materials or simply using different terminology to describe

the same information.  Given that this issue was apparently not previously raised during the

meet-and-confer process and that the record reflects a potential misunderstanding about the

nature of the Process Manager system, the Court concludes that the issue is not sufficiently

developed to warrant a court-ordered resolution at this time.  Instead, as part of the meet-and-

confer efforts ordered elsewhere in this Order, the parties shall confer in good faith to clarify

what "process manager files" are, whether any responsive materials exist beyond those already

produced, and whether any additional production is required.

### E.    Plaintiffs' Complaints About "CPT Codes"

Plaintiffs also raise an issue regarding "CPT Codes," which are standardized numeric

codes used to identify medical procedures and services for billing and coverage purposes.  *See*

Pls.' Mem. ISO MTC at 19 (Dkt. 178-1).  Plaintiffs structured their requests for production to

seek documentation reflecting CPT codes associated with certain medical procedures, framed to

allow comparison between procedures provided to transgender individuals and the same or

similar procedures provided to cisgender individuals over a defined period of time.  *See, e.g.*,

RFP Nos. 44-79, attached as Ex. 2 to Gordon Decl. (Dkt. 178-3).

Defendants objected to these requests on the ground that responsive documents do not

exist in the form requested.  *See id.*  Specifically, Defendants contend that, while CPT codes are

used for billing and authorization purposes, Defendants do not track or maintain CPT code data

in a manner that identifies the gender identity of Medicaid beneficiaries.  *See* Defs.' Resp. to

MTC at 25-25 (Dkt. 184).  As a result, Defendants argue that they cannot produce documents

comparing CPT code usage between transgender and cisgender individuals as Plaintiffs request.

*See id.*

The parties' arguments largely speak past one another.  Plaintiffs maintain that CPT code

information is central to evaluating how medical procedures are treated under Medicaid and that

Defendants already possess data sufficient to allow an apples-to-apples comparison between

transgender and cisgender individuals. *See, e.g.*, Pls.' Reply ISO MTC at 16 (Dkt. 194-1) (citing Ex. 28 to Gordon Supp. Decl. (Dkt. 194-3)). Defendants' position rests on their insistence that Plaintiffs' requests assume the existence of records that link CPT codes to gender identity, and that such records are, in fact, not maintained. *See* Defs.' Resp. to MTC at 24-25 (Dkt. 184).

On the present record, part of the dispute may turn on the *form* and framing of Plaintiffs' discovery requests rather than the reasonableness of the underlying information sought. If Plaintiffs' objective is to obtain comparative information – by CPT code – regarding how certain procedures were authorized or covered for cisgender and transgender individuals, it is not clear whether that information exists or whether it can be produced through revised or differently framed discovery requests. The Court does not view the underlying inquiry as unreasonable or inherently burdensome, but the current record is not sufficiently developed to permit a court-ordered resolution.

Accordingly, the Court declines to compel production at this time. As part of their anticipated meet-and-confer, the parties shall discuss the CPT code issue in greater detail, including what CPT code-related information exists, whether and how it can be linked to relevant patient characteristics, and whether Plaintiffs' requests can be reformulated to obtain the information in a practical and proportionate manner.

## F.    Attorneys' Fees Are Not Appropriate at This Time

Plaintiffs seek an award of attorneys' fees and expenses under Rule 37(a)(5)(A), arguing that Defendants' discovery conduct necessitated the filing of its Motion to Compel. Rule 37(a)(5)(A), however, authorizes an award of expenses, including attorneys' fees, only when the movant prevails on the motion, and even then, not if the opposing party's position was substantially justified or if other circumstances make an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). That standard is not met here.

**ORDER - 26**

It cannot be said that Plaintiffs prevailed on their Motion to Compel in any objective sense. Although the Court has granted limited relief on discrete issues, several of Plaintiffs' objections were rejected, and the Court ordered that the parties engage in additional meet-and-confer attempts to resolve other outstanding issues. The motion is therefore best characterized as granted in part and denied in part, not as a clear victory for Plaintiffs.

Moreover, the Court's rulings underscore that Defendants' opposition to the motion was, at times, substantially justified. Defendants raised legitimate objections, several of which the Court has sustained. At the very least, the mixed outcome and complexity of the discovery disputes constitute "other circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii).

