RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense
AARON M. GREEN, ISB #12397
Assistant Solicitor General
DAVID J. MYERS, ISB #6528
GREGORY E. WOODARD, ISB #11329
Deputy Attorneys General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov
greg.woodard@ag.idaho.gov
aaron.green@ag.idaho.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| MH, KB, SG, AC, BM, individually and G DOE, by and through her parents and next friends, JANE Doe and JOHN Doe,<br><br>*Plaintiffs*,<br><br>v.<br><br>JULIET CHARRON, in her official capacity as the Director of the Idaho Department of Health and Welfare; Dr. MAGNI HAMSO, in her official capacity as the Medical Director of the Idaho Division of Medicaid and individually; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br><br>*Defendants.* | Case No. 1:22-cv-00409-REP<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

Table of Contents ....................................................................................................................... i

Table of Authorities................................................................................................................... ii

Introduction............................................................................................................................... 1

Factual and Procedural Background ......................................................................................... 1

Legal Standard .......................................................................................................................... 6

Argument ................................................................................................................................... 6

    I.    The Equal Protection (Claim IV) cause of action fails because H.B. 668 does not discriminate on the basis of sex or transgender status............................................................. 6

        A.    *Skrmetti* holds that laws regulating treatment for gender dysphoria do not classify based on sex or transgender status. ...................................................................... 7

        B.    H.B. 668 satisfies rational basis review. ................................................................. 10

    II.    The Due Process (Claim VI) claim for injunctive relief fails for mootness. ................ 12

    III.    The individual capacity claims for damages against Dr. Hamso (Claims IV and VI) are barred by qualified immunity. ......................................................................................... 13

    IV.    IDHW has sovereign immunity.................................................................................... 15

Conclusion ................................................................................................................................. 15

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Crouch*,
  169 F.4th 474 (4th Cir. 2026) ............................................................................... 9

*Borja v. Nago*,
  115 F.4th 971 (9th Cir. 2024) ............................................................................... 10

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ............................................................................................. 8

*Brandt by and through Brandt v. Griffin*,
  147 F.4th 867 (8th Cir. 2025) (en banc) ............................................................. 9

*Bullfrog Films, Inc. v. Wick*,
  959 F.2d 778 (9th Cir. 1992) ............................................................................... 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................. 6

*FCC v. Beach Commc'ns, Inc.*,
  508 U.S. 307 (1993) ............................................................................................. 10

*Gallinger v. Becerra*,
  898 F.3d 1012 (9th Cir. 2018) ......................................................................... 7, 10

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) ............................................................................................. 8

*Gonzalez-Medina v. Holder*,
  641 F.3d 333 (9th Cir. 2011) ............................................................................... 10

*Heller v. Doe*,
  509 U.S. 312 (1993) ............................................................................................. 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................. 12

*Lange v. Houston County, Ga.*,
  152 F.4th 1245 (11th Cir. 2025) ......................................................................... 9

*Longoria v. Pinal County*,
　873 F.3d 699 (9th Cir. 2017) ................................................................................. 14

*Miller v. County of Santa Cruz*,
　796 F. Supp. 1316 (N.D. Cal. 1992) ........................................................................ 6

*Munoz v. Super. Ct. of L.A. Cnty.*,
　91 F.4th 977 (9th Cir. 2024) ................................................................................. 15

*NRDC v. U.S. Nuclear Regulatory Comm'n*,
　680 F.2d 810 (D.C. Cir. 1982) ............................................................................... 12

*Pearson v. Callahan*,
　555 U.S. 223 (2009) ............................................................................................ 13

*Poe by and through Poe v. Drummond*
　149 F.4th 1107 (10th Cir. 2025) ............................................................................. 8

*Reed v. Goertz*,
　598 U.S. 230 (2023) ............................................................................................ 12

*Richardson v. IDHW*,
　No. 2:10–cv–00648–BLW, 2012 WL 667874 (D. Idaho Feb. 10, 2012) ........................ 15

*Sluimer v. Verity, Inc.*,
　606 F.3d 584 (9th Cir. 2010) ............................................................................ 6, 10

*Smith v. Califano*,
　597 F.2d 152 (9th Cir. 1979) .................................................................................. 6

