REVISED

## STATEMENT OF PURPOSE

### RS30984 / H0421

Providing a legal definition for male and female and related terms, and providing consistency across state statute.

## FISCAL NOTE

This legislation causes no additional expenditure of funds at the state or local government nor does it cause an increase or decrease in revenue for the state or local government therefore the legislation has no fiscal impact.

**Contact:**

Representative Julianne Young
(208) 332-1000
Representative Bruce D. Skaug
(208) 332-1000

**DISCLAIMER: This statement of purpose and fiscal note are a mere attachment to this bill and prepared by a proponent of the bill. It is neither intended as an expression of legislative intent nor intended for any use outside of the legislative process, including judicial review (Joint Rule 18).**

EXHIBIT 12

# 2024 Legislation

## HOUSE BILL 421

The status of each bill, resolution, proclamation, and memorial is updated when the offices of the Secretary of the Senate and the Chief Clerk of the House publish the un-official daily journals and should not be deemed official. The official bill actions are located in the final journal, which are maintained by the offices of the Secretary of the Senate and the Chief Clerk of the House. **The daily journals are published at the end of each legislative day.**

Full Bill Information

**Individual Links:**

Bill Text
Statement of Purpose / Fiscal Note

H0421 ........................................ by STATE AFFAIRS COMMITTEE

INDIVIDUAL'S SEX – Amends existing law to define terms and to revise definitions regarding "sex" and "gender."

01/23 Introduced, read first time, referred to JRA for Printing
01/24 Reported Printed and Referred to Judiciary, Rules & Administration
01/29 Reported out of Committee, Returned to the Desk for re-referral
Referred to State Affairs
01/31 Reported out of Committee with Do Pass Recommendation,
Filed for Second Reading
02/01 Read second time; Filed for Third Reading
02/02 U.C. to hold place on third reading calendar until Monday, February 5, 2024
02/05 U.C. to hold place on third reading calendar one legislative day
02/06 U.C. to hold place on third reading calendar one legislative day
02/07 Read Third Time in Full – **PASSED - 54-14-2**
**AYES** – Alfieri, Allgood, Andrus, Barbieri, Blanksma, Boyle, Bundy, Cannon, Cheatum, Clow, Cornilles, Crane(12), Crane(13), Dixon(1), Dixon(24), Durrant, Ehardt, Ehlers, Erickson, Furniss, Gallagher, Handy, Hawkins, Healey, Hill, Holtzclaw, Horman, Kingsley, Lambert, Manwaring, McCann, Mendive, Mickelsen, Miller, Mitchell, Monks, Palmer, Petzke, Pickett, Price, Raybould, Raymond, Redman, Scott, Shepherd, Skaug, Tanner, Vander Woude, Wheeler, Wisniewski, Wroten, Yamamoto, Young, Mr. Speaker
**NAYS** – Berch(Bratnober), Burns, Chew(Wilson), Galaviz, Gannon, Garner,

Green(Ruckh), Mathias, Nash(Stinson), Necochea, Nelsen, Roberts, Rubel, Sauter
**Absent** – Lanting, Weber
**Floor Sponsor - Young**
Title apvd - to Senate

02/08 Received from the House passed; filed for first reading

Introduced, read first time; referred to: State Affairs

04/02 Reported out of Committee with Do Pass Recommendation; Filed for second reading

Rules Suspended (2/3 Vote - Read in full as required) – **PASSED - 26-8-1**
**AYES** – Adams, Anthon, Bernt, Bjerke, Burtenshaw, Carlson, Cook, Den Hartog, Foreman, Grow, Guthrie, Harris, Hart, Hartgen, Herndon, Lakey, Lenney, Lent, Nichols, Okuniewicz, Ricks, Toews, Trakel, VanOrden, Winder, Zuiderveld
**NAYS** – Bearg(Rabe), Just, Lee, Semmelroth, Shea(Ruchti), Taylor, Ward-Engelking, Wintrow
**Absent and excused** – Schroeder
**Floor Sponsor - Adams**
Title apvd - to House

Returned from Senate Passed; to JRA for Enrolling

Reported Enrolled; Signed by Speaker; Transmitted to Senate

04/03 Received from the House enrolled/signed by Speaker

Signed by President; returned to House

Returned Signed by the President; Ordered Transmitted to Governor

Delivered to Governor at 11:15 a.m. on April 3, 2024

04/10 Reported Signed by Governor on April 9, 2024
Session Law Chapter 322
Effective: 07/01/2024