Accordingly, Plaintiffs' request for attorneys' fees and expenses under Rule 37(a0(5)(A) is denied.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' Motion to Compel is granted in part and denied in part. To assist the parties in implementing the rulings and directives contained in this Order, the Court has attempted to distill its decisions into a chart summarizing what issues have been resolved and what discovery issues remain outstanding:

| <u>ISSUE</u> | <u>RULING</u> | <u>MEET AND CONFER</u> |
|---|---|---|
| General and boilerplate objections | Denied | |
| Overbroad and unduly burdensome objections (Exhibit 3, Issue No. 1) | Mostly denied, without prejudice, but granted as to Interrogatory No. 4 | • Arrive upon reformulated and targeted contention interrogatories that focus on discrete issues without demanding comprehensive narrative responses |

| | | |
|---|---|---|
| | | • Cross-reference individuals identified on privilege log |
| Witness identification objections (Exhibit 3, Issue No. 2) | Denied to the extent it seeks to invalidate Defendants' witness-identification objection | • Review initial disclosures, discovery responses to date, and privilege log and to supplement disclosures as necessary to address inconsistencies |
| Numerosity objections (Exhibit 3, Issue No. 3) | Granted to the extent Defendants objected to responding to Interrogatories solely on the ground that they exceeded the 25-interrogatory limit | • Consistent with Issue No. 1, streamline disputes through narrower, properly-framed requests |
| Trial strategy objections (Exhibit 3, Issue No. 4) | Denied, without prejudice, but granted as to Interrogatory No. 4 | • Consistent with Issue No. 1, streamline disputes through narrower, properly-framed requests |
| Impossibility Objections (Exhibit 3, Issue No. 5) | Denied, without prejudice | • Consistent with Issue No. 1, streamline disputes through narrower, properly-framed requests

• Consistent with Issue No. 2, ensure accurate witness identifications |
| Vague and ambiguous objections (Exhibit 3, Issue No. 6) | Granted in part and denied in part, insofar as Defendants shall answer Interrogatory No. 10 | |
| Proportionality objections (Exhibit 3, Issue No. 7) | Denied | |
| Custodian-related objections (Exhibit 3, Issue No. 8) | Denied, subject to meet and confer directives | • Address whether Plaintiffs' proposed search terms were incorporated into Defendants' searches |
| Deadline-related objections (Exhibit 3, Issue No. 9) | | • Address whether Defendants' later disclosures have rendered any of the disputed requests for admission incomplete and supplement as necessary |

| | | |
|---|---|---|
| Defendants' conditional responses | Denied | |
| Defendants' privilege log | Waiver not warranted | • Supplement privilege log with more detail<br><br>• If, after supplementation, Plaintiffs continue to dispute specific privilege assertions, the parties shall meet and confer in good faith to narrow any remaining issues |
| Process manager files | | • Clarify what "process manager files" are, whether any responsive materials exist beyond those already produced, and whether any additional production is required |
| CPT codes | | • Discuss issue in greater detail, including what CPT-code-related information exists, whether and how it can be linked to relevant patient characteristics, and whether Plaintiffs' requests can be reformulated to obtain the information in a practical and proportionate manner |

The Court is optimistic that the guidance provided in this Order will assist the parties in moving discovery towards completion. Even so, the Court recognizes that this Order does not – and cannot – resolve every issue raised in a motion presenting numerous interrelated disputes across more 500 pages of briefing and exhibits. Resolution of any remaining discovery issues will require cooperation between the parties because, at bottom, this case has languished for too long. Discovery deadlines have passed and the case must begin moving toward resolution on dispositive motions.

**ORDER - 29**

To that end, as set forth in the chart above, the Court requires the parties to meet-and-confer by **February 27, 2026**, and to resolve the remaining discovery disputes by **March 27, 2026**.  If any discovery disputes remain unresolved and require judicial resolution, the Court is inclined to refer such matters to a special master pursuant to Rule 53, with the parties bearing the costs associated with the special master's services.  The Court hopes that such a step will not be necessary, but the parties are on notice that continued discovery impasses will be addressed accordingly.

### V.  <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiffs' Motion to Compel Discovery Answers (Dkt. 178) is GRANTED in part and DENIED in part as more fully described in this Memorandum Decision and Order.



DATED:  January 28, 2026

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

ORDER - 30