*Turner Broad. Sys., Inc. v. FCC*,
　520 U.S. 180 (1997) ............................................................................................ 11

*Twitter, Inc. v. Lynch*,
　139 F. Supp. 3d 1075 (N.D. Cal. 2015) ................................................................. 12

*United States v. Geophysical Corp. of Alaska*,
　732 F.2d 693 (9th Cir. 1984) ............................................................................... 12

*United States v. Skrmetti*,
　605 U.S. 495 (2025) .................................................................................... *passim*

*West Virginia v. B.P.J. by Jackson*,
　609 U.S. ___, Nos. 24–43 & 24–38, 2026 WL 1868739 (June 30, 2026) ..................... 11

*White v. Pauly*,
  580 U.S. 73 (2017) ............................................................................................... 14


**STATUTES**

Idaho Code § 18-8901(1)................................................................................................3
Idaho Code § 18-8901(2)................................................................................................1
Idaho Code § 18-1506C(3) .............................................................................................3
Tenn. Code Ann. § 68-33-103(a)(1)(A)..........................................................................7
Idaho Code § 56-273.......................................................................................................3


**IDAHO SESSION LAWS**

2024 Idaho Session Laws 744 (House Bill 668)....................................................*passim*

## INTRODUCTION

The Legislature of the State of Idaho has determined that some surgical operations and medical procedures used to "treat" gender dysphoria—such as cross-sex hormones, puberty blockers, and surgeries—carry substantial risks and "have known harmful effects, including irreversible physical alterations and, in some cases, sterility and lifelong sexual dysfunction." 2024 Idaho Sess. Laws 744, § 1 ("H.B. 668"). Given these substantial risks and known harmful effects, the Legislature concluded that public funds should not be used to provide these procedures when used "for purposes of altering the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex." Idaho Code § 18-8901(2).

Plaintiffs are six individuals diagnosed with gender dysphoria who seek to force Idaho Medicaid to pay for the prohibited procedures. But the proper forum for such disagreement is the Legislature, not federal court. No legal authority prohibits the State from reaching the conclusion that it did. Defendants are entitled to summary judgment on all claims.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2022, Plaintiffs M.H. and T.B.[1] filed a Verified Complaint for Injunctive Relief, Declaratory Judgment, and Damages relating to what they claimed was an Idaho Medicaid policy (i) excluding coverage for genital reconstruction surgery for transgender individuals and (ii) "indefinitely and unreasonably delaying prior authorization of genital reconstruction surgery and coverage determinations for transgender Idaho Medicaid recipients." Dkt. 1 ¶ 1. On June 17, 2024, Plaintiffs filed an Amended Verified Complaint for Injunctive Relief, Declaratory

---

[1] On February 13, 2025, Plaintiffs moved to voluntarily dismiss Plaintiff T.B. Dkt. 166. On April 7, 2025, the Court granted the motion and dismissed T.B. from the suit. Dkt. 172.

Judgment, and Damages. Dkt. 86. The Amended Complaint alleges the same claims as the original

Complaint, directing those claims at what Plaintiffs call the Medicaid Exclusion Policy and a law

passed by the Idaho Legislature in the 2024 legislative session, H.B. 668.

Prior to 2024, and at all times relevant to this case, the Idaho Department of Health and

Welfare ("IDHW") had not adopted an official policy concerning Medicaid coverage of cross-sex

hormones and sex-reassignment surgeries to treat gender dysphoria, so all such requests were

deemed "pending." Statement of Undisputed Facts ("SOF") ¶¶ 41–42. When requests for

coverage of these surgeries (through a process called "prior authorization") were sent to IDHW

during that period, because a policy concerning such surgeries was pending, denials were issued

as a matter of course. SOF ¶ 43. To the extent these denials were appealed, the appeals remained

pending while IDHW continued to develop a policy. SOF ¶ 44. Prior to the passage of H.B. 668,

because cross-sex hormone treatments were considered pharmaceutical, and therefore did not

require a prior authorization, IDHW covered them without inquiring whether they would be used

to treat gender dysphoria. SOF ¶ 45. To the extent requests for hormones were flagged for review

for waste, fraud, or abuse prevention (because of the high dosages for the hormone used in sex

reassignment as compared to other hormone treatment), hormones were covered without a

medical necessity determination upon IDHW's receipt of a particular diagnostic code. *Id.*