LEGISLATURE OF THE STATE OF IDAHO

Sixty-seventh Legislature Second Regular Session - 2024

IN THE HOUSE OF REPRESENTATIVES

HOUSE BILL NO. 421

BY STATE AFFAIRS COMMITTEE

AN ACT

RELATING TO AN INDIVIDUAL'S SEX; PROVIDING LEGISLATIVE INTENT; AMENDING SECTION 73-114, IDAHO CODE, TO DEFINE TERMS AND TO APPLY DEFINITIONS TO STATE RULES AND POLICIES; AMENDING SECTION 18-1506C, IDAHO CODE, TO REVISE A DEFINITION; AMENDING SECTION 33-6602, IDAHO CODE, AS ENACTED BY SECTION 1, CHAPTER 120, LAWS OF 2023, TO REVISE A DEFINITION AND TO REDESIGNATE THE SECTION; AMENDING SECTION 39-245A, IDAHO CODE, TO REVISE A DEFINITION AND TO MAKE TECHNICAL CORRECTIONS; PROVIDING SEVERABILITY; AND DECLARING AN EMERGENCY AND PROVIDING AN EFFECTIVE DATE.

Be It Enacted by the Legislature of the State of Idaho:

SECTION 1. LEGISLATIVE INTENT. It is the intent of the Legislature to recognize the following:

(1) In human beings, there are two, and only two, sexes: male and female;

(2) Every individual is either male or female;

(3) An individual's sex can be observed or clinically verified at or before birth;

(4) Rare disorders of sexual development are not exceptions to the binary nature of sex;

(5) In no case is an individual's sex determined by stipulation or self-identification;

(6) There is increasing confusion about the definition of sex as a biological truth and its relationship to concepts and terms, including but not limited to gender, gender identity, gender role, gender expression, and experienced gender;

(7) Confusion and ambiguities surrounding the definitions of sex, male, female, and related terms can hinder individual efforts to enjoy equal treatment under the law;

(8) Legal equality of the two sexes does not imply that the sexes are identical to each other or are the same in every respect;

(9) With respect to the two sexes, separate facilities, housing or sleeping arrangements, or sports teams, programs, or leagues established because of or organized according to physical differences between the sexes does not constitute unequal treatment under the law; and

(10) Physical differences between males and females are enduring, and the two sexes are not fungible.

SECTION 2. That Section 73-114, Idaho Code, be, and the same is hereby amended to read as follows:

73-114. STATUTORY TERMS DEFINED. (1) Unless otherwise defined for purposes of a specific statute:

(a) Words used in these compiled laws in the present tense, include the future as well as the present;

(b) Words used in the masculine gender, include the feminine and neuter;

(c) The singular number includes the plural and the plural the singular;

(d) The word "person" includes a corporation as well as a natural person;

(e) Writing includes printing;

(f) Oath includes affirmation or declaration, and every mode of oral statement, under oath or affirmation, is embraced by the term "testify," and every written one in the term "depose";

(g) Signature or subscription includes mark, when the person cannot write, his name being written near it, and witnessed by a person who writes his own name as a witness.

(2) The following words have, in the compiled laws and rules and policies of the state of Idaho, the signification attached to them in this section, unless otherwise apparent from the context:

(a) "Boy" means a minor human male.

(b) "Father" means a male parent.

(c) "Female" means an individual who has, had, will have, or, but for a developmental or genetic anomaly or historical accident, would have the reproductive system that at some point produces, transports, and utilizes eggs for fertilization.

(d) "Gender," when used to refer to males, females, or the natural differences between males and females, shall be considered a synonym for "sex" and shall not be considered a synonym for gender identity, an internal sense of gender, experienced gender, gender expression, or gender role. This definition shall not apply when the term "gender" is used in conjunction with other words or as an adjective to modify other words.

(e) "Girl" means a minor human female.

~~(a)~~ (f) "Intellectual disability" means significantly subaverage general intellectual functioning that is accompanied by significant limitations in adaptive functioning in at least two (2) of the following skill areas: communication, self-care, home living, social or interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety. The onset of significantly subaverage general intelligence functioning and significant limitations in adaptive functioning must occur before age eighteen (18) years.

(g) "Male" means an individual who has, had, will have, or, but for a developmental or genetic anomaly or historical accident, would have the reproductive system that at some point produces, transports, and utilizes sperm for fertilization.