On July 1, 2024, however, H.B. 668 took effect, rendering moot IDHW's efforts to develop

a policy on gender dysphoria treatments. SOF ¶ 44. As codified, the statute provides:

> Public funds shall not be used, granted, paid, or distributed to any entity, organization, or individual for the provision or subsidy of any surgical operation or medical intervention described in section 18-1506C(3), Idaho Code, for purposes of altering the appearance of an individual in order to affirm the individual's perception of the individual's sex in a way that is inconsistent with the individual's biological sex regardless of whether the surgical operation or medical intervention is administered to a minor or an adult, except for exempted surgical operations or medical interventions.

Idaho Code § 18-8901(2).[2] The medical procedures described in Idaho Code § 18-1506C(3) include the use of surgeries, puberty blockers, and hormone therapies.[3] A separate statute specifically applies this prohibition to Idaho Medicaid coverage and reimbursement. Idaho Code § 56-273. Neither statute prohibits payment for treatments, such as psychotherapy, that do not have the purpose of altering the appearance of a person but treat the underlying psychological condition of gender dysphoria.

H.B. 668's prohibition on the use of public funds for cross-sex hormones and sex-reassignment surgery reflects the Legislature's assessment that, given the medical risks of lifelong—and in some cases potentially grave—complications from the procedures, the procedures are not medically necessary. These procedures are known to cause sterility and sexual dysfunction and are ethically questionable in that they remove healthy organs and tissue to treat a mental illness. SOF ¶¶ 15–30. More severe and grave risks include increased risk of cancer, blood clots, and repeated surgeries to keep open or intact constructed pseudo-genitals. SOF ¶¶ 20–30, 36. By contrast, the benefits of these procedures are dubious at best, as multiple nations with national health systems, including the United Kingdom, have reconsidered their coverage of such procedures for treating gender dysphoria, and studies continue to show a lack of efficacy in treating gender dysphoria. SOF ¶¶ 31–36. Alternative means of treatment, like psychotherapy, carry little to no risk. SOF ¶¶ 37–38.

---

[2] Exempted procedures include procedures necessary for the health of the person, to treat problems caused by medical transition, and the treatment of physically verifiable conditions like a disorder of sex development or genetic condition. Idaho Code § 18-8901(1).

[3] Idaho Code § 18-1506C(3) prohibits the administration of cross-sex hormones sex reassignment surgeries, and puberty blockers, on children to alter the appearance of or affirm the child's perception of the child's sex if that perception is inconsistent with the child's biological sex.

Beginning in 2021 and continuing through 2022, Plaintiff M.H. sought prior authorization for surgeries before Idaho Medicaid had established a policy for surgeries for sex reassignment, and prior to any legislative action on the issue. SOF ¶¶ 1–2; Dkt. 1 ¶¶ 9, 14. An initial denial of the prior authorization was remanded by a hearing officer and no final decision was made because IDHW's policy was pending. SOF ¶¶ 2.

When H.B. 668 took effect, Plaintiffs filed the amended complaint adding additional plaintiffs—K.B., S.G., A.C., B.M., and G. Doe—who sought sex-reassignment surgery as well as cross-sex hormones, which were now prohibited under the new statute. Dkt. 86; SOF ¶¶ 3–12. M.H. and T.B. both received final denials for their prior authorization requests shortly after H.B. 668 took effect, SOF ¶ 13, and T.B. withdrew from the case in April 2025. Dkt. 172.

Plaintiffs brought six claims under both their initial and amended complaint:

1.      The First Claim for Relief alleged sex discrimination in violation of the Affordable Care Act ("ACA").

2.      The Second Claim for Relief alleged a violation of the Medicaid Act's availability requirement.

3.      The Third Claim for Relief alleged a violation of the Medicaid Act's comparability requirement.

4.      The Fourth Claim for Relief alleged a violation of the Fourteenth Amendment's Equal Protection Clause.

5.      The Fifth Claim for Relief alleged a violation of the Medicaid Act's fair hearings requirement, which Plaintiffs call "Medicaid Act due process."