~~(b)~~ (h) "Month" means a calendar month, unless otherwise expressed.

(i) "Mother" means a female parent.

~~(c)~~ (j) "Personal property" includes money, goods, chattels, things in action, evidences of debt and general intangibles as defined in the uniform commercial code -- secured transactions.

~~(d)~~ (k) "Property" includes both real and personal property.

~~(e)~~ (l) "Real property" is coextensive with lands, tenements and hereditaments, possessory rights and claims.

~~(f)~~ (m) "Registered mail" includes certified mail.

(n) "Sex" means an individual's biological sex, either male or female.

~~(g)~~ (o) "State," when applied to the different parts of the United States, includes the District of Columbia and the territories; and the words "United States" may include the District of Columbia and territories.

~~(h)~~ (p) "Will" includes codicils.

~~(i)~~ (q) "Writ" signifies an order or precept in writing, issued in the name of the people, or of a court or judicial officer, and the word "process," a writ or summons issued in the course of judicial proceedings.

SECTION 3. That Section 18-1506C, Idaho Code, be, and the same is hereby amended to read as follows:

18-1506C. VULNERABLE CHILD PROTECTION. (1) This section shall be known and may be cited as the "Vulnerable Child Protection Act."

(2) As used in this section:

(a) "Child" means any person under eighteen (18) years of age; and

(b) "Sex" ~~means the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female~~ is as defined in section 73-114, Idaho Code.

(3) A medical provider shall not engage in any of the following practices upon a child for the purpose of attempting to alter the appearance of or affirm the child's perception of the child's sex if that perception is inconsistent with the child's biological sex:

(a) Performing surgeries that sterilize or mutilate, or artificially construct tissue with the appearance of genitalia that differs from the child's biological sex, including castration, vasectomy, hysterectomy, oophorectomy, metoidioplasty, orchiectomy, penectomy, phalloplasty, clitoroplasty, vaginoplasty, vulvoplasty, ovariectomy, or reconstruction of the fixed part of the urethra with or without metoidioplasty, phalloplasty, scrotoplasty, or the implantation of erection or testicular prostheses;

(b) Performing a mastectomy;

(c) Administering or supplying the following medications that induce profound morphologic changes in the genitals of a child or induce transient or permanent infertility:

(i) Puberty-blocking medication to stop or delay normal puberty;

(ii) Supraphysiological doses of testosterone to a female; or

(iii) Supraphysiological doses of estrogen to a male; or

(d) Removing any otherwise healthy or nondiseased body part or tissue.

(4) A surgical operation or medical intervention shall not be a violation of this section if the operation or intervention is:

(a) Necessary to the health of the person on whom it is performed and is performed by a person licensed in the place of its performance as a med-

ical practitioner, except that a surgical operation or medical intervention is never necessary to the health of the child on whom it is performed if it is for the purpose of attempting to alter the appearance of or affirm the child's perception of the child's sex if that perception is inconsistent with the child's biological sex;

(b) For the treatment of any infection, injury, disease, or disorder that has been caused or exacerbated by the performance of gender transition procedures, whether or not the procedures were performed in accordance with state and federal law; or

(c) Performed in accordance with the good faith medical decision of a parent or guardian of a child born with a medically verifiable genetic disorder of sex development, including:

(i) A child with external biological sex characteristics that are ambiguous and irresolvable, such as a child born having 46, XX chromosomes with virilization, 46, XY chromosomes with undervirilization, or with both ovarian and testicular tissue; or

(ii) When a physician has otherwise diagnosed a disorder of sexual development in which the physician has determined through genetic testing that the child does not have the normal sex chromosome structure, sex steroid hormone production, or sex steroid hormone action for a male or female.

(5) Any medical professional convicted of a violation of this section shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than ten (10) years.

(6) The provisions of this act are hereby declared to be severable, and if any provision of this act or the application of such provision to any person or circumstance is declared invalid for any reason, such declaration shall not affect the validity of the remaining portions of this section.

SECTION 4. That Section 33-6602, Idaho Code, as enacted by Section 1, Chapter 120, Laws of 2023, be, and the same is hereby amended to read as follows:

~~33-6602.~~ 33-6702. DEFINITIONS. For the purposes of this chapter:

(1) "Changing facility" means a facility in which a person may be in a state of undress in the presence of others, including a locker room, changing room, or shower room.

(2) "Public school" means any public school teaching K-12 students within an Idaho school district or charter school.