6.      The Sixth Claim for Relief alleged a violation of the Fourteenth Amendment's Due Process Clause.

All these claims, as pled under the Amended Complaint,[4] were against Defendants in their official capacities except for the fourth and sixth claims for relief as to Dr. Hamso, who was also sued for

---

[4] The Court dismissed individual capacity claims brought under the Medicaid Act against Dr. Hamso in its order on Defendants' Motion to Dismiss. Dkt. 36 at 33.

damages based on her alleged role in responding to M.H.'s and T.B.'s requests for prior authorization while IDHW developed a pre-H.B. 668 policy. All Plaintiffs seek medical treatment for gender dysphoria by changing their appearance to conform to their gender identity distinct from their biological sex. Dkt. 86; SOF ¶¶ 1–14.

On November 25, 2022, Defendants moved to dismiss some of the claims, and this Court granted the motion in part and denied it in part. It dismissed all individual capacity claims against Dr. Hamso except those associated with Plaintiffs' Equal Protection claim (Claim IV) and Due Process claim (Claim VI), rejecting Dr. Hamso's qualified immunity arguments. Dkt. 36 at 33. The Court stayed proceedings as to those claims against Dr. Hamso as she appealed to the Ninth Circuit. Dkt. 63 at 17; Dkt. 40. The Ninth Circuit reversed this Court's holding as to qualified immunity on Due Process, holding that Dr. Hamso was entitled to qualified immunity. *M.H. v. Hamso*, No. 23-35485, 2024 WL 4100235, at *2–3 (9th Cir. Sep. 6, 2024). But the Ninth Circuit affirmed this Court as to qualified immunity on the Equal Protection claim on the record presented in the motion to dismiss. *Id.* Dr. Hamso petitioned the Supreme Court for a writ of certiorari as to the Equal Protection claim, and the Supreme Court granted the writ on June 30, 2025, vacating the Ninth Circuit's decision and remanding for reconsideration in light of *United States v. Skrmetti*. *Hamso v. M.H.*, 145 S. Ct. 2840 (Mem) (2025). The Ninth Circuit, in turn, remanded the qualified immunity issues to this Court for reconsideration. Dkt. 201.

Following recent decisions from the United States Supreme Court and circuit courts around the country, counsel for the parties engaged in a meet and confer regarding several of Plaintiffs' claims. Plaintiffs' counsel ultimately agreed that the First, Second, Third, and Fifth Claims for Relief should be dismissed and Plaintiffs' counsel will submit a stipulation for dismissal of those claims. This motion for summary judgment on Plaintiffs' remaining causes of action—the Fourth

and Sixth Claims for Relief under the Equal Protection and Due Process clauses of the Fourteenth Amendment—follows.

## LEGAL STANDARD

The court must grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). "Summary judgment is especially appropriate where . . . the only dispute is as to pure legal questions." *Miller v. County of Santa Cruz*, 796 F. Supp. 1316, 1317–18 (N.D. Cal. 1992), *aff'd* 39 F.3d 1030 (9th Cir. 1994); *see also Smith v. Califano*, 597 F.2d 152, 155 n.4 (9th Cir. 1979). "The moving party . . . has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial." *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## ARGUMENT

Summary judgment is proper as to all remaining claims for injunctive and declaratory relief. Each fails as a matter of law. Plaintiffs' Equal Protection claim (Claim IV) fails because H.B. 668 does not classify based on a suspect class and is therefore only subject to rational basis review, which it easily satisfies. *United States v. Skrmetti*, 605 U.S. 495, 511 (2025). And Plaintiffs' procedural due process claim under the Due Process Clause of the Fourteenth Amendment (Claim VI) fails because H.B. 668 has rendered those claims moot.

I.    **The Equal Protection (Claim IV) cause of action fails because H.B. 668 does not discriminate on the basis of sex or transgender status.**

The Equal Protection claim turns on whether H.B. 668 classifies based on sex or transgender status. Recent Supreme Court precedent dispositively answers that question: it does not because it classifies based on medical usage.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (citation omitted) (cleaned up). The Court's equal protection analysis consists of three steps: (1) identify the classification, (2) identify a control group of individuals similarly situated in relevant respects, and (3) if the two groups are similarly situated, identify and apply the appropriate level of scrutiny. *Id.*

The Supreme Court has determined that statutes like H.B. 668 that regulate treatments available for gender dysphoria do not classify based on sex or transgender status. Consequently, they are reviewed for rational basis under the Equal Protection Clause—which H.B. 668 easily satisfies.

### A. *Skrmetti* holds that laws regulating treatment for gender dysphoria do not classify based on sex or transgender status.

*Skrmetti* concerned a Tennessee statute that prohibited certain gender dysphoria treatments for minors—any procedure administered "for the purpose of [e]nabling a minor to identify with, or live as, a purported identity inconsistent with the minor's sex," including cross-sex hormones and sex-reassignment surgery. Tenn. Code Ann. § 68-33-103(a)(1)(A). The Supreme Court held that the statute facially classified on only two bases: "age" and "medical use," *Skrmetti*, 605 U.S. at 562, both of which are reviewed under rational basis scrutiny. Rejecting the plaintiffs' arguments, the Court found that "mere reference to sex" especially in the medical context does not trigger heightened scrutiny. And while the Court assumed for the sake of argument that only transgender persons would seek treatment for gender dysphoria,[5] the Court concluded that the statute did not

---

[5] Defendants deny that there is a one-to-one match between those who suffer from gender dysphoria and those who are transgender, *see* Am. Psychiatrics Ass'n, *Diagnostic and Statistical Manual* 511 (5th ed. text revision 2022), and WPATH Standards of Care 7 (2012) at 1–8, 96–97,

classify on the basis of transgender status. This is because, while the category of people who will seek coverage for the treatments may contain only transgender individuals, the category of people who will *not* seek coverage *also* contains transgender individuals. *Id.* at 519. Analogizing to its opinion in *Geduldig v. Aiello*, 417 U.S. 484 (1974), the Court concluded that the Tennessee law simply "removes one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." *Skrmetti*, 605 U.S. at 497; *Geduldig*, 417 U.S. at 496 n.20.

The Court notably rejected the plaintiffs' request to apply the reasoning of *Bostock v. Clayton County*, 590 U.S. 644 (2020), which held that a person discriminates based on sex under Title VII by firing a person for being transgender because sex is a "but-for" cause of the firing. The Court reasoned that *even if* this analysis applied to Equal Protection cases, the Tennessee law still did not discriminate based on transgender status—"[i]f a [biological female] seeks testosterone to treat . . . gender dysphoria, [Tennessee's law] prevents a healthcare provider from administering it to [her]. If you change [her] biological sex from female to male [the law] would still not permit him the hormones he seeks because he would lack *a qualifying diagnosis*" for it, so the "but-for" cause of the denial is not sex or transgender status, but medical diagnosis. *Skrmetti*, 605 U.S. at 520–21. (emphasis added).

Since *Skrmetti* was decided in June 2025, a unanimous chorus of circuit court cases have applied the decision to uphold government restrictions on government funding for sex-reassignment surgeries and cross-sex hormones—including cases specific to Medicaid and involving adult claimants. *Poe by and through Poe v. Drummond*, 149 F.4th 1107 (10th Cir. 2025)

---

but ultimately the analysis is the same even if the overlap between the two categories is complete. *See Skrmetti*, 605 U.S. at 518–19.

(upholding prohibition on treatments for minors); *Brandt by and through Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025) (en banc) (same); *Lange v. Houston County, Ga.*, 152 F.4th 1245 (11th Cir. 2025) (en banc) (upholding coverage exclusion in government-funded employee health insurance plan for adults).

Most directly on point, and most recently, *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026), upheld a statute covering the same ground as H.B. 668—West Virginia's prohibition on funding for sex reassignment surgery for both adults and minors under its Medicaid program. *Id.* at 480–81. The Fourth Circuit panel, following the logic of *Skrmetti*, rejected claims that this exclusion discriminated on the basis of either sex or transgender status, *id.* at 481–84, or by proxy. *Id.* at 484–86. The panel found that the exclusion satisfied rational basis as the statute addressed rational concerns about cost as well as the safety and efficacy of treatments that West Virginia refused to pay for. *Id.* at 491–92. Thus, "cost concerns alone carry the Exclusion over the rational-basis threshold. The State has finite resources to spend on healthcare. If it must spend money to cover surgeries for gender dysphoria, then it must either cut spending (e.g., take away coverage for other diagnoses) or raise taxes."[6] *Id.* at 491. Separately—as with Tennessee in *Skrmetti*—West Virginia:

> did not have to take any third party . . . at its word to find a good reason to ban certain procedures. The legislature could look at the evidence and decide for itself which plan would best promote the flourishing of Tennesseans. If the Tennessee legislature can legitimately prohibit these treatments, then the West Virginia legislature may legitimately determine that providing Medicaid coverage for these procedures is not worth the cost to its taxpayers.

---

[6] A second reason the Fourth Circuit noted: "States may legitimately recognize and 'celebrate' the 'inherent differences between men and women.'" *Anderson*, 169 F.4th at 492 (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996) (cleaned up)). "And it is not irrational for a legislature to encourage citizens 'to appreciate their sex' and not 'become disdainful of their sex' by refusing to fund experimental procedures that may have the opposite effect." *Id.* (quoting *Skrmetti*, 605 U.S. at 516–17).

*Id.* at 492.

The same is true for Idaho.

**B.      H.B. 668 satisfies rational basis review.**

The third step of equal protection analysis is to determine and apply the correct tier of scrutiny. *See Gallinger*, 898 F.3d at 1016. Because the H.B. 668's classification is based on medical diagnosis, does not burden a fundamental right, does not target a suspect class, and does not classify on the basis of sex or transgender status, the law is subject to rational basis review.[7] *Skrmetti*, 605 U.S. at 510.

This standard is easily met, as it asks only whether "there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* at 522 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). "Where there exist plausible reasons for the relevant government action [the Court's] inquiry is at an end." *Id.* (citation omitted). To state the rule conversely, "it is Plaintiffs' burden to negative every conceivable basis which might support" H.B. 668 "*whether or not* the basis has a foundation in the record." *Borja v. Nago*, 115 F.4th 971, 983 (9th Cir. 2024) (cleaned up) (citation omitted) (emphasis added). "The government 'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *Gonzalez-*

---

[7] In Paragraph 326 of the Amended Complaint, Plaintiffs allege that "HB 668 seeks to punish and harm vulnerable transgender individuals for their transgender status," appearing to raise the issue of animus. Dkt. 86. There is case law that suggests that "a court may strike down the challenged statute under the Equal Protection Clause if the statute serves no legitimate governmental purpose *and* if impermissible animus toward an unpopular group prompted the statute's enactment." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1200 (9th Cir. 2018) (citation and internal quotation omitted) (emphasis in original). But Plaintiffs have failed to timely disclose any evidence of animus. *See Sluimer*, 606 F.3d at 586 ("The moving party . . . has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case."). Further, as discussed in more detail later in this section, refusing to use public funds to pay for procedures with dubious benefits and substantial risks of grave harm to the patient is a legitimate purpose, justifying the statute regardless of whether there is some evidence of animus.

*Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

As the Supreme Court has now twice recognized with respect to legislation dealing with gender dysphoria, "[e]specially on medical and scientific matters where there is serious debate and disagreement, it can be difficult for courts to meaningfully evaluate the considered policy judgments of the lawmakers who have scrutinized the medical evidence and scientific data before them, and have made a reasoned decision." *West Virginia v. B.P.J. by Jackson*, 609 U.S. ___, Nos. 24–43 & 24–38, 2026 WL 1868739 at *15 (June 30, 2026) (citing *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195–96 (1997)).

As the Tennessee legislature did, the Idaho Legislature has determined that risks of treating gender dysphoria through hormones, puberty blockers, or surgeries—including "irreversible physical alterations and, in some cases, sterility and lifelong sexual dysfunction"—warrant a decision to not use public funds to pay for these medically risky procedures. 2024 Idaho Sess. Laws 744, § 1; SOF ¶ 40. As the Legislature found, these procedures "carry substantial risks and have known harmful effects, including irreversible physical alterations and, in some cases, sterility and lifelong sexual dysfunction." 2024 Idaho Sess. Laws 744, § 1. Indeed, Defendants in this case have offered four experts who have opined that the risks of medical treatment for gender dysphoria outweigh the benefits, that alternatives such as psychotherapy exist, and that there is no good evidence that puberty blockers, hormones, and surgery ultimately reduce suicide. SOF ¶¶ 15–36. Even the informed consent forms signed by Plaintiffs, and Plaintiffs' treating physicians' testimony at deposition, acknowledge the reality of negative side-effects associated with these treatments. SOF ¶ 25. That some experts disagree with the Defendants' experts on the propriety of these procedures is irrelevant. The undisputed fact is that these procedures have real negative

consequences for real people. This is a rational basis to decline to fund the prohibited treatments. The determination of what procedures to pay for with Idaho public funds "is a matter for legislative, rather than judicial, consideration." *Skrmetti*, 605 U.S. at 524 (internal quotation omitted).

The Court should grant summary judgment to Defendants on Plaintiffs' Equal Protection claim.

## II.  The Due Process (Claim VI) claim for injunctive relief fails for mootness.

Plaintiffs' request for injunctive relief on their remaining procedural due process claim (Claim VI) fails for mootness. The claim is based only on allegations that the Defendants' "continuing failure to provide" the Plaintiffs with "adequate notice" and a delay in making final decisions on requests for prior authorization violated the Due Process Clause. Dkt. 86 ¶¶ 339–40. But because the alleged practice has been replaced by legislation (and therefore can no longer exist), and because a decision has been made on the requests, there is nothing to enjoin, and the claim is moot. SOF ¶¶ 46–49.

A constitutional procedural due process claim has two elements: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Two of the plaintiffs—M.H. and B.M.—allege they were denied due process because Medicaid took too long to deny their claims. Dkt. 86, ¶¶ 339–40.

But any past policy that Plaintiffs argue resulted in a delay that deprived them of a benefit was replaced by H.B. 668. "A claim is moot if it has lost its character as a present, live controversy." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984)). "[W]hen subsequent legislation or rulemaking supersedes challenged regulations or rules, the challenge is moot." *Twitter, Inc. v. Lynch*, 139 F. Supp. 3d 1075 (N.D. Cal. 2015) (citing *NRDC v. U.S. Nuclear*

*Regulatory Comm'n*, 680 F.2d 810, 813–14 & n.8 (D.C. Cir. 1982), and *Bullfrog Films, Inc. v. Wick*, 959 F.2d 778, 780 (9th Cir. 1992)).

Here, H.B. 668 has supplanted any past policy that Plaintiffs claim resulted in the delay in resolving their prior authorization for sex-reassignment surgery to treat gender dysphoria. SOF ¶¶ 43–49. There is no genuine dispute that IDHW now issues these denials in the ordinary course, as was done for all of Plaintiffs' appeals save one following the implementation of H.B. 668.[8] Thus, the remaining claim for injunctive relief based on the "Medicaid Exclusion Policy," Claim VI, is moot and Defendants are entitled to summary judgment.

### III.    The individual capacity claims for damages against Dr. Hamso (Claims IV and VI) are barred by qualified immunity.

Plaintiff M.H.'s damages claims, brought under the Equal Protection and Due Process Clauses of the Fourteenth Amendment against Dr. Hamso in her individual capacity, are barred under qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). "[A]t summary judgment, an officer may be denied qualified immunity in a Section 1983 action 'only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a

---

[8] The only outstanding administrative appeal that has not been determined is B.M.'s. B.M.'s appeal has not been decided because B.M.'s entitlement to hormones and surgery is at issue in this litigation and the appeal from the denial of B.M.'s prior authorization was brought by B.M. after B.M. became a Plaintiff and after H.B. 668 was passed. That appeal will be decided promptly upon the Court's decision in this case.

reasonable officer would have understood [his] conduct to be unlawful in that situation.'" *Longoria v. Pinal County*, 873 F.3d 699, 704 (9th Cir. 2017) (citation omitted).

Regarding the claim for damages under the Due Process clause, the Ninth Circuit's holding that Dr. Hamso is entitled to qualified immunity as to that claim, *M.H. v. Hamso*, No. 23-35485, 2024 WL 4100235 at *3 (9th Cir. Sept. 6, 2024) (mem.) (*cert. granted, vacated on other grounds by 145 S. Ct. 2840*), is the law of the case. The Ninth Circuit's vacatur of this Court's holding on Dr. Hamso's immunity as to due process was not appealed by either party to the Supreme Court, *see* Petition for Writ of Certiorari, 2024 WL 5090011 at *i, and accordingly, the dismissal of Plaintiff's due process claim is binding on this Court. *See Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, (9th Cir. 2002) (holding failure to appeal class certification issue that could have been raised in prior appeal barred consideration of the issue on subsequent appeal).

Further, Plaintiff's due process claim fails because the facts do not show that Dr. Hamso violated a clearly established constitutional right. Dr. Hamso denied M.H.'s initial request for surgery based on the belief that M.H. did not satisfy the WPATH Standards of Care requirement for 12 months of continuous hormone coverage. Any delay on Dr. Hamso's part in further granting or denying the prior authorization was because IDHW's policy for such requests was pending. Plaintiff has no case for the proposition that delay or denial of a prior authorization under Medicaid based on a pending policy (or delay or denial of a Medicaid benefit at all) creates a due process violation. *M.H.*, 2024 WL 4100235 at *3 ("Plaintiffs do not cite, and we did not find, any clearly established law that is 'particularized to the facts of the case' regarding the procedural safeguards that are required for the welfare benefit at issue here.") (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam)). Because the law on this issue was not clearly established, Dr. Hamso is entitled to qualified immunity

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—14

The same is true for the individual claim for damages on an equal protection basis. A straightforward application of *Skrmetti* disposes of the equal protection arguments at issue in this case. *See generally* Section I; *see also Hamso*, 145 S. Ct. 2840 (vacating equal protection ruling and remanding "in light of *United States v. Skrmetti*"). Not only did *Skrmetti* affirmatively hold that policies classifying on the basis of medical use are not subject to any heightened scrutiny, 605 U.S. at 511, but the mere fact that the Supreme Court took the case demonstrated that the law surrounding denials of medical treatment for gender dysphoria was not clearly established.

Consequently, both individual capacity claims against Dr. Hamso seeking damages must be dismissed under qualified immunity.

## IV.   IDHW has sovereign immunity.

IDHW is entitled to sovereign immunity from all claims, including requests for declaratory and injunctive relief. While *Ex parte Young* recognizes that *an individual* state *officer* can be sued for declaratory and injunctive relief, 209 U.S. 123 (1908), a "suit against [a state agency] is a suit against the State, barred by the eleventh amendment." *Munoz v. Super. Ct. of L.A. Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024) (citation and quotation mark omitted). This Court has previously barred actions seeking injunctive relief against IDHW on this basis. *Richardson v. IDHW*, No. 2:10–cv–00648–BLW, 2012 WL 667874 at *2 (D. Idaho Feb. 10, 2012). The Department must therefore be dismissed.

### CONCLUSION

"When legislation does not cross constitutional lines, States must have leeway to effect the judgment of their citizens—no matter whether experts disagree." *Skrmetti*, 605 U.S. at 531 (Thomas, J., concurring). It is indisputable that the medical treatments for gender dysphoria at issue carry risks. *Id.* at 531–36. H.B. 668 represents the judgment of Idahoans through their Legislature that taxpayer funds should not fund those procedures because of the substantial risks

of grave harm to those who receive such procedures. That is a rational basis that supports H.B. 668, and the Court should therefore grant summary judgment in favor of all Defendants on all claims and as to all Plaintiffs and should appropriately defer to the Legislature's choice of health and spending policy.

DATED: July 27, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Aaron M. Green*
AARON M. GREEN
Assistant Solicitor General

*Attorney for Defendants*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on July 27, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:


Howard A. Belodoff
hbelodoff@hotmail.com

Jane Catherine Gordon
Jane@JaneGordonLaw.com

*Attorneys for Plaintiffs*


/s/ *Aaron M. Green*
AARON M. GREEN