(3) "Sex" ~~means the immutable biological and physiological characteristics, specifically the chromosomes and internal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female~~ is as defined in section 73-114, Idaho Code.

SECTION 5. That Section 39-245A, Idaho Code, be, and the same is hereby amended to read as follows:

39-245A. CERTIFICATES OF BIRTH -- MATERIAL FACTS INCLUDED -- AMENDMENTS.

(1)(a) The legislature finds that:

(i) There is a compelling interest in maintaining accurate, quantitative, biology-based material facts on Idaho certificates of birth that provide material facts fundamental to the performance of government functions that secure the public health and safety, including but not limited to identifying public health trends, assessing risks, conducting criminal investigations, and helping individuals determine their biological lineage, citizenship, or susceptibility to genetic disorders;

(ii) The equal protection clause of the fourteenth amendment to the United States constitution prohibits purposeful discrimination, not facially neutral laws of general applicability, such as a biology-based definition of sex that has been consistently applied since our nation's founding;

(iii) Decades of court opinion have upheld the argument that biological distinctions between male and female are a matter of scientific fact, and biological sex is an objectively defined category that has obvious, immutable, and distinguishable characteristics;

(iv) Identification of biological sex on a birth certificate impacts the health and safety of all individuals. For example, the society for evidence-based gender medicine has declared that the conflation of sex and gender in health care is alarming, subjects hundreds of thousands of individuals to the risk of unintended medical harm, and will greatly impede medical research;

(v) Vital statistics are defined in section 39-241(21), Idaho Code, as data, being the plural of datum, which is a known fact;

(vi) Idaho certificates of birth are of an evidentiary character and prima facie evidence of the facts recited therein, according to section 39-274, Idaho Code;

(vii) Age and sex, unlike the names of natural parents whose rights have been terminated, are legally applicable facts fundamental to the performance of public and private policies and contracts;

(viii) The failure to maintain accurate, quantitative vital statistics and legal definitions upon which the government and others may with confidence rely constitutes a breach of the public trust; and

(ix) The government has a compelling interest in maintaining the public trust and confidence and a duty to fulfill, to the best of its ability, those functions that rely on accurate vital statistics.

(b) Based on the findings in paragraph (a) of this subsection, the legislature directs that an Idaho certificate of birth shall document specific quantitative, material facts at the time of birth, as provided in subsection (2) of this section.

(2) Any certificate of birth issued under the provisions of this chapter shall include the following quantitative statistics and material facts specific to that birth: time of birth, date of birth, sex, birth weight, birth length, and place of birth.

(3) For purposes of this chapter, "sex" ~~means the immutable biological and physiological characteristics, specifically the chromosomes and inter-~~

~~nal and external reproductive anatomy, genetically determined at conception and generally recognizable at birth, that define an individual as male or female~~ is as defined in section 73-114, Idaho Code.

(4) The quantitative statistics and material facts identified in subsection (2) of this section may be amended within one (1) year of the filing of the certificate by submitting to the registrar a notarized affidavit of correction that:

(a) Is on a form prescribed by the registrar;

(b) Is signed by:

(i) The parents identified on the certificate of birth; or

(ii) The child's legal guardian;

(c) Is signed by the physician or other person in attendance who provided the medical information and certified to the facts of birth; and

(d) Declares that the information contained on the certificate of birth incorrectly represents a material fact at the time of birth.

After one (1) year, the quantitative statistics and material facts identified in subsection (2) of this section may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the party challenging the acknowledgment.

(5) In those instances in which an individual suffers from a physiological disorder of sexual development and the individual's biological sex cannot be recognized at birth as male or female based upon externally observable reproductive anatomy, the physician shall make a presumptive determination of the individual's sex, which may thereafter be amended based on the appropriate combination of genetic analysis and evaluation of the individual's naturally occurring internal and external reproductive anatomy as provided in subsection (4) of this section.

(6) Notwithstanding any provision of this section to the contrary, a hospital may correct a birth certificate for a clerical or data entry error at any time by submitting a notarized affidavit on a form specified by the registrar with any appropriate supporting documentation.

SECTION 6. SEVERABILITY. The provisions of this act are hereby declared to be severable and if any provision of this act or the application of such provision to any person or circumstance is declared invalid for any reason, such declaration shall not affect the validity of the remaining portions of this act.

SECTION 7. An emergency existing therefor, which emergency is hereby declared to exist, this act shall be in full force and effect on and after July 1, 2